CLOSED, STANDARD

United States District Court
Eastern District of Pennsylvania (Philadelphia)
CIVIL DOCKET FOR CASE #: 2:06-cv-03901-GP
Internal Use Only

07 - 60

ELAN SUISSE LTD. v. CHRIST
Assigned to: HONORABLE GENE E.K. PRATTER
Cause: 15:1121 Trademark Infringement

Date Filed: 09/01/2006
Jury Demand: None
Nature of Suit: 840 Trademark
Jurisdiction: Federal Question

**Plaintiff**

ELAN SUISSE LTD.

represented by NICHOLAS CASAMENTO
FRONT STREET LAWYERS, P.C.
FLAGSHIP CORPORATE CENTER
SUITE 320
2 W. BALTIMORE AVENUE
MEDIA, PA 19063
610-891-0180
Email:
nickcasamentofrontstreetlawyers@comcast.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

ROBERT D. CHRIST

represented by ANDREW J. SOVEN
REED SMITH, LLP
2500 ONE LIBERTY PLACE
1650 MARKET STREET
PHILADELPHIA, PA 19106
215-851-8288
Fax: 215-851-1420
Email: asoven@reedsmith.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

THAD J. BRACEGIRDLE
REED SMITH LLP
1201 MARKET ST.
SUITE 1500
WILMINGTON, DE 19808
US
302-778-7571
Email: tbracegirdle@reedsmith.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

A TRUE COPY CERTIFIED TO FROM THE RECORD
DATED: 1/29/07
ATTEST
DEPUTY CLERK, UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

2007 JAN 30 PM 1:09

| Date Filed | # | Docket Text |
|---|---|---|
| 09/01/2006 | 1 | NOTICE OF REMOVAL by ROBERT D. CHRIST from Montgomery County, case number 06-15540 and Certificate of Service. (Filing fee $ 350 receipt number 931995) (ss, ) Additional attachment(s) added on 9/27/2006 (bj, ). (Entered: 09/01/2006) |
| 09/01/2006 | | Standard Case Management Track (ss, ) (Entered: 09/01/2006) |

| 09/11/2006 | ❷₂ | MOTION to Dismiss for Lack of Jurisdiction filed by ROBERT D. CHRIST.Memorandum, Certificate of Service. (Attachments: # 1 Exhibit # 2 Exhibit # 3 Exhibit # 4 Exhibit)(SOVEN, ANDREW) (Entered: 09/11/2006) |
|---|---|---|
| 09/25/2006 | ❸₃ | Memorandum in Opposition re 2 MOTION to Dismiss for Lack of Jurisdiction filed by ELAN SUISSE LTD., Certificate of Service. (CASAMENTO, NICHOLAS) Modified on 9/26/2006 (up). (Entered: 09/25/2006) |
| 09/26/2006 | ❹₄ | Original Record together with certified copy of docket entries received from Court of Common Pleas of Montgomery County. (le, ) (Entered: 09/26/2006) |
| 09/27/2006 | ❺₅ | Exhibits to Plaintiff's Memorandum of Law in Response to Defendant's Motion to Dismiss filed by ELAN SUISSE LTD..(le, ) (Entered: 09/27/2006) |
| 10/02/2006 | ❻₆ | REPLY to Response to Motion re 2 MOTION to Dismiss for Lack of Jurisdiction filed by ROBERT D. CHRIST. (Attachments: # 1 Exhibit Ex.A# 2 Exhibit Ex. B# 3 Certificate of Service)(SOVEN, ANDREW) (Entered: 10/02/2006) |
| 10/03/2006 | ❼₇ | MOTION FOR ADMISSION OF THAD J. BRACEGIRDLE FOR PRO HAC VICE FILED BY ROBERT D. CHRIST.CERTIFICATE OF SERVICE, STATEMENT.(jjf, ) (Entered: 10/04/2006) |
| 10/11/2006 | ❽₈ | ORDER granting 7 DEFENDANT'S MOTION FOR PRO HAC VICE OF THAD J. BRACEGIRDLE ON BEHALF OF DEFENDANT, ROBERT D. CHRIST. SIGNED BY JUDGE GENE E.K. PRATTER ON 10/06/2006.10/11/2006 ENTERED AND COPIES MAILED AND E-MAILED. (rab) (Entered: 10/11/2006) |
| 12/07/2006 | ❾₉ | NOTICE of Hearing on DEFENDANT'S Motion 2 MOTION to Dismiss for Lack of Jurisdiction: MOTION HEARING SET FOR 12/21/2006 02:00 PM IN COURTROOM BEFORE HONORABLE GENE E.K. PRATTER. (rab) (Entered: 12/07/2006) |
| 12/22/2006 | ❿₁₀ | Minute Entry for proceedings held before Judge GENE E.K. PRATTER : Motion Hearing held on 12/21/06 re 2 MOTION to Dismiss for Lack of Jurisdiction filed by ROBERT D. CHRIST, Court Reporter: M. Coyle. Counsel address the Court. Conrt to take the matter under advisement. (le, ) (Entered: 12/22/2006) |
| 12/29/2006 | ⓫₁₁ | MEMORANDUM AND OPINION ORDERED THAT DEFENDANT ROBERT D. CHRIST'S MOTION TO DISMISS IS DENIED WITHOUT PREJUDICE AND DEFENDANT ROBERT D. CHRIST'S MOTION TO TRANSFER IS GRANTED AND THIS ACTION IS TRANSFERRED TO THE U.S.D.C. FOR THE DISTRICT OF DELAWARE, TO BE DOCKETED AS RELATED TO ROBERT D. CHRIST V. BRETT J. CORMICK, ET AL., CIVIL ACTION NO. 06-275. SIGNED BY JUDGE GENE E.K. PRATTER ON 12/28/2006. 12/29/2006 ENTERED AND COPIES E-MAILED.(rab) (Entered: 12/29/2006) |
| 12/29/2006 | | ***Civil Case Terminated. (kv, ) (Entered: 01/02/2007) |
| 01/03/2007 | ⓬₁₂ | TRANSCRIPT of Proceedings held on 12/21/06 before Judge GENE E.K. PRATTER. Court Reporter: Megan McDevitt. (le, ) (Entered: 01/03/2007) |
| 01/29/2007 | ❍ | Original record together with certified copy of docket entries forwarded to District of Delaware. (le, ) (Entered: 01/29/2007) |

$350.00



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

2007 JAN 30  PM 1: 10

|  |  |  |
|---|---|---|
| ELAN SUISSE LTD., | : | $07 - 60$ |
| Plaintiff, | : |  |
| v. | : | No. $06 - cv - 3901$ |
| ROBERT D. CHRIST, | : |  |
| Defendant. | : |  |

## NOTICE OF REMOVAL

TO:  Nicholas Casamento, Esquire
Joseph A. Ratasiewicz, Esquire
Front Street Lawyers, P.C.
Flagship Corporate Center, Suite 320
2 West Baltimore Avenue
Media, PA 19063

FILED

MICHAEL E. KUNZ, Clerk
Dep. Clerk
By

PLEASE TAKE NOTICE that defendant Robert D. Christ, by and through his

undersigned counsel, and pursuant to 28 U.S.C. §§ 1331, 1338, 1441, and 1446, hereby removes

this action from the Court of Common Pleas of Montgomery County, Pennsylvania to the United

States District Court for the Eastern District of Pennsylvania. In support of this removal,

defendant states as follows:

## Introduction

1.    On June 23, 2006, plaintiff Elan Suisse Ltd. ("Elan Suisse") filed a complaint,

captioned *Elan Suisse Ltd v. Robert D. Christ*, No. 06-15540, in the Court of Common Pleas of

Montgomery County, Pennsylvania (the "Montgomery County Action"). Pursuant to 28 U.S.C.

§ 1446(a), a true and correct copy of the complaint, and all process, pleadings and orders from

the Montgomery County Action, are attached hereto as Exhibit A.

2. Defendant was never properly served with process, but on August 14, 2006 defendant received by mail a copy of the complaint and other pleadings filed in the Montgomery County Action.

3. Pursuant to 28 U.S.C. § 1446(b), removal of the Montgomery County Action is timely as this Notice of Removal is being filed within thirty days after plaintiff's receipt of a copy of the complaint filed in the Montgomery County Action.

## Jurisdictional Basis For Removal

4. Under 28 U.S.C. § 1441(b), a defendant may remove "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States." 28 U.S.C. § 1441(b).

5. In the Montgomery County Action, Elan Suisse has alleged claims against defendant arising under the Lanham Act, 15 U.S.C. § 1051 *et seq.* Specifically, Count II of the complaint alleges that defendant has violated Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), through his purportedly "malicious, false and misleading use in commerce of the 'Elan Suisse' name." *See* Ex. A, Compl. ¶¶ 20-21. Count III of the complaint similarly alleges that defendant has violated Section 43(d)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(d)(1)(A), which was enacted to prevent "cyberpiracy" of trademarks and Internet domain names. *See* Ex. A, Compl. ¶¶ 23-24.

6. The district courts of the United States have original jurisdiction over all civil actions arising under the Lanham Act, including the claims alleged in the Montgomery County Action by Elan Suisse. *See* 15 U.S.C. § 1121(a). The district courts also have original jurisdiction over all civil actions "arising under any Act of Congress relating to … copyrights and trademarks." 28 U.S.C. § 1338(a).

2

**Conclusion**

7.    Based on the foregoing, subject matter jurisdiction over Elan Suisse's complaint exists in this Court pursuant to 28 U.S.C. § 1331 because the matters alleged therein arise under federal law. This Court also may exercise supplemental jurisdiction over Count I of Elan Suisse's complaint, which alleges a claim of commercial disparagement arising from the same facts underlying Elan Suisse's Lanham Act claims. *See* 28 U.S.C. § 1338(b) ("The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent, plant variety protection or trademark laws."); 28 U.S.C. § 1441(c) ("Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein ....").

8.    Pursuant to 28 U.S.C. §§ 1441(a) and 1446(a), the United States District Court for the Eastern District of Pennsylvania is the appropriate court in which to file a Notice of Removal from the Court of Common Pleas of Montgomery County, Pennsylvania.

9.    Pursuant to 28 U.S.C. § 1446(d), defendant shall give written notice of the filing of this Notice of Removal to Elan Suisse and shall file a copy of this Notice of Removal with the Prothonotary of the Court of Common Pleas of Montgomery County, Pennsylvania.

WHEREFORE, defendant Robert D. Christ respectfully removes to this Court the matter styled as *Elan Suisse Ltd. v. Robert D. Christ*, No. 06-15540, from the Court of Common Pleas of Montgomery County, Pennsylvania.

Dated: September 1, 2006

REED SMITH LLP

By: 

Andrew J. Soven
PA I.D. No. 76766
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
(215) 851-8100

Thad J. Bracegirdle
1201 Market Street, Suite 1500
Wilmington, DE 19801
(302) 778-7500

*Attorneys for Defendant*

Dated: September 1, 2006

4

## CERTIFICATE OF SERVICE

I hereby certify that, on this 1st day of September, 2006, I caused to be served a true and correct copy of the foregoing Notice of Removal by first class United States mail, postage prepaid, upon the following counsel:

Nicholas Casamento, Esquire
Joseph A. Ratasiewicz, Esquire
Front Street Lawyers, P.C.
Flagship Corporate Center, Suite 320
2 West Baltimore Avenue
Media, PA 19063

Andrew J. Soven

5

**FRONT STREET LAWYERS, P.C.**
**BY: NICHOLAS CASAMENTO, ESQUIRE**
**Attorney I.D. #37931**
**JOSEPH A. RATASIEWICZ, ESQUIRE**
**Attorney I.D.#47453**
**Flagship Corporate Center, Suite 320**
**2 West Baltimore Avenue**
**Media, Pa. 19063**
**610-891-0180**
                                              Attorneys for Plaintiff

## IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| ELAN SUISSE Ltd. | : | NO.  $CG \cdot 15540$ |
| Plaintiff | : | |
| vs. | : | CIVIL ACTION –LAW |
| ROBERT D. CHRIST | : | |
| Defendant | : | JURY TRIAL DEMANDED |

### COMPLAINT

Plaintiff, Elan Suisse Ltd., ("Plaintiff") by and through its attorney, Nicholas Casamento, Esquire, hereby brings this action against Robert D. Christ and in support thereof, alleges the following:

1.      Plaintiff, Elan Suisse Ltd. ("Elan"), is a corporation formed and organized under the laws of the Republic of South Africa and at all times relevant to the events described herein, Brett Cormiek, was a Director and Officer of Elan Suisse.

2.      Defendant herein is Robert D. Christ, ("Christ") an individual who resides at 2333 Jones Road, Pottstown, Pa.  19465.

3.      During or about July 2003, Elan was incorporated for the purpose of developing and attracting international investors to a product developed by Cormick that proposed a safe investment vehicle for investors to invest in US dollars.

A corporate & financial distribution base of over 7,000 institutional investors in over 15 European countries *[unsubstantiated meaningless obfuscation]*
Origination of several worlds #1 performing funds *[unsubstantiated meaningless obfuscation]*
Fully licensed investment manager/asset manager *[the only license I have found is in RSA]*<<

>> Non-corporate/financial professional history;
Captain  Royal Australian Army  (Special Forces Commando) *[see Feb. 7, 2006 update]*
Director Polar Dive Operations The Polar Dive Company *[company never operated]*
Course Creator & Lecturer University of Cape Town School of Management Studies Strategic International Corporate Finance *[see above – relationship terminated]*
Commander Shagashe Leopards Combat Tracker Anti Poaching Unit Wildlife & Environmental Society of Zimbabwe (WEZ)  Masvingo Province *[According to Zimbabwe-based sources, this is a fabrication]*
National Council Member Wildlife & Environmental Society of Zimbabwe (WEZ) Masvingo Province Province *[According to Zimbabwe-based sources, this is a fabrication]*
Head Ranger Shagashe National Park Wildlife & Environmental Society of Zimbabwe (WEZ) Masvingo Province Province *[According to Zimbabwe-based sources, this is a fabrication]*
Director London School of Economics - International Economic Development Group *[this is not an LSE-Chartered Organization]*<<

>> Dr. Cormick is a Fellow of the Royal Geographical Society and an International Fellow of the New York based Explorers Club. He is widely regarded as one of the most extreme polar explorer of this Century; having conceived, lead and survived the first dive in history of the North Pole (despite a fatality in 15 minutes on the first attempt) and multiple free fall expeditions to the North Pole, where expedition members logged up to –100 Celsius in freefall. He has been featured on most major international televisions news networks globally, and over 30 international  newspaper, adventure, travel, sporting, and environmental magazines and internet publications.<<
*[see above – and the quote "He is widely regarded as one of the most extreme polar explorer of this Century" is completely over the edge…]*

>> Through his Family Trust, The Cormick Educational Foundation for Africa (CEFA) he is also directly involved in rural African charities for education for indigenous youth, and healthcare for the aged and disadvantaged. *[Noble Cause – but according to close sources, it is completely a Cormick fabrication]*<<

### November 18, 2005 Update:
This from another knowledgeable retired senior Australian governmental official:

4.      The investment products developed became one of the trade secrets of
Elan.

5.      Approximately in the beginning of February 2004, Christ (Defendant)
became a thirty-six percent (36%) investor in Elan Suisse International Holdings.
(A separate corporation from Elan).

6.      That after investing Two Hundred Fifty Thousand Dollars ($250,000.00)
into the Elan Suisse International Holdings ("Holdings"), Christ had a thirty-six percent
(36%) equity ownership and was also authorized to represent that entity which had been
incorporated in the State of Delaware.

7.      Christ was to operate "Holdings" in the U.S. in order to attract investors
there and did so in 2004.

8.      Christ was not authorized by Elan to operate any Website.

9.      That on or about September of 2004, Christ, without authority from Elan,
set up the Website "elansuisse.co.za.", using the Elan Suisse name in direct conflict with
"elan suisse.com" (a registered domain name).

10.     From September of 2004 and through the present time, Christ has posted
defamatory statements on his Website regarding Elan Suisse, associated companies, their
investors and employees, which consist of but are not limited to the following as set forth
in Christ's Website postings attached hereto as Exhibit "A".

        • "Elan Suisse Capital unclear as to which of these shell companies this
moniter is attached"

                • "John Walters sentencing hearing transcript on fraud charges"

                • "The theft of this money to someone I trusted fueled ..."

• "Cormick is and has been for several years – with impunity" running a

large international investment scam based in the UK and the Republics of

Zimbabwe and South Africa."

• "I am unable to establish where Cormick lives"

• "On the Alan Dean Affair whereby Cormick was arrested by

New Scotland Yard in 1997 on suspicion of fraud"

• "This is a classic bate and switch scam"

• "I believe this operation is a boiler room type operation"

• "Through a collapsible daisy chain of shell companies…that is the Elan

Suisse setup"

• An apparently new Elan Suisse entity just popped up!  It's called

Nicogel"

•"What about Elan Suisse RSA? I believe that the RSA operation is a

front to legitimize the whole business operation in Zimbabwe"

• "Neither Elan Suisse nor Cormick are what they are represented to

be"

• "CEO Elan Capital SA [See above this is a shell company]"

•"To the shock of finding out I have been seammed by someone I trusted".

(Posted May 31, 2006)

11.     The statements and innuendos contained in Christ's Website

"elansuisse.eo.za." are deliberately false, malicious and misleading and were made for

the sole purpose of trying to force a settlement and/or return of the money that Christ had

invested in the Elan Suisse Holdings Co. in Delaware.

12.     Christ's inappropriate, defamatory and disparaging statements against
Elan Suisse and its key officers and directors, have caused Elan to lose investors and
make it difficult to attract any investors. (See the attached Affidavit of Brett Cormick,
Peter John Kipps, Apostolos Zographos and Anthony John Carter, attached hereto
respectively as Exhibits "B", "C","D"and "E").

## COUNT I

### Commercial Disparagement

13.     Plaintiff repeats and re-alleges each and every allegation contained in
paragraphs one (1) through twelve (12)  with the same force and effect as if set forth fully
herein.

14.     Christ intentionally and negligently disseminated false, malicious and
misleading statements on his internet Website and through e-mail communications to
Plaintiff's investors, potential investors and customers by posting on his Website
completely false, malicious and misleading information about the Plaintiff Company, its
key operating Officers, company employees, and others associated with Plaintiff.

15.     Christ was aware that these statements were false and knew or reasonably
should have known that the statements would likely result in harm to Plaintiff's business
and result in detering other potential investors and current investors from dealing further
with Plaintiff Company.

16.     Christ's false statements played a material and substantial part in deterring
Plaintiff's potential investors and current investors to not invest in the Company or to
limit their investments with the Company and even cause losses to current investors.

17.     As a direct and proximate result of the aforesaid conduct, Plaintiff has
been damaged in an amount that will be proven at trial and is expected to be in excess of
Fifty Thousand Dollars ($50,000.00).

18.     That Defendant Christ's continued use of the Website wherein he has and
continues to post false, misleading, defamatory, malicious and damaging statements has
and will continue to cause irreparable harm to Plaintiff and the reputation of its officers,
potential investors, current investors and employees to which immediate equitable relief
is necessary.

**WHEREFORE,** Plaintiff Elan Suisse, prays that this Honorable Court (i) enjoin
Robert D. Christ from making the aforesaid defamatory and disparaging statements with
respect to Elan Suisse and any employees, investors or anyone who was or has been
associated with the Elan Suisse Group. And furthermore, that Mr. Christ immediately
cease and desist from operating any Website using the protected name Elan Suisse or any
Website with any similar, misleading or confusing designation which would lead anyone
to believe it was an official site of Elan Suisse; (ii) enter judgment for Elan Suisse and
against Robert Christ and award all compensable damages, costs, prejudgment and post
judgment interest, and attorney fees; and (iii) provide such other and further relief as this
Court deems necessary and just.

## COUNT II

### VIOLATION OF §43(a)(1)(A)(B)OF THE LANHAM ACT

19.     Plaintiff repeats and re-alleges each and every allegation contained in
paragraphs one (1) through eighteen (18)  with the same force and effect as if set forth
fully herein.

20.     Section 43 (a)(1)(A) of the Lanham Act states follows:

(a)     Civil Action.

(1)     Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol or device, or any combination thereof., or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which...

(A)     is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person...shall be liable in a civil action.

15 U.S.C. §1125(a) (1) (A).

21.     Defendant has violated said Sections of the Lanham Act by his malicious, false and misleading use in commerce of the "Elan Suisse" name as above described.

**WHEREFORE,** Plaintiff Elan Suisse, prays that this Honorable Court (i) enjoin Robert D. Christ from making the aforesaid defamatory and disparaging statements with respect to Elan Suisse and any employees, investors or anyone who was or has been associated with the Elan Suisse Group. And furthermore, Christ be prohibited, directly or indirectly immediately cease and desist from operating any Website using the name Elan Suisse or any Website with any similar, misleading or confusing designation which would lead anyone to believe it was an official site of Elan Suisse; (ii) enter judgment for Elan Suisse and against Robert Christ and award it all compensable damages, costs, prejudgment and post judgment interest, and attorney fees; and (iii) provide such other and further relief as this Court deems neecssary and just.

## COUNT III

## VIOLATION OF LANHAM ACT

## §43 (1)(d)(1) (A) (i) (ii) (I) (II)

22.    Plaintiff repeats and re-alleges each and every allegation contained in

paragraphs one (1) through twenty-one (21) with the same force and effect as if set forth

fully herein.

23.    Section §43(d)(1) (A) (i) (ii) (I) (II) of the Lanham Act states as follows:

(d)    Cyberpiracy prevention.

(1)(A)  A person shall be liable in a civil action by the owner of a mark,
including a personal name which is protected as a mark under this section, if, without
regard to the goods or services of the parties, that person...
(i)    has a bad faith intent to profit from that mark, including a
personal name which is protected as a mark under this section; and
(ii)    registers, traffics in, or uses as domain name that...
(I)    in the case of a mark that is distinctive at the time of
registration of the domain name, is identical or confusingly similar to that mark;
(II)    in the case of a famous mark that is famous at the time of
registration of the domain name, is identical or confusingly similar to or dilutive of that
mark.

24.    Defendant has violated said Sections by acting in bad faith by

intentionally registering and using the domain name of "Elan Suisse".

**WHEREFORE,** Plaintiff Elan Suisse, prays that this Honorable Court (i) enjoin

Robert D. Christ from making the aforesaid defamatory and disparaging statements with

respect to Elan Suisse and any employees, investors or anyone who was or has been

associated with the Elan Suisse Group. And furthermore, that Mr. Christ immediately

cease and desist from operating any Website using the name Elan Suisse or any Website

with any similar, misleading or confusing designation which would lead anyone to

believe it was an official site of Elan Suisse; (ii) enter judgment in Elan Suisse favor and

against Robert Christ and award it all compensable damages, costs, prejudgment and

post judgment interest, and attorney fees; and (iii) provide such other and further relief as

this Court deems necessary and just.

Respectfully submitted:
**FRONT STREET LAWYERS, P.C.**

BY:

**NICHOLAS CASAMENTO, ESQUIRE**
**Attorney for Plaintiff**

BY:

**JOSEPH A. RATASIEWICZ, ESQUIRE**
**Attorney for Plaintiff**

## VERIFICATION

I, Brett Cormick as Director and Shareholder of Elan Suisse Group, aver that the facts set forth in the foregoing Complaint are true and correct to the best of my knowledge, information and belief and that this statement is made subject to the penalties of 18 Pa. C.S.A. §4904 relating to unsworn falsification to authorities.

8 June 2006

**EXHIBIT "A"**

Dr. Brett Cormick and Elan Suisse Elan Capital Nicogel Elan-Suisse Nicotea Aquacine S... Page 1 of 78

# PUBLIC NOTICE

# Due Diligence Results of <u>Dr. Brett Cormick</u> Marketing For Investment Capital In "The Elan Suisse Group of Companies"

**Elan Suisse (Pty) Ltd** (RSA Registration No.2003/000050/07)
**Elan Suisse International Holdings (USA) LLC** (a Delaware LLC)
**Elan Suisse Jersey** (Purportedly <u>Operated by BNP Paribas</u> Fund
Services Jersey Limited)
**Elan Suisse Financial Advisory Services** (Zimbabwe – Cormick
<u>vehemently denies</u> any <u>links</u>)
For more information on **Elan Suisse Financial Advisory Services,**
please perform a <u>web search</u> on: "Elan Suisse" Zimbabwe
**Trust Investment Services** (Zimbabwe)
**Elan-Suisse Zimbabwe Management Services Company** (Zimbabwe)
**Trust Holdings Ltd.** (Zimbabwe)
**Bancorp International Equity Partners** (Zimbabwe)
**ELAN-SUISSE Venture Management** (Zimbabwe)
**Sarco Holdings** (Zimbabwe)
**Elan-Suisse International Equity Partners** (Zimbabwe)
**International Corporate Development SA** (Cormick UK Trading Name)
**Elan Suisse Ltd.** (UK Corporate <u>Registered No. 04998672</u>)
<u>Elan Suisse Capital</u> (Unclear as to which of these shell companies this
moniker is attached)
<u>Aquacine</u> Ltd. – Now Nicogel Ltd. (UK Corporation Registration No.
05190095)
<u>Nicotea</u> (reportedly <u>operated by Aquacine</u> -- which is now Nicogel Ltd.)
<u>Nicogel</u> Ltd. (Operated by John Walters in the UK – now Registration
No. 05190095)
"<u>The Aquacine Group</u>" (Unclear as to what organization this moniker
attaches - Aquacine Ltd. was renamed)

**There are numerous updates to this page by date with the latest news
at the bottom.**

**NEW INFORMATION: John Walters' <u>sentencing hearing transcript</u>
<u>on fraud charges</u>. This explains why we had no information on this
player -- if this transcription is genuine, it would seem apparent that
he had just gotten out of prison. I will verify this information with
the Ipswich Court when they come back from the holidays and**

**update this site with verification. NOTE: (Dec. 28, 2005) I received verification from two separate sources that the Ipswitch Crown Court transcript is genuine.**

**Note**: All links to this brief are from unedited (except where noted [edited out] to strip out sensitive banking details) e-mails and attachments. A complete digital record of these e-mails and documents is available to interested parties in Microsoft Outlook format by contacting the following:
Robert D. Christ
2333 Jones Road
Pottstown, Pennsylvania 19465 USA
Phone/Fax: +1(610)469-1730
e-mail: bob.christ@@seatrepid.com

For a detailed analysis of this case done in April 2005 as a legal brief, see this series of pages.

**For a PRESS SUMMARY OF THIS CASE written by Moneyweb in Johannesburg, South Africa please see here. It is my understanding that Julius Cobbett of Moneyweb has done extensive investigative work on both Cormick and Elan Suisse. For more information, contact him directly.**

**EXECUTIVE SUMMARY**
In March 2004, I advanced Brett Cormick US$250,000 into his personal account at Natwest in London (Kensington Branch) as earnest monies in anticipation of starting an RSA-based global investment business by the name of Elan Suisse. In September 2004, after months of demanding a formalized agreement, I demanded an audit of the whereabouts of my earnest monies. After refusing to cooperate with an audit, Cormick instead made numerous promises to refund these monies. In November 2004 I made formal demand for return of my earnest monies. Cormick has since steadfastly claimed that I now own 36% of am empty Delaware shell corporation and that I have endured huge penalties per some purported articles of association (of which I have, of course, never seen – nor do I believe that they exist).

The theft of this money to someone I trusted fueled this lengthy investigation into Cormick's business and personal history. The findings made through this investigation are quite disturbing and lead one to the obvious conclusion and lingering question "How well do you know your so-called 'friends'?"

I began this investigation cautiously mindful of any damage this project
could do to Cormick's reputation. But as I uncovered more details, the
facts made it increasingly clear that this man needed to be exposed.
Cormick is (and has been for several years – with impunity) running a
large international investment scam based in the UK and the Republics of
Zimbabwe and South Africa. Please read through this document and
glean the source details to make your own conclusions.

The case is now in THE HIGH COURT OF SOUTH AFRICA
(WITWATERSRAND LOCAL DIVISION – Case number 2005/2033).
Per Cormick's plea in the case, the court does not have jurisdiction since
he does not live in RSA (where he has business operations). I am unable
to establish where Cormick lives which has frustrated my efforts to get
this case heard in court with proper jurisdiction. See Cormick's Plea
(page 3 4 5 6 7 8 9). So, in short, this money was lost upon signing of the
wire transfer document because this entire transaction was and is a sham.

### E-MAIL SUMMARY
Most e-mails for this project are grouped by date.

E-mail from January 2004 to the end of March 2004 (time period during which
negotiations took place)

E-mail from April 2004 to the end of September 2004 (time period awaiting
formalized agreement)

E-mail from October 2004 to December 2004 (time period awaiting repayment from
Cormick – then beginning of law suit)

E-mail from January 2005 to Present (time period where Cormick goes on to other
business dealings). There are numerous confidential e-mails received during this
period. I will post here when permission is given.

On Cormick's Academic Credentials and the relationship of the LSE IEDG to LSE.

On the "Alan Dean Affair" whereby Cormick was arrested by New Scotland Yard in
1997 on suspicion of fraud. For more information on the "Alan Dean Affair", please
contact me so that I may get you in touch with people who were close to the situation.

On the "HIVEX Affair" whereby BAE Systems invested a large amount of money
into HIVEX Ltd. (according to public records, Cormick was a board member of
HIVEX Ltd.) as a R24 million offset for an arms deal with South Africa.

### SYNOPSIS
This is a classic bait-and-switch scam perpetrated by a friend. For a diagram of the
scam done in MS Word. I operated a tour company that took Cormick as a client
on two expeditions to the Geographic North Pole. I have never had a cross word

with him until I entrusted him with funds; therefore, I can only assume that I was a soft target and this is what Cormick does for a living (i.e. scam people close to him). Since that time, I have had repeated threats of legal action (and more) stating that I am injuring Cormick's reputation by asking questions about my investment. Also, I received a long series of red herrings attempting to divert the issue away from my misappropriated US$250,000. I have never received an accounting by Cormick of what happened to my US$250,000 in retirement savings deposited into his personal account in March 2004. This case is about misappropriated funds and gross misrepresentation.

I have placed this page as a public service announcement so that others will ask hard questions I failed to ask and perhaps can avoid a similar fate. If you are contemplating investment in any organization managed by Cormick, you should be able to recreate my work above to come to your own conclusion. I suggest you not trust my statements, but perform your own basic research. This page gives you the roadmap.

The e-mail addresses and contact information for this work are located in the e-mails located in the subdirectories herein. Please browse the e-mails [linked above] for contact details of the people whom were and/or still are involved with this case.

### NARRATIVE
I have been encouraged by several people close to this situation to write a narrative explaining the history of this event. This section is going to grow as more information is gained (and the information is flowing in daily). The sources for this section vary from hard to soft – and I cannot vouch for the veracity of each and every statement. I will cite the source so that you can decide for yourself.

BRETT JOHN CORMICK (Australian Citizen as of last information I have)
Born: September 29, 1959
(source for this section is internet genealogy) Father is Neil John Cormick. He married Margaret May Heber, daughter of Leonard James Heber and Ellen Pritchard.

Children of Neil John Cormick and Margaret May Heber are:
i.      +Brett Cormick, b. 1959.
ii.     +Craig Cormick, b. 1961.
iii.    +Wesley Cormick, b. 1961.
iv.     +Gavin Cormick, b. 1962.

Brett married Shirley Breckenridge (unknown date). Children of Brett

Cormick and Shirley Breckenridge are:
i.      James Cormick, b. 1988.

Brett divorced and married Jennifer Mortleman in approximately 1990.
Children of Brett Cormick and Jennifer Mortleman are:
i.      +Jordan Cormick, b. 1992.
ii.     +Joshua Cormick, b. 1996.
ii.     +Jessica Cormick, b. 2000.

(This work history varies widely and comes from a number of sources
including Cormick. I do not vouch for its complete accuracy, but it is
fairly close – and it is in contradiction to the represented CV from
Cormick)
1959-1981    Schooling in Australia
1982-1983 Australian Army
1987-1989    Reportedly worked for Intersuisse Australia
1990-1992    Hambros Bank doing sales to institutional investors
1992-1999    European Venture Finance (with a few months at Mees
             Pierson)
2000-2002    HIVEX Ltd. (Durban)
2002-Pres.   Elan Suisse (in various forms)

As best I can tell, his residences are as follows:
1990-1998 - Near Holland Park in London
1998-1999 - West Sussex
1999 (for 6 months) - Bath
1999-2004 - Masvingo and Harare Zimbabwe
Present Residence - unknown

I graduated from Louisiana Tech University in 1982 with a dual major in
Aviation and Accounting. I spent several years at the international public
accounting firm of Coopers & Lybrand in the New Orleans, Louisiana
office before getting into smaller businesses. I hold a Certified Public
Accountant's Certificate (the USA equivalent of a Chartered Accountant
– certificate currently inactive) as well as an Airline Transport Pilot
Certification. In 1992, I operated a parachuting school in Hammond,
Louisiana where I met a man by the name of Bill Booth that operated a
parachute equipment manufacturing company in DeLand, Florida. He
invited me in 1994 to go with him on a skydiving expedition to the
geographic North Pole through Russia.

In 1996, I took over this tour from him as the tour operator for taking
parachutist to the Geographic North Pole. My theory was that I would
allow inexperienced passengers the thrill of a skydive over the

Geographic North Pole safely attached to an experienced tandem skydiving professional. The first customer (see here for link) of my new venture was Brett Cormick.

I had periodic contact with Brett in 1996 through 1998 via e-mail. In early 1998, my Russian contacts asked if I had anyone interested in doing a scuba dive at the North Pole since the Moscow University Diving Club wanted to do a scientific dive and wanted to share costs. I missed the 1998 expedition for personal reasons and the MUDC made a short dive whereby the leader (Andrew Rozhkov) died during the first dive. I made the arrangements for Brett and Michael Wolff to make a dive on the 1999 trip. I also hired Bob Wass (a commercial diver from Smithtown, New York) to supervise the operation for safety reasons. That dive was successful (see this link) with Brett making the last dive of the trip.

I started another business in late-1999 manufacturing and marketing underwater robotic equipment of which I sold in late-2003. I was in Cape Town in January 2004 dealing with a close personal friend's estate. Graham Hoal had just died in a tragic parachuting accident when Brett phoned me with a "fantastic investment opportunity". The rest is detailed above.

## WHAT HAPPENED TO BRETT?

I spoke recently to David De Leeuw formerly of the De Leeuw McCow Fund and now with Lion Chemical Capital. David certainly remembered Brett. He stated he was pleased with Brett's services in the mid-1990s while raising funds in Europe (Brett made introductions for David). He also heard that Brett had gotten into some trouble significantly hurting Brett's business.

It seems that Brett had a pseudo-legitimate business with European Venture Finance [until this "Alan Dean Affair" occurred] by making and arranging introductions between American fund companies European institutional investors. The details of this incident are slow in coming, but here is a link to the subsequent operations from the "Zebra Project". From discussions with people close to Brett, I understand that this incident ruined his business operations and caused him to move to Zimbabwe where Jennifer's family resides. I understand that Brett was represented in this criminal investigation by Keith Oliver of Peters & Peters.

I also understand from people very close to Brett that this "Alan Dean Affair" also caused an emotional toll. It seems that Brett was well connected in the UK financial community until this event happened. I

am also told that Brett had to sell his house in order to pay for legal expenses with regards to this case.

A source very close to Brett said he was in partnership with Patrice Dhliwayo of Elan Suisse Zimbabwe – I found this out subsequently to the articles published in the Financial Gazette. I suggest you contact Nelson Banya with the Financial Gazette in Harare on this subject. Patrice and Brett reportedly operated this company with the results stated above. I still don't know the full story there and I am not going to Zimbabwe to find out. I have heard several times from sources within Zimbabwe that there is much more to Elan Suisse Zimbabwe than there appears to be.

I wanted an RSA-based business in order to have the opportunity to stay in touch with my god-son Garner Hoal (Graham's son) whom lives with his mother in Cape Town. Brett and I were going to start a global business as partners with me providing the funding and him providing some funding and contacts. As per the e-mails here, Brett was in a hurry to get the business running and could not wait until we met to sign papers. I advanced to him earnest monies in anticipation of formalizing an agreement. We met in London where Brett agreed to have the attorneys in RSA draw up the papers. At a Hyde Park restaurant when I confronted him on our formalized agreement in March 2004, his statement was "Bob, are you an attorney? Well neither am I. Let's let them do this properly." In sworn court documents, Brett stated that a formalized written agreement was never contemplated.

We were scheduled to meet in July 2004 with Lehman Brother in New York at which time the deal was to be formalized. The meeting was cancelled. In September 2004, Brett informed me that the company was out of money. I could not account for where my US$250,000 went whereby I demanded an audit (to be conducted by Kevin Wright – a Chartered Accountant from Cape Town). Instead of cooperating with the audit, Brett then agreed to refund my earnest monies (please see these e-mails).

Brett forwarded to me a document in October 2004 which he wanted me to execute in order for me to obtain my refund. It was at that point, Brett's intention became clear. I retained a Cape Town-based attorney and formally accepted his offer to repay my earnest monies. In sworn court documents filed by Brett, he stated that we had made a complete agreement one afternoon while drinking wine in Stellenbosch in late-January 2004. Further, I had deposited the funds into a personal UK bank account plus he stated that he did not live in South Africa; therefore, the RSA court does not have jurisdiction. Thus far, I can find (and I have

looked) no assets owned by Cormick other than collapsible shell companies [which I believe is on purpose] possessed of liquid assets shuffling from jurisdiction to jurisdiction via international wire. Clearly this organization is a sham with Cormick a con artist (as demonstrated below).

From correspondence with Christina Gagnier, (a friend of Cormick's), I am told that Cormick is now forming an investment fund selling interest in funds that purchase companies that he and John Walters own (i.e. a classic "Boiler Room" setup). Please read through the <u>correspondence</u>.

## WHAT IS THIS ALL ABOUT?

David De Leeuw stated that Brett was a "typical promoter" (he said that he had worked with quite a few) in that he never let the truth stand in the way of promoting a project. Others close to Brett stated that he was always very concerned about appearances (as most promoters do). I could not understand why instead of participating in the North Pole scuba diving expedition (which is what happened), he had to have "<u>Conceived of and Led</u>" the Expedition (which did NOT happen). <u>Andy Hardie-Brown</u> spoke to me recently about how Brett portrayed that expedition (i.e. Brett stated that the expedition was extremely dangerous and that he would have died instantly if the dry suit or regulator had problems – I will leave that one to Bob Wass and Dr. Safonov). Instead of simply going on a tandem skydive at the North Pole, Brett portrayed himself to have "<u>several freefall trips to the Pole</u>" (Cormick made one tandem skydive out of an Mi-8 helicopter attached to me in April 1996).

Instead of being a small business owner of European Venture Finance, Brett portrayed himself to be "a Managing Director, Director & Consulting Director for several of the largest & most respected institutions in Europe and the United States" (per his CV). Instead of having a PhD via a correspondence course (which is what happened) from a diploma mill, the PhD had to be from the London School of Economics (which he does not possess according to LSE). Please speak with Professor Simpson (University of Cape Town) and Robert Paterson (former business associate from the UK) about Brett's unauthorized usage of official letterhead.

## UPDATES:
### October 2, 2005

- After the "Alan Dean Affair" and probably after the '99 North Pole Expedition (I say that because he did not mention any planned or recent trip to Russia during the expedition – although I must say that I had no need to know), I am told (from a very close source to

Brett) that he went to Russia to check out a new technology for
treatment of HIV. Another source from HIVEX told me he knew
of no such trip that Cormick took. The HIV technology came from
HEX Ltd. in Southampton. Some time in 2000, HIVEX Ltd. came
into existence with Brett on the board. Then BAE Systems became
involved. Brett was terminated from HIVEX Ltd. due to
allegations of fraud.

- In late 2003, the ESFAS scandal erupted (i.e. fraud).
- In January 2004, Brett contacted me for investing into his
  organization (i.e. fraud).
- In late-2004/early-2005, Aquacine and Nicotea showed up.
- In September 2004, John Walters was sentenced in the UK for
  criminal fraud.
- In February 2005, I entered suit against both Brett Cormick and
  Elan Suisse (Pty) Ltd (the ESPL suit was settled approximately 2
  hours before going to trial).
- In May 2005, the Moneyweb article came out.
- In October 2005, Nicogel showed up.

The pivotal point still seems to be the "Alan Dean Affair". Three
separate sources told me (including Cormick himself) that this was not
original technology. I left word with several people (Charles Calpers of
ECTX said that he would call Alan) for Alan Dean to contact me. He
may not have gotten the message that I was looking for him. Mr. Dean, if
you read this article, please contact me. I would like your input. It may
be true what Brett is saying and that this was not original technology.
That would explain a lot about this mystery. It seems that he left England
ruined and in total defeat. The way I understand it, however, the question
for the police was never about the ownership of the technology -- it was
about the disposition of the fees charged by Brett to Alan Dean's
organization. This is called in the USA an "Advance Fee Scam".

This paraphrased from a source close to Brett from 1997:
Brett said that when Scotland Yard arrested him, the first thing he said is
that they did it in front of his kids. He was a family man and he loves his
kids.

Reportedly, the police came to their house on a Thursday morning at
around 7 AM while they were all still in bed, asleep. Brett heard a loud
hammering on the front door. It is unclear as to if the police broke the
door down or if Brett let them in. But they woke everyone up, and two of
the kids got out of their beds in fear. Brett was still in his pajamas and
it's unclear as to whether he had time to get dressed to go to the police

station. The police put him in handcuffs in front of his whole family. Reportedly, his wife was quite distressed over the matter. The biggest problem was dealing with the kids' questioning.

They also took all of Brett's computers, files - everything he had in his office. It is unclear as to if they searched the entire house. It must have been quite distressing for him – the whole family witnessed it all. I guess Brett's pride was probably damaged from this whole mess. There were at least two officers that made the arrest (perhaps more).

This may explain some of Brett's behavior since. According to my source, this may be the reason why they sold the house [*I assume the West Sussex house - BC*] so soon after buying it. Brett mentioned that neighbors were probably wondering why the police came so early that day. That may have wanted to get away from that house and from what he saw as a humiliating affair.

I got the distinct impression when we were on the ice in 1996 that Brett adored his wife. He talked constantly about his kids and his son's medical problems. He was a family man. That was the thing that really warmed me toward Brett. I was 35 years old at that point and was thinking about a family myself. That conversation really affected me. Then I have this from Brett from September 2005.

So here is my hypothesis about the "Alan Dean Affair"
I believe that the ECTX technology may not have been original. Brett found out about it after doing work fund raising on the project. Not that it gave Brett any moral problems with fundraising for the project - I assume he was having trouble raising funds for a second-run technology. When Brett was unsuccessful with raising funds for the project, Alan Dean demanded his fees (the amount, I am told, was 70,000 GBP) back. Brett refused. Alan turned him into Scotland Yard. That is the most logical explanation with the information I have at hand.

Fast forward to 2004 – Brett took a trip to Cape Town to get me to invest in Elan Suisse. We agreed that Elan Suisse – the entire organization – would be in the deal. When I finally pinned him down months later for a formalized agreement, he then informed me that I only get a minority interest in a Delaware shell corporation. I demanded my money back.

So, Cormick's MO is to convince the target to transfer funds through massive misrepresentation on trust then he back-fills with a so-called "agreement" [to which the target has never agreed – and in my case I have still never seen] with impossible terms that overwhelmingly favor

him. That's the scam in a nutshell. He purposely spreads the transaction over several venues complicating any legal relief the target may obtain thus forcing the target to squander time and money attempting to get this matter heard in a court of proper jurisdiction.

For the past 15 years, I am told that Brett has made his living fund raising (i.e. when money changes hands). As far as I can tell, during that time he has not been required to run the commercial aspects of a company – only to earn commissions on projects he has promoted. A promoter does not necessarily care about the commercial viability of the underlying project except when his reputation is at stake. Prior to the "Alan Dean Affair", Brett may have had a reputation to protect. Whatever that reputation may have been, it was decimated after that incident. I believe he no longer has any regard for the underlying value of the projects he is promoting – and my personal experience is that he only wanted to separate me from my money.

I think that this "Alan Dean Affair" totally ruined him as a human being. And my opinion is that he is organizing a Boiler Room type operation selling worthless (or significantly overvalued) securities to relatively unsophisticated investors.

The Elan Suisse setup is not original. Again, the issues here are misappropriation of funds and gross misrepresentation. I have asked for comment from Cormick on the above in order to gain some type of understanding of what happened to my US$250,000 of retirement savings.

# New: Cormick's Response [Unedited]

I am afraid I am at a loss as to how to address this kind of behavior since it seems incoherent and juvenile.

Again, please use the above to recreate my work in order to reach your own conclusions. Please check back for updates.

## SUMMARY AND CONCLUSION

After coming to a verbal agreement with Brett on our partnership on the worldwide Elan Suisse organization, I spent most of 2004 working full time developing marketing materials for Elan Suisse. There were 12 separate iterations of the web page for Elan Suisse (all of which I funded) culminating in this page. It was never used. I produced business cards, promotional items, found office space, etc.

During this investigation, I contacted sources close to Cormick to get some type of idea as to what happened to my money – according to a source close to the situation, Brett went on a huge spending spree to Europe during April/May of 2004 - which may explain why he steadfastly refused to give me my money back. He had already spent it.

I advanced Cormick monies to fund the operating costs of starting a business. Cormick obviously saw these funds as his profit for being a clever businessman and misappropriated them for his personal use. Do business with him at your peril. Questions such as 1) from which institution is your PhD? 2) Please give me a copy of the "Alan Dean Affair" file. 3) What happened to Christ's money? 4) What happened to Peter Kipps' money? These and other questions should be an integral part of your due diligence search – if you choose to not heed the warnings from my experiences.

And what happened to Cormick? He appears to have simply switched from the fee scam in the UK to the equity scam in RSA.

This concludes my South African investment adventure. My lovely wife has been quite supportive and this hasn't hurt us badly financially. But I will certainly do a much closer due diligence before ever investing in any friend's company.

## UPDATES SECTION
### October 6, 2005 Update:
The Moneyweb article on this web site came out yesterday. Please carefully notice the comments at the bottom – and speculate who is behind them. Cormick even spoofed my name on one of the comments.

In answer to Apostolos Zographos' statement, here is where I obtained his e-mail address (note the date). Here is a partial listing of where I obtained the other e-mail addresses (note the dates and address to/headers) which were sent to me by Cormick (1 2 3) in 2000/2001.

### October 9, 2005 Update:



Brett and Bob during Graham Hoal's funeral in January 2004
just before he cleaned out my savings account (other so-called "mates" be
warned)

Red Herring – *def.* Something that draws attention away from the central
issue.
The central issue here is misappropriation of funds and gross
misrepresentation. Everything else thrown up by Cormick on this case is
some form of Red Herring.

I received more information last week on another 'investor' into Elan
Suisse. But I would like for "Dr." Cormick (note the quotes) to explain
to the other "investors" of Elan Suisse (and other "portfolio" companies)
what he did with Peter Kipps' money. If no explanation is forthcoming
from Cormick, I will post here.

### October 10, 2005 Update:
### Smear Campaign:
- Cormick insults my wife (see www.bobchrist.net)
- Cormick calls into question my sexuality
- Cormick accuses me of betraying my country (see
  http://bobchristamericantraitor.com/)
- of running financial scams in the Caribbean (whatever…)
- of running child pornography on the internet (whatever…)

But what has all of this to do with the disposition of my US$250,000?
This smear campaign went up on me when I asked Cormick to state what
happened to Peter Kipps' money. The www.juliuscobbett.com site went
up (to my understanding) when Cobbett addressed questions to Cormick
and Walters regarding their scheme. He is consistent.

On Friday, I will post my understanding of what happened to Peter
Kipps' "Investment" into Elan Suisse – which is another case of
misappropriated funds.

**October 18, 2005 Update:**
Got this in today from the University of New South Wales.



summarize. The FSB filing and his CV are the two documents that are pertinent.

- On the Hambros Bank employment.
- The LSE IEDG is not an LSE-Chartered organization. The use of the LSE logo is unauthorized.
- To my understanding, International Corporate Development SA is

Dr. Brett Cormick and Elan Suisse Elan Capital Nicogel Elan-Suisse Nicotea Aquacine... Page 14 of 78

**October 11, 2005 Update:**
Cormick is expanding this smear campaign.

On Friday, I'll post my understanding of what happened to Peter Kipps' money.

**October 12, 2005 Update:**
And the smear campaign continues. The Millennium Expedition went without interference.

The records for Columbia Pacific University are in the custody of Les Carr at +1(530)620-2082.

According to sources close to the situation, Cormick got off of the "Alan Dean Affair" due to "lack of evidence". The public prosecutor probably got paid 1,500 GBP per month to prosecute that case along with a huge caseload in London. Keith Oliver reportedly was paid 60,000 GBP for this case alone. I am sure that Keith Oliver used his well-polished legal skills to attack the procedural aspects of the evidence to wear down the public prosecutor to such a point that it was no longer cost-effective to prosecute that case. I do not believe that Cormick was proven innocent. Contact Robert Paterson, Former Director of BMI for more details.

**October 13, 2005 Update:**
Received a voice mail from an unidentified woman with an American accent asking that I send a link for this page to John Walters at john.walters@aquacine.com - complied.

**October 14, 2005 Update:**
My sources for this "Peter Kipps Saga" are vulnerable to retribution by Cormick (remember what is happening in Zimbabwe at the moment) and have asked that I not place this information on the internet. I have decided to leave this portion of this affair for the reader to approach. It is quite obvious what Cormick is all about and the above information gives the reader a roadmap to draw his/her own conclusions.

For an explanation as to what happened to Peter Kipps' money, please contact him directly at phone +263 4 335877 and e-mail: kipps@africaonline.co.zw. Or you may contact me at +1(610)469-1730 and bob.christ@seatrepid.com

This just in from Oxford.

I owned and operated the tour company that conducted these
expeditions. The logistics for these expeditions were conducted in
a very professional manner. They were done by a Russian
company with which I have long-standing contacts. No one was
injured under my watch – including Cormick. He was a client and
not within the management structure of any of the expeditions.

- "Through his Family Trust, The Cormick Educational Foundation
for Africa (CEFA) he is also directly involved in rural African
charities for education for indigenous youth, and healthcare for the
aged and disadvantaged." I am told that there is no such
organization.

After being blatantly and obviously scammed by a friend, I belatedly
started this due diligence investigation with these two theses:

1) People do not turn into crooks overnight. Corruption of this nature
takes time.
2) Academia, by its nature, is the pursuit of truth. If Cormick's
assertions prove false, it is highly likely that Cormick is not an
academic.

Through a collapsible daisy chain of shell companies falsely linked to
credible organizations, Cormick has built a façade of a large organization
so as to attract capital. From my experience, that capital is funneled
directly into his personal bank account never to be seen again (by the so-
called "investor"). That is the Elan Suisse setup as designed and
instituted by Dr. Brett Cormick.

**October 19, 2005 Update:**
These are some of the problems you have when you do due diligence
investigations.

**October 27, 2005 Update:**
This just in from Columbia Pacific University Alumni Association. And
this from the Australian Defense Force Academy.

Information is flowing in daily. I recently heard from a fellow Cormick
victim. *New information* – according to FANews, they were paid for
their [long overdue] advertising invoice by Elan Suisse within 48 hours
of sending Cormick an attorney's collections letter. The payment
apparently originated from a UK account. I have a report that Cormick
was living at the Arabella Golf Resort in Hermanus, but left there with
several months rent unpaid (which is classic Cormick).

Please check the site often for more updates. The picture of this whole



do not understand the link. I am continuing to research, however.

### October 31, 2005 Update:

Thus far, I have concentrated on the setup in RSA and Zimbabwe. But the answers will lie in the money trail. Let us examine the setup of Elan Suisse Jersey. The way I understand Elan Suisse Jersey is that the entire operation is being run under the auspices of BNP Paribas Fund Services (Jersey) Ltd. under the direction of David Keep, MD of BNPPFSJL. The scheme is (or was scheduled to be) authorized as "Elan Suisse/BNP Paribas Jersey Expert Investor Scheme" by the Jersey FSA. This allows 'investors' with offshore accounts outside of RSA and Zimbabwe foreign exchange control to quietly hide their offshore investments.

In Zimbabwe in particular, all foreign exchange is required to be repatriated at the official exchange rate so as to compensate for Zimbabwe's lack of foreign currency reserves. This is reportedly why Anthony Carter is being prosecuted in Zimbabwe -- for not repatriating the funds as is required by law. In order to maintain any measure of wealth, funds must be kept in foreign bank accounts with stable hard currency units. Unfortunately, in order to comply with the laws in Zimbabwe the law requires those foreign funds to come home to be used to buy fuel, food and other staple items needed for the economy. The ES sales effort in Zimbabwe and RSA apparently has focused on having RSA and Zimbabwe based investors change their investments in low-performing UK/EU-based accounts (basically, checking accounts since those do not require the heavy 'know your customer' regulations that formal investment accounts need) into the "Excellent Performing Elan Suisse Fund. Once that happens, Cormick then has control over the funds. If those are your funds, poor you...

*New Information* -- An apparently new Elan Suisse entity just popped up! It's called Nicogel. And see the NDA - my favorite part on this page is this quote at the bottom, "We agree to be bound by this Confidentiality Agreement immediately upon viewing this document. Please note your IP address has been logged." That certainly is classic Cormick (i.e. making up agreements to which you never agreed). Also typical of a Cormick organization – there is no address or phone number for contacting this organization.

### November 1, 2005 Update:

I have reason to believe that this vehicle was used for this scam. I have also taken note that the Elan Suisse debacle has disappeared from the web site of the Financial Gazette (which is reportedly owned, in part, by the Zimbabwean Central Intelligence Organization and central bank governor

Gideon Gono).

With this latest round of information, this scheme is appearing less like the machinations of an isolated hoodlum and more like a case of state-sponsored organized crime (FBI Legat Pretoria, please take note).

I am not sure if this is significant - Cormick used to be the Cape Town contact for LSE, but he has recently been dropped from their alumni contact list.

**November 2, 2005 Update:**
I spoke today with attorney Michael Kearns (formerly with Centre Trust) in Jersey, Channel Islands. Kearns was Cormick's attorney and trust officer for several years while Cormick was in London. Kearns did his legal and trust work. Kearns stated he has not heard from Cormick for 6 to 7 years. The enigma continues. I have had several recent reports that Cormick shows up at various places in RSA and Zimbabwe unannounced. I have not as yet been able to consistently track his movements or locate the books and records of Elan Suisse (or any specific office location other than mailboxes) so as to positively establish legal jurisdiction for recovery of my money. If anyone can help in this area, please notify me. As a quid pro quo, I will assist in your recovery efforts with shared information.

**November 3, 2005 Update:**
I take note that all references to Telecel Zimbabwe have been dropped from the Financial Gazette's web site. The trial of Telecel certainly has followed political lines in that President Robert Mugabe's nephew Leo Mugabe has been waging a takeover attempt of Telecel and seems to have succeeded by having the management structure of the company incarcerated. From the same article:
>>Initially, the three [Edward Mutsvairo, Anthony Carter and Telecel itself] were jointly charged with board chairman and former Zanu-PF central committee member, James Makamba, who has since skipped the country.<< Again, I am not sure of the significance of this link but the Telecel connection to Elan Suisse is apparent.

**CURRENT SYNOPSIS**
I believe we now have enough to put together a synopsis based upon what is documented above:
1) Was Cormick involved with Elan Suisse Zimbabwe? I think the obvious answer is "Yes". Brett Cormick **Is** [and always has been] Elan Suisse.
2) Is Elan Suisse RSA an FSB-approved financial provider? The answer

is "Yes" with FSB reg. #852.

3) Is Elan Suisse Jersey a Jersey FSA-approved financial provider? Unclear at this point.

4) Is Elan Suisse Jersey being operated by BNP Paribas Fund Services Jersey Limited. The answer is "Yes". Does David Keep (MD of BNP Paribas Fund Svc.) know the sources of the funds flowing through Elan Suisse? My assumption is "Yes" – there are serious criminal penalties for failing to 'know your customer' in the banking industry.

5) Does Elan Suisse have substantial operations in RSA? The answer is "No". Cormick has essentially pulled out of RSA with no assets other than an empty shell corporation (and I have checked).

6) Does Elan Suisse have substantial operations in Jersey? The answer is "Yes".

7) Does Elan Suisse have substantial operations in Zimbabwe? The answer is "Yes".

8) What is the purpose of Elan Suisse Zimbabwe? Let us follow the money trail. In 2003, Elan Suisse Zimbabwe was used as a conduit to raid in Zimbabwe many individuals and several public pension funds of foreign exchange (see all of the press on the ENG scandal) with investments in US Government Treasury obligations. The purpose appears to be generation of foreign exchange to fund Zimbabwe's external debt obligations.

9) There seem to be many ZANU-PF links to ES. Is Elan Suisse Jersey being used to funnel foreign exchange for ZANU-PF party and/or members' personal accounts? This question is easily tested by examining the cash flows to/from Elan Suisse Jersey in August 2005. The Zimbabwe IMF payment of US$120 million in late-August/early-September came from somewhere. I believe that when you look through the money trail, you may find that Mugabe had his cronies fund the IMF payment from money that was originally pilfered from the Zimbabwean government. Test this by examining the banking records for funds origination of the IMF payment. But the question still remains, "who bailed out Zimbabwe on the IMF payment?" Here is the official version of the source and please note this quote "the IMF intended to verify the source of the funds in response to allegations that they may have been expropriated". And some more on the additional US$15 million and the IMF investigation.

10) What about Elan Suisse RSA? I believe that the RSA operation is a front to legitimize the whole business operation in Zimbabwe.

11) What are Aquacine, Nicotea, Nicogel and SWT all about? These obviously are front companies for some purpose since they do not appear to be operating companies.

12) Where does Bob Christ fit into this? Cormick was issued a gold card at Mees Pierson and immediately used it to buy an expensive Rolex

Dr. Brett Cormick and Elan Suisse Elan Capital Nicogel Elan-Suisse Nicotea Aquacine... Page 23 of 78

with company money. He just cannot seem to keep his hands out of the 'cookie jar'. With Bob Christ (who naïvely trusted Cormick), it was just too easy to pick up a quick US$250,000 in spending cash.

13) Where does Peter Kipps and Apostolos "Zog" Zographos fit into this? They had cash available (which Cormick wanted) – which puts them at the wrong place at the wrong time (as with Bob Christ). It is interesting to note that Zog is reportedly going through some very substantial financial troubles due to this investment in Elan Suisse. Poor Zog…

14) Where does Anthony Carter and Miko Rwayitare (and retired General Solomon Mujuru – see the bottom of this article) fit into this? I believe they are active players in the Telecel connection in that they are attempting to counter the Leo Mugabe takeover of Telecel through access to precious foreign exchange (the cell networks in Zimbabwe are falling apart due to lack of ability to purchase spares or service the infrastructure). There are many factions in Zimbabwe vying for power when Robert Mugabe leaves office. I believe Elan Suisse is functioning as banker for all of these factions with banking facilities through major world banks through BNP Paribas.

15) Where does John Walters fit into this? It is unclear [to me] at this point.

The latest contact information I have on Alan Dean (from registration on aadean.com) is:
A A Dean
Holt Hatch Cottages
Blacknest Road
Alton, Hants GU34 4PX   UK

**November 4, 2005 Update:**
I received this today from the University of New South Wales.

**November 7, 2005 Update:**
I received this from a source in Australia regarding Cormick's supposed employment at Intersuisse in the late-1980's.

- Some at the UNSW have heard of Cormick and some have not. Perhaps he is in a 'special student' ledger.
- The ADFA records list him as graduating with a rank of Captain. I do not understand why he would have graduated with that rank. See below for a better explanation.
- The internet genealogy conveniently listed him as Brett John Cormick with a family tree. I do not know the source of that information.

- His estranged wife does not know much about his background and has never seen diplomas.
- Cormick's life seems to have began in about 1990 when he arrived in the UK. That would put him then at 31 years of age at that time.
- Australia has commercial interests in Southern Africa – a fact that at times has proven very unpopular with authorities in Zimbabwe.
- Cormick told me in 1996 that he was still in the employ of the Australian government [I do not know if he was lying – see below for an independent analysis]. He also stated to me and several others that he was a member of the Australian SAS, but when I listed that on my web site he had me change it (I have that e-mail thread in archive).
- His past certainly appears contrived. And it is obvious from the above that "he is a complete fraud" (that is actually my RSA attorney's quote after doing some investigation).

So, is he crook or is he a patriot? My wife and I are attempting to figure out some way that Cormick is something other than a simple con-artist. We are hoping that he has some measure of integrity and is fighting against the evil dictatorship of Robert Mugabe. But the fact remains, he stole money from me and my family. And I want it back.

So, four questions arise:
1. Who is Cormick and who does he work for?
2. Is Brett John Cormick his real name?
3. Is he just a simple con artist or is there some other plot here?
4. Is Elan Suisse a legitimate business, a criminal organization or a sponsored intelligence operation?

The truth may lie somewhere in between all of the above. Neither Elan Suisse nor Cormick are what they are represented to be. I filed this complaint on Friday November 4th:
>> begin inclusion>>
Mr Ian Carnell
Inspector-General of Intelligence and Security
PO Box 6181
KINGSTON ACT 2604
AUSTRALIA
Telephone: (O2) 6271 5692
Fax: (O2) 6271 5696

RE:  Formal Complaint against Brett John Cormick [Australian Passport #(edited out)]

Dear Mr. Carnell:

I am writing to lodge a formal complaint against the above-referenced individual for fraud.

I have set up a web site detailing this issue located at:
http://www.elansuisse.co.za/

If Mr. Cormick is under the employ of your command, please forward to me a contact at the Australian embassy in Washington, DC so that I may file the proper documentation and formally submit the evidence.

Sincerely,

<<end inclusion<<

If the Australian Government claims him, then they will need to clean up his mess. If they do not claim him, then I believe that the end process of this will be the exposure of who is Brett Cormick.

### November 8, 2005 Update:

Some more organizations are now coming to light now that this web page is propagating:

**Elan-Suisse Zimbabwe Management Services Company (aka "Trust Investment Services" in JV with Trust Holdings Ltd.)**
**Elan-Suisse International Equity Partners**

Both organizations are shown with Brett Cormick as Chairman & CEO and Patrice Dhliwayo as MD. **This should pretty much put to rest the disclaimer by Cormick on the Elan Suisse Zimbabwe link.**

Contact information on Elan Suisse in Zimbabwe is:
Trust Investment Services
4th Floor, Green Bridge (or Blue Bridge depending upon who you ask)
Eastgate, 2nd Street
Harare
Attention: Ms. Peta-Ann Goosen
Corporate Relations Executive
Telephone:   04 708353, 04 250610
Facsimile:   04 702066
Email: petag@trust.co.zw (I just tried the www.trust.co.zw domain – IP is 196.2.73.102 with last modification on 21 February 2005 but no web page)

taking tablets!" I find this a very interesting area of development both from a technical and a commercial point of view.

Now, some time ago I presented some of my ideas to Brett Cormick and he suggested we collaborate on setting up a biopharma fund in SA that would provide an opportunity for investing in the commercial development of these ideas. He offered to provide the financial expertise for setting up such a venture, and never gave me any reason to believe he would be unable to fulfill this role. The fund was ruined by your campaign. Sadly, half a year of my time and money went with it. This is where my association with Brett Cormick ended.

I have of course continued to develop my ideas through three companies: Aquacine, Nicotea, and Nicogel. These companies bear no relation to Cormick whatsoever: he is neither a shareholder nor acts for them in any capacity. They are currently trading perfectly healthily and they are no substantive grounds for believing that they are "front" companies for anyone or thing.

Now on your webpage you've suggested that I and these companies are assisting Brett in some nefarious activity or other. I have to tell you that this is plainly untrue, and the onus should not be on me to prove it.

Of course, if you were publishing your thoughts is some medium where you had to be wary of libel you would probably have been more careful before making these allegations. But - for better or for worse - the internet is a free place, and you can do as you please with impunity.

The flippant manner in which you treat significant parts of my life is simply unfair. I am sure you would not wish it upon yourself.

I do however ask you this: does the injustice apparently perpetuated against you justify your attempting freely to damage others who do not bear any responsibility for it?

However sympathetic I or another bystander may be, I think you'll agree that any reasonable person would reply in the negative.

What you do now is entirely up to you. I have not benefited from your money in any way, and I have already conveyed my belief to Brett that the dispute between you should be settled in court and not in an internet slanging match. I am therefore under no legal or moral obligation to you, and I think you will remain - both legally and morally - heavily in my debt if you continue to publish unrelated matter concerning me and my

Dr. Brett Cormick and Elan Suisse Elan Capital Nicogel Elan-Suisse Nicotea Aquacinc...  Page 50 of 78

activities.

Yours,

John Walters<<

In reply to the above (since my e-mail address has been blocked by the aquacine.com administrator; therefore, I could not reply to him directly) I pose the following questions to Walters:

1) Is the transcript from the Ipswich Crown Court (as posted on my web site) accurate? Are you a convicted felon?
2) Why does Nicogel (according to the disclaimer on that website) have a relationship with Elan Suisse [it specifically mentions "The Elan Suisse Group"] if you and Cormick are no longer partners?
3) You stated above that information on this web site is inaccurate without being specific. Please let me know which information is inaccurate so I may update it.
4) I sent to you a reply only to find that my e-mail address has been blocked by the administrator. You were apparently unaware that this action had been taken. The administrative contact on several domains (including bobchrist.org, bobchrist.net, juliuscobbett.com, barrysergeant.com, bobchristamericantraitor.com) lists as Brett Cormick with an e-mail address of brett@aquacine.com. How can Mr. Cormick be in charge of those domains with a contact address of an organization to which he is unrelated?
5) I see you state above that Cormick is not a shareholder in these three companies: Aquacine, Nicogel or Nicotea. It does not make sense that he would be a shareholder for obvious reasons – and it seems meaningless for you to deny this. Is any company of the so-called "Elan Suisse Group" shareholder in those three companies? That would be a far more meaningful denial. Your severing of relations with Cormick (in his personal capacity) is meaningless with Elan Suisse as a shareholder. If Elan Suisse (or related companies) is a shareholder in any of these three companies, it would seem clear that this is just more "business as usual".

Despite your assertions above (and I take note of Judge HOLT's - who has much more experience dealing with the likes of you and Cormick than I - comments on your character in the sentencing transcript), you and your companies appear to be linked to an organization controlled by a man who has stolen a lot of money from me and my family. If the Ipswich Crown Court sentencing transcript is accurate, then a court of law has determined you as a convicted criminal. I consider any statement

you make with that fact in mind.

I further note your assertion that this case between Cormick and myself has degraded into an acrimonious dispute. I disagree. I demanded an accounting of the funds I placed with Cormick. He, as a reply, insulted my wife and questioned my sexuality. That is not termed "Acrimony" – that is termed a "Red Herring". The issue is and remains misappropriated [i.e. stolen] funds. Cormick is clearly attempting to change this issue from the obvious, blatant and clear scam that it is into an "Acrimonious" dispute so as to divert the issue away from the disposition of the funds.

If your three companies are (as you assert) "currently trading perfectly healthily", I would assume that your shareholders would demand accurate and full disclosure to legitimate business inquiries about their investment - instead of replying with pithy personal insults. I find this as no joking matter. Did you disclose to those shareholders the details surrounding the Ipswich Crown Court sentencing? I would certainly want to know if the manager of a company into which I am considering investing is a convicted criminal.

The Internet is a public forum as is any print medium. I disagree with you that my statements here have any less legal implications than any other medium – and I believe you will find that if you check with an attorney he/she will agree that this is the case. I fully stand behind any statement I have made and expect as well as fully encourage you to take whatever legal steps you deem necessary if I have injured your "reputation" (although I doubt that it is in my power to further degrade the reputation of a convicted felon) through issuance of inaccurate information. To the best of my knowledge, everything presented on this web page is true and fully accurate. If you have information to the contrary, please advise so that I may update this site.

And I hope you will excuse me if my sympathy for you is lacking. If Judge HOLT's sentencing document is genuine, my sympathy does go out for the victims of the subject matter within that case. I, in particular, feel their pain. I do not, however, feel yours. And I do find it incredible that Walters (a convicted criminal and known scam artist) is attempting to play the victim in this plot.

**December 27 at 1330 local East Coast USA time** – Whoa! That was fast. Within one hour of the posting of the above, the Confidentiality Agreement on the Nicogel site was updated to remove all references to "The Elan Suisse Group". Here is the old version which I saved from

October 31st. Please notice in point 21. that the so-called "agreement" is governed under the laws of the Republic of South Africa. That is interesting given that this is represented to be a UK-based company.

The true question here is not the amount of window dressing that is apparently taking place. The question will be if Walters is truly going to distance himself from Cormick and Elan Suisse – that will determine if he is just playing lip service to defeat this investigation or if he is truly trying to reform his criminal ways to save his company. I have received no indication that Walters is internet-savvy which means that, in all likelihood, the page update was done by Cormick [who is internet-savvy]. This would indicate that the distancing of Cormick from Aquacine/Nicogel/Nicotea is part of an orchestrated program. If Elan Suisse is a shareholder in the three Walters companies, it will most difficult (if not impossible) for Walters to separate himself from Cormick (despite his assertion that his relationship with Cormick has ended). To my knowledge, Cormick is still in the UK.

**December 27 at 1530 local East Coast USA time** – I just tried to e-mail Walters from my hotmail account. That bounced as well.

I sincerely believe that this investigation (and the posting of the results thereof on this page) has saved countless people from being scammed. It was very difficult for me to dig up all of these details (which were buried pretty deeply). I just wish that someone else had done for me the same favor prior to 2004 and I would not be in this position today. One of the acid tests I performed before wiring Cormick US$250,000 was that I could not find him on anyone's "radar screen" (and I looked – obviously not deeply enough; however). Now, I believe, both Cormick and Walters are on everyone's "radar screen".

I will make this offer to John Walters (and anyone else anywhere in the world for that matter): If anyone would like to buy my rights (which amounts to, after all of the rubbish falls away, a contractual obligation to refund the US$250,000 I advanced to Cormick as earnest money in March 2004) to this Elan Suisse fiasco it is definitely for sale. Then Walters can take that issue up directly with Cormick. I really doubt that Walters is interested – because that would obviously mean that he would need to trust his partner [and obviously he knows what his own partner is all about]. What do you think John? Do you trust Cormick enough to buy one of his obligations?

I also take note of yet another veiled threat of a lawsuit. I do wish those

clowns (Cormick and Walters) would simply get on with it. It would seem to be much more cost-effective for Elan Suisse to simply cooperate with an audit. But Elan Suisse is a scam.

This investigation ends only when I gain recovery of my US$250,000 or the players are in jail. I am confident that one of those events will happen in 2006.

**December 28, 2005 Update:**
This Walters case gets stranger by the day. I was forwarded this document containing the judgment results from a patent hearing on Walters' supposed ownership of the RTD technology patent. The way I understand it, the Elan Suisse Biopharma Fund was established to fund the development of RTD products based upon a patent owned by Walters. This document is rather lengthy, but pay particular attention to paragraphs 97, 98, 99 and 100 (page 24 of the document). This Patent Office judgment [it might be interesting to note that at least one of the hearings was postponed due to Walters' incarceration] was dated October 12, 2005 and awarded five of the patents solely to Shannon Biotechnologies Limited and jointly awarded other patent ownership to Walters and Shannon Biotechnologies Limited jointly. I did not notice from that document any patents owned solely by Walters.

The basic issue here is (according to the judgment – please read it in detail) the research for the RTD technology was funded by (and was done while Walters was in the employ of) Shannon Biotechnologies Limited of Ireland.

The judgment gave the parties six weeks (which would have run out on or about December 1, 2005) to come back with a commercial plan for the patent. The outcome of this case will directly affect the commercial viability of any of these companies managed by Walters and Marshall due to the intellectual property issue (i.e. without clear title to the IP, a patent infringement case by Shannon Biotechnologies could immediately shut down operations of the Walters Companies).

So, if you have money in the Elan Suisse Biopharma Fund and if that fund owns stock in the three Walters' companies (Aquacine/Nicogel/Nicotea) – you might want to check with your sales agent (that sales agent is probably the same guy who scammed me).

More from the source in France:
>>When we first met John Walters (January 2003), he presented himself as the person in charge of exports for the Shannon Minerals company, as

is attested by Google's answer to the following request:
"john WALTERS" + "shannon minerals"

http://www.retailintelligence.ie/newsletter-story.asp?ID=398

By the end of May 2003 he had split from Shannon Minerals and
convinced us that he had raised capital from venture funds in order to
start the RTD project in France. We failed to check the reason why he
had left the company.

While he was in prison, trying to find and alternative solution for the re-
employment of the facility built for the proposed project, we met with the
persons of Shannon Minerals, and understood that a dispute related to IP
was under way.

Her are the 2 main documents published by the patent office linked to
this other case ....

Ask google again: "John Anthony WALTERS" + "patent office"
http://www.patent.gov.uk/patent/legal/summaries/2004/o07004.htm
http://www.patent.gov.uk/patent/legal/decisions/2004/o07004.pdf

The most interesting is the final one, so far .... (October 2005)
http://www.patent.gov.uk/patent/legal/summaries/2005/o27205.htm
http://www.patent.gov.uk/patent/legal/decisions/2005/o27205.pdf

Sincerely<<

I might want to further add that if either the Walters companies or the
Elan Suisse Biopharma Fund (if there is such an entity) fails, it is due to
GROSS mismanagement and not because of anything I post on the
Internet. If the management for any of those entities uses that excuse as
their reason for the organizational structure collapsing, I suggest you just
demand an audit. You will, if history repeats itself, receive pithy
personal insults with zero cooperation with an audit. The answers are in
the money trail.

**NOTE: (Dec. 28, 2005) I received verification today from two
separate sources that the Ipswitch Crown Court transcript is genuine
and that Walters was, in fact, convicted on fraud charges.**

I rang the Nicogel phone line today (1500 local UK time) at +44 870 383
1744 to have a chat with Walters -- the line rang approximately 50 times
before I hung up. It is interesting that a company that is "currently

trading perfectly healthily" (as Walters represented to me) does not
answer their phone during normal business hours.

The commercial viability of the RTD technology is irrelevant to this
matter. The manager(s) [i.e. Walters and Cormick – if, indeed, Cormick
is still involved] of the companies (Elan
Suisse/Aquacine/Nicotea/Nicogel) that are tasked with bringing this
technology to market are crooks. A legitimate company cannot attract
on-going investors without checks and balances – amongst those are
proper financial controls, transparency of all dealings and character of the
managers. If this technology were placed with a proper management
team, it could very well have potential. I am not qualified to comment on
the commercial viability aspect. I am, however, qualified to comment on
the character of Walters and Cormick – which I have, in detail, above.

This, again, from the same source in France (I have taken the slight
liberty to correct grammar [since this person is not a native English-
speaker] while retaining the meaning of the text). I think this is the most
succinct and poignant analysis of this Elan Suisse debacle I have seen as
yet:

>> I think your appreciation about the overall management of Walters'
projects is very sound and correct.

Of the substantial amount of information you have collected, it clearly
appears that Cormick and Walters have found it quicker and with better
added value to scam people rather than actually work with (or for) them,
and ultimately for the society.

I will follow the developments to come and send to you any other
information that could help to send them to jail - if not for reforming, at
least to prevent any of their further actions as crooks.<<

There is enough information on Walters and the various Elan Suisse
Biopharma Fund companies here for now to leave this for a while. There
are many remaining links between Cormick/Elan Suisse and the Walters
companies. The only indication I can see of separation is by Walters'
representation above (and we have already seen Walters' credibility
demonstrated). Tomorrow, let us go back to Africa and look back over
Zog, Cormick and the dealings thereof. There have been many more
details that have recently come to light with many people now
contributing to this web site.

SYNOPSIS

This is my current thesis – it may be wrong (but I think it is pretty close).
I believe this is what has happened with the Elan Suisse Biopharma
Fund. I believe that the Elan Suisse Biopharma Fund exists. I believe
that Anthony Carter, Miko Rwayitare and the Telecel crowd gathered
their investment club from Zimbabwe together to put forth the funds for
this pool of capital. Cormick attacked the credibility of the "Whining
American" and the "Child Journalist" just as he had the bankers with the
gentleman from Australia (see the November 21st update above) in 2001
and countless others – the investors trusted Cormick instead of what was
plainly the evidence. They chose the obviously [self-proclaimed]
brilliant Imperial College/Oxford/Harvard/etc. [check the CV - it's all
there] educated finely manicured LSE PhD academic [which is all
rubbish per the above source documents] instead of the bilked investor
from America with a degree from a state college. So where does the Elan
Suisse Biopharma Fund stand today:
1. Cormick and Walters apparently have the money
2. Walters is a convicted criminal (I don't suppose Cormick told
   them that while soliciting funds???)
3. Walters does not have clear title to the intellectual property rights;
   therefore, these companies owned by Walters
   (Nicotea/Nicogel/Aquacine) are essentially worthless since they
   employ processes covered under patents owned by Shannon
   Biotechnologies Limited
4. Those investors need to start negotiating with Shannon
   Biotechnologies Limited
5. Those investors need to get their money back from Cormick and
   Walters
6. This tracks with my experiences with Cormick as well as that of
   Alan Dean, Robert Paterson, Alex McAlery, Zog, Peter Kipps, the
   lady from RSA, etc.
7. This tracks with Mr. Glue's experiences with John Walters
8. [to the investors] You guys are probably having a bad day…
9. If the above is close to being correct, Cormick can probably expect
   a warm (read "Hot") reception upon his return to Zimbabwe – I'll
   bet he is contemplating going home to Australia (and if history
   repeats itself [and it always does], the investors' money is already
   transferred). At this point, Cormick has no home, no family, he
   has scammed all of his friends… Where to next?

I will give Mr. Brendan O' Mara at Shannon Biotechnologies Limited a
call tomorrow and post the results of that conversation. I am really
curious about all of this now.

### December 29, 2005 Update:

I am going to work on the Zim connection first while waiting to get in touch with Mr. O' Mara. I have a call into him (0830 East Coast USA time) and am waiting for a return.

I continue to be amazed that Cormick has gotten away with this type of behavior for so long. I recently have spoken with a wonderful lady in South Africa that had a particularly disturbing incident with Cormick. She asked to be left out of this, but the general outline of her story goes as such:

- Cormick took [reportedly] US$70,000 from Zog as an investment in Elan Suisse. Apparently it disappeared.
- Cormick kept Zog expecting [on a daily basis] to be fantastically compensated for this investment (see these e-mails).
- Zog had no income and could not pay his house payments because Cormick had all of his cash. To keep the owner of the house off of his back, he started just forwarding all of Cormick's e-mails referencing the fantastic compensation that was just around the corner.
- After months of this, the lady that owned the house called Cormick to inquire when he was going to pay Zog so she can collect.

I spoke to her recently (and I was taking notes) – here is what she described:

"Bob, that guy Cormick is a nasty piece of work. I had never met this guy so I had no idea how or why he could so ferociously attack me with screaming threats and intimidations. Look,

1. We are retired.
2. We are on a fixed income.
3. We cannot afford to be sued.
4. We DO NOT want to be shot."

So, Cormick cowed another victim. My agreement with her is that if I ever find money belonging to Zog that I would let her know so that she could collect. This Botswana Project is what Zog is supposedly an interest holder. She and her husband are retired, on a fixed income and cannot afford to take this big of a financial hit. The amount Zog owes her is reportedly US$72,000. The reported amount that Cormick got Zog for is US$70,000. So, who did Cormick get – Zog or this lady? Cormick has ruined a lot of lives. All this will come out during the criminal prosecution of Brett Cormick.

The biggest inhibitor of dissent from Cormick's victims is the exchange
control laws in South Africa and Zimbabwe. Over the past 20 years,
most wealthy families in Southern Africa have moved wealth overseas to
counter the huge swings of the local currencies. This is functionally
illegal. It is my understanding that Cormick has been successful with
changing investor funds in offshore accounts from non-performing
current accounts in the UK to fantastic performing Elan Suisse accounts.
When the investor requests information on their accounts, Cormick
simply threatens to turn them in to the authorities. Case closed. All of
this will come out in court. It is just a matter of time.

I take note that the nicogel.co.uk web site has been blocked on my ip.
Despite Walters' representations to the contrary, I DO NOT believe that
Cormick is no longer involved with Nicogel/Nicotea/Aquacine. But, at
this point, what is the difference anyway.

### December 30, 2005 Update
I received an e-mail overnight from Cormick. In addition to the three
paragraphs of pithy personal insults and threats of lawsuits, he stated that
business is going very well. "Things are going brilliantly!!!" This just
reminded me of a similar thread I had heard a couple of years ago:

"Be assured. Baghdad is safe, protected."
"I triple guarantee you, there are no American soldiers in Baghdad."
"These cowards have no morals. They have no shame about lying."
"We are winning!"
Iraqi Information Minister Muhammed Saeed al-Sahaf (March 2003)

I could find no substantive reason for the e-mail, however, nor was there
any new information in that correspondence.

We were all certainly warned about what was coming (see this and notice
the date). Cormick has sold another worthless company, has pocketed
the money and has left a trail of bilked investors with full sacks of
worthless paper.

As of this morning, I have not received a return phone call from Mr.
Brendan O' Mara at Shannon Biotechnologies Limited. The operational
company for that group is Shannon Minerals. If you would like to know
the current status of the patent issue for the RTD technology (as relates to
The Walters' Companies), I would suggest you contact Mr. O'Mara
directly at these contact coordinates.

We should know fairly soon Cormick's next move. That will dictate

what we do here. If he goes on the lam, we will end this page and wait for him to resurface – it could be anywhere from months to years. If he goes back to Zimbabwe, well, that should be interesting. I do not think he is going back to South Africa since he left a mess there.

There is a South African saying that goes as such (please excuse the language): "He who shits on the road will meet flies on his return."

If he is still involved with the Walters' companies, we should know that fairly soon as well.

So folks, with that let us close out for the New Year's celebration and hope for us all a happy and prosperous 2006. We will take this up again in the new year.

**January 1, 2006 Update**
Happy New Year folks! The latest update is that I see Cormick has updated the http://www.bobchrist.net/ site to drop the long-winded series of personal insults directed towards myself and my wife. In early September 2004, I demanded an audit (by an independent auditor at my expense – I made the arrangements and all Cormick had to do was open the books) of what happened to the funds I placed with him. Instead of cooperating, Cormick volunteered to refund my earnest monies. I accepted that offer since it was obvious at the time Cormick was not following proper business practices. Anything that transpired between early September 2004 and late November 2004 was an attempt by me to diffuse a **Rapidly** escalating war due to what was obviously a misappropriation of the funds entrusted to Cormick. But in the end, he stole the money anyway. I discovered (as did Neville Chamberlain in Munich) that appeasement does not work. Any issues thrown up now other than an accounting of what happened to my US$250,000 is just more Red Herrings.

The only real information I am gleaning from this page is that Cormick is now focusing on Elan Suisse issues. So I guess this page is working. "Dr." Cormick, it is very easy to get rid of me (the very angry "nightmare investor" [as you put it]) - produce an accounting of what happened to my funds I entrusted to you. For a con artist [Cormick] and a convicted felon [Walters] to attempt to plead for sympathy in this drama is [in my best euphemism] "Cute". It is especially "Cute" that [according to Cormick] I am extorting him to get my money back. Any legitimate investment fund (or any legitimate business for that matter) would produce an accounting as a matter of normal business.

So "Dr." Cormick, please post on your web site what happened to my US$250,000 so that everyone can see.  Let me save you the trouble – here is what most likely happened from Cormick's point of view:

| | |
|---|---|
| $250,000 | March 2004 Yahoo! That Christ is such an idiot!  Party time… |
| ($5,000) | April 2004 Went on very nice holiday in Europe (this is for first class airfare – the only way to travel) |
| ($15,000) | April 2004 Bought new Rolex (and man, it sure looks expensive!  It puts the one I bought with the Mees Pierson card to shame) |
| ($25,000) | April 2004 Stayed in all of the nicest hotels in Europe, ate at five-star restaurants, etc. on business expense ("Thanks Bob") – that $6,000 dinner at Maxim's in Paris was incredible!  "Eat your heart out Kozlowski [former TYCO CEO convicted on fraud charges]" |
| ($100,000) | April 2004 Stuffed money in retirement account (you never can tell when you'll need it to run) |
| ($1,000) | May 2004 Put a little of Bob's money into Elan Suisse so that I can say that I did.  I can always take it back. |
| ($5,000) | June 2004 Bought a few hookers (I know Bob would appreciate that) |
| ($20,000) | February 2005 Paid to <u>ATHERSTONE & COOK</u> to put Christ in his place |
| ($25,000) | June 2005 Paid more to ATHERSTONE & COOK for divorce proceedings – it was money well spent saving me literally hundreds of thousands of dollars in child support payments over the next few years |
| ($54,000) | July 2005 Put some more money away so that no one could find it |
| $0 | Ending Balance – All expenditures were business expense |

(except for $154,000 of "reasonable profit")…

### January 2, 2006 Update
I understand that Cormick is about to go on another World Tour.  It remains uncertain as to how he will finance this expedition.

### January 3, 2006 Update:
Cormick is roaming the world once again.  There is not much to report for now since the Elan Suisse Biopharma fiasco is essentially over (unless Walters can negotiate a license with Shannon Biotechnologies – which is doubtful considering the background of the O'Mara/Walters relationship).

I also take note that Cormick is posting what his attorney (whom he is paying) said in 2004 -- which is justifying why he should keep money he has stolen from me and not produce an accounting. The lawyer's letters and e-mail have been available on this site for months. A full history of communication between myself and Cormick (and our lawyers) is referenced at the top of this page. The only part of the whole thing worthy of mentioning is that his attorney advised Cormick to press suit against me where I live. So, for the [I lost count] time where is this promised lawsuit Cormick?

Folks, I realize that this whole thing is pretty childish. Cormick would be in jail right now if he had done this in America or Europe. But the laws are immature in Africa allowing for scam artist like this guy to thrive and flourish. Hopefully, the Internet is proliferating worldwide and any investor should be able to find this page to stop any investment into ANYTHING managed by Cormick. If this page accomplishes that then I will call it a success.

So, until there is more to report let us all get on to other things. We will place more here if new information becomes available when Cormick resurfaces.

### January 17, 2006 Update:
From sources within Zimbabwe, I received today a summary of the divorce proceedings between Cormick and Jennifer Anne Mortleman. The following quote is reportedly within the consent papers [drafted by Cormick's attorney]:
*'Plaintiff* [Cormick] *is currently in strained adverse financial circumstances, is currently unemployed and is bereft of any savings or capital such that he is unable to pay any form of maintenance or other financial contribution to the living requirements of the minor children'.*

I further take note that Cormick has registered the domain jennifermortleman.com [his ex-wife] for unknown purposes (actually, I think we all know the purpose – and I personally think this as a sick game). My wife and I do extend our sympathies to Jennifer Mortleman. She does not deserve this.

### January 19, 2006 Update:
A South African lady living in North America happened upon this site while looking for information on Elan Corporation, PLC (a listed NYSE company – symbol ELN). We had a few e-mail exchanges after she went over this page since she thought this was such an interesting story. This was her observation after reviewing the details of this case:

>> This fool, in the end, may actually pull it off and never go to jail. If you had invested in ELN-NYSE with your money (of course only in March of 2005 - it took a huge plunge but is clawing it's way back) you would be a multi-millionaire instead of dealing with this creep.<<

On January 13th, Nicogel Ltd. changed its registered office to:
UNIT 1B SAXON BUSINESS PARK, A10 BYPASS
LITTLEPORT, ELY
CAMBRIDGESHIRE CB6 1XX
UK

On January 17th, Nicogel Ltd. had the following change, "Change in situation or address of Registered Office." I am not sure what that change involved since I did not order the report from the companies bureau.

I received a report that Parashkev Nachev (mentioned in the Elan Suisse sales literature) is distancing himself from both Elan Suisse and John Walters. This can be seen in the note added to the sales literature.

John Walters (per the above e-mail to me as well as the changes in the company structure of Nicogel Ltd.) has also made efforts (albeit unconvincing ones) to distance himself from Elan Suisse and Cormick. I am not sure where this is going.

**January 20, 2006 Update**
I received a report today that Cormick is now in the USA. He certainly gets around well for someone who is professing to be indigent in order to avoid paying child support (see the January 17th update above).

I also received a report from two separate sources that Walters is in the USA this week as well. Is it coincidence that Cormick and Walters are in the USA concurrently? I think not – which [if they are here together] makes another instance of Walters misrepresenting his relationship with Cormick (see the December 27th update above). Considering Walters' criminal history, this should come as no surprise to anyone.

I received more information from the gentleman in France:
>>His [i.e. Walters - RDC] basic approach is to leverage a first element (alleged IP or a new facility built by a local community struggling in order to attract new activities and jobs) in order to subsequently raise venture capital from "business angels" while showing them an alleged

company face value .... and then fly away with it [i.e. the investors' money - RDC]!

The local community of Dieuze (East of France) has set up a 7000 m2 facility in order to develop a full range of ready to drink (RTD) medecines based on Walters alleged IP (which has been finally attributed to his former employer ... see elements on Bob's due diligence site).

See details of the facility at the following address: http://www.moselle-capem.com/en/f_batiment_detail.asp?num=15<<

Note the facility pictures in the link above with the pictures in the ES sales literature (bottom of page). Cormick and Walters certainly appear to be cut from the same cloth.

It might also be interesting to note that Cormick sent to me this e-mail with this attachment on July 31, 2004. The reason this is interesting is the date – Walters and Cormick were planning Aquacine (already representing to have raised US$14 million) before Walters went to jail on fraud charges. It certainly does not appear to me that Walters was reformed in any way by his stay in Her Majesty's Correctional Facilities. This transmittal came 4 months after I transferred US$250,000 in earnest monies to Cormick in anticipation of starting a business in South Africa. Cormick, at that point, was actively promoting Aquacine – which certainly seems at odds with Walters' (see the December 27th update above) statement that he never received benefit from my money [but I must admit that I do not know for sure since my money simply disappeared into Cormick's personal account two years ago and I have not seen it since].

So to summarize folks, if you are still not convinced that Cormick and Walters are both crooks I suggest you place some money with them. If history repeats itself [and it always does], you too can have the privilege of having your money stolen and your wife/husband insulted while Cormick is safely out of reach. Cormick has no "Bricks and Mortar" real property and his entire business is a series of mailbox drops across the world with collapsible companies. This is one big shell game where the pea runs from trust to trust across international jurisdictions while you waste your time, energy and money trying to catch up with your stolen money. I must admit – Cormick is pretty slick!

**January 22, 2006 Update:**
See the January 17th update above. Cormick is professing to be broke.

In America, we call this a "Dead Beat Dad".
- If Cormick is broke, what happened to all of the investors' monies entrusted to him? Where is he getting the money to gallivant across the globe like a millionaire playboy while his wife and children are left to fend for themselves in Zimbabwe?
- If Cormick is not broke, he is purposely abandoning his wife and children in a third world country with a rapidly degenerating civil and economic structure with no appreciable social welfare programs.

The relevance of this information is:
1. If Cormick is [in fact] broke, one would assume that all monies placed with him will be used for funding of his extravagant lifestyle. That is **exactly** what happened to my hard-earned savings – i.e. **my hard-earned savings were used to fund Cormick's extravagant lifestyle**.
2. If Cormick is not broke, then it certainly demonstrates his character that he would abandon his wife and children in such a heinous manner. I am certain that Cormick has already gone through my money and is now chewing through someone else's. On his own version, he is unemployed and bereft of savings and capital. What does that mean? I will leave that to the reader to decide.

### February 5, 2006 Update
I was contacted by an acquaintance of Walters who appears intent on brokering a peace deal. The plan was to allow Walters to point out alleged inaccuracies on this site for correction. I encourage Walters - or anyone else for that matter - to alert me to any inaccuracies.

From the impression I gained on this intended brokered deal, Walters was attempting to explain to me that he was in no way involved with Elan Suisse or Cormick. That flies directly in the face of the evidence.
- Here is my first indication that Aquacine was involved with Brett Cormick and Elan Suisse from July 2004
- In September 2004, Walters was convicted on fraud charges and went to jail
- In April 2005, these advertisements came out in FANews referencing Aquacine
- This from late-August 2005 as well as this from a close friend of Cormick's referencing Walters' involvement as well as explaining the scam's structure (I would also like for you to note that Cormick is referencing that he had to sit with Andrew Rozhkov's body for 3

days on the ice in the Arctic – Rozhkov died on the 1998 North Pole
    Expedition – Cormick was not on that expedition)
- This from mid-September 2005 referencing that Walters and
  Cormick are still thick together on this [let's call it a] "Project".
- Nicogel's address in the UK was the Elan Suisse Mayfair mailbox
  (I do not know if it is still the Mayfair mailbox since my IP has
  been blocked for that web site).
- Aquacine became Nicogel on December 9, 2005 (see the
  December 16th update above)

The part that really gets me on this whole issue is that my wife and I are
extremely fiscally conservative saving as much as we can for our
retirement. In this e-mail, it is obvious that Cormick is using our hard-
earned savings to treat [at least one] young girl[s] to expensive flights and
staying at swank hotels across the world while showering her[them] with
expensive gifts *using our money*. I now have a better understanding of
who is Brett Cormick. I only wish someone had done me the favor of
placing this type of information in a place where I could have used it in
order to have made an informed decision on Cormick's character. This
would have saved me a lot of money and a lot of time. Also notice that
Cormick is stating his net worth as £200 million which is in direct
conflict with his sworn statement to the divorce court that he is broke (see
the January 17th update above).

### February 7, 2006 Update
I have an update from Cormick's time in Australia before he moved to
England from a close source in Australia.
- He did attend UNSW- the campus was Royal Military College,
  Duntroon (Canberra) and he was awarded a Bachelor of Military
  Science as well as graduating as a commissioned officer-2nd
  Lieutenant- in the Australian Army.
- He was posted as a second Lieutenant at Enoggera Army Barracks
  in Brisbane Qld, in the Signals corps. In 1984 he was posted to
  Melbourne- Watsonia Barracks and eventually promoted to
  Captain. He left the Army after his 'payback' time was completed,
  reportedly in 1986.
- He did attend UQ. He was doing an Honours degree in Economics
  there. Reportedly, it was his last "kosher" degree. According to
  my source, he 'bought' a master's from a university in the US in
  1986/7 - it cost $5k and he did actually write a thesis for it.
- According to my source, Cormick was never in the SAS but loved
  to tell everyone that he was. He had developed a relationship with

some of the enlisted men who were under him at Enoggera who then
went to the SAS themselves. This was the only tenuous link he
ever had with the SAS.

- He then worked for a stockbrokerage firm called BZW Meares in
Melbourne city until approximately August 1988. According to
my source, he disgraced himself at that firm because one of the
partners was noted to quote "I shall see to it he shall never get a job
in Australia again." I do not know of the incident that caused that
mess, but that may be the reason Cormick moved to the UK.
Reportedly, the person with whom Cormick had the unpleasant
exchange was Geof Nash (see a bio and contact details at this web
site).

That same source also had the following comment, "BJC certainly made
great mileage out of his (YOUR) expeditions to the North Pole! I
thought it a bit of the style of his SAS stories, i.e. - made up!"

### February 8, 2006 Update
This from the same close source in Australia:
>>Brett used to like to say he was involved with the intelligence
community but I always believed it was a fantasy. I don't think he
undertook any specialist training- [deleted personal details] whilst he did
go away quite a bit, it was usually on self funded trips, both overseas and
in Australia. He also went on Army exercises but I don't think they were
of an intelligence nature.<<
and
>>I think Brett actually really does believe he is all those things he
purports himself to be. My theory on him is that he is schizophrenic. He
could be such a good person, and then he would just snap and become
really strange.<< This last sentence tracks with many folks I have
interviewed – Cormick is quite charming and friendly until he has an
economic incentive to cease being your friend (like when he has
possession of your money. Which is what happened to me...).

Practically everyone in Cormick's present and past life is contributing to
this page – apparently due to their curiosity about what is the truth with
regards to Cormick (there is an incredible amount of misinformation
generated by Cormick himself). My function here is more like an editor
of this page than a writer.

This Cormick case reminds me of the old *Saturday Night Live* skit where
Jon Lovitz poses as Tommy Flanagan, The Pathological Liar with the
saying "Yeah, that's it - that's the ticket!" We also keep coming back to
Alex McAlery's definition of Cormick as a "Walter Mitty" type.

Because this guy seems to actually believe all of the things he is telling people. I will leave the analysis, however, to people with expertise in that field...

It also mirrors this e-mail from the 20-year-old college student from the USA whose observation was "He seems a little crazy in the head."

So, to answer the frequent question I keep hearing from folks in Southern Africa, Europe and America whose reaction to Cormick's many claims of education and accomplishments keep posing "Is this guy for real?" I think the answer (as demonstrated above) is a resounding "No". Again, I wish I had known this before trusting him with US$250,000 of my family's money. So, the lesson learned here is – 'do your due diligence' even if it is someone you really trust... You never know when you will run into another Cormick [or Walters for that matter].

### February 9, 2006 Update
I have information indicating that Walters is in the USA (actually in SE Pennsylvania) setting up manufacturing operations. It is my understanding that the gentleman in Pennsylvania with which Walters is dealing knows about the French manufacturing facility debacle and is choosing to ignore it. Well, good luck!

Cormick has gone quiet and I have lost track of his whereabouts. He will surface again sooner or later.

I know that this is off-subject, but congratulations to BJ Worth and members of World Team '06 for completing the world record 400-way freefall record! There were several of the World Team members (including BJ – the World Team Organizer) that were on the Millennium Expedition in 1999/2000 (upon which Cormick was not, but it did not stop him from claiming to have arranged it ... see the last sentence in that article – also, the South Pole is at 9,300 feet above sea level and 3 people died in December 1997 on a freefall expedition).

### February 11, 2006 Update
I have information that South African crime fighting authorities are investigating Elan Suisse. Cormick ran my transaction over several jurisdictions substantially lowering the RSA authorities' interest in the case, but it is my understanding that Norman Botha sold several interests in Elan Suisse to RSA-based investors. These sales to RSA-based investors put Elan Suisse business operations squarely under the jurisdiction of the RSA authorities. Hopefully, we will soon get down to the bottom of this case and this man.

**February 15, 2006 Update**

Please notice this e-mail from Cormick. I still fail to see how this has anything to do with the funds Cormick has stolen from me and my family (other than attempt to divert the issue)? Please also notice that Walters and Zog are copied on the e-mail. I also fail to see the comedy in any of this.

**February 20, 2006 Update**

Let us start looking a bit more closely at the players in this Elan Suisse mess. This Elan Suisse Scam has a lot of tentacles reaching across several jurisdictions with many involved players. The workings of a scam have a seemingly legitimate organization with seemingly legitimate players in order to attract capital. Once the capital changes hands, the organization dissolves and the people disappear. The players are suspects, victims or innocent by-standers. Now that the RSA crime-fighting authorities are involved with investigating Elan Suisse, let us pick through the players so as to make their jobs easier. The question which needs repeating is "Was this person duped or was this person in on the scam?"

The easy ones are:
Brett Cormick – the originator of the scam
Patrice Dhliwayo – one of the originators and insider
John Walters and Dianne Marshall – Insiders
Anthony Carter – Insider
Peter Kipps – Insider
Apostolos "Zog" Zographos - Insider

But what about some of the others?
**Leanne Blumenthal** – did she use her position within The South African Pharmacy Council to help this scam?
**Dirk Mostert** – Dirk allowed Elan Suisse to operate out of the Mercari offices. When I sued Cormick and Elan Suisse [attempting to get my stolen money back], Cormick's sworn statement was as follows:

>>§9.24.1 Mostert offered that Elan "Incubates" in the offices of Mercari. To this end Elan had free use of the said offices, and Mostert offered his employees' labour free of charge to Elan. Mostert also dedicated one of the telephone lines allocated to Mercari to Elan, free of charge. It must be kept in mind that I started Elan from my own funds, and appreciated any opportunity to save costs; and
§9.24.2 The offices of Mercari was also chosen to be the registered address of Elan.

§9.25 As an aside, Mostert also asked me to become a non-executive director of Mercari, in order to contribute my insights and extensive experience in the money market and the financial services industry to Mercari's business.  Naturally, I agreed.<<

Was he duped or in on the scam?  I understand that he has sold Mercari, but as of today the web page still lists him as a director along with Cormick.  So, a director in Mercari Financial Services used the offices, phones, fax and registered mailing address to run an international investment scam.  Now, Mostert has apparently sold that business leaving everyone with another empty bag.  How culpable is Marcari and Mostert in this scam?  Here is my understanding of Dirk's new business venture: Dirk Mostert, Managing Director (follow the link to get an understanding of Dirk)

Merchant West Treasury Partners (Pty) Ltd
1st Floor, West Court, Sandown Village
Cnr Gwen Ln & Maude St
Sandton  2196
E-mail: dirkm@merchantwest.co.za
Tel: +27 11 305-9501
Fax: +27 11 305-9510
Cell: 082-855-5001

**February 21, 2006 Update**
I was forwarded a PowerPoint presentation that was labeled as being authored by Dianne Marshall and created in late-May 2005.  It details the Elan Suisse BioPharma Investment Portfolio as was sold [one would presume] by Norman Botha (his name was in the file name).  It specifically gives pictures and detailed specifications on the Elan Suisse R&D facility (on slide #15) in Wales as follows:
**R&D Facility in Wales, UK**
- 14,000 sq ft
- cGMP compliant
- State of the Art
- Only other labs of higher specification are the UK MOD
- Tapered lease
- FOC for 6 months
- Pepper-corn thereafter and taper dependent on JV's with various parties
- National Garden of Wales
- WDA
- Etc

- Will be the global R&D hub for BIP

On slide #32, it details the fantastic investment opportunity in Nicotea as follows:

**Nicotea Participation**
- Shareholding in UK holding company
- Current valuation £200m
- Time-frame 18 months to 24 months
- Trade sale
- In discussions with BAT

On slide #31, it states "Current company value £100m" and "Target exit £1bn in 18-24 months". £100m? £200m? Let us not quibble over £100m when the targeted exit will be at "£1bn in 18-24 months" – that is plenty of money for everyone! The .ppt file is 6 mb (it has lots of nice pictures of the Elan Suisse Wales R&D Facility). Please e-mail to me if you would like a copy.

I am not sure if the Wales facility produces any product, but Walters/Marshall make use of this facility for presentation purposes (as per the Norman Botha .ppt presentation) just like they used the supposed facility in France (see the Elan Suisse BioPharma sales literature). They are consistent. Please check with the National Botanic Garden of Wales (if you can find someone there who wants to talk about these Elan Suisse/Aquacine clowns) for a status of the alleged JV between them and JW / D Marshall. It must be an awkward situation, given the IP status (dispute with Shannon Minerals).

Which leads to the next question – Was Norman Botha duped or in on the scam? Walters is obviously thick into this scam. What about Dianne Marshall? She certainly appears to be taking an active role (as evidenced by her authoring of the Botha presentation).

**March 9, 2006 Update**
Nicogel Ltd. (UK company registration number 05190095) yesterday changed its credit limit. See the notification here.

I have more information on the gentleman that is reportedly forming the US Production Facility for Nicogel. Here are his contact details:
Bill Wayland
+1(610)265-8904 (extension 160)
+1(610)659-2932
From what I can gather, he works for the Henry F. Michell Company - I

Dr. Brett Cormick and Elan Suisse Elan Capital Nicogel Elan-Suisse Nicotea Aquacine... Page 71 of 78

don't know what that company has to do with RTD medicines, however.

I had a report from sources in Zimbabwe that Cormick was in Harare the week of February 27th. I understand that he normally stays with Rick Crook when in Harare. Rick's last e-mail address I have is hellensc@internet.co.zw - if you would like to track down Cormick, you may have luck coordinating with Rick Crook.

### March 11, 2006 Update

My friends and family have repeatedly asked that I just drop this case and get on with life. Cormick deliberately ran a scam on me and my money is gone. He has done this before. He will do it again. I refuse to drop this, however, until there is a resolution to this case. The three most probable resolutions I can see are (in order of preference):

1) Return of the money stolen from me

2) Incarceration for Cormick (and Walters for that matter)

3) Having him "sorted out" by one of his many other so-called 'partners' Option 3) would be the most expedient. I do request and encourage non-violent (i.e. legal) means to "sort out" Cormick. I would like to assist any interested party in locating Cormick physically so as to help in this quest.

So, let us go through his most probable location. I believe that Cormick has Walters on a short purse string. That would make Walters economically tied to Cormick (Cormick apparently has everyone's money – he certainly has mine). You will probably find Cormick near Walters since the only operating company in this whole daisy chain of shell companies is Nicogel Ltd. (located in the UK). You will probably find Walters very close to Dianne Marshall (let us just say that they have something in common). And you will find Dianne Marshall here:
Dianne Marshall
18 Gordon Richards Close
Newmarket, Suffolk CB8 0BH
United Kingdom
Phone: +448701998585
Or here:
11 Hamilton Road
Newmarket, Suffolk CB8 0NQ

When in Zimbabwe, Cormick stays at Rick Crook's house. Look Rick up in the Harare phone directory. I have been keeping tabs on Cormick's travels to South Africa (so that I can have him arrested to found jurisdiction), but I cannot find that he has traveled there recently. I believe he has pulled out of RSA.

In order to place Cormick in one of the regions, just ring him up on his cell phone (don't bother with his so-called "Office" phones, they simply ring to an answering service at one of his many 'virtual offices'):
+27 82 355 2543 Cormick's Cell Phone in South Africa
+44 783 419 7452 Cormick's Cell Phone in the UK (1400 East Coast USA Time: I just phoned him – he answered his UK cell phone number [I received a report today from a reliable source that Cormick is in Zimbabwe – which means that his UK cell phone is operational internationally])

So, if you would like to find Cormick my best estimate of where he is located at this moment is at Rick Crook's house in Harare. Look him up in the Harare phone directory. Then go over and pay Cormick a visit.

**Note:** I made an extensive disclosure today to the UK National Criminal Intelligence Service with regards to this large and complex international scam. After over one year of investigating this organization and Cormick, I have put together this estimation of the players within this organization. I have categorized anyone who has not been identified a victim as a suspect – whether or not they are guilty is up to a court of law to decide. I remain open to assisting any crime-fighting organization worldwide in bringing these players to justice.

**March 12, 2006 Update**
I had another report yesterday from a close inside source that Cormick keeps as many as eight SIM chips for his cell phone with him at all times. I suppose that is to keep several phone numbers active at all times while using the same handset. But I do not know enough about cellular technology to fully understand why this has advantages. He may be doing this to substantiate his "virtual offices" in different venues with active phone numbers. This same inside source is searching through records to find the remaining cell phone numbers – which I will post here upon acquiring. Once we have these, we can call all of these phone numbers in all of these countries. And what we will probably find is that all of these phones will be answered by the same person (Cormick) on the same cell phone handset located physically outside of the venue where the scam is taking place – that's slick!

We also had an interesting discussion yesterday about whether or not Cormick had a chance to visit Walters while he was in prison. The reason this is interesting is that if Cormick did visit Walters in prison [because the reason for the visit would have been to discuss Elan Suisse]

then the whole Elan Suisse Biopharma fiasco was hatched with obvious criminal intent *while **Walters** was **still in prison***. The prison will have visitation records so that we may query this topic.

The Mercari Financial Services page is still active as of today with both Dirk Mostert and Cormick listed as directors. Which leads again to the question – was Dirk duped or in on the scam?

I have a lot of other source documentation for which I have been requested to keep in confidence by my sources – I will, however, share this information with legal authorities in order to help shut down this criminal organization. Please contact me for transmission of this information.

I have gathered enough information to paint a fairly accurate picture of these Elan Suisse clowns. This should serve as a fairly clear warning to anyone who is contemplating business with these organizations. Those who have been warned (like Mr. Bill Wayland of Valley Forge, Pennsylvania) and still choose to ignore these warning [in my opinion] deserve what they get.

### March 13, 2006 Update

I still cannot track what happened to all of the money Cormick has scammed from these investors. I can count over $500,000 USD in money entrusted to him in early-2004 alone. I know where Peter Kipps' money went; however, I cannot see how he could have spent this much money in Zimbabwe – and it is highly unlikely that he would have converted any substantial amount of this money into Zimbabwean dollars (for obvious reasons). He does not own a home. He does not own any real property. He must have this money stashed away somewhere. I understand from discussions with various sources that he has the main money holding company managed by David Keep of BNP Paribas in Jersey. I also understand that he has trust arrangements set up in The Seychelles. If you are looking for your money, those are the places you are most likely to find it.

From reports I am receiving from sources inside Zimbabwe, Cormick is still indigent and unable to pay for the support of his minor children. I also understand that his excuse as to why he cannot find work is that this web page has smeared his reputation. Good. That means that a lot of investors are still in possession of their money as a result.

Cormick's profession is 'scam artist'. The work of a scam artist is a negative sum game – he steals your money you have worked so hard to

Dr. Brett Cormick and Elan Suisse Elan Capital Nicogel Elan-Suisse Nicotea Aquacine... Page 74 of 78

save and then wastes your time while he busily spends or hides your
money away from you. If I have complicated his career, I believe I have
saved some honest folks from trouble. Again, I only wish that someone
else had done me this favor that I am doing here – I would be in
possession of my $300,000+ and the two years of time I have wasted
trying to get my money back would have been spent with my family or
with money-making endeavors. This little 'business venture' has been a
nightmare. The whole transaction was over as soon as I transferred the
money – the problem was that I honestly believed that Cormick and I
were going into business together when in fact Cormick was busily
squandering away my money. Where are my hard-earned savings today?
I believe that Cormick is reading this page – "So Brett, what did you do
with my money?" I suppose the more pertinent question is "Who did you
share my money with?" That will reveal who else is in on this scam.

I also cannot understand why Cormick is penniless and cannot find
work. Is there no work for "the most extreme polar explorer or this
century" (if for nothing else, as a guide)? Is there no work in the SAS
since he has so much experience as a SAS commando? Is there no work
as an intelligence operative in that troubled area of the world (Southern
Africa)? And the entire continent of Africa has been mired in economic
trouble for quite some time – is there not work for a brilliant London
School of Economics PhD such as Cormick? Why is there no work for a
man with so many life accomplishments to his credit? See his CV for all
of his brilliant career highlights.

What happens to the grifter that has been exposed? In Walters' case, he
went to jail after being convicted of fraud. But unlike Cormick, I think
that Walters sincerely would like to build his company. And I actually
think that Nicogel is commercially viable. Unfortunately, I do not
believe that Walters has the character or the track record to attract the
capital necessary to lead this company into success. For Nicogel to have
any measure of success, another management team will be needed (and a
licensing agreement with Shannon Biotechnologies). As far as Cormick
goes, that man is a sociopath and needs to be taken off of the street as
soon as possible.

I received a report from a separate source that Cormick is
"freeloading" (my sources words) at Rick Crook's house in Harare. That
makes sense. He leeches off of all of his other so-called friends. Why
not Rick. Scam artists are parasites anyway. It seems in character. The
brilliant yet broke Dr. Cormick is obviously running out of friends off of
which to sponge. I understand that he sponged off of the Mortleman
family (Cormick represented to me that **He** was supporting the

Dr. Brett Cormick and Elan Suisse Elan Capital Nicogel Elan-Suisse Nicotea Aquacine...    Page 75 of 78

Mortleman family) for so long that it lead to a divorce.

### March 14, 2006 Update

I have uncovered the above details about Cormick by simply making
phone calls and e-mails to folks from his past. If a governmental agency
with better expertise and more persuasive techniques were to get this
case, I am positive they will find the above as just the proverbial "tip of
the iceberg". I believe this is a huge international criminal organization
performing money laundering and other sham transactions stretched over
several international boundaries. It functions through world banks with
ties to many shadowy organizations worldwide. Dig a little deeper. I
believe what you will find to be quite interesting.

I received feedback from Cormick's incident with the management of
BZW Meares in Australia before leaving for the UK. It seems there was
a bit of an issue with a girl named 'Alexis' that worked in the office.
During this same period, Cormick's first wife was pregnant with his first
son James. I understand that Cormick divorced soon after James was
born and moved to the UK with Alexis. Cormick reportedly dumped
Alexis soon after arriving in the UK. I told this incident to my wife – her
response was immediate – "Obviously Alexis must have paid for the trip
to the UK..."

### March 15, 2006 Update

I received a report from sources within Zimbabwe that Cormick is stating
that he cannot find work because this investigation and resultant web
page has "ruined his reputation". I disagree. To ruin someone's
reputation presupposes a good reputation. I have not ruined Cormick's
good reputation, I have simply exposed his bad reputation by detailing
the findings of my investigation here.

I do not know what is the right thing to do on this case. My money is
lost. Cormick stole it. Is the right thing to do here to post all of this
information? I certainly have spent a lot of time gathering it. If I am
going to err, I would rather it be on the side of full disclosure, full
information and the truth. Then let the reader decide.

### POSTSCRIPT:

The world of international business is rapidly changing – fueled chiefly
by the proliferation of the internet. The "Great Scammer" himself, Ponzi,
got away with scamming his entire life without ever spending a day in
jail. He was a clever crook such that word never fully spread of his
nefarious schemes allowing him to run scam after scam. On the other
hand, Cormick would have gotten away with it for an even longer time (I

understand that Africans have a fairly narrow world view – allowing slick-talking Europeans and foreigners to come down and run shady business operations with impunity) had it not been for the following:

1. When Moneyweb linked this page to its article (along with Cormick's page -- I believe their reporting on the subject has been balanced and fair), it immediately was recognized by the internet search engines.
2. Cormick has cheated and lied to such a vast number of people that practically \*\*Everyone\*\* has been more than willing to contribute to this page (some overtly and some covertly).
3. Cormick himself has been so bold and brazen as to be high-profile while this whole episode was transpiring allowing for scrutiny by the business community. If he would have just done what scammer do and faded away, he would have probably gotten away with it. But he did what the great modern day scammers such as Kenneth Lay (former CEO of Enron) and Dennis Kozlowski (former CEO of Tyco) did and "Deny-Deny-Deny".
4. He was sloppy and left clues that I simply followed.

Throughout history it has shown that a short-term tactical advantage can be gained through amoral cunning and audacity in attacking one's opponents. Hitler perhaps would have been hailed a great leader had it not been for a slight defect in his plan – what he did was wrong and the world as one rose up to stop him. Cormick has gotten away with this type of behavior for years through audacious attacks and intimidation techniques thus cowing his victims. But I think we have all had enough of this.

### Where Is Everyone Now?

Alan Dean – apparently is successful building another software company
Robert Paterson – the same

Brett Cormick – His troubles are just beginning

Julius Cobbett – Enjoying a rapidly expanding career as an investigative journalist with Moneyweb

Patrice Dhliwayo – As best I can tell, he is still scamming in Zimbabwe
John Walters and Dianne Marshall – Still trying to get Nicogel off the ground (with the 'albatross' of Cormick still around their necks)
Anthony Carter – I have not been able to determine the outcome of his criminal trial in Zimbabwe that began in October, 2005.

Peter Kipps – Finally coming to the realization that he's been had
Apostolos "Zog" Zographos - Finally coming to the realization that he's been had

Bob Christ – Finally getting over this Elan Suisse financial disaster with the biggest-ever boom in the underwater robotics business hitting due to

Dr. Brett Cormick and Elan Suisse Elan Capital Nicogel Elan-Suisse Nicotea Aquacinc...  Page 77 of 78

the hurricane clean up work in the Gulf of Mexico
Parashkev Nachev – On to other projects
Norman Botha – Found work for another brokerage firm in RSA
Dirk Mostert – Moved on to Merchant West Treasury Partners
Cameron Scott and Alex McAlery – Still operating HIVEX Ltd. in
Durban and Johannesburg
Rick Crook – Still headmaster of the Bishopslea School in Harare and
reluctant host to Cormick
Jennifer Mortleman – Trying to get on with life and raise three children
without income or assistance from the brilliant Dr. Cormick. I also
noticed that Cormick registered the jennifermortleman.com domain on
January 16, 2006 yet has not posted anything to that as yet (which does
seem out of character for Cormick – perhaps he is finally growing a
conscience. Do you think so?  No?  Neither do I...).

I would call this the end to this rather sordid story, but more things keep
coming in on Cormick and this Elan Suisse affair. I do have a lot of other
work to do; therefore, this site may go quiet for a while so that I can get
some of that work done. I will update again when I have more to report.
Until then, remember, "do your due diligence".

**March 20, 2006 Update**
**"I Will Gladly Pay You Tuesday for a Hamburger Today!!!"**
Cormick was coddling up to Valenti International and Wendy Seinturier
of "The Perfect Partner" in mid to late-2005 (look through the web pages
to see the type business) to act as 'majordomo for a man of his means'.
So, he was obviously looking for a rich widow off of which to sponge. In
African and European cultures, the word may be different but the concept
remains the same. We in America call this type of person a "Bum".

And see this rather entertaining Cormick muse [this one is over the edge
– we should sell it to daytime soaps] as well as these e-mails. My
favorite quote in that muse is Cormick's "*I feel betrayed and hurt and
physically shocked...*" "Dr." Cormick used his [purportedly]
considerable wealth and power to beat up and discredit a very hard target
– a 20-year-old female college student from Georgia that was so crass as
to warn Ms. Valenti that he is not what he says he is (in order to save Ms.
Valenti the embarrassment and potential liability of having her clients
scammed). Here is Cormick's explanation of the incident. This is high
drama indeed! And Cormick's other comment that brought a smile to my
face as 'Pure Brett' was "Is this the Valenti way, cocaine, sexual
entrapment for cash, breaching client confidentiality, corporate sabotage
and more?" That Cormick is Brilliant!!!

Dr. Brett Cormick and Elan Suisse Elan Capital Nicogel Elan-Suisse Nicotea Aquacine...   Page 78 of 85

**March 21, 2006 Update**
The question persistently lingers as to what happened to all of the money
Cormick has gained on the backs of investors through his life of crime? I
certainly want my money back. I am positive there are a whole bunch of
others that feel likewise.

Do you think that Cormick has squandered this entire cache of money?
Do you think that Cormick does not have an "Exit Plan" for this drama?
I believe there is a considerable stash of money hidden away that (at least
Cormick thinks) only Cormick can find. That money belongs to me as
well as to all of the other "Targets" of Cormick's schemes. It may
require some strong-armed methods of persuasion to unearth the location
of that money however. That will probably require governmental agency
intervention. I will continue to assist any and all agencies to gaining
opening of these offshore accounts and return this money to its rightful
owners.

But I must admit, Cormick is certainly a clever crook [unlike that idiot,
Walters, who got caught]. He outsmarted London's Metro Police in 1997
after they arrested him on Fraud charges (they could not make the
charges stick – even after they had all of "the goods" on him...) allowing
him to get away with Alan Dean's money. It has taken the RSA FSB
over three years to figure out this newest scheme – and Cormick has
already been there, scammed that and left with the investors' money.
That guy is slick!

**March 28, 2006 Update**
There are two dangling issues from John Walters' only e-mail to me:
1) His statement that he never received any benefit from the money
   Cormick stole from me, and
2) His statement that he is no longer associated with Cormick

1) I cannot find where Cormick scammed anyone after me [he scammed
Zog and Peter Kipps before he got me] and before the RSA investors sold
by Norman Botha. It is my understanding that the FANews ads came out
before the RSA investors "invested" in Elan Suisse. The payment for the
ads came from a UK bank account according to Angelo Cappola
(FANews Editor). So, Aquacine was promoted through the ads in
FANews. The RSA investors put money into Elan Suisse Biopharma
which [reportedly] invested into Aquacine et al. So, where did the money
come from to pay for that FANews ads? Answer: it was from money
stolen from me.

So, the Elan Suisse Biopharma Fund and its companies [Aquacine,

Nicotea, Nicogel, Smart Water Technologies, et al] are operated by [at least one] convicted criminal, financed by stolen money and promoted through ongoing misrepresentations.

2) I still find it amazing that Walters supposedly distanced himself from [read "dumped"] Cormick. The reason this is so incredible is that [assuming that it is true Walter dumped Cormick and he is telling the truth for once] Walters obviously saw his association with Cormick as more of a liability than an asset. That would mean that Walters [a convicted criminal] saw his association with Cormick as detrimental to his reputation. In short, Cormick is making Walters [again, a convicted criminal] look bad!!!

From sources within Zimbabwe, Cormick is representing that his source of income is from his friends who are "giving him money" so that he can continue to take international trips with his children to expensive resort areas in Europe and such. It seems obvious to me that he is financing these trips with money stolen from investors. Trace the source of this money and you will find your lost funds.

### March 29, 2006 Update
More interesting stuff - that Cormick is predictable. This from an SEC filing for CoalCorp Pty Ltd:
>>CoalCorp Pty Ltd has made a complaint to the London Metropolitan Police Fraud Squad against European Venture Finance (EVF) and their representative Dr. Brett Cormick. The allegation made is in regards to BPS 40,000 commission fee paid to EVF and Dr. Cormick for consulting services to raise venture capital for CoalCorp Pty Ltd. The BPS 40,000 commission fee was to be deducted from any funds raised. The payment of this commission fee was made on the presentation of documents stating that a specific amount of funding was to be delivered by one of EVF's associated companies. The allegation made by CoalCorp Pty Ltd's Managing Director, Mr. Gordon Subloo, is currently being investigated. On conclusion of this investigation the company will reserve the right to take civil action against EVF and Dr. Cormick for damages.<<

I have no information on whether or not CoalCorp Pty Ltd ever filed civil action against Cormick or EVF. But I will do some more digging... Also, it does not appear that this is the same scam as the Alan Dean scam [since Alan Dean was in IT – i.e. not in CoalCorp's line of business]; therefore, I assume that these were two separate scams. Reportedly, Cormick got Dean for £70,000. Per the SEC filing for CoalCorp, Cormick got them for £40,000. Cormick reportedly paid Keith Oliver £60,000 to get him off of the charges. That still makes a [£70,000 +

£40,000 - £60,000] £50,000 profit for Cormick. That is slick!!!  Crime pays – and in Cormick's case, quite handsomely.

**New Information** – the domain elan-biocapital.com has been abandoned. I am unsure as to what that means. That was the domain for the Elan Suisse Biopharma Fund. It seems obvious to me that the scam is dissolving since all of the money has gone away.

**"Those opposed to our principles have enlisted the services of like-minded countries and their leaders, and deceitfully and dishonestly used the media ... vilifying us as undemocratic because we have dared to put the interests of the poor and down-trodden first"**
Zimbabwean President Robert Mugabe - Speaking today at a dinner he hosted for Equatorial Guinea's visiting President Teodoro Obiang Nguema Mbasogo.

### UPDATED TALLY OF CORMICK SCAM TAKES:
$250,000     Bob Christ on Earnest Money Scam
$140,000     Peter Kipps on Equity Scam for Elan Suisse RSA (£75,000
x 1.75 conversion factor)
$70,000      Zog on an Equity Scam for the Botswana Fiasco
$122,500     Alan Dean on Advanced Fee Scam (£70,000 x 1.75)
$70,000      Gordon Subloo of CoalCorp on Advance Fee Scam (£40,000
x 1.75)

$652,500     Total scam take discovered thus far through this investigation

### March 31, 2006 Update
These scam takes come in two forms – 1) direct payments to Cormick that are then stashed away into his personal accounts, and 2) payments made on his behalf as part of the business.

1) Thus far, we have quantified $652,500 with several people still remaining to report in including – but not limited to - Anthony Carter [who may still be in jail - I have not heard as yet about the trial results in Zimbabwe], Miko Rwayitare, Solomon Mujuru and the investors in RSA sold by Norman Botha.
2) This one is even harder to quantify – The city of Dieuze, France who constructed a full production facility for this Aquacine business, the various parties surrounding and backing this venture, the Wales Botanical Gardens and backers, Elan Suisse RSA and the various folks around it, how about the folks in England, RSA and Zimbabwe that interrupted their lives and livelihoods to follow along with "The

Brilliant LSE-Educated 'Dr.' Brett Cormick" and former NASA
representative "Dr. John Walters", The Botswana Fiasco, etc.

**New Information:** From this allAfrica.com news article dated March
10, 2006
>>TELECEL Zimbabwe was yesterday convicted of contravening the
Exchange Control Act involving US$900 000 as its two executives, Mr
Edward Mutsvairo and Mr Anthony Carter were cleared of the charges.

Harare magistrate Mrs Sandra Nhau convicted the mobile phone service
provider after overwhelming evidence before postponing the sentence to
March 14.

In passing the judgement, Mrs Nhau said Telecel former managing
director, Mr Carter and Mr Mutsvairo, the company secretary, were only
operating in the interest of the company.<<

From a January 20, 2006 Econet Wireless Press Release:
>>Econet Wireless Zimbabwe has strengthened its executive
management by appointing Anthony Carter as Chief Operating Officer
and Ricky Mapani as General Manager responsible for the company's
investment arm, EW Capital.<<

[Meanwhile back at Nicogel] This article came out in the Cambridge
Evening News on March 7:
>>"Our sales for a new product are substantial. It's ground-breaking,
really. It will probably exceed £10 million this year," said Dr Walters.<<

**April 9, 2006 Update**
I have gotten some reports that there is an organization in Dubai by the
name of Elan Suisse Standard Charter Bank. I am now looking for
further information on the newest Elan Suisse organization.

**May 18, 2006 Update**
I have been very busy with other work, but this sordid affair keeps
moving. In England during March 2004, Cormick told me a story about
"one of his Australian Army mates" who had been to the brothels of
Bangkok then returned home to his wife. His wife subsequently
developed a bad case of VD and confronted him about this. His strategy
was and is that the best defense is a good offense. This 'gentleman'
immediately attacked his wife "You [vulgar female-based expletive
deleted]!!! You have been cheating on ME!". The wife then admitted to
having an affair. The red herring worked. Cormick really thought that

was clever. He apparently uses this same strategy a lot (as evidenced by his attacking my wife with personal insults after I asked that he account for the funds I had entrusted to him).

In April 2006, I retained an attorney in Delaware since that is the location from which Cormick et al used a corporate entity to process this scam. I filed case number D. Del. C.A. No. - 06-00275 GMS in the Delaware Federal District Court against the following:

1. Brett John Cormick
2. John Walters
3. Dianne Marshall
4. Nicogel Ltd. (UK)
5. Elan Suisse Ltd. (UK)
6. Elan Suisse (Pty) Ltd. (South Africa)
7. Elan Suisse International Holdings (USA) LLC (Delaware USA)
8. Mercari Financial Services (South Africa)

True to form, I received a letter from an attorney in Media, Pennsylvania purporting to represent "The Elan Suisse Group" threatening to enter into suit if I did not take down this web site. This was fortuitous since I now had a place to serve Cormick and Elan Suisse in the USA! I have not heard back from this attorney since we requested service of process. What a surprise... The only information I gleaned from that letter was that this web site is bothering Cormick. It seems that the truth hurts. Good.

On May 17th, I received a letter from an attorney stating to represent John Walters, Dianne Marshall and Nicogel Ltd. as follows:
>>begin inclusion>>
I have been retained by Nicogel Ltd, Dr. D. E. Marshall and Dr. J. A. Walters.

The Complaint you have filed shows that Nicogel Ltd. was not in existence when the alleged fraud supposedly occurred. Indeed, on Mr. Christ's website, he admits that he was not aware of Nicogel Ltd. until October 31, 2005. Drs. Marshall and Walters did not even meet Mr. Cormick for the first time until after the alleged transaction.

Moreover, as a factual matter, Nicogel Ltd. never received any money from Mr. Cormick or anything or anyone with anything to do with him [see this – RDC], and neither Mr. Cormick nor any Elan Suisse entity is a shareholder of Nicogel Ltd. and has not been at any time.

My clients insist that you immediately dismiss them as defendants in this action as Mr. Christ is clearly engaging in harassment of them.

Moreover, it is evident that there is no reasonable basis for the exercise of jurisdiction over Nicogel Ltd, Dr. Marshall and/or Dr. Walters in Delaware as they have never visited Delaware , done business in Delaware or have any assets in Delaware. In addition, neither Nicogel Ltd., Dr. Marshall nor Dr. Walters have never met or talked with Mr. Christ or have any contract with or liability to Mr. Christ.

If you do not immediately dismiss my clients from this action, they have instructed me to move to dismiss and to seek sanctions for frivolous allegations and unjustifiable assertions of jurisdiction in Delaware.

Additionally, if Mr. Christ does not immediately delete references to Nicogel, Dr. Walters and Dr. Marshall from his website, the parties will institute proceedings in the U.K. for defamation.

Nicogel Ltd., Dr. Marshall and Dr. Walters have ample resources to defend and will defend with the most aggressive legal action available against this calumny.

I look forward to your prompt response. Please do not hesitate to contact me if you have any questions.
<<end inclusion<<

My response is Walters, Marshall and Nicogel Ltd. are again doing the same tactic perfected by Cormick in switching around the jurisdiction. Cormick, Walters, Marshall, et al have had me chasing around the globe to get jurisdiction wasting my time and more of my money in hopes of recovering what was stolen from me. It has worked so well with all of the other targets in the past. I am just a bit more determined than all of the previous targets to get this heard in court. This case will see the inside of a courtroom. And it is good to know that they have 'ample resources'. Perhaps we will find the source of those 'ample resources' during the discovery phase of the case.

The only information I am gleaning from this letter is that they are busily laying down their strategy (mirroring Cormick's strategy) of shuffling jurisdiction to frustrate my attempts to get this into court. And all of these folks sure like to make threat after threat after threat. I have no intention of taking down this web site because I firmly believe that scammers feed off of lack of information. Therefore, I feel that the business community needs to know what happened here. I will continue

with updates until this case is resolved. So, Dr. Walters, please proceed with your case.

If they enter suit in the UK, we are going to get it transferred back to Delaware (again, they seem to be keeping with the strategy to jurisdictionally dilute this case). This will all be heard in Delaware at a jury trial. There are so many scams running around the world that I am sure that the defense is going to have a hard time finding a juror whom has never been the victim of a scam. Also, in the USA legal system compensatory and punitive damages are allowed. This is going to be an interesting case.

>>begin inclusion of my response>>
I write in response to your letter dated May 17, 2006 concerning the above-referenced action.

Notwithstanding your claims to the contrary, Mr. Christ believes there is ample evidence to support the allegations in his complaint that the funds misappropriated from him in 2004 ultimately were used in early 2005 by Mr. Cormick, with the assistance and acquiescence of Dr. Walters and Dr. Marshall, to start up Acquacine Ltd., which ultimately became Nicogel Ltd. The allegations of Mr. Cormick's complaint clearly state a cause of action for civil conspiracy against Nicogel Ltd., Dr. Walters and Dr. Marshall. The same allegations similarly support the assertion of personal jurisdiction over your clients pursuant to 10 Del. C. § 3104 by reason of their involvement in a conspiracy to defraud Mr. Christ through the use of a Delaware entity, Elan Suisse International Holdings (USA) LLC.
In short, we are confident that the claims alleged against Nicogel Ltd., Dr. Waters and Dr. Marshall will survive a motion to dismiss.
Additionally, your accusation that Mr. Christ is attempting to harass your clients and your threat of sanctions have no merit and are wholly unwarranted. If you wish to discuss this matter further, please feel free to contact me.
<<end inclusion<<

Further, their entire strategy from the start has essentially been "We've got his money. He'll wise up eventually and go away." I will go away after I get my money back or these people are in jail. Not before.

I received a phone call from a physical therapist in Philadelphia that was doing a due diligence on Nicogel Ltd. Apparently, there is a Pennsylvania-based investment group interested in investing in Nicogel. From my conversation with this gentleman, it seems Walters [instead of

Dr. Brett Cormick and Elan Suisse Elan Capital Nicogel Elan-Suisse Nicotea Aquacine... Page 85 of 85

being part of the scam perpetrators] is claiming to be another victim of
Cormick. And the cycle renews. Mr. Green, well, best of luck!

And this sordid saga continues.

Notwithstanding your claims to the contrary, Mr. Christ believes there is ample evidence to support the allegations in his complaint that the funds misappropriated from him in 2004 ultimately were used in early 2005 by Mr. Cormick, with the assistance and acquiescence of Dr. Walters and Dr. Marshall, to start up Acquacine Ltd., which ultimately became Nicogel Ltd. The allegations of Mr. Cormick's complaint clearly state a cause of action for civil conspiracy against Nicogel Ltd., Dr. Walters and Dr. Marshall. The same allegations similarly support the assertion of personal jurisdiction over your clients pursuant to 10 Del. C. § 3104 by reason of their involvement in a conspiracy to defraud Mr. Christ through the use of a Delaware entity, Elan Suisse International Holdings (USA) LLC.

In short, we are confident that the claims alleged against Nicogel Ltd., Dr. Waters and Dr. Marshall will survive a motion to dismiss. Additionally, your accusation that Mr. Christ is attempting to harass your clients and your threat of sanctions have no merit and are wholly unwarranted. If you wish to discuss this matter further, please feel free to contact me.

<<end inclusion<<

Further, their entire strategy from the start has essentially been "We've got his money. He'll wise up eventually and go away." I will go away after I get my money back or these people are in jail. Not before.

I received a phone call from a gentleman [I have deleted references to his profession] in Philadelphia that was doing a due diligence on Nicogel Ltd. Apparently, there is a Pennsylvania-based investment group interested in investing in Nicogel. From my conversation with this gentleman, it seems Walters [instead of being part of the scam perpetrators] is claiming to be another victim of Cormick. And the cycle renews.

And this sordid saga continues.

**May 30, 2006 Update**
All of the defendants (except Mercari) have hired the same attorney in Delaware for this case to jointly process. I received a "Motion to Dismiss" from all of the defendants (except Mercari). The information I am gleaning from this is that Walters et al and Cormick et al are at the very least having close communications (which would seem at odds with Walters' assertion that he is no longer involved with Cormick et al and is another of his victims) with regards to this case.

The court papers filed by Cormick et al and Walters et al continued with

their strategy of attempting to deny jurisdiction without suggesting an alternative jurisdiction. However, they have now put forth a new argument that this case is beyond the statute of limitations since I entrusted money to Cormick in March 2004 (more than two years after I instituted the May 2006 suit in Delaware). One more new bit of information is that Cormick now claims to live in <u>both</u> the Republic of Zimbabwe as well as the UK while remaining a citizen of Australia. I do not know if this new bit of information is significant, but it does keep his options open to jump jurisdictions again. "Let us move this to Pennsylvania – then we can argue over jurisdiction – then to the UK – then we can argue over jurisdiction – etc." And the pea shuffle game continues. But our biggest hurdle with regards to this Delaware case was obtaining service of process on Cormick – **which has apparently been achieved!** So, I am interpreting this as positive progress with regards to this case.

The summary of their answer follows:
- They assert that there is no basis to assert personal jurisdiction in Delaware over Cormick since any alleged actions were **not** undertaken in his capacity as a manager of a Delaware LLC or related to the business of the LLC (which, of course, is at odds with the sworn affidavit filed in the South African case in which he asserts that he was only acting in his capacity as the manager of the [at that time unformed] LLC).
- Cormick et al asserts that Pennsylvania laws apply (and I am fairly certain that if we transferred this to Pennsylvania they would assert that Delaware laws apply).
- They assert that the fraud and conspiracy claims are barred by the statute of limitations.
- They assert that the court should stay the action pending resolution of the case I filed in South Africa (where Cormick claims lack of jurisdiction – see the plea pages <u>3 4 5 6 7 8 9</u>). At this point, if this point succeeds we are in a circular on these cases in that the RSA case cannot move forward due to lack of jurisdiction and the Delaware case cannot move forward pending the resolution of the RSA case.
- They assert that the court should sanction me for unjustified action "designed to harass and increase expense". Right.

This also continues with their strategy of muddying a simple case of misappropriated funds. I continually want to address the US$250,000 these people stole from me. They continually want to direct the issues away from the central monetary issue to personal (my sexual orientation,



my wife's sexual preferences, whatever...) issues as well as arguments over jurisdiction. The motion to dismiss, as filed in the Delaware court, was an exhausting 63-pages [all for a simple breach of contract case].

Also on page 11 of the "Motion to Dismiss" is the following footnote "Mercari Financial Services (Pty) Ltd., a South African Corporation (Complaint ¶8), apparently is defunct." If this is true, it would appear that Mercari has served its purpose and is no longer needed. Within the last two weeks, the web site for Mercari has finally been either taken down or the web master has blocked this IP. So that leads back to the question, was Dirk Mostert (president of Mercari) in on the scam?

From the excitement of starting a new business with someone I thought was a trusted friend, to the shock of finding out I have been scammed by someone I trusted (who, consequently, turned out to be a seasoned professional scam artist), to the determination to get this placed into a court of law to have it heard. It is a matter now of slowly and steadily navigating the legal gauntlet before me.

It might be interesting to note that today I spoke with the gentleman from Philadelphia doing the due diligence (as mentioned on the May 18th update above) stating he did not want to become involved with this case. These people [Cormick/Walters et al] have been successful at scamming investors for years due to the simple fact that no one was willing to step forward with the information on their business practices. But I do respect the right to "Not Get Involved". The information on this page has been gathered meticulously in support of my attempts at recovery. I have placed it here since I would want someone to do me the same favor if the roles were reversed. It is the reader's choice to use it or not use it.

There are many scams out there. When one shuts down, the next one pops up since there will always be dishonest people (as well as trusting, honest and hardworking people as targets). There is no way to shut them all down. But I want to shut this one down.

### May 31, 2006 Update:
I received request to take the reference on this page to the manager of the US manufacturing facility for Nicogel Ltd. off of this page. Complied. If someone would like the information about this operation, please contact me via e-mail. My interpretation of this is that everyone can now see that this is going to trial and thus is running for cover. I am an experienced forensic accountant. I will rip apart every organization attached to this scam to find out what happened to my money. Then I will hold those

Dr. Brett Cormick and Elan Suisse Elan Capital Nicogel Elan-Suisse Nicotea Aquacine... Page 87 of 88

responsible accountable.

Here are the requisite court documents so that the reader can view and draw his/her own conclusions:
- Original Particulars of Claim done in RSA
- Cormick's RSA Opposing Affidavit (it completely contradicts the e-mail correspondence)
- My RSA Replying Affidavit
- Cormick's Plea Denying Jurisdiction in RSA
- My suit filed in Federal District Court in Wilmington, Delaware USA
- Cormick/Walters et al Reply

So, let us cover the points in the Cormick/Walters et al Reply:
1. Nicogel has nothing to do with this case. Aquacine became Nicogel in December 2005. Cormick used as part the representation/enticement for me to trust him with funds that Elan Suisse was in the midst of forming a biotech fund. Here is the June 22, 2004 advertisement for Elan Suisse's promotion of Aquacine.
2. Dianne Marshall has nothing to do with Elan Suisse. Here is an Elan Suisse BioPharma Fund detailed presentation with Dianne Marshall as the author.
3. John Walters has nothing to do with Brett Cormick or Elan Suisse. Here is an article in the reputable financial publication MoneyWeb in Johannesburg.
4. The Delaware Courts have no jurisdiction. A Delaware corporation was used/abused by a group of international scam artists [Cormick/Walters et al] as a conduit to defraud a US-based investor [me]. I am pretty sure a competent judge in the US District Court will see this. The playing field is level here and this case will finally be heard upon its merits. We will take about that in court.
5. Pennsylvania laws apply. And if we go to Pennsylvania, I am sure they will claim that Delaware laws apply. This jurisdictional shuffle game has now stopped. We will talk about this in court.
6. The Pennsylvania two-year statue of limitations applies. I became suspicious of Cormick in late-summer 2004 when he has already stashed away all of my money. That was less than two years ago. We will talk about that in court.
7. The court should stay the Delaware proceedings pending outcome of the RSA case. We will talk about this in court.

8. The court should sanction Mr. Christ (that would be me) for
his unjustified actions designed to harass and increase
expense. Right. We will talk about this in court.

So, the hardest part of this case has been accomplished - which is simply
getting this into court. We are going to court. We will save the
remainder of the talk for that forum. The remainder of the files and
information I have held back due to confidential sources will come out
during trial.

It makes no difference to me if I obtain recovery from Cormick or
Walters or Marshall or Nicogel or Elan Suisse or any other responsible
party. But one of these entities (in all likelihood the deepest pocket) will
be held accountable. My strategy is quite simple – 1) I will bring this to
court. 2) I will get a judgment, and 3) I will start seizing anything and
everything of value that the responsible people own. I do not think that
any of either the Elan Suisse or the Nicogel companies is worth anything
since they are apparently only conduits to defraud investors. The only
entity that I can see that has any value in this colossal scam is Dianne
Marshall. I will start with her. Once she satisfies the judgment, she can
take this up with the remainder of her "partners" in this "business
venture".

**EXHIBIT "B"**

**TO ALL TO WHOM** these presents may come, I, **Mark Kober-Smith**, Notary Public, of 6 Carlos Place London W1K 3AP, England duly admitted and sworn

**DO HEREBY CERTIFY** that the attached Affidavit was sworn before me by **BRETT CORMICK**

**IN FAITH AND TESTIMONY** whereof I the said notary have put my name and affixed my seal of office at London this 18th day of May 2006

**KOBER-SMITH & ASSOCIATES – NOTARY PUBLIC**
6, Carlos Place London W1K 3AP
TEL : 020 7499 2605 FAX: 0207 907 9939
WEB: www.notarypublicinlondon.com
EMAIL: notary@notarypublicinlondon.com

**AFFIDAVIT**

I, BRETT CORMICK, a Director for the corporation, Elan Suisse, (Pty), Ltd.,
(hereinafter referred to as "Elan") state the following according to my best information,
knowledge and belief.

I am a person with extensive experience and an excellent worldwide reputation in the
International Financial Services industry. During the past fifteen (15) years, I was
employed by some of the biggest financial firms in the world, owned my own division of
a bank and am registered as a fully accredited and licensed international asset manager
and financial engineer. I was a managing director of the ABM Amro Bank Group, one
of the biggest banks in the world, in their Merchant Banking arm Mees Pierson. I was a
consulting Director of Corporate Finance within the Electra Group, one of the largest
private equity firms in Europe; the Chairman & CEO of Trust Bank Investment Services
and a Director within the Hambros Bank Group, based in London but working in every
country in Europe.

I obtained my doctorate in economics, completed post doctoral studies at the Graduate
School of the London School of Economics and Political Science Department of Finance
and Accounting, where I authored a university text book on Macroeconomics and
Political Economic Theory, and have lectured worldwide at business schools and
universities in the financial services industry. As such, I have gained vast experience in
the creation, development, marketing, licensing and distribution of financial services
products. As an Australian citizen, I also attended the Australian Royal Military College,
on a full commonwealth scholarship, and served as an officer in the Australian Military
for over ten years

I have completed professional studies at Harvard Business School, INSEAD the
European Institute for Business Administration, Oxford University, The London School
of Economics, CIMA at The London Business School, The Imperial College of Science
Technology and Medicine London University and the International Centre for Monetary
and Banking Studies in Geneva.

Approximately three (3) years ago, as part of a suite of new investment asset classes and
products I had developed, for international investors not able to access these types of
assets classes previously, I created an investment product ("the produet") that effectively
provides a safe investment vehicle for international retail and institutional investors
wishing to invest in US dollars, by investing in short duration AAA bonds underwritten
by the government of the USA (the investment with the lowest risk one ean attain in the
international bond market).

The product is one of the trade secrets of Elan . Accordingly, I set up the Elan Suisse
Group ("the group") as a structure to facilitate the marketing, engineering, structuring,
development, licensing, distribution, administration, management, placement and selling
of the product, and others with it. The group consists, in chief, of Elan in South Africa, a

fully registered and licensed asset management company and a similarly named private company in the US. The U.S. company is Elan Suisse International Holdings ( USA, LLC). The intellectual property of Elan, consisting in the main of the product and the customer data base built up from the sale of the product in the South African retail investment market, will be held by the entity registered thereon in the US.

Thus Elan was set up and incorporated during or about July 2003. I also started negotiations with the Financial Services Board of South Africa ("the FSB") in order to ensure that Élan obtain the necessary statutory approval for its proposed activities, and the individual registration of the underlying product bases. The approval was initially granted to myself on the 13th of May 2003 in my personal capacity, as appears from the letter from FSWB to myself attached hereto. Later, during or about September 2004, the same approval was granted to Elan, as appears from an e-mail from the FSB attached hereto. The registration number of Elan with the FSB is 852. I funded the setting up of Elan within the structure as is set out above. By the beginning of 2004, the cost was approximately $1.6 million dollars.

This had resulted in the creation of a national monopoly for Elan on the product for the entire South African finance market, and was subsequently approved for sale and national distribution by some of the largest banks and financial institutions in South Africa entailing well over two years work just to this point. The time came to set up and incorporate the entity in the US as part of the structure as set out above.

I knew Robert Christ (hereinafter "Christ") since 1996, and, in the normal course of correspondence between us, I informed him of the product, its regulatory approval, the subsequent national monopoly on the asset class, its acceptance for distribution by some of the largest and most prestigious financial institutions in South Africa, and the structure for the sale thereof as is set out above.

From the beginning of 2004, several discussions ensued between me and Christ in this regard. The result was that, during or about February 2004, Christ and I agreed that an entity in the form of a corporation would be incorporated in Delaware in the US; and that Christ would invest $350,000.00 in this entity. In return for his said investment in the said entity, Christ would receive 50% of the equity shareholding interest. Christ would represent the said entity in the US and assist with the development thereof by attending to issues such as marketing, completing due diligence on prospective sub managers, managing the investor base, public relations, the intellectual property, and the product would be seated in the said entity as part of the strategy as is set out above. And on the sale of the said entity in the US, Christ would receive a further amount equal to his initial investment and profits therefrom.

These were the terms of the agreement between myself and Christ. Christ traveled to Cape Town, where over a period of several days, we discussed this agreement in complete detail. During said discussion on a day trip to Stellenbosch, approximately during January 2004, I specifically made it clear to Christ that he invests his money in the

entity incorporated in the US alone; he has nothing to do with Elan in its day to day activities, and he receive no equity in Elan. His only link to Elan would be when it is sold, together with the entity incorporated in the US, as part of the aforesaid strategy; and he is only authorized to represent the entity incorporated in the US. It is on the basis of this oral agreement that Christ invested $250,000.00 in the entity that was incorporated in the US as Elan Suisse International Holdings ("Holdings").

As set out above, I have been occupied with the business of Elan and Holdings for the past three (3) years on a full time basis. Christ, as will appear more fully hereunder, repeatedly confirmed his investment. Although he invested less than originally agreed, he confirmed his share as a 36% equity owner which represented the $250,000.00 invested. In a series of e-mails that passed between myself and Christ from the 28th of January 2004 to the 14th of February 2004, I advised Christ and represented that I have spent the previous two (2) years setting up Elan in South Africa as a financial engineering company, with a national network of independent financial advisors ("brokers") and institutions, in South Africa. I had already invested some $1,600,000.00 in setting up the business of Elan and I was looking for an investor to enable me to complete the project from the US end.

The discussion centered around an investment in Holdings, and I explained the entire structure and the exit strategy as is set out above to Christ, who accepted this as an experienced financial person as he holds a CPA qualification. I emphasized that the discussion was not limited to e-mails that passed between myself and Christ, it was supplemented by our oral conversations, resulting in the aforesaid agreement, for which Christ traveled to Stellenbosch specifically to discuss same with me, while visiting Cape Town for personal reasons. From the very beginning, and as was made clear in Stellenbosch, I held out to Christ that his investment is governed by the Articles of Association of Holdings, and I supplied him with a draft copy of same for his review with other supporting documentation including South African financial institutional support for the products, regulatory approval etc. As a CPA, Christ was aware of this and accepted this fully, as appears from his later e-mail of 17 September 2004, copy attached, and his e-mail dated 18 September 2004, copy which is attached, from which he clearly indicates that he knows his investment must be "liquidated" through the sale of his shares.

Sometime in the month of September, Robert Christ started operating a Website "elan suisse.co.za.". He is not authorized by the Elan or Holdings to operate this Website. Since the above date, and a tleast through April 2006, he has posted extremely defamatory statements on this Website regarding myself, Elan Suisse and associated companies and their investors and employees.

Christ apparently has done this to try and force Holdings and/or Elan to buy out his interest in Holdings. He is attempting to extort money from Elan and blackmail its affiliates, associates and officers. Christ is posting defamatory material on the website in hopes that the Elan Company or its associates will buy out his interest.

Chist's actions in this regard, however, have caused Elan, Holdings and its associates to suffer harm such that if Christ is not stopped from such actions, and the Website shut down, the harm will be irreparable. To date, Christ's actions of posting on the Website have resulted in:

-       The collapse and withdrawal from the market after 3 years work of the first Short Duration AAA US Bond Fund ever to receive regulatory approval for launch in South Africa

-       The irreparable loss to Elan of a national monopoly of this asset class

-       The permanent  destruction of all working relationships formed over a 3 year period with the largest financial institutions and broker networks in South Africa

-       The loss to the national retail and institutional markets in South Africa in millions of dollars in investment returns

-       The collapse and withdrawal from the market of the first Bio Pharma Investment fund of its kind in the world

-       The collapse and withdrawal from the market of the first REIT Fund in South Africa

-       The irreparable loss to Elan of an international monopoly of this asset class

-       The collapse and withdrawal from the market of the first investment fund of its kind in South Africa to convert South African Rands into hard currency returns

-       The complete operational shut down of Elan in South Africa

-       The loss of jobs and professional industry credibility and reputation for professional staff who resigned from high ranking positions in industry and finance to work for Elan

-       The collapse and withdrawal of the first CDO Fund ever to be launched in South Africa

-       Permanent collapse of negotiations with regional governments wishing to participate in the above mentioned product including the governments of Lesotho, Swaziland, Botswana and Seychelles

-       The deliberate destruction of Elan as a viable operating entity after millions of dollars of development and years of work

-       The deliberate destruction of Elan as an investment for its shareholders (including Christ who has destroyed his own investment and ability to liquidate his stock)

-    The irreparable loss of professional relationships with some of the largest financial institutions in Europe after 15 years relationship building

_(signature)_     18 MAY 2006.

**BRETT CORMICK**
Director for Elan Suisse Group

Sworn to and subscribed

before me this _18th_ day

of _May_ , 2006.
   Notary Public

MARK ESSER-SMITH - NOTARY PUBLIC
6 CARLOS PLACE, LONDON W1K 3AP
TEL: 020 7409 2935
notarypubliclondon.com



**EXHIBIT "C"**

AA UOLE/TIME     NN9-T9-COUD(FKI) U9:UT          CD3 4 TUCCT4                     P.UUC

FROM : KIPPS EMPLOYMENT AGENCIES        PHONE NO. : 263 4 702214          May. 19 2006 12:47PM P2

## AFFIDAVIT

I, PETER JOHN KIPPS, Resident of Zimbabwe, do hereby declare that I am an Investor with Elan Suisse Group, in the amount of US$140 000,00 (One hundred and forty thousand United States Dollars).

Based upon my viewing the Website of Robert Christ at www.elansuisse.co.za any, and all related searches thereto, which have been directed me back to said Website and based on said Website, my Investment in Elan Suisse Group has been irreparably harmed as we can do no further business with any other Companies, due to the disparaging comments about the company within the Website, a result of which has severely diminished the value of my investment with the Elan Suisse Group as the Company cannot conduct its intended business.

Signed in Harare, Zimbabwe, this ___16__ day of ___May___, 2006

PETER JOHN KIPPS

Nutarised by:

Signed in Harare, Zimbabwe, this ___19__ day of ___May___, 2006

Stamp / Seal:

**EXHIBIT "D"**

## AFFIDAVIT OF APOSTOLOS ZOGRAPHOS

1. Mr Apostolos Zographos, of The Republic of Seychelles.

2. I am an investor with Elan Suisse Group in the amount of $81,667.00 (eighty one thousand six hundred and sixty seven dollars).

3. Based upon my viewing the Website of Robert Christ at : www.elansuisse.co.za and all related searches thereto which have directed me back to said Website and based on said Website, my investment in Elan Suisse Group has been irreparably harmed as we can do no further business with any companies due to the disparaging comments about the Company within the Website, a result of which has severely diminished the value of my investment with Elan Suisse Group as the Company cannot conduct its intended business.

4. Christ's disparaging remarks on the Website have caused current Investors not to reinvest, and potential investors not to invest in Elan Suisse i.e. have diminished the profits of Elan Suisse.

Apostolos Zographos

24th May 2006

SWORN BEFORE ME
at chambers, Kingsgate House, Victoria,
Seychelles on this 25th May, 2006

**EXHIBIT "E"**

## AFFADIVIT

I, ANTHONY JOHN CARTER, Resident of Zimbabwe, do hereby declare that i am an investor in the Elan Suisse Group, in the amount of US$200 000 (Two Hundred Thousand United States Dollars).

Based upon my viewing of the website of Robert Christ at www.elansuisse.co.za and all related searches thereto, which have directed me back to said website and based on said website, my investment in Elan Suisse Group has been irreparably harmed, as the Group can do no further business with any other Companies due to the disparaging remarks and content about the Group contained within the website and associated links.

The value of my investment in the Elan Suisse Group has been severely diminished as a result of the content on the website in question.

Signed at Harare, Zimbabwe this 22nd day of May 2006.

ANTHONY JOHN CARTER

Notarised...MUGUGU
...U.S.U.Z
...AFFAIRS EXECUTIVE
...INISTER OF OATHS
...MISSIONER OF
...AL PRACTIONER
...TARY PUBLIC
...CONVEYANCER
...DATE

Signed at Harare this 22nd day of May 2006.

Stamp/Seal:

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

ELAN SUISSE Ltd.

         VS.

ROBERT D. CHRIST

:

: NO.  $CL$-$1554 C$

   CIVIL ACTION - LAW

: JURY TRIAL DEMANDED

## CIVIL COVER SHEET

Local Rule 205.2(b) requires this form be attached to any document commencing an action in the Montgomery County Court of Common Pleas. The information provided herein is used solely as an aid in tracking cases in the court system. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.

| Commencement of Action: *(check one)* | | Amount in Controversy: |
|---|---|---|
| ☒ Complaint     ☐ Petition     ☐ Notice of Appeal | | ☐ $50,000 or less |
| ☐ Writ of Summons   ☐ Transfer From Other Jurisdiction | | ☐ More than $50,000 |
| ☐ Declaration of Taking | | |

**Case Type and Code** *(check the most specific classification ONLY)*:

| **Appeals** | **Real Property** | **Negligence** |
|---|---|---|
| ☐ DJ – Money Judgment | ☐ Ejectment | ☐ Motor Vehicle |
| ☐ DJ – Landlord/Tenant | ☐ Quiet Title | ☐ Premises Liability |
| ☐ Drivers License Suspension | ☐ Mechanics Lien | ☐ Product Liability |
| ☐ Vehicle Registration Suspension | ☐ Mortgage Foreclosure | ☐ Asbestos |
| ☐ Local Agency | ☐ Partition | ☐ Other Toxic Tort |
| ☐ Board of Assessment | ☐ Replevin | ☐ Other |
| ☐ Zoning/Land Use | ☐ Other | |
| | | **Miscellaneous** |
| **Contract** | **Professional Liability** | ☐ Appointment of Arbitrator |
| ☐ Construction | ☐ Medical | ☐ Class Action |
| ☐ Employment | ☐ Dental | ☐ Confession of Judgment |
| ☐ Other | ☐ Legal | ☐ Debt Collection |
| | ☐ Other | ☐ Eminent Domain |
| **Intentional Tort** | | ☐ Name Change |
| ☐ Assault/Battery | **Equitable Relief** | ☐ Wrongful Death |
| ☐ Libel/Slander | ☐ Declaratory Judgment | |
| ☐ Fraud | ☐ Mandamus | |
| ☐ Other | ☐ Other | |

Commercial Disparagement and Violation of Federal Statutes

☒ **Other** : _____

      (specify)

**FRONT STREET LAWYERS, P.C.**
**BY: NICHOLAS CASAMENTO, ESQUIRE**
**Attorney I.D. #37931**
**JOSEPH A. RATASIEWICZ, ESQUIRE**
**Attorney I.D.#47453**
**Flagship Corporate Center, Suite 320**
**2 West Baltimore Avenue**
**Media, Pa. 19063**
**610-891-0180**

_____  Attorneys for Plaintiff

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY,
PENNSYLVANIA

| | | | |
|---|---|---|---|
| ELAN SUISSE Ltd. | : | NO. | CC-15540 |
| Plaintiff | : | | |
| vs. | : | CIVIL ACTION –LAW | |
| ROBERT D. CHRIST  : | | | |
| Defendant | : | JURY TRIAL DEMANDED | |

### NOTICE TO DEFEND

You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within Twenty (20) days after this Complaint are served by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP. THIS OFFICE CANNOT PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.**

**IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**

**LAWYERS REFERENCE SEVICE**
**MONTGOMERY COUNTY BAR ASSOCIATION**
**409 Cherry Street**
**Norristown, Pa. 19401**
**610-279-9660 Ext. 201**

Rx Date/Time    JUN-23-2006(FRI) 08:43                                    P. 001
JUN-23-2006  10:00                                                        P.01/01

# MONTGOMERY COUNTY SHERIFF'S DEPARTMENT
## ORDER FOR SERVICE

Please prepare a separate request for service form for each defendant to be served by the Sheriff

To:   Sheriff John P. Durante                          Date: 6/23/06
      Montgomery County Court House
      P.O. Box 311                                      Prothonotary No. O6 -15540
      Norristown, Pa. 19401-0311
      Phone : 610-278-3331    Fax  : 610-278-3832       Sheriff's Cost: 43.00

| Attorney's Or Plaintiff's Name and Address: | | |
|---|---|---|
| Nicholas Casamento, Esquire  #37931 | Civil Action XX | Writ of Execution Levy |
| Joseph A. Ratasiewicz, Esquire #47453 | Confessed Judgement | Writ of Execution Attachment |
| Flagship Corporate Center, Suite 320 | Complaint in Ejectment | Writ of Execution Garnishee |
| 2 West Baltimore Pike | Posting | Writ of Seizure |
| Media, Pa.  19063 | Writ of Possession | Impoundment |
| ATTY.ID#          Telephone # (610) 891-0180 | Other  x | Court Order |

|  | FOR SHERIFF USE ONLY    SHERIFF'S RETURN |
|---|---|
| ELAN SUISSE, Ltd. | |
|  Vs.              PLAINTIFF | PERSON SERVED _____ |
|  | RELATIONSHIP / POSITION _____ |
| ROBERT D. CHRIST | PLACE OF SERVICE _____ |
|                  DEFENDANT | DATE OF SERVICE _____ |
| Robert D. Christ or | TIME OF SERVICE _____ |
| Service Upon: any adult individual | NUMBER OF ATTEMPTS _____ |
| LOCATION (MUST HAVE VALID ADDRESS OR DIRECTIONS) | DEPUTY _____ |
| 2333 Jones Road | DEPUTY _____ |
| Pottstown, Pa.  19465 | LAST DAY FOR SERVICE  7-23-06 |

## SERVICE NOT MADE BECAUSE:

DATE: 6-26-06   TIME: 1420   DEPUTY: Bem   DEPUTY:

| NO SERVICE | BAD ADDRESS | UNKNOWN AT ADDRESS | NEED BETTER ADDRESS |
|---|---|---|---|
| MOVED | BUILDING VACANT | X  ADDRESS OUT OF COUNTY | OTHER |

## POSSESSION TAKEN:

DATE:          TIME:          DEPUTY:          DEPUTY:

ATTEMPTED SERVICE DATE & TIME

Chester Co.

SUPERVISOR APPROVAL

**FRONT STREET LAWYERS, P.C.**
**BY: NICHOLAS CASAMENTO, ESQUIRE**
**Attorney I.D. #37931**
**BY: JOSEPH A. RATASIEWICZ, ESQUIRE**
**Attorney I.D. #47453**
**Flagship Corporate Center, Suite 320**
**2 West Baltimore Avenue**
**Media, Pa. 19063**
**610-891-0180**

_____ Attorneys for Plaintiff

### IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| ELAN SUISSE, Ltd. | : | NO.  $\ddot{\cup}\dot{\cup}\cdot\int c, \dot{\cup}\dot{\varphi}c$ |
| Plaintiff | : | |
| vs. | : | CIVIL ACTION –LAW |
| ROBERT D. CHRIST | : | |
| Defendant | : | JURY TRIAL DEMANDED |

### EMERGENCY PETITION FOR PRELIMINARY INJUNCTION

Plaintiff, by its undersigned counsel, respectfully petitions this Court for an Order

granting a Preliminary Injunction pursuant to Pennsylvania Rule of Civil Procedure 1531,

and in support thereof alleges as follows:

I.    As set forth more fully in the Complaint, a copy of which is attached

hereto as Exhibit "A", Defendant for the last twenty-two (22) months has posted false

and defamatory statements on a Website that he is operating concerning Plaintiff Elan

Suisse, its directors, employees, current and potential investors.

2.    Mr. Christ had no authority to operate a Website using the name "elan suisse", in fact, as set forth in the Complaint Elan Suisse owns the domain name and it is their trademark.

3.    Unless the requested Preliminary Injunction is granted, the Plaintiff as in the past and now, will continue to suffer immediate and irreparable harm which cannot be compensated by damages by reason of Defendant's conduct as set forth in the Complaint and supporting Affidavits.

4.    Plaintiff has no adequate remedy at law.

5.    Defendant will not suffer any appreciable injury if this Petition is granted because the status quo prior to his operating this Website will be restored and Defendant will be preliminarily restrained from posting false and defamatory remarks on a Website using a trademark name that he is not authorized to use.

6.    Defendant's wrongful conduct is actionable; the rights of Plaintiff are clear; and Plaintiff is likely to succeed on the merits of its claims.

**WHEREFORE,** Plaintiff respectfully prays this Honorable Court enter an Order in the form attached hereto.

Respectfully submitted,
**FRONT STREET LAWYERS,P.C.**

BY: _____
**NICHOLAS CASAMENTO, ESQUIRE**
**Attorney for Plaintiff**

BY: _____
**JOSEPH A. RATASIEWICZ, ESQUIRE**
**Attorney for Plaintiff**

**FRONT STREET LAWYERS, P.C.**
**BY: NICHOLAS CASAMENTO, ESQUIRE**
**Attorney I.D. #37931**
**BY: JOSEPH A. RATASIEWICZ, ESQUIRE**
**Attorney I.D. #47453**
**Flagship Corporate Center, Suite 320**
**2 West Baltimore Avenue**
**Media, Pa. 19063**
**610-891-0180**

Attorneys for Plaintiff

### IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

| ELAN SUISSE Ltd. | : | NO. |
| Plaintiff | : | |
| vs. | : | CIVIL ACTION –LAW |
| ROBERT D. CHRIST | : | |
| Defendant | : | JURY TRIAL DEMANDED |

### PRELIMINARY INJUNCTION

**AND NOW,** this _____ day of _____, 2006,

upon consideration of Plaintiff's Verified Complaint, Plaintiff's Preliminary Injunction

for Permanent Injunction, and the accompanying papers in support thereof and having

determined that:

1.    Plaintiff will suffer irreparable harm and loss if Defendant is permitted to

continue to post false and defamatory statements on the Website "elansuisse.co.za.".

2.    Plaintiff does not have an adequate remedy at law.

3.    Greater injury will he inflicted upon Plaintiff by denial of the Preliminary

Injunction than would be inflicted upon Defendant by the granting of such relief, it is

therefore ORDERED, ADJUDGED and DECREED as follows:

(a)    Defendant, Robert Christ, is immediately enjoined and prohibited,

either directly or indirectly from operating any Website using the name "elan suisse"

or any Website with any similar, misleading or confusing designations which lead anyone

to believe it was the official site of Elan Suisse or relating to Elan Suisse.

        (b)     This Preliminary Injunction shall to continue in effect until further

Order of this Court.

**BY THE COURT:**

_____**J.**

**FRONT STREET LAWYERS, P.C.**
**BY: NICHOLAS CASAMENTO, ESQUIRE**
**Attorney I.D. #37931**
**BY: JOSEPH A. RATASIEWICZ, ESQUIRE**
**Attorney I.D. #47453**
**Flagship Corporate Center, Suite 320**
**2 West Baltimore Avenue**
**Media, Pa. 19063**
**610-891-0180**

                                                    Attorneys for Plaintiff

---

### IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| ELAN SUISSE, Ltd. | : | NO.  $C \cdot 6 - 1 \, 5 \, 5 \, 9 \, 6$ |
| Plaintiff | : | |
| vs. | : | CIVIL ACTION –LAW |
| ROBERT D. CHRIST | : | |
| Defendant | : | JURY TRIAL DEMANDED |

### RULE TO SHOW CAUSE WHY
### PRELIMINARY INJUNCTION SHOULD NOT ISSUE

Upon consideration of the Verified Complaint in this matter and the Petition of

Plaintiff for a Preliminary Injunction.

**IT IS ORDERED** that Defendant show cause before this Court on the _____

day of _____, 2006 at _____A.M./P.M. in Court Room

_____, or as soon thereafter as counsel can be heard, why a Preliminary Injunction

providing the relief sought in the accompanying Petition should not be entered; and

**IT IS FURTHER ORDERED** that Plaintiff shall cause a copy of this Rule,

along with a copy of the Complaint and the aforesaid Petition and accompanying papers,

to be served upon the Defendant at least five (5) days before the hearing.

**BY THE COURT:**

_____**J.**

RR Date/Time    JUN-26-2006(MON) 09:37
08/26/2006 MON 09:23 FAX          MONTCO COURT ADMIN.          P.001
                                                               @001

# IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

## CIVIL ACTION – LAW

ELAN SUISSE, LTD.

VS.                         No.    06-15540

ROBERT D. CHRIST

## ORDER

AND NOW, this    26th    day of    JUNE    ,    2006    the

Emergency Petition for Preliminary Injunction scheduled for a **HEARING** before the
Burke                 July 7, 2006 / 3t PM.
Honorable ~~Kent H. Albright~~ on Thursday, July 6, 2006 at 9:30 a.m. in Courtroom 4 of

the Montgomery County Courthouse, Norristown, Pennsylvania.

Michael R Keho
Court Administrator

cc:   Nicholas Casamento, Esq.        *(Fax # 610-891-0557)*

*YOU ARE RESPONSIBLE TO*
*NOTIFY YOUR OPPONENT(S)*
*OF THE ABOVE DATE.*

Copies Sent: 26th Day of    une    , 2006.

*Estimated Time Allotted 2 Hours*

**FRONT STREET LAWYERS, P.C.**
**BY: NICHOLAS CASAMENTO, ESQUIRE**
**Attorney I.D. #37931**
**BY: JOSEPH A. RATASIEWICZ, ESQUIRE**
**Flagship Corporate Center, Suite 320**
**2 West Baltimore Avenue**
**Media, Pa. 19063**
**610-891-0180**

Attorneys for Plaintiff

### IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| ELAN SUISSE Ltd. | : | NO     06-75730 |
| Plaintiff | : | |
| vs. | : | CIVIL ACTION –LAW |
| ROBERT D. CHRIST | : | |
| Defendant | : | JURY TRIAL DEMANDED |

### MEMORANDUM OF LAW
### IN SUPPORT OF PLAINTIFF'S
### PETITION FOR PRELIMINARY INJUNCTION

Plaintiff, by its undersigned counsel, respectfully submits this Memorandum of

Law in Support of its Petition for Preliminary Injunction.

### I.     FACTS.

Plaintiff, Elan Suisse Ltd. ("Elan"), is a corporation formed and organized under

the laws of the Republic of South Africa and at all times relevant to the events described

herein, Brett Cormick, was a Director and Officer of Elan Suisse.

Defendant herein is Robert D. Christ, ("Christ") an individual who resides at 2333

Jones Road, Pottstown, Pa. 19465.

During or about July 2003, Elan was incorporated for the purpose of developing

and attracting international investors to a product developed by Cormick that proposed a

safe investment vehicle for investors to invest in US dollars.

The investment products developed became one of the trade secrets of Elan.

Approximately in the beginning of February 2004, Christ (Defendant) became a thirty-six percent (36%) investor in Elan Suisse International Holdings.

(A separate corporation from Elan).

That after investing Two Hundred Fifty Thousand Dollars ($250,000.00) into the Elan Suisse International Holdings ("Holdings"), Christ had a thirty-six percent (36%) equity ownership and was also authorized to represent that entity which had been incorporated in the State of Delaware.

Christ was to operate Holdings to attract U.S. investors and did so in 2004.

Christ was not authorized by Elan to operate any Website.

That on or about September of 2004, Christ, without authority from Elan, set up the Website "elansuisse.co.za.", using the Elan Suisse name in direct conflict with "elan suisse.com" (a registered domain name).

From September of 2004 and through the present time, Christ has posted extremely defamatory statements on his Website regarding Elan Suisse, associated companies, their investors and employees, which consist of but are not limited to the following as set forth in Christ's Website postings attached hereto as Exhibit "A".

• "Elan Suisse Capital unclear as to which of these shell companies this moniter is attached"

• "John Walters sentencing hearing transcript on fraud charges"

• "The theft of this money to someone I trusted fueled ..."

• "Cormick is and has been for several years – with impunity" running a large international investment scam based in the UK and the Republics of Zimbabwe and South Africa."

• "I am unable to establish where Cormick lives"

• "On the Alan Dean Affair whereby Cormick was arrested by

New Scotland Yard in 1997 on suspicion of fraud"

• "This is a classic bate and switch scam"

• "I believe this operation is a boiler room type operation"

• "Through a collapsible daisy chain of shell companies...that is the Elan

Suisse setup"

• An apparently new Elan Suisse entity just popped up! It's called

Nicogel"

•"What about Elan Suisse RSA? I believe that the RSA operation is a

front to legitimize the whole business operation in Zimbabwe"

• "Neither Elan Suisse nor Cormick are what they are represented to

be"

• "CEO Elan Capital SA [See above this is a shell company]"

•"To the shock of finding out I have been scammed by someone I trusted".

(Posted May 31, 2006)

The statements and innuendos contained in Christ's Website "elansuisse.co.za."

are deliberately false, malicious and misleading and were made for the sole purpose of

trying to force a settlement and/or return of the money that Christ had invested in the

Elan Suisse Holdings Co. in Delaware.

Christ's inappropriate, defamatory and disparaging statements against Elan Suisse

and its key officers and directors, have caused Elan to lose investors and make it difficult

to attract any investors. (See the attached Affidavit of Brett Cormiek, Peter John Kipps and Apostolos Zographos, attached hereto respectively as Exhibits "A", "B" and "C".)

## II.   **ARGUMENT**

Injunctive relief may be granted where a party shows the following elements:

(1)   The injunction is necessary to prevent immediate and irreparable harm that could not be compensated by damages;

(2)   That more harm would result from not granting the injunction than by granting it and that the injunction will not harm other interested parties in the proceedings;

(3)   That the injunction will restore the parties to their status as it existed immediately prior to the alleged wrongful conduct;

(4)   That the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits;

(5)   That the injunction is designed to abate the offending activity; and

(6)   That the preliminary injunction will not negatively affect the public interest. Citizen's Bank of Pa. v. Christy L. Myers, et al, 872 A.2d 827 (Pa. Super 2005).

All six (6) elements are met in this case pursuant to the attached Affidavits and Complaint. It is clear that immediate and irreparable harm has occurred and will continue to occur as Defendant's illegal use of the Elan Suisse name has deterred and will continue to deter other investors to the Elan Suisse Group. Likewise, more harm will result in not granting the injunction as the Elan Suisse Group will be unable to continue operation

with ongoing vendors and investors and granting the injunction will, in no way, harm
Defendant as Defendant is operating said Website for the sole purpose of harming
Plaintiff. Said injunction will clearly restore the parties to their status quo prior to any
use of the Website by Defendant. It is clear that Plaintiff will likely prevail on the merits
of its underlying claim and that many, if not all, of the remarks on said Website by
Defendant are defamatory in nature and use of the Website is in violation of the Lanham
Act.

It is clear that the Preliminary Injunction, if granted, will not negatively affect the public
interest as, in contrast, Defendant's use of said Website has negatively affected public
interest in the operation of Elan Suisse Group.

    This Court does have jurisdiction under the Federal Statute. The Pennsylvania
State University v. University Orthopedics, LTD et al, 706 A.2d 863, (Pa. Super. 1998).
The Lanham Act states in pertinent part as follows:

    False designations of origin and false descriptions forbidden

    (a)    Civil Action

    (1)    Any person who, on or in connection with any goods or

services, or any container for goods, uses in commerce any word, term, name, symbol, or
device, or any combination thereof, or any false designation of origin, false or misleading
description of fact, or false or misleading representation of fact, which—

    (A)    is likely to cause confusion, or to cause mistake, or to deceive as to
the affiliation, connection, or association of such person with another person, or as to the
origin, sponsorship, or approval of his or her goods, services, or commercial activities by
another person.

(B)     In commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such Act. (15 USC §1125 (a)(1) (A)(B)

Cyberpiracy prevention:

(1)     (A)     A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person—

(i)     has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and

(ii)     registers, traffics in, or uses the domain name that

(I)     in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark. (15 USC §1125 (d) (1)(A) (i)(ii)(I).

It is clear that Defendant's actions violate the Lanham Act under §15 U.S.C.S. 1125 (a) and part (d) Cyber Piracy Prevention. Defendant has pirated the Elan Suisse name for his personal benefit in direct contradiction to 1125 (d) of the Lanham Act. His continued use of the Elan Suisse name is an ongoing violation of said Act and must be enjoined to prevent further harm to Plaintiff. This Court can, and should, pursuant to the Lanham Act, grant an Order calling for the forfeiture and cancellation of the domain names being used by the Defendant. (15 USC §1125 (d)(D)(i)

It should be noted, that pursuant to <u>Citizen's Bank of Pa. v. Christy L. Myers, et al</u>, 872 A.2d 827 (Pa. Super 2005), the fact that a Plaintiff is seeking damages in an underlying claim does not disqualify it from pursuing and receiving injunctive relief. As in <u>Citizen's Bank,</u> there is an ongoing violation that cannot be compensated for in damages as potential investing dollars will be speculative in nature.    Although Plaintiff can quantify what it thus far has suffered and sustained in damages, it is the ongoing use and maintaining of the Website by Defendant that creates the irreparable harm for which no damages will compensate.

## III.    CONCLUSION

Plaintiff hereby seeks injunctive relief so as to return the parties to status quo prior to Defendant's violations herein and said injunctive relief should be maintained until further Order of Court.

Respectfully submitted:
**FRONT STREET LAWYERS, P.C.**

BY: _____
**NICHOLAS CASAMENTO, ESQUIRE**
**Attorney for Plaintiff**

BY: _____
**JOSEPH A. RATASIEWICZ, ESQUIRE**
**Attorney for Plaintiff**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| ELAN SUISSE LTD., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 06-3901 |
| | : | |
| ROBERT D. CHRIST, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## <u>MOTION TO DISMISS OR TRANSFER</u>

Defendant Robert D. Christ, through his undersigned attorneys, hereby moves to dismiss the above-captioned action pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and for improper venue.  In the alternative, defendant moves, pursuant to 28 U.S.C. §§ 1404(a) and 1406(a), to transfer this action to the U.S. District Court for the District of Delaware or the U.S. District Court for the Eastern District of Louisiana.  The grounds for this motion are set forth fully in the Memorandum of Law filed herewith.

REED SMITH LLP


By:     /as 955

Andrew J. Soven
PA I.D. No. 76766
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
(215) 851-8100

Thad J. Bracegirdle
1201 Market Street, Suite 1500
Wilmington, DE 19801
(302) 778-7500

*Attorneys for Defendant*

Dated:  September 11, 2006

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

|  |  |  |
|---|---|---|
| ELAN SUISSE LTD., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 06-3901 |
| | : | |
| ROBERT D. CHRIST, | : | |
| | : | |
| Defendant. | : | |
| | : | |

---

## <u>ORDER</u>

WHEREAS, defendant Robert D. Christ having moved to dismiss the above-captioned action, and good cause having been shown;

IT IS HEREBY ORDERED, this _____ day of _____, 2006, that defendant's Motion to Dismiss is **GRANTED** and the above-captioned action is hereby **DISMISSED**.

_____
J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| ELAN SUISSE LTD., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 06-3901 |
| | : | |
| ROBERT D. CHRIST, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS OR TRANSFER

For the reasons set forth below, defendant Robert D. Christ respectfully requests that the

Court dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) for

lack of personal jurisdiction and for improper venue. In the alternative, defendant also

respectfully requests that the Court transfer this action to the U.S. District Court for the District

of Delaware (the "Delaware Court") or the U.S. District Court for the Eastern District of

Louisiana.

## STATEMENT OF FACTS

### A.    The Delaware Action.

On April 27, 2006, defendant Robert D. Christ filed a complaint in the Delaware Court

against Brett J. Cormick, Elan Suisse (Pty) Ltd. ("Elan Suisse"), Elan Suisse International

Holdings (USA) LLC ("Elan Suisse USA") and others.[1]  As alleged in that action, styled *Robert*

*D. Christ v. Brett J. Cormick, et al.*, C.A. No. 06-275-GMS (the "Delaware Action"), Mr.

Cormick, by means of a complex international shell game and a continuous series of deceptive

---

[1] A true and correct copy of this complaint is attached hereto as Exhibit A.

statements made between January and September 2004, defrauded Mr. Christ out of $250,000.

Specifically, Mr. Cormick fraudulently induced Mr. Christ to furnish him with $250,000 as a

purported "investment" in a holding company that, according to Mr. Cormick, would operate to

promote and sell United States-based financial products and investment vehicles to South

African investors.  *See* Ex. A ¶¶ 15-16.  Among other things, Mr. Cormick intentionally

misrepresented to Mr. Christ that he had access to 8,000 brokers and financial advisors in South

Africa and relationships with investors who intended immediately to invest more than $28

million in his purported venture.  *See id.*

In reliance upon these and other misrepresentations made by Mr. Cormick, Mr. Christ

wired $250,000 to Mr. Cormick's personal bank account, purportedly as an initial capital

infusion to help launch the venture.  *See* Ex. A ¶¶ 17-19.  In exchange for this "investment," Mr.

Christ was to receive a 50% equity interest in two entities – (i) Elan Suisse, a South African

corporation which would manage the venture's investment operations; and (ii) Elan Suisse USA,

a Delaware limited liability company which would own certain intellectual property rights.  *See*

*id.*  Contrary to Mr. Cormick's representations, however, the parties never executed a written

agreement memorializing Mr. Christ's investment and Mr. Christ never received any shares of

either Elan Suisse entity.  *See id.* ¶ 20.  In September 2004, when Mr. Cormick's alleged venture

had yet to commence operations, Mr. Christ became skeptical and demanded an audit of Elan

Suisse and Elan Suisse USA.  *See id.*  However, despite a subsequent agreement by Mr. Cormick

to repay Mr. Christ's money, Mr. Christ has never received the $250,000 fraudulently solicited

from him by Mr. Cormick.  *See id.*  As Mr. Christ learned later, his $250,000 was not used to

fund the Elan Suisse entities, but instead was funneled by Mr. Cormick to Nicogel Ltd., a start-

up company located in the United Kingdom.  *See id.* ¶ 37.

In the Delaware Action, Mr. Christ asserted claims of promissory estoppel, breach of contract and fraud against Mr. Cormick.  Mr. Christ also alleged a claim of civil conspiracy against Elan Suisse, Elan Suisse USA and Nicogel, as well as John Walters and Dianne Marshall, two principals of Nicogel who participated in Mr. Cormick's fraudulent scheme to misappropriate and divert Mr. Christ's funds.  Finally, Mercari Financial Services (Pty) Ltd., a South African corporation of which Mr. Cormick was a director, also was named as a defendant to Mr. Christ's civil conspiracy claim by virtue of its knowing and intentional assistance of Mr. Cormick's fraudulent activities.

On May 22, 2006, the defendants in the Delaware Action moved to dismiss that proceeding based on, among other grounds, the Delaware Court's alleged lack of personal jurisdiction and the purported hardship that the defendants – all of whom, with the exception of Elan Suisse USA, are domiciled overseas – would suffer from litigating in the United States.  Briefing on the defendants' motion was completed on July 3, 2006 and the parties are awaiting oral argument before the Delaware Court.

**B.     The Pennsylvania Action.**

Following his discovery of Mr. Cormick's fraudulent scheme, Mr. Christ began to investigate the veracity of Mr. Cormick's claims concerning his personal credentials and the Elan Suisse business venture.  *See* Christ Aff. (attached hereto as Ex. B) ¶ 5.  As a result of that investigation, Mr. Christ learned that Mr. Cormick was a well-traveled and sophisticated con artist who had fabricated virtually all of his academic and professional experience and had defrauded numerous other individuals through similar "investment" schemes.  *See id.*  In order to notify the public of Mr. Cormick's misdeeds and prevent others from being misled as he had been, Mr. Christ began publishing his findings on a website, *www.elansuisse.co.za*, based on an Internet server located in South Africa.  *See id.* ¶¶ 4, 6-7.  Mr. Christ has never represented or

implied that his website is authorized by, affiliated with or operated on behalf of Elan Suisse or any other entity affiliated with Mr. Cormick. *See id.* ¶ 7. Nor does Mr. Christ conduct any commercial activity through the *www.elansuisse.co.za* site (*see id.*); even a cursory review of the website reveals that it is intended solely for the pubic dissemination of information.[2]

On June 23, 2006, despite its prior claim to the Delaware Court that it would be prejudiced by litigating in the United States, Elan Suisse filed a complaint against Mr. Christ in the Court of Common Pleas of Montgomery County, Pennsylvania (the "Pennsylvania Court").[3] In that action, styled *Elan Suisse Ltd. v. Robert D. Christ*, No. 06-15540 (the "Pennsylvania Action"), Elan Suisse and Mr. Cormick (who verified the allegations of the complaint as a director of Elan Suisse) alleged that certain statements posted by Mr. Christ on the *www.elansuisse.co.za* website concerning Mr. Cormick and Elan Suisse were defamatory and constituted commercial disparagement. *See* Ex. C. ¶ 10. The Pennsylvania Action also alleged that Mr. Christ's use of the *www.elansuisse.co.za* domain name violated Sections 43(a)(1)(A) and 43(d)(1)(A) of the Lanham Act, 15 U.S.C. §§ 1125(a)(1)(A) and 1125(d)(1)(A). *See id.* ¶¶ 19-24.

The complaint filed with the Pennsylvania Court alleges incorrectly that Mr. Christ is a resident of Pottstown, Pennsylvania. *See* Ex. C ¶ 2. On or about June 2, 2006, prior to the commencement of the Pennsylvania Action, Mr. Christ relocated from Pennsylvania to Abita Springs, Louisiana. *See* Ex. B ¶ 2. In connection with this move, Mr. Christ and his wife sold

---

[2] The full content of Mr. Christ's website is attached as an exhibit to the pleadings filed with this Court when the case was removed from the Court of Common Pleas of Montgomery County, Pennsylvania.

[3] A true and correct copy of the complaint filed with the Pennsylvania Court is attached hereto as Exhibit C.

the house they had owned in Pottstown in a transaction which closed on or about July 15, 2006.

*See id.*  Accordingly, the Montgomery County Sheriff's attempts to serve Mr. Christ at his prior

address in Pottstown were unsuccessful.  *See* Ex. D.  On or about August 14, 2006, Mr. Christ

received a copy of the pleadings filed in the Pennsylvania Action by certified mail at his

business, which also had been moved from Pottstown to Hammond, Louisiana on May 1, 2006.

*See* Ex. B. ¶¶ 3, 8.  In short, at the time the Pennsylvania Action was filed, Mr. Christ did not

reside or operate a business in Pennsylvania.  *See id.* ¶ 3.

On September 1, 2006, as a result of Elan Suisse's allegation of federal claims arising

under the Lanham Act, Mr. Christ removed the Pennsylvania Action to this Court.

## ARGUMENT

## I.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OVER MR. CHRIST.

Federal Rule of Civil Procedure 4(e) permits a district court to assert personal jurisdiction

over a nonresident to the extent allowed under the law of the state where the court sits.  *See* Fed.

R. Civ. P. 4(e).  Furthermore, Pennsylvania "authorizes long-arm jurisdiction to the extent

permitted by the due process clause" of the Constitution.  *Visual Securities, Inc. v. KTV, Inc.*,

102 F.Supp.2d 601, 602 (E.D. Pa. 2000); 42 Pa. C.S. § 5322(b).  However, once a defendant

raises the defense of lack of personal jurisdiction, the burden falls upon the plaintiff "to prove, by

a preponderance of the evidence, facts sufficient to establish personal jurisdiction."  *Carteret

Savings Bank, F.A. v. Shusan*, 954 F.2d 141, 146 (3d Cir. 1992); *see also IMO Indus., Inc. v.

Kiekert, AG*, 15 F.3d 254, 257 (3d Cir. 1998); *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*,

960 F.2d 1217, 1223 (3d Cir. 1992).  To establish the propriety of personal jurisdiction, the

plaintiff must present "a prima facie case for the exercise of personal jurisdiction by 'establishing

with reasonable particularity sufficient contacts between the defendant and the forum state.'"

*Mellon Bank*, 960 F.2d at 1223 (internal citations omitted).

The exercise of personal jurisdiction over a nonresident defendant is appropriate only if

there exist sufficient "minimum contacts" between the defendant and the forum state such that

the maintenance of the suit in that state does not "offend traditional notions of fair play and

substantial justice." *International Shoe Co. v. State of Washington*, 396 U.S. 310, 316 (1945).

Of prime concern is the "predictability and fairness of the court taking jurisdiction over the

defendant." *Giangola v. Walt Disney World Co.*, 753 F.Supp. 148, 155 (D.N.J. 1990). While

there is no fixed standard for assessing the required contacts, predictability and fairness dictate

that there must exist, at a minimum, "some act by which the defendant purposefully avails itself

of the privilege of conducting activities within the forum state, thus invoking the benefits and

protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citing *International

Shoe*, 326 U.S. at 319). The requirement of "purposeful availment" ensures that a nonresident

defendant will not be haled into a foreign court's jurisdiction solely as a result of "random,"

"fortuitous," or "attenuated" contacts. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774

(1984).

General personal jurisdiction may be exercised only where a nonresident defendant

maintains "continuous and systematic" contacts with the forum state and the plaintiff's claims do

not arise out of those contacts with the forum state. *Helicopteros Nacionales De Columbia, S.A.

v. Hall*, 466 U.S. 408, 416 (1984). Specific personal jurisdiction may be obtained where the

plaintiff's cause of action "arises from the defendant's forum related activities, such that the

defendant 'should reasonably anticipate being haled into court there.'" *Vetrotex Certainteed

Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 151 n.3 (3d Cir. 1996). Here, however,

Elan Suisse cannot establish either general or specific personal jurisdiction in Pennsylvania over Mr. Christ.

     **A.**    **Mr. Christ Is Not Subject to General Personal Jurisdiction in Pennsylvania.**

As discussed above, a court may exercise general personal jurisdiction over a nonresident defendant only when the defendant has "substantial … continuous and systematic" contacts with the forum state.  *E.g.*, *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 446-47 (1952). There can be no dispute that Mr. Christ no longer has *any* contact with Pennsylvania, let alone contact which is substantial, continuous and systematic.  While Mr. Christ was a resident of Pennsylvania until June 2, 2006, he now resides full-time in Louisiana and did so at the time of the filing of the Pennsylvania Action and plaintiff's attempts to serve him with process.  *See* Ex. B ¶ 2.  Moreover, Mr. Christ has sold the property he and his wife previously owned in Pennsylvania and relocated his business to Louisiana.  *See id.* ¶¶ 2-3.  Accordingly, Mr. Christ no longer has any "continuous" contacts with Pennsylvania which would subject him to this Court's personal jurisdiction.

Nor does Mr. Christ's operation of a website which can be accessed by Pennsylvania residents via the Internet give rise to general jurisdiction.  *See S. Morantz, Inc. v. Hang & Shine Ultrasonics, Inc.*, 79 F.Supp.2d 537, 539 (E.D. Pa. 1999) ("[A] mere presence on the World Wide Web does not establish the minimum contacts necessary to subject a [defendant] to personal jurisdiction on a worldwide basis.").  This Court and others have held that where, as here, a defendant's website is "passive" – *i.e.*, the defendant does not use the website for commercial purposes but simply posts information on the website which can be accessed by Internet users in foreign jurisdictions – the operation of that website does not provide sufficient contact with the forum state to support general personal jurisdiction.  *See, e.g.*, *Desktop Technologies, Inc. v. Colorworks Reproduction & Design, Inc.*, 1999 U.S. Dist. LEXIS, at *7

(E.D. Pa. Feb. 25, 1999) (passive websites that do "little more than make information available

to those who are interested" do not provide grounds for personal jurisdiction); *Mink v. AAAA*

*Dev. L.L.C.*, 190 F.3d 333, 336-37 (5th Cir. 1999) (defendant's website was not sufficient basis

for general personal jurisdiction when website did not have any form of interactivity that allowed

customers to order or purchase products online); *Santana Prods., Inc. v. Bobrick Washroom*

*Equip., Inc.*, 14 F.Supp.2d 710, 714 (M.D. Pa. 1998) (passive website that provided information

about defendant's business but through which no business was transacted was not sufficient basis

for general jurisdiction).  Mr. Christ's complete lack of contact with Pennsylvania – physically,

over the Internet or otherwise – precludes any exercise of general personal jurisdiction by this

Court.

### B.    Mr. Christ Is Not Subject to Specific Personal Jurisdiction in Pennsylvania.

To establish specific personal jurisdiction over a nonresident defendant, a plaintiff must

demonstrate that the defendant has constitutionally minimum contacts with the forum and that its

claims arise from those contacts.  *See Morantz*, 79 F.Supp.2d at 539.  If such contacts exist, the

Court also must determine whether the exercise of personal jurisdiction is reasonable and

complies with "traditional notions of fair play and substantial justice."  *Id.* (citing *International*

*Shoe*, 326 U.S. at 316).

Since Elan Suisse cannot even meet the threshold burden of demonstrating that Mr.

Christ has minimum contacts with Pennsylvania giving rise to its claims, the Court need not

undertake the Constitutional analysis under *International Shoe*.  Elan Suisse's complaint alleges

no facts relating to the exercise of personal jurisdiction over Mr. Christ other than stating

erroneously that Mr. Christ is a resident of Pottstown, Pennsylvania.  *See* Ex. C ¶ 2.  Moreover,

even if Mr. Christ still had any contacts with Pennsylvania, the complaint alleges no facts

whatsoever from which the Court could conclude that Elan Suisse's claims arise from those

contacts.  For example, the complaint neither identifies any locations from which Mr. Christ may have posted the allegedly defamatory statements on his website nor alleges the location of the server on which the website is registered – which, since the server is located in South Africa, does not support jurisdiction in any event.  *See* Ex. B ¶ 7.  The only facts alleged by Elan Suisse in support of its claims relate to the postings made on the *www.elansuisse.co.za* website.  However, as is the case with general jurisdiction, the mere posting of information on a passive website by a defendant does not support specific personal jurisdiction arising from that act simply because the information in question can be viewed by a forum's residents via the Internet.  *See, e.g.*, *Barrett v. Catacombs Press*, 44 F.Supp.2d 717, 727 (E.D. Pa. 1999) ("Not only does the weight of the authority favor the rationale that a 'passive' Web site is insufficient to trigger jurisdiction, but we believe that such decisions comport with the traditional concept of personal jurisdiction where merely fortuitous contact is insufficient."); *Blackburn v. Walker Oriental Rug Galleries, Inc.*, 999 F.Supp. 636, 639-40 (E.D. Pa. 1998) (defendant's passive website with e-mail link for users was insufficient to support personal jurisdiction); *Bailey v. Turbine Design, Inc.*, 86 F.Supp.2d 790, 794-97 (W.D. Tenn. 2000) (posting of allegedly defamatory material on defendant's passive website was insufficient basis for exercise of specific jurisdiction since defendant did not purposely avail itself of forum state).

While Elan Suisse has not purported to have served Mr. Christ pursuant to Pennsylvania's long-arm statute, 42 Pa. C.S.A. § 5322, that statute nonetheless likewise fails to establish personal jurisdiction over Mr. Christ.  The Pennsylvania long-arm statute permits the exercise of specific personal jurisdiction over any person who, among other things:  (1) transacts any business in Pennsylvania; (2) contracts to supply services or things in Pennsylvania; (3) causes harm or tortious injury by an act or omission in Pennsylvania; (4) causes harm or tortious

injury in Pennsylvania by an act or omission outside the Commonwealth; or (5) has an interest

in, uses or possesses real property in Pennsylvania.  *See* 42 Pa. C.S.A. § 5322.  As discussed

above, Mr. Christ no longer transacts business in, contracts to supply services in or owns real

property in Pennsylvania.  *See* Ex. B ¶¶ 2-3.  Additionally, the complaint identifies no allegedly

tortious actions by Mr. Christ which took place in Pennsylvania.  Finally, since Elan Suisse is a

South African corporation with its principal place of business in South Africa (*see* Ex. C ¶ 1),

Mr. Christ could not possibly have caused any alleged harm or tortious injury within

Pennsylvania.  In summary, the Pennsylvania long-arm statute provides no grounds upon which

the Court can exercise personal jurisdiction over Mr. Christ.

## II.   THIS ACTION SHOULD BE DISMISSED OR, ALTERNATIVELY, TRANSFERRED BECAUSE THIS COURT IS NOT THE PROPER VENUE FOR PLAINTIFF'S CLAIMS.

28 U.S.C. § 1391(b) provides that an action not founded solely on diversity jurisdiction

may *only* be brought in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).  Additionally, 28 U.S.C. § 1400(a) provides that actions "arising under any

Act of Congress relating to copyrights or exclusive rights in mask works or designs may be

instituted in the district in which the defendant or his agent resides or may be found."  28 U.S.C.

§ 1400(a).  As demonstrated above, Mr. Christ no longer resides within this district and

plaintiff's complaint fails to allege any facts indicating where the events giving rise to its claims

occurred, let alone facts suggesting that a substantial part of the events occurred in Pennsylvania.

In any event, it is unlikely that Elan Suisse could truthfully allege facts that would establish

venue in this district, given that its claims arise from communications made over the Internet, routed through a server located in South Africa, and relating to a South African corporation. Accordingly, there is no basis under 28 U.S.C. § 1391(b) or 28 U.S.C. § 1400(a) for venue to lie in this Court and this action should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3).

Alternatively, in the event the Court determines that dismissal of this action is not appropriate, it should transfer the action to either the U.S. District Court for the District of Delaware, where the parties already are engaged in related litigation, or the U.S. District Court for the Eastern District of Louisiana, where Mr. Christ currently resides.  Transfer of this action would be warranted under either 28 U.S.C. § 1404(a), which authorizes a transfer "[f]or the convenience of the parties and witnesses" and "in the interest of justice," or 28 U.S.C. § 1406(a), which permits transfer of a case "laying venue in the wrong division or district."  28 U.S.C. §§ 1404(a), 1406(a).  Under Section 1406(a), venue is "wrong" and transfer is appropriate where, as here, the district court is an improper venue under 28 U.S.C. § 1391 or any other applicable statute.  *See, e.g.*, *Schaeffer v. Village of Ossining*, 58 F.3d 48, 50 (2d Cir. 1995); *Tel-Phonic Services, Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1141-42 (5th Cir. 1992); *Hapaniewski v. City of Chicago*, 883 F.2d 576, 579 (7th Cir. 1989), *cert. denied*, 493 U.S. 1071 (1990).  Even when venue is proper, Section 1404(a) authorizes the Court to transfer an action in order to "prevent the waste 'of time and energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'"  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Continental Grain Co. v. Barge FBL-585*, 365 U.S. 19, 26 (1960)).  Transfer also is appropriate where, as here, the defendant is not subject to personal jurisdiction in the plaintiff's original choice of venue.  *See, e.g.*, *Carteret Savings Bank, F.A. v. Shushan*, 919 F.2d

225, 231-32 (3d Cir. 1990); *Bakaj v. Levine*, 733 F.Supp. 951, 954-55 (E.D. Pa. 1990); *Shaw v. Boyd*, 658 F.Supp. 89, 91-92 (E.D. Pa. 1987).

Under either statute, both of which permit transfer of an action to "any other district or division where it may have been brought," 28 U.S.C. §§ 1404(a), 1406(a), this action should be transferred to Louisiana or Delaware. Transfer to the Eastern District of Louisiana indisputably is appropriate since that is the venue in which Mr. Christ resides and is subject to personal jurisdiction. Proceeding with this action in Louisiana therefore would be many times more convenient and less burdensome to Mr. Christ while, by comparison, litigating in Louisiana would subject Elan Suisse, a South African company, to no more prejudice or burden than litigating in Pennsylvania. Under similar circumstances, where a plaintiff did not reside in the original forum, courts have not hesitated to transfer actions to the venue of the defendant's residence. *See, e.g.*, *McEvily v. Sunbeam-Oster Co., Inc.*, 878 F.Supp. 337, 344 (D.R.I. 1994); *Burstein v. Applied Extrusion Techs., Inc.*, 829 F.Supp. 106, 110 (D. Del. 1992); *U.S. Fidelity & Guar. Co. v. Republic Drug Co., Inc.*, 800 F.Supp. 1076, 1081 (E.D.N.Y. 1992).

The District of Delaware, where the parties[4] already are engaged in related litigation, is an equally appropriate venue for transfer. Elan Suisse, in an obvious act of forum shopping, initiated this action in Pennsylvania even when it was fully aware of related claims pending against it in the District of Delaware, where it simply could have brought counterclaims against Mr. Christ. Rather than conserve the parties' and the courts' resources, however, Elan Suisse

---

[4] While the plaintiff in this action is called "Elan Suisse Ltd." in the complaint, Mr. Christ believes that the party has been misnamed and is, in fact, Elan Suisse (Pty) Ltd., which is a defendant to the Delaware Action. This conclusion is supported by the fact that Elan Suisse (Pty) Ltd., also a South African corporation (*compare* Ex. A ¶ 4 *with* Ex. C ¶ 1), was the entity used in Mr. Cormick's scheme to defraud Mr. Christ and is the subject of Mr. Christ's allegedly defamatory Internet postings.

opted to file an unnecessary and duplicative action in Pennsylvania. Courts have recognized in similar circumstances that, when a prior-filed action is pending in another district between the same parties, transfer to that venue is proper (even if the defendant in the second action is not subject to personal jurisdiction as a defendant in the transferee forum) since the plaintiff had the right to raise its claim as a counterclaim in the first action. *See A.J. Industries, Inc. v. United States Dist. Ct., C.D. of Cal.*, 503 F.2d 384, 386-89 (9th Cir. 1974); *Leesona Corp. v. Duplan Corp.*, 317 F.Supp. 290, 293-94 (D.R.I. 1970).

Moreover, "[t]ransfer of cases to a district in which a related action is pending is favored because it conserves judicial resources and avoids inconsistent results." 17 *Moore's Federal Practice* § 111.12[1][b], at 111-55 (citing *Levitt v. Maryland Deposit Ins. Fund Corp.*, 643 F.Supp. 1485, 1493 (E.D.N.Y. 1986)). Elan Suisse already has wasted this Court's time and resources by filing this action in Pennsylvania and then failing to dismiss it voluntarily even after learning that venue is not proper here. Transfer of this action to the Delaware Court, where it can be consolidated with the pending Delaware Action involving the same parties and arising from the same factual background, would permit all parties to maximize resources and coordinate the resolution of their dispute in a single forum.

## <u>CONCLUSION</u>

For the foregoing reasons, defendant Robert D. Christ respectfully requests that plaintiff's claims be dismissed in their entirety.  Alternatively, defendant respectfully requests that the Court transfer this action to the U.S. District Court for the District of Delaware or the U.S. District Court for the Eastern District of Louisiana.

REED SMITH LLP

By:  \_\_\_\_/as 955_____
Andrew J. Soven
PA I.D. No. 76766
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
(215) 851-8100

Thad J. Bracegirdle
1201 Market Street, Suite 1500
Wilmington, DE 19801
(302) 778-7500

*Attorneys for Defendant*

Dated:  September 11, 2006

### CERTIFICATE OF SERVICE

I hereby certify that, on this 11th day of September, 2006, I caused to be served a true and correct copy of the foregoing Motion to Dismiss or Transfer and the supporting Memorandum of Law, by first class United States mail, postage prepaid, upon the following counsel:

Nicholas Casamento, Esquire
Joseph A. Ratasiewicz, Esquire
Front Street Lawyers, P.C.
Flagship Corporate Center, Suite 320
2 West Baltimore Avenue
Media, PA 19063

_/as 955_____

Andrew J. Soven

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBERT D. CHRIST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. ___0 6 - 2 7 5___ |
| BRETT J. CORMICK, ELAN SUISSE | ) | |
| INTERNATIONAL HOLDINGS (USA) | ) | |
| LLC, ELAN SUISSE (PTY) LTD., | ) | **JURY TRIAL DEMANDED** |
| NICOGEL LTD., JOHN WALTERS, | ) | |
| DIANNE MARSHALL and MERCARI | ) | |
| FINANCIAL SERVICES (PTY) LTD., | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Robert D. Christ, by and through his undersigned attorneys, hereby brings this

action against defendants Brett J. Cormick, Elan Suisse International Holdings (USA) LLC, Elan

Suisse (Pty) Ltd., Nicogel Ltd., John Walters, Dianne Marshall and Mercari Financial Services

(Pty) Ltd. In support thereof, plaintiff alleges as follows:

### Parties

1.     Plaintiff Robert D. Christ is a citizen of Pennsylvania who resides in Pottstown,

Pennsylvania.

2.     Defendant Brett J. Cormick ("Cormick") is a citizen of the Commonwealth of

Australia who resides in the United Kingdom and the Republic of Zimbabwe.

3.     Defendant Elan Suisse International Holdings (USA) LLC ("Elan Suisse USA") is

a limited liability company formed and organized under the laws of Delaware. Defendant

Cormick is the sole member of Elan Suisse USA.

4.     Defendant Elan Suisse (Pty) Ltd. ("Elan Suisse") is a corporation formed and

organized under the laws of the Republic of South Africa. At all times relevant to the events

described herein, defendant Cormick was a director and officer of Elan Suisse.

5.     Defendant Nicogel Ltd. ("Nicogel") is a corporation formed and organized under

the laws of the United Kingdom with its principal place of business in Cambridgeshire, England.

6.     Defendant John Walters ("Walters") is a citizen of the United Kingdom who

resides in Suffolk, England. Walters is the Chief Executive Officer of defendant Nicogel.

7.     Defendant Dianne Marshall ("Marshall") is a citizen of the United Kingdom who

resides in Suffolk, England. Upon information and belief, Marshall is an officer and shareholder

of defendant Nicogel.

8.     Defendant Mercari Financial Services (Pty) Ltd. ("Mercari") is a corporation

formed and organized under the laws of the Republic of South Africa with its principal place of

business in Sandton, South Africa. At all times relevant to the events described herein,

defendant Cormick was a director of Mercari.

## Jurisdiction and Venue

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1332(a), as the action is between citizens of different states and citizens or subjects of a foreign

state and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and

costs.

10.    Defendant Elan Suisse USA, as a Delaware limited liability company, is subject

to the personal jurisdiction of this Court pursuant to Section 18-105 of the Delaware Limited

Liability Company Act (the "LLC Act"), 6 *Del. C.* § 18-105.

11.    As a person who participates materially in the management of Elan Suisse USA,

defendant Cormick is subject to the personal jurisdiction of this Court pursuant to Section 18-

109(a) of the LLC Act, 6 *Del. C.* § 18-109(a).

2

12.    Defendants Cormick, Elan Suisse, Nicogel, Walters, Marshall and Mercari are subject to the personal jurisdiction of this Court pursuant to 10 *Del. C.* § 3104, as they individually and/or in conspiracy with each other formed and utilized a Delaware entity to defraud and cause harm to plaintiff as described more fully below.

13.    Venue in this Court is proper pursuant to 28 U.S.C. § 1391(a), as one or more defendants is subject to personal jurisdiction within this district and there is no district in which the action may otherwise be brought.

### Factual Background

14.    In the mid- to late 1990's, plaintiff operated a tour company specializing in expeditions to the geographic North and South Poles. Plaintiff first met defendant Cormick in April 1996, when Cormick participated in one of plaintiff's expeditions, after which time plaintiff and Cormick maintained a friendship.

15.    In January 2004, plaintiff traveled to Cape Town, South Africa to attend to the affairs of a close friend who had died suddenly in an accident. While plaintiff was in South Africa, Cormick traveled to Cape Town from his residence in Harare, Zimbabwe to meet with plaintiff. During these meetings, Cormick discussed with plaintiff his potential investment in a purported business opportunity devised by Cormick.

16.    Specifically, on January 28, 2004, Cormick proposed in an e-mail to plaintiff that plaintiff invest in a holding company that would operate to promote and sell United States-based financial products and investment vehicles to investors located in South Africa. In this e-mail, Cormick intentionally misrepresented to plaintiff, among other things, that he had access to 8,000 brokers and financial advisors in South Africa who represented one million potential investors in that country. Cormick further misrepresented to plaintiff that he had relationships with investors who intended immediately to invest $28.5 million through his proposed business.

3

However, Cormick informed plaintiff, he required an initial infusion of capital in order to launch the venture.

17.     To that end, during late January and early February 2004, plaintiff and Cormick exchanged multiple e-mails in which they negotiated the terms of plaintiff's investment in Cormick's alleged business venture. Over the course of these e-mails, in response to concerns raised by plaintiff and in an effort to persuade plaintiff to invest in his purported business, Cormick intentionally misrepresented to plaintiff that the infrastructure to begin operations already was in place and that he only needed plaintiff's investment in order to get his business off the ground.

18.     These negotiations culminated in a written proposal by Cormick on February 15, 2004 pursuant to which plaintiff would invest $350,000 in exchange for a 50% equity interest in two entities: (i) Elan Suisse, a South African corporation which would manage the investment operations; and (ii) Elan Suisse USA, a Delaware limited liability company which would own certain intellectual property rights. In subsequent e-mails in late February 2004, and during a face-to-face meeting in London, England in early March 2004, plaintiff and Cormick further discussed the details of plaintiff's investment. During this time, Cormick emphasized to plaintiff repeatedly that he required plaintiff's investment as soon as possible.

19.     During the course of these discussions, plaintiff and Cormick agreed to memorialize the terms of plaintiff's investment in a written agreement at a future date. In March 2004, in reliance upon Cormick's promise that he and plaintiff would draft and execute promptly a written agreement documenting plaintiff's investment in Elan Suisse and Elan Suisse USA (which Cormick caused to be formed in Delaware on March 15, 2004), and in reliance upon multiple misstatements by Cormick concerning his personal credentials, his purported

relationships with South African investors and the validity of his proposed business venture, plaintiff wired an initial investment of $250,000 (in two separate payments of $125,000 each) to Cormick's personal bank account in London pursuant to Cormick's instructions. Plaintiff withheld the remaining $100,000 of his proposed investment pending execution of a written agreement.

20.     However, despite Cormick's representations that he and plaintiff would execute a written agreement, no such contract was ever prepared or signed, nor did plaintiff ever receive equity shares of Elan Suisse or Elan Suisse USA in exchange for his $250,000 investment. In September 2004, at which time Cormick's business had yet to commence operations, plaintiff sent e-mails to Cormick inquiring as to the status of his investment and requesting an audit of Elan Suisse and Elan Suisse USA. In response to plaintiff's requests, in an e-mail dated September 9, 2004, Cormick offered to repay plaintiff the $250,000 he had wired previously to Cormick. Plaintiff accepted Cormick's offer in writing on November 30, 2004. To date, however, in direct breach of their agreement, plaintiff has not received repayment of his $250,000 payment from Cormick.

## COUNT I

### (Promissory Estoppel)

21.     Plaintiff repeats and realleges the foregoing paragraphs as if set forth fully herein.

22.     As alleged above, in order to induce plaintiff to pay $250,000 to him, defendant Cormick affirmatively promised (i) to provide plaintiff with 50% equity shares in Elan Suisse and Elan Suisse USA, and (ii) to enter into a written agreement with plaintiff governing plaintiff's investment in Elan Suisse and Elan Suisse USA following plaintiff's payment of such funds.

23.     In reasonable reliance upon Cormick's promises, plaintiff paid $250,000 to

Cormick but plaintiff never received any consideration in return and the parties never drafted or executed a formal written agreement.

24.      As a result of Cormick's conduct, plaintiff has suffered damages of no less than $250,000.

## COUNT II

### (Breach of Contract)

25.      Plaintiff repeats and realleges the foregoing paragraphs as if set forth fully herein.

26.      As alleged above, on November 30, 2004 plaintiff and defendant Cormick entered into a contract pursuant to which Cormick agreed to repay $250,000 to plaintiff in consideration for plaintiff's agreement to forego legal action against Cormick and to perform web development and other marketing services for Cormick's proposed (but, unknown to plaintiff at the time, illusory) business venture.

27.      Cormick materially breached this contract by failing to repay $250,000 to plaintiff.

28.      As a result of Cormick's breach of contract, plaintiff has suffered damages of no less than $250,000.  Alternatively, plaintiff also is entitled to specific performance of his contract with Cormick pursuant to which Cormick agreed to repay $250,000 to plaintiff.

## COUNT III

### (Fraud)

29.      Plaintiff repeats and realleges the foregoing paragraphs as if set forth fully herein.

30.      As alleged above, defendant Cormick made numerous statements to plaintiff which, at the time the statements were made, Cormick knew to be false.  Specifically, Cormick made multiple misstatements to plaintiff concerning, among other things:  (i) his personal credentials and background; (ii) his purported relationships with investors in South Africa; and

(iii) the validity and operations of his purported business venture.

31. Cormick made such statements to plaintiff to induce plaintiff to pay $250,000 to Cormick under the false impression that plaintiff was investing in a business opportunity operated by Cormick.

32. Plaintiff justifiably relied upon Cormick's false statements in paying $250,000 to Cormick, a sum for which plaintiff has never received any consideration and which Cormick has never repaid.

33. As a result of plaintiff's reliance upon Cormick's false statements, plaintiff has suffered damages of no less than $250,000.

## COUNT IV

### (Civil Conspiracy)

34. Plaintiff repeats and realleges the foregoing paragraphs as if set forth fully herein.

35. As alleged above, defendant Cormick formed Elan Suisse USA in connection with and in furtherance of his unlawful scheme to defraud plaintiff and induce plaintiff to pay Cormick $250,000.

36. At the time of the events alleged herein, Cormick was a director of Mercari. With the authorization of Mercari's then-Managing Director, Cormick operated Elan Suisse out of Mercari's offices and utilized Mercari's employees and resources (such as mail service, telephones, computers, fax services, etc.) to communicate with plaintiff and to effectuate his unlawful scheme to defraud plaintiff and induce plaintiff to pay Cormick $250,000.

37. Upon information and belief, the $250,000 paid by plaintiff to Cormick was never used to fund the non-existent Elan Suisse operations, but instead was used by Cormick and defendants Walters and Marshall to capitalize defendant Nicogel, a start-up company which was known originally as Aquacine Ltd. Nicogel, which was founded in early 2005, purports to

market a nicotine replacement device in the form of an externally-applied gel.

38.    As these facts demonstrate, defendants Elan Suisse, Elan Suisse USA, Nicogel, Walters, Marshall and Mercari conspired with defendant Cormick to defraud plaintiff and to unlawfully misappropriate the $250,000 paid by plaintiff to Cormick.

39.    As a result of defendants' actions, plaintiff has suffered damages of no less than $250,000.

WHEREFORE, plaintiff Robert D. Christ respectfully requests that the Court enter an order and judgment against defendants:

A.    Awarding him compensatory, consequential and punitive damages in an amount to be determined at trial, as well as pre- and post-judgment interest;

B.    Awarding plaintiff specific performance of his contract with Cormick pursuant to which Cormick agreed to repay $250,000 to plaintiff;

C.    Awarding him his fees and expenses, including reasonable attorneys' fees, incurred in this action; and

D.    Granting such other and further relief as the Court deems just and proper.

BUCHANAN INGERSOLL PC

Thad J. Bracegirdle (No. 3691)
The Nemours Building
1007 N. Orange Street, Suite 1110
Wilmington, Delaware 19801
(302) 428-5500

Attorneys for Plaintiff Robert D. Christ

Dated: April 27, 2006

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| ELAN SUISSE LTD., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :     Civil Action No. 06-3901 |
| | : |
| ROBERT D. CHRIST, | : |
| | : |
| Defendant. | : |
| | : |

### AFFIDAVIT OF ROBERT D. CHRIST

STATE OF LOUISIANA        )
                             ) ss:
PARISH OF TANGIPAHOA     )

       Robert D. Christ, being duly sworn, hereby deposes and says:

       1.     I am the defendant in the above-captioned action and submit this affidavit in support of my Motion to Dismiss or Transfer.

       2.     While my business obligations require me to travel extensively, until June 2, 2006 my permanent residential address was in Pottstown, Pennsylvania.  On June 2, 2006, my family and I relocated our permanent residence to Abita Springs, Louisiana.  My wife and I purchased property in Abita Springs, Louisiana on May 15, 2006 and closed the sale of our former home in Pottstown, Pennsylvania on or about July 15, 2006.

       3.     Prior to relocating my personal residence, I also moved my business, SeaTrepid, from Pottstown, Pennsylvania to Hammond, Louisiana on May 1, 2006.  Therefore, as of June 23, 2006, when the complaint in this action was filed, I did not reside, transact business or contract to supply services in Pennsylvania.  Additionally, I have not resided, transacted business

or contracted to supply services in Pennsylvania at any time since June 23, 2006. I have not owned any property in Pennsylvania since July 15, 2006.

4. In or about October 2005, I registered and began maintaining an Internet website with the domain name *www.elansuisse.co.za*. The purpose of this website was to provide a forum through which I could conduct an open investigation and publish publicly the details of a fraudulent scheme through which Brett J. Cormick and others, through the use of entities under the "Elan Suisse" name, conspired to unlawfully misappropriate $250,000 from me.

5. Following my discovery of this scheme, I began to investigate the veracity of the numerous claims Mr. Cormick had made to me concerning his personal credentials and the purported Elan Suisse business venture for which Mr. Cormick purportedly had solicited my investment. As a result of this investigation (which continues to the present), I have learned that Mr. Cormick fabricated virtually all of his claimed educational and professional experience as well as his claims concerning the Elan Suisse venture.[1]  I also have learned that Mr. Cormick has defrauded numerous other individuals through schemes similar to the one by which $250,000 was misappropriated from me.

6. Information concerning Mr. Cormick (and which, if known, possibly could have prevented him from defrauding me and others) was available in the public domain, but has been very difficult to uncover as a result of being spread across several continents and having been

---

[1] For example, Mr. Cormick states in an affidavit filed in this action that he "obtained [a] doctorate in economics, completed post doctoral studies at the Graduate School of the London School of Economics and Political Science Department of Finance and Accounting." The *www.elansuisse.co.za* website includes an e-mail I received from the London School of Economics denying that Mr. Cormick earned a degree from that institution. Mr. Cormick further states that he is "a person with extensive experience and an excellent worldwide reputation in the International Financial Services Industry" despite the fact that, as documented on my website, the South Africa Financial Services Board revoked the license of Elan Suisse (Pty.) Ltd. due to misrepresentations made by Mr. Cormick in connection with Elan Suisse's license application.

- 2 -

(obviously and purposely) buried. I have published and continue to publish the results of my

investigation on the *www.elansuisse.co.za* website in the hope that, by notifying the public of

Mr. Cormick's misdeeds, Mr. Cormick will be unable to defraud others in the future. If someone

had done for me what I am doing by publishing this page, I would have been spared losing my

life's savings, over two years of productive time and money wasted on attempting to retrieve my

property and the trouble and suffering that Mr. Cormick has caused to me and my family. The

information on *www.elansuisse.co.za* is very well documented with citations to sources and

speaks for itself. The reader of the website is discouraged from relying on the conclusions drawn

there, encouraged to draw his or her own conclusions and to recreate the work I have laid out on

the website.2

     7.     The *www.elansuisse.co.za* website is registered with and routed through an

Internet server located in the Republic of South Africa. I do not conduct nor have I ever

conducted any commercial activity on this website; I use it solely to publish information for

public access and dissemination. I have never represented, either expressly or impliedly, that the

*www.elansuisse.co.za* website is in any way authorized by, affiliated with or operated on behalf

of Elan Suisse (Pty) Ltd., Mr. Cormick or any of their affiliated entities. To the contrary, the

content of the website should make clear to anyone who may view it that it is not endorsed by

Elan Suisse or Mr. Cormick.

---

2 For example, in the introduction of the home page of the site, I specifically lay out my
intentions as follows: "I have placed this page as a public service announcement so that others
will ask hard questions I failed to ask and perhaps can avoid a similar fate. If you are
contemplating investment in any organization managed by Cormick, you should be able to
recreate my work above to come to your own conclusion. I suggest you not trust my statements,
but perform your own basic research. This page gives you the roadmap."

8.    I did not learn that this action (which originally had been filed in the Court of Common Pleas of Montgomery County, Pennsylvania) had been filed against me until August 14, 2006, when a copy of the complaint and other pleadings was delivered to my business by certified mail and signed for by my secretary.  I have never been personally served with any process in this action.

FURTHER AFFIANT SAYETH NOT.

Robert D. Christ

Subscribed and sworn to before me
this ___!!___ day of __Sept_____, 2006
My commission expires _____

_____
Notary Public

WILLIB-50157.2

- 4 -

**FRONT STREET LAWYERS, P.C.**
**BY: NICHOLAS CASAMENTO, ESQUIRE**
**Attorney I.D. #37931**
**JOSEPH A. RATASIEWICZ, ESQUIRE**
**Attorney I.D.#47453**
**Flagship Corporate Center, Suite 320**
**2 West Baltimore Avenue**
**Media, Pa. 19063**
**610-891-0180**

Attorneys for Plaintiff

### IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| ELAN SUISSE Ltd. | : | NO. $CG$-$15540$ |
| Plaintiff | : | |
| vs. | : | CIVIL ACTION –LAW |
| ROBERT D. CHRIST | : | |
| Defendant | : | JURY TRIAL DEMANDED |

### COMPLAINT

Plaintiff, Elan Suisse Ltd., ("Plaintiff") by and through its attorney, Nicholas

Casamento, Esquire, hereby brings this action against Robert D. Christ and in support

thereof, alleges the following:

1.    Plaintiff, Elan Suisse Ltd. ("Elan"), is a corporation formed and  organized

under the laws of the Republic of South Africa and at all times relevant to the events

described herein, Brett Cormick, was a Director and Officer of Elan Suisse.

2.    Defendant herein is Robert D. Christ, ("Christ") an individual who resides

at 2333 Jones Road, Pottstown, Pa. 19465.

3.    During or about July 2003, Elan was incorporated for the purpose of

developing and attracting international investors to a product developed by Cormick that

proposed a safe investment vehicle for investors to invest in US dollars.

4.    The investment products developed became one of the trade secrets of Elan.

5.    Approximately in the beginning of February 2004, Christ (Defendant) became a thirty-six percent (36%) investor in Elan Suisse International Holdings. (A separate corporation from Elan).

6.    That after investing Two Hundred Fifty Thousand Dollars ($250,000.00) into the Elan Suisse International Holdings ("Holdings"), Christ had a thirty-six percent (36%) equity ownership and was also authorized to represent that entity which had been incorporated in the State of Delaware.

7.    Christ was to operate "Holdings" in the U.S. in order to attract investors there and did so in 2004.

8.    Christ was not authorized by Elan to operate any Website.

9.    That on or about September of 2004, Christ, without authority from Elan, set up the Website "elansuisse.co.za.", using the Elan Suisse name in direct conflict with "elan suisse.com" (a registered domain name).

10.    From September of 2004 and through the present time, Christ has posted defamatory statements on his Website regarding Elan Suisse, associated companies, their investors and employees, which consist of but are not limited to the following as set forth in Christ's Website postings attached hereto as Exhibit "A".

• "Elan Suisse Capital unclear as to which of these shell companies this moniter is attached"

• "John Walters sentencing hearing transcript on fraud charges"

• "The theft of this money to someone I trusted fueled …"

• "Cormick is and has been for several years – with impunity" running a
large international investment scam based in the UK and the Republics of
Zimbabwe and South Africa."

• "I am unable to establish where Cormick lives"

• "On the Alan Dean Affair whereby Cormick was arrested by
New Scotland Yard in 1997 on suspicion of fraud"

• "This is a classic bate and switch scam"

• "I believe this operation is a boiler room type operation"

• "Through a collapsible daisy chain of shell companies…that is the Elan
Suisse setup"

• An apparently new Elan Suisse entity just popped up!  It's called
Nicogel"

•"What about Elan Suisse RSA? I believe that the RSA operation is a
front to legitimize the whole business operation in Zimbabwe"

• "Neither Elan Suisse nor Cormick are what they are represented to
be"

• "CEO Elan Capital SA [See above this is a shell company]"

•"To the shock of finding out I have been scammed by someone I trusted".

(Posted May 31, 2006)

11.    The statements and innuendos contained in Christ's Website
"elansuisse.co.za." are deliberately false, malicious and misleading and were made for
the sole purpose of trying to force a settlement and/or return of the money that Christ had
invested in the Elan Suisse Holdings Co. in Delaware.

12.     Christ's inappropriate, defamatory and disparaging statements against Elan Suisse and its key officers and directors, have caused Elan to lose investors and make it difficult to attract any investors. (See the attached Affidavit of Brett Cormick, Peter John Kipps, Apostolos Zographos and Anthony John Carter, attached hereto respectively as Exhibits "B", "C","D"and "E").

## COUNT I

### Commercial Disparagement

13.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs one (1) through twelve (12)  with the same force and effect as if set forth fully herein.

14.     Christ intentionally and negligently disseminated false, malicious and misleading statements on his internet Website and through e-mail communications to Plaintiff's investors, potential investors and customers by posting on his Website completely false, malicious and misleading information about the Plaintiff Company, its key operating Officers, company employees, and others associated with Plaintiff.

15.     Christ was aware that these statements were false and knew or reasonably should have known that the statements would likely result in harm to Plaintiff's business and result in detering other potential investors and current investors from dealing further with Plaintiff Company.

16.     Christ's false statements played a material and substantial part in deterring Plaintiff's potential investors and current investors to not invest in the Company or to limit their investments with the Company and even cause losses to current investors.

17.    As a direct and proximate result of the aforesaid conduct, Plaintiff has been damaged in an amount that will be proven at trial and is expected to be in excess of Fifty Thousand Dollars ($50,000.00).

18.    That Defendant Christ's continued use of the Website wherein he has and continues to post false, misleading, defamatory, malicious and damaging statements has and will continue to cause irreparable harm to Plaintiff and the reputation of its officers, potential investors, current investors and employees to which immediate equitable relief is necessary.

**WHEREFORE,** Plaintiff Elan Suisse, prays that this Honorable Court (i) enjoin Robert D. Christ from making the aforesaid defamatory and disparaging statements with respect to Elan Suisse and any employees, investors or anyone who was or has been associated with the Elan Suisse Group. And furthermore, that Mr. Christ immediately cease and desist from operating any Website using the protected name Elan Suisse or any Website with any similar, misleading or confusing designation which would lead anyone to believe it was an official site of Elan Suisse; (ii) enter judgment for Elan Suisse and against Robert Christ and award all compensable damages, costs, prejudgment and post judgment interest, and attorney fees; and (iii) provide such other and further relief as this Court deems necessary and just.

### COUNT II

### VIOLATION OF §43(a)(1)(A)(B)OF THE LANHAM ACT

19.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs one (1) through eighteen (18) with the same force and effect as if set forth fully herein.

20.   Section 43 (a)(1)(A) of the Lanham Act states follows:

(a)   Civil Action.
        (1)   Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol or device, or any combination thereof., or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which…
        (A)   is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person…shall be liable in a civil action.

15 U.S.C. §1125(a) (1) (A).

21.   Defendant has violated said Sections of the Lanham Act by his malicious, false and misleading use in commerce of the "Elan Suisse" name as above described.

**WHEREFORE,** Plaintiff Elan Suisse, prays that this Honorable Court (i) enjoin Robert D. Christ from making the aforesaid defamatory and disparaging statements with respect to Elan Suisse and any employees, investors or anyone who was or has been associated with the Elan Suisse Group. And furthermore, Christ be prohibited, directly or indirectly immediately cease and desist from operating any Website using the name Elan Suisse or any Website with any similar, misleading or confusing designation which would lead anyone to believe it was an official site of Elan Suisse; (ii) enter judgment for Elan Suisse and against Robert Christ and award it all compensable damages, costs, prejudgment and post judgment interest, and attorney fees; and (iii) provide such other and further relief as this Court deems necessary and just.

## COUNT III

## VIOLATION OF LANHAM ACT

### §43 (1)(d)(1) (A) (i) (ii) (I) (II)

22.   Plaintiff repeats and re-alleges each and every allegation contained in paragraphs one (1) through twenty-one (21)  with the same force and effect as if set forth fully herein.

23.   Section §43(d)(1) (A) (i) (ii) (I) (II) of the Lanham Act states as follows:

(d)   Cyberpiracy prevention.

(1)(A)  A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person...

(i)   has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and

(ii)   registers, traffics in, or uses as domain name that...

(I)   in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

(II)   in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark.

24.   Defendant has violated said Sections by acting in bad faith by intentionally registering and using the domain name of "Elan Suisse".

**WHEREFORE,** Plaintiff Elan Suisse, prays that this Honorable Court (i) enjoin Robert D. Christ from making the aforesaid defamatory and disparaging statements with respect to Elan Suisse and any employees, investors or anyone who was or has been associated with the Elan Suisse Group.  And furthermore, that Mr. Christ immediately cease and desist from operating any Website using the name Elan Suisse or any Website with any similar, misleading or confusing designation which would lead anyone to believe it was an official site of Elan Suisse; (ii) enter judgment in Elan Suisse favor and against Robert Christ and award it all compensable damages, costs, prejudgment  and post judgment interest, and attorney fees; and (iii) provide such other and further relief as this Court deems necessary and just.

Respectfully submitted:
**FRONT STREET LAWYERS, P.C.**

BY: _____
    **NICHOLAS CASAMENTO, ESQUIRE**
    *Attorney for Plaintiff*


BY: _____
    **JOSEPH A. RATASIEWICZ, ESQUIRE**
    *Attorney for Plaintiff*

<u>**V E R I F I C A T I O N**</u>

I,   Brett Cormick as Director and Shareholder of Elan Suisse Group, aver that the facts set forth in the foregoing  Complaint are true and correct to the best of my knowledge, information and belief and that this statement is made subject to the penalties of 18 Pa. C.S.A. §4904 relating to unsworn falsification to authorities.


_____   8 June 2006

Rx Date/Time    JUN-23-2006(FRI) 08:43                                    P. 001

JUN-23-2006   10:00                                              P.01/01

# MONTGOMERY COUNTY SHERIFF'S DEPARTMENT
## ORDER FOR SERVICE

Please prepare a separate request for service form for each defendant to be served by the Sheriff

To:  Sheriff John P. Durante                                      Date: 6/23/06
     Montgomery County Court House
     P.O. Box 311                          6-27          Prothonotary No. 06-15540
     Norristown, Pa. 19401-0311             (2)
     Phone : 610-278-3331    Fax  : 610-278-3832    Sheriff's Cost: 43 00

Attorney's Or Plaintiff's Name and Address:
Nicholas Casamento, Esquire  #37931
Joseph A. Ratasiewicz, Esquire $47453
Flagship Corporate Center, Suite 320
2 West Baltimore Pike
Media, Pa.  19063
ATTY.ID#           Telephone # (610) 891-0180

| xx | Civil Action | | Writ of Execution Levy |
|---|---|---|---|
| | Confessed Judgement | | Writ of Execution Attachment |
| | Complaint in Ejectment | | Writ of Execution Garnishee |
| | Posting | | Writ of Seizure |
| | Writ of Possession | | Impoundment |
| | Other:  x | | Court Order |

ELAN SUISSE, Ltd.

                    Vs.          PLANTIFF

ROBERT D. CHRIST

                               DEFENDANT

              Robert D. Christ or
              any adult individual
Service Upon:
LOCATION (MUST HAVE VALID ADDRESS OR DIRECTIONS)

2333 Jones Road
Pottstown, Pa.  19465

**FOR SHERIFF USE ONLY    SHERIFF'S RETURN**

PERSON SERVED _____

RELATIONSHIP / POSITION _____

PLACE OF SERVICE _____

DATE OF SERVICE _____

TIME OF SERVICE _____

NUMBER OF ATTEMPTS _____

DEPUTY _____

DEPUTY _____

LAST DAY FOR SERVICE  7-23-06

## SERVICE NOT MADE BECAUSE:

DATE: 6-26-06   TIME: 1420   DEPUTY: Ben   DEPUTY:

| NO SERVICE | BAD ADDRESS | UNKNOWN AT ADDRESS | NEED BETTER ADDRESS |
|---|---|---|---|
| MOVED | BUILDING VACANT | X ADDRESS OUT OF COUNTY | OTHER |

## POSSESSION TAKEN:

DATE:            TIME:            DEPUTY:            DEPUTY:   B
ATTEMPTED SERVICE DATE & TIME

                    Chester Co.

                                        SUPERVISOR APPROVAL

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ELAN SUISSE LTD.                      :
      Plaintiff                      :
                       :
     vs.                             :      Civil Action No.06-3901
                       :
ROBERT D. CHRIST                      :
      Defendant                       :

## MEMORANDUM OF LAW
## IN RESPONSE TO DEFENDANT'S
## MOTION TO DISMISS

## STATEMENT OF FACTS

In the case at bar, a Complaint in this matter was filed in the State Court on June 23, 2006 containing three (3) counts, one for Commercial Disparagement and two (2) for violations of the Lanham Act. A true and correct copy of this Complaint is attached hereto as Exhibit "A".

Plaintiff, Elan Suisse LTD., (Elan Suisse) was incorporated during or about July 23, 2003 (see Exhibit "A" ¶3). The Plaintiff Company's product, developed by Brett Cormick, was an investment vehicle for investors to invest in U.S. Dollars (See Exhibit "A" ¶3).

That around the beginning of February 2004, Defendant Christ became a thirty-six percent (36%) investor in Elan Suisse International Holdings (Elan Suisse USA), a separate corporation from Elan, which Christ was to operate Elan Suisse USA in order to attract investors in the United States. (See Exhibit "A" ¶5) Christ was not authorized by Elan Suisse to operate any website. (See Exhibit "A" ¶¶5-8)

That sometime around September or October of 2005, Christ, despite having not been authorized to operate any website purporting to be related to any of the Elan Suisse

companies, did so and set up the sites *Elan Suisse.co.za.* and *Elan-Suisse.com.* From that date through the present time, as set forth in the Complaint,  Mr. Christ has operated said website and has posted defamatory statements against the Company, its chief promoter and founder, Brett Cormick and other various investors and employees.  (See Exhibit "A" ¶10).

When Mr. Christ filed his Delaware action on April 27, 2006,in his Complaint he specifically states that he is a resident of Pottstown, Pa.. In the Affidavit that he has attached to Defendant's Motion to Dismiss in the case at bar, he unequivocally states that he and his family did not move to Louisiana until June 2, 2006 and they did not close on their former home until July 15, 2006.  Furthermore, from the time he started operating this website and prior to that, Mr. Christ owned a Company called Seatrepid which operated out of Pottstown, Pa.. Furthermore, Mr. Christ's Affidavit states that he did not move that Company until May 1, 2006.

Plaintiff attempted to make personal service on or about June 27, 2006 but was unable to find Mr. Christ at his Pottstown, Pa. residence.  This is the first time that Plaintiff became aware that Defendant may have moved from Pottstown, Pa.  (See Exhibit "B")  Thereafter, Plaintiff through information from the Post Office, learned that Defendant Christ had put a Change of Address with the Post Office for his new residence in Louisiana on June 7, 2006 to be effective June 9, 2006. (See Exhibit "C"). Thus, at least until the beginning of June 2006, was a resident of Pennsylvania and his postings to this website were from his home in Pennsylvania. (See Exhibit "D" consisting of Pg. 2 of 78 of downloaded material from Defendant Christ's website whereby he informs

everyone of his Pottstown, Pa. address, phone and fax number and his e-mail address at *Seatriped*, his place of business).

Furthermore, until July 15, 2006, Christ owned residential property in Pottstown, Pa..

## I. ELAN SUISSE DOES HAVE SPECIFIC PERSONAL JURISIDICTION OVER DEFENDANT CHRIST IN PENNSYLVANIA

Pennsylvania's Long Arm Statute, 42 Pa. C.S.§5322 (a) (3) (b) entitled a Basis of personal jurisdiction over persons outside this Commonwealth provides in pertinent part:

> (a)  GENERAL RULE.—A tribunal of this Commonwealth may exercise personal jurisdiction over a person (or the personal representative of a deceased individual who would be subject to jurisdiction under this subsection if not deceased) who acts directly or by an agent, as to a cause of action or other matter arising from such person:…
>
> (3) "Causing harm or tortuous injury by an act or omission in this Commonwealth" ; and
>
> (b) "EXERCISE OF FULL CONSTITUTUIONAL POWER NONRESIDENTS –In addition to the provisions of subsection (a) the jurisdiction of the tribunals of this Commonwealth shall extend to all persons who are not within the scope of section 5301 (relating to persons) to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States".

Pursuant to <u>Fed. R. Civ. P. (4(e),</u>  federal  "district courts have personal **jurisdiction** over non-resident defendants to the extent authorized under the law of the forum state in which the district court sits."  <u>Machulsky v. Hall et al,</u>  Fed. Supp. 2nd 531, 537 (2002).

Thus, in Pennsylvania, its Long Arm Statute does permit personal jurisdiction as

far as it can be permitted under the Fourteenth Amendment to the United States

Constitution. Therefore, in contradiction to the Plaintiff's brief, the constitutional analysis

under <u>International Shoe</u> is proper.  <u>International Shoe Co. v. Washington</u>, 326 US 310

(1945).

In Defendant's Motion to Dismiss, they are intimating that there is no proof that

Mr. Christ was operating the website.  This is a "Red Herring".  In Exbibit "D" attached

to Plaintiff's Complaint,  Mr. Christ specifically informs people how to contact him with

regard to his website and gives his address, phone number, fax number and even his e-

mail address for his business as being located in Pottstown, Pa..  Plaintiff is entitled to all

reasonable inferences from his pleadings and the matters he is now bringing before the

Court's attention.  Thus, in either September or October 2005 through the beginning of

June 2006, the Defendant was based in Pennsylvania, was residing in Pennsylvania and

was posting defamatory materials while he was staying in Pennsylvania.  Under

Pennsylvania's <u>Long Arm Statute</u>, there would be jurisdiction because the Defendant was

causing harm or tortuous injury by his acts in Pennsylvania.

42 Pa. C.S.A. 5322 (a)(3).

Defendant Christ's suggestion that this case should be transferred to the Federal

Court in Louisiana is absurd. Why would a Louisiana Court want to take jurisdiction over

a case where all of the tortuous conduct emanated from Pennsylvania and the Defendant

Christ resided there during said acts.

## **II.    THIS ACTION SHOULD NOT BE TRANSFERRED  TO ANOTHER COURT AS THIS COURT DOES HAVE PROPER VENUE FOR PLAINTIFF'S CLAIMS**

Pursuant to 28 U.S.C.1391 (b) (2), "…a civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except at otherwise provided by law, be brought only in…(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred…. As herein stated, and as further evidenced by Defendant's own admissions on the website, and as attached as Exhibit "D" to Plaintiff's Complaint,  Defendant was communicating from his location in Pottstown, Pa.; and all, if not a substantial part, of Defendant's actions towards Plaintiff, were conducted from his Pottstown, Pa. location.  Pursuant to Bates v. C & S Adjusters, Inc., 980 F. 2d 865 (2d Cir. 1992), the Courts analyzed a "substantial part" by determining the location where the events occurred, not by identifying whether a Defendant may have deliberate contact with the forum. It is unquestionable that the events giving rise to Plaintiff's Complaint, occurred from the Defendant's then residence in Pottstown, Pa.. Therefore, pursuant to 28 U.S.C. 1391(b)(2), venue is proper in the current District Court in which Plaintiff has sought relief.  Furthermore, Defendant's reference to 28 U.S.C.1400 (a) is misguided.  28 U.S.C. 1400(a) is a permissive statute of jurisdiction and venue and is not a required statute for venue and jurisdiction.  Likewise, Defendant's reference to 28 U.S.C. 1406(a) is similarly misguided as said subsection presumes that an action has been brought in the wrong division or district.  As above indicated, §1391(b) clearly lays proper venue with the current District Court for the Eastern District of Pennsylvania.  And, finally, Defendant's reference to 28 U.S.C. 1404(a) fails to take into consideration the fact that the parties in the State of Delaware District Court action, are not the same as the parties in Plaintiff's current action; and that, Defendant is fully aware that the Defendants in the Delaware action have an outstanding Motion for Dismissal

pursuant to lack of jurisdiction as to individual parties therein. There is a strong likelihood that Defendants, or some of them, in the Delaware action will prevail upon their Motion such that the action by Defendant herein, will be dismissed in Delaware. It clearly would not serve the interest of justice nor would it be convenient for the Plaintiff in this action to be forced to litigate a matter in Delaware that will most likely be dismissed on jurisdictional grounds. To transfer said Plaintiff's case at this time would prejudice other parties in these Delaware matter and would not be in the interest of justice.

For all of the above reasons, the tortuous acts of Defendant Christ were committed while he was residing in Pennsylvania and were committed in Pennsylvania as part of a "blackmail campaign" to force Plaintiff to settle a business dispute, cause him personal embarrassment and cause the Company economic damages and the individuals involved embarrassment by his attacks on their character. Jurisdiction is constitutional in Pennsylvania because at the time Mr. Christ committed these tortuous acts, he owned property here, resided here with his wife and he also operated a business here. As such, this case should not be transferred to Delaware.

Respectfully submitted:
**FRONT STREET LAWYERS, P.C.**

**BY:**_____
      **NICHOLAS CASAMENTO, ESQUIRE**

**BY:**_____
      **JOSEPH A. RATASIEWICZ, ESQUIRE**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELAN SUISSE LTD. | : | |
| Plaintiff | : | |
| | : | |
| vs. | : | Civil Action No.06-3901 |
| | : | |
| ROBERT D. CHRIST | : | |
| Defendant | : | |

### <u>CERTIFICATE OF SERVICE</u>

I, NICHOLAS CASAMEMTO, ESQUIRE, attorney for Plaintiff, hereby certifies that a copy of the within Memorandum of Law in Response to Defendant's Motion to Dismiss was served on counsel for Defendant by U.S. 1st Class Mail Postage Prepaid at:

Andrew J. Soven, Esquire  
2500 One Liberty Place  
1650 Market Street  
Philadelphia, Pa. 19103  
Attorney for Defendant  

Thad J. Bracegirdle,Esquire  
1201 Market Street, Suite 1500  
Wilmington, DE 19801  
Attorney for Defendant  

Respectfully submitted:  
**FRONT STREET LAWYERS, P.C.**

**BY:**_____

      **NICHOLAS CASAMENTO, ESQUIRE**  
      **Attorney for Plaintiff**

**BY:**_____

      **JOSEPH A. RATASIEWICZ, ESQUIRE**  
      **Attorney for Plaintiff**

**Date: September 25, 2006**

"A"

**FRONT STREET LAWYERS, P.C.**
**BY:  NICHOLAS CASAMENTO, ESQUIRE**
**Attorney I.D. #37931**
**JOSEPH A. RATASIEWICZ, ESQUIRE**
**Attorney I.D.#47453**
**Flagship Corporate Center, Suite 320**
**2 West Baltimore Avenue**
**Media, Pa.  19063**
**610-891-0180**

_____ Attorneys for Plaintiff

## IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| ELAN SUISSE  Ltd. | : | NO.  06-3901 |
| Plaintiff | : | |
| vs. | : | CIVIL ACTION –LAW |
| ROBERT D. CHRIST | : | |
| Defendant | : | JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, Elan Suisse Ltd., ("Plaintiff")  by and through its attorney, Nicholas Casamento, Esquire, hereby brings this action against Robert D. Christ and in support thereof, alleges the following:

1.      Plaintiff, Elan Suisse Ltd. ("Elan"), is a corporation formed and  organized under the laws of the Republic of South Africa and at all times relevant to the events described herein, Brett Cormick, was a Director and Officer of Elan Suisse.

2.      Defendant herein is Robert D. Christ, ("Christ") an individual who resides at 2333 Jones Road, Pottstown, Pa.  19465.

3.      During or about July 2003, Elan was incorporated for the purpose of developing and attracting international investors to a product developed by Cormick that proposed a safe investment vehicle for investors to invest in US dollars.

4.      The investment products developed became one of the trade secrets of Elan.

5.      Approximately in the beginning of February 2004, Christ (Defendant) became a thirty-six percent (36%) investor in Elan Suisse International Holdings. (A separate corporation from Elan).

6.      That after investing Two Hundred Fifty Thousand Dollars ($250,000.00) into the Elan Suisse International Holdings ("Holdings"), Christ had a thirty-six percent (36%) equity ownership and was also authorized to represent that entity which had been incorporated in the State of Delaware.

7.      Christ was to operate "Holdings" in the U.S. in order to attract investors there and did so in 2004.

8.      Christ was not authorized by Elan to operate any Website.

9.      That on or about September of 2004, Christ, without authority from Elan, set up the Website "elansuisse.co.za.", using the Elan Suisse name in direct conflict with "elan suisse.com" (a registered domain name).

10.     From September of 2004 and through the present time, Christ has posted defamatory statements on his Website regarding Elan Suisse, associated companies, their investors and employees, which consist of but are not limited to the following as set forth in Christ's Website postings attached hereto as Exhibit "A".

        • "Elan Suisse Capital unclear as to which of these shell companies this moniter is attached"

        • "John Walters sentencing hearing transcript on fraud charges"

        • "The theft of this money to someone I trusted fueled …"

• "Cormick is and has been for several years – with impunity" running a large international investment scam based in the UK and the Republics of Zimbabwe and South Africa."

• "I am unable to establish where Cormick lives"

• "On the Alan Dean Affair whereby Cormick was arrested by New Scotland Yard in 1997 on suspicion of fraud"

• "This is a classic bate and switch scam"

• "I believe this operation is a boiler room type operation"

• "Through a collapsible daisy chain of shell companies…that is the Elan Suisse setup"

• An apparently new Elan Suisse entity just popped up!  It's called Nicogel"

•"What about Elan Suisse RSA? I believe that the RSA operation is a front to legitimize the whole business operation in Zimbabwe"

• "Neither Elan Suisse nor Cormick are what they are represented to be"

• "CEO Elan Capital SA [See above this is a shell company]"

•"To the shock of finding out I have been scammed by someone I trusted".

(Posted May 31, 2006)

11.     The statements and innuendos contained in Christ's Website "elansuisse.co.za." are deliberately false, malicious and misleading and were made for the sole purpose of trying to force a settlement and/or return of the money that Christ had invested in the Elan Suisse Holdings Co. in Delaware.

12.     Christ's inappropriate, defamatory and disparaging statements against Elan Suisse and its key officers and directors, have caused Elan to lose investors and make it difficult to attract any investors. (See the attached Affidavit of Brett Cormick, Peter John Kipps, Apostolos Zographos and Anthony John Carter, attached hereto respectively as Exhibits "B", "C","D"and "E").

## COUNT I

### Commercial Disparagement

13.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs one (1) through twelve (12)  with the same force and effect as if set forth fully herein.

14.     Christ intentionally and negligently disseminated false, malicious and misleading statements on his internet Website and through e-mail communications to Plaintiff's investors, potential investors and customers by posting on his Website completely false, malicious and misleading information about the Plaintiff Company, its key operating Officers, company employees, and others associated with Plaintiff.

15.     Christ was aware that these statements were false and knew or reasonably should have known that the statements would likely result in harm to Plaintiff's business and result in detering other potential investors and current investors from dealing further with Plaintiff Company.

16.     Christ's false statements played a material and substantial part in deterring Plaintiff's potential investors and current investors to not invest in the Company or to limit their investments with the Company and even cause losses to current investors.

17.     As a direct and proximate result of the aforesaid conduct, Plaintiff has been damaged in an amount that will be proven at trial and is expected to be in excess of Fifty Thousand Dollars ($50,000.00).

18.     That Defendant Christ's continued use of the Website wherein he has and continues to post false, misleading, defamatory, malicious and damaging statements has and will continue to cause irreparable harm to Plaintiff and the reputation of its officers, potential investors, current investors and employees to which immediate equitable relief is necessary.

**WHEREFORE,** Plaintiff Elan Suisse, prays that this Honorable Court (i) enjoin Robert D. Christ from making the aforesaid defamatory and disparaging statements with respect to Elan Suisse and any employees, investors or anyone who was or has been associated with the Elan Suisse Group.  And furthermore, that Mr. Christ immediately cease and desist from operating any Website using the protected name Elan Suisse or any Website with any similar, misleading or confusing designation which would lead anyone to believe it was an official site of Elan Suisse; (ii) enter judgment for Elan Suisse and against Robert Christ and award all compensable damages, costs, prejudgment  and post judgment interest, and attorney fees; and (iii) provide such other and further relief as this Court deems necessary and just.

## COUNT II

## VIOLATION OF §43(a)(1)(A)(B)OF THE LANHAM ACT

19.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs one (1) through eighteen (18)  with the same force and effect as if set forth fully herein.

20.    Section 43 (a)(1)(A) of the Lanham Act states follows:

(a)    Civil Action.
(1)    Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol or device, or any combination thereof., or any false designation of origin, false or misleading description of fact, or  false or misleading representation of fact, which…
(A)    is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association  of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person…shall be liable in a civil action.

15 U.S.C. §1125(a) (1) (A).

21.    Defendant has violated said Sections of the Lanham Act by his malicious, false and misleading use in commerce of the "Elan Suisse" name as above described.

**WHEREFORE,** Plaintiff Elan Suisse, prays that this Honorable Court (i) enjoin Robert D. Christ from making the aforesaid defamatory and disparaging statements with respect to Elan Suisse and any employees, investors or anyone who was or has been associated with the Elan Suisse Group.  And furthermore, Christ be prohibited, directly or indirectly immediately cease and desist from operating any Website using the name Elan Suisse or any Website with any similar, misleading or confusing designation which would lead anyone to believe it was an official site of Elan Suisse; (ii) enter judgment for Elan Suisse and against Robert Christ and award it all compensable damages, costs, prejudgment  and post judgment interest, and attorney fees; and (iii) provide such other and further relief as this Court deems necessary and just.

## COUNT III

## VIOLATION OF LANHAM ACT

### §43 (1)(d)(1) (A) (i) (ii) (I) (II)

22.     Plaintiff repeats and re-alleges each and every allegation contained in

paragraphs one (1) through twenty-one (21)  with the same force and effect as if set forth

fully herein.

23.     Section §43 (d) (1) (A) (i) (ii) (I) (II) of the Lanham Act states as follows:

(d)     Cyberpiracy prevention.

(1)(A)  A person shall be liable in a civil action by the owner of a mark,
including a personal name which is protected as a mark under this section, if, without
regard to the goods or services of the parties, that person…
        (i)     has a bad faith intent to profit from that mark, including a
personal name which is protected as a mark under this section; and
        (ii)    registers, traffics in, or uses as domain name that…
        (I)     in the case of a mark that is distinctive at the time of
registration of the domain name, is identical or confusingly similar to that mark;
        (II)    in the case of a famous mark that is famous at the time of
registration of the domain name, is identical or confusingly similar to or dilutive of that
mark.

24.     Defendant has violated said Sections by acting in bad faith by

intentionally registering and using the domain name of "Elan Suisse".

**WHEREFORE,** Plaintiff Elan Suisse, prays that this Honorable Court (i) enjoin

Robert D. Christ from making the aforesaid defamatory and disparaging statements with

respect to Elan Suisse and any employees, investors or anyone who was or has been

associated with the Elan Suisse Group.  And furthermore, that Mr. Christ immediately

cease and desist from operating any Website using the name Elan Suisse or any Website

with any similar, misleading or confusing designation which would lead anyone to

believe it was an official site of Elan Suisse; (ii) enter judgment in Elan Suisse favor and

against Robert Christ and award it all compensable damages, costs, prejudgment  and

post judgment interest, and attorney fees; and (iii) provide such other and further relief as

this Court deems necessary and just.

Respectfully submitted:
**FRONT STREET LAWYERS, P.C.**


**BY:**_____
        **NICHOLAS CASAMENTO, ESQUIRE**
        **Attorney for Plaintiff**



**BY:**_____
        **JOSEPH A. RATASIEWICZ, ESQUIRE**
        **Attorney for Plaintiff**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ELAN SUISSE LTD.              :
                Plaintiff        :
                          :
         vs.              :      Civil Action No.06-3901
                          :
ROBERT D. CHRIST       :
              Defendant    :

## CERTIFICATE OF SERVICE

I, NICHOLAS CASAMEMTO, ESQUIRE, attorney for Plaintiff, hereby certifies that a copy of the within Memorandum of Law in Response to Defendant's Motion to Dismiss was served on counsel for Defendant by U.S. 1st Class Mail Postage Prepaid at:

Andrew J. Soven, Esquire         Thad J. Bracegirdle,Esquire
2500 One Liberty Place           1201 Market Street, Suite 1500
1650 Market Street               Wilmington, DE 19801
Philadelphia, Pa. 19103          Attorney for Defendant
Attorney for Defendant

Respectfully submitted:
**FRONT STREET LAWYERS, P.C.**

**BY:**_____
        **NICHOLAS CASAMENTO, ESQUIRE**
        **Attorney for Plaintiff**

**BY:**_____
        **JOSEPH A. RATASIEWICZ, ESQUIRE**
        **Attorney for Plaintiff**

**Date:  September 25, 2006**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ELAN SUISSE LTD.                    :
            Plaintiff         :
                      :
            vs.             :          Civil Action No.06-3901
                      :
ROBERT D. CHRIST                   :
            Defendant       :

## <u>O R D E R</u>

    **AND NOW,** this    day of               , 2006, after consideration of

Defendant's Motion to Dismiss and Plaintiff's Response thereto, it is hereby

**ORDERED and DECREED** that Defendant's Motion to Dismiss is **DENIED.**

                       **BY THE COURT:**

                   _____**J.**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| ELAN SUISSE LTD., | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 06-3901 |
| ROBERT D. CHRIST, | : | |
| Defendant. | : | |

### REPLY MEMORANDUM IN FURTHER SUPPORT OF
### DEFENDANT'S MOTION TO DISMISS OR TRANSFER

For the reasons set forth below and in his opening Memorandum of Law, dated September 11, 2006, defendant Robert D. Christ respectfully requests that the Court dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and for improper venue. In the alternative, defendant also respectfully requests that the Court transfer this action to the U.S. District Court for the District of Delaware or the U.S. District Court for the Eastern District of Louisiana.

### ARGUMENT

### I.    PLAINTIFF HAS FAILED TO PROVE FACTS SUFFICIENT TO ESTABLISH THIS COURT'S PERSONAL JURISDICTION OVER DEFENDANT.

As discussed in defendant's opening Memorandum of Law, once defendant raised the defense of lack of personal jurisdiction, the burden fell upon plaintiff "to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." *Carteret Savings Bank, F.A. v. Shusan*, 954 F.2d 141, 146 (3d Cir. 1992). Plaintiff has failed completely to carry this burden and, accordingly, this action should be dismissed.

In response to defendant's proof establishing that he is not subject to this Court's personal jurisdiction, plaintiff relies solely on the unsubstantiated allegations of its complaint and the inference that, if defendant did not move his primary residence to Louisiana until June 2, 2006, he must have been posting information to the *www.elansuisse.co.za* website (the "Website") prior to that date from his home in Pennsylvania. Therefore, plaintiff concludes, "in either September or October of 2005 through the beginning of June 2006, the Defendant was based in Pennsylvania, was residing in Pennsylvania and was posting [allegedly] defamatory materials while he was staying in Pennsylvania." Pl. Mem. at 4. Plaintiff thus argues that, pursuant to 42 Pa. C.S.A § 5322(a)(3), defendant is subject to personal jurisdiction within this venue because he "was causing harm or tortuous [*sic*] injury by his acts in Pennsylvania." *Id.*

Plaintiff, however, does not and cannot provide any factual support to his supposition that defendant caused allegedly tortious injury by acts in Pennsylvania simply because no such facts exist. As demonstrated by the Affidavit of Robert D. Christ submitted herewith ("Christ Aff.," attached hereto as Exhibit A), from January 2006 until the time he relocated permanently to Louisiana in June 2006, defendant worked and was located outside of Pennsylvania virtually full-time. Specifically, defendant, who operates an underwater exploration business, has worked almost exclusively since January 2006 in the Gulf of Mexico assisting petroleum companies clean up and repair damage to oil wells caused by Hurricanes Katrina and Rita. *See* Christ Aff. ¶¶ 3-10. In fact, it is the vast quantity of this work in the Gulf region that caused defendant ultimately to relocate his business and family permanently to Louisiana. *See id.* ¶ 3. During this time, defendant did not maintain or post information to the Website from Pennsylvania, but rather from locations in Texas and Louisiana and from vessels in the middle of the Gulf of Mexico. *See id.* ¶¶ 4-11.

- 2 -

Accordingly, plaintiff's speculation that defendant caused harm or tortious injury by acts in Pennsylvania is factually inaccurate and cannot form the basis for long-arm jurisdiction under Pa. C.S.A. § 5322(a). Moreover, under the circumstances presented here – where defendant has spent the last nine months almost exclusively outside of Pennsylvania – subjecting defendant to personal jurisdiction in this forum would neither be reasonable nor comply with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 396 U.S. 310, 316 (1945).[1]

## II.   DISMISSAL OR TRANSFER OF THIS ACTION FOR IMPROPER VENUE IS APPROPRIATE.

Since plaintiff plainly cannot rely upon 28 U.S.C. § 1391(b)(1) to establish venue in this district, it instead argues that venue is proper pursuant to Section 1391(b)(2), under which a non-diversity action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). In determining substantiality under the statute, courts are to assess the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, not simply the quantity of contacts. *See, e.g., Daniel v. American Bd. of Emergency Med.*, 428 F.3d 408, 431-35 (2d Cir. 2005) (whether events or omissions constitute "substantial part" of events or omissions giving rise to claim to be decided by considering nexus between events or omissions and nature of claims); *Mitrano v. Hawes*, 377 F.3d 402, 405-06 (4th Cir. 2004) (court should review entire sequence of events underlying claim to determine if venue is proper). This is particularly true in cases such

---

[1] Plaintiff argues curiously that defendant offered a "red herring" by "intimating that there is no proof that Mr. Christ was operating the website." Pl. Mem. at 4. Nothing could be further from the truth, as defendant openly and clearly does not dispute that he created, edited and maintained the Website. *See, e.g.*, Sept. 11, 2006 Christ Aff. ¶¶ 4, 6-7 (Ex. B to Def. Mem.). Defendant merely argued – correctly – that plaintiff's complaint identifies no allegedly tortious actions which took place in Pennsylvania. *See* Def. Mem. at 10.

as this one, where plaintiff has alleged claims arising under the Lanham Act. *See Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 195-96 (3d Cir. 1994) (focus of venue inquiry in Lanham Act case is location where alleged infringement occurred); *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995) (district where "passing off" occurred was correct venue for Lanham Act claim).

As demonstrated above and in defendant's affidavit submitted herewith, plaintiff's claim that "[i]t is unquestionable that the events giving rise to Plaintiff's Complaint occurred from the Defendant's then residence in Pottstown, Pa." (Pl. Mem. at 5) is incorrect. Rather, the majority of actions allegedly giving rise to plaintiff's claims took place in multiple jurisdictions other than Pennsylvania. Given these facts, and plaintiff's inability to identify any contact with this district other than defendant's former place of residence, plaintiff cannot establish that "a substantial part of the events" giving rise to its claim took place in Pennsylvania. Accordingly, the only clear option for venue is the Eastern District of Louisiana, where defendant resides, pursuant to 28 U.S.C. § 1391(b)(1).[2]

Alternatively, as discussed in defendant's opening Memorandum of Law, this action should be transferred to the U.S. District Court for the District of Delaware, where a prior-filed related action between the same parties (and their privities) is pending. While plaintiff states blithely that the parties in the Delaware action "are not the same as the parties in Plaintiff's current action" (Pl. Mem. at 5), it ignores the plain fact that both parties to this action are parties to the pending Delaware action, as is Mr. Cormick, the mastermind behind the fraudulent scheme

---

[2] Plaintiff's assertion that transferring venue to Louisiana would be "absurd" (Pl. Mem. at 4) overlooks, of course, the obvious propriety of that forum under Section 1391(b)(1) as the district where defendant currently resides. *See* 28 U.S.C. § 1391(b)(1).

through which he and his co-conspirators unlawfully misappropriated defendant's funds.[3]

Moreover, plaintiff has no basis for its claim that there is a "strong likelihood" that the Motion to

Dismiss currently *sub judice* before the Delaware court will be granted.  Plaintiff also fails to

rebut the fact that it easily could have brought this action as a counterclaim in Delaware, where

defendant already had filed suit in a related case.  Instead, plaintiff opted to engage in forum

shopping when it knew or should have known that defendant no longer resided in Pennsylvania.[4]

Accordingly, transfer of this action under 28 U.S.C. §§ 1404(a) or 1406(a) to Louisiana – where

defendant resides and is subject to personal jurisdiction – or to Delaware – where the parties

already are engaged in related litigation – would conserve the Court's and the parties' resources

and promote judicial economy.

---

[3] Ironically, the frequent reference to plaintiff as "he" in the answering memorandum belies Mr. Cormick's true role as the alter ego of Elan Suisse, the sham entity used to defraud defendant.

[4] While plaintiff states that the first time it became aware that defendant moved from Pennsylvania was when service was attempted on June 27, 2006 (*see* Pl. Mem. at 2), plaintiff in fact had been served on June 26, 2006 with an affidavit in the Delaware action stating that defendant had relocated to Louisiana.  *See* June 23, 2006 Christ Aff. ¶ 3 (attached hereto as Exhibit B).

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in his opening Memorandum of

Law, defendant Robert D. Christ respectfully requests that plaintiff's claims be dismissed in their

entirety.  Alternatively, defendant respectfully requests that the Court transfer this action to the

U.S. District Court for the District of Delaware or the U.S. District Court for the Eastern District

of Louisiana.

REED SMITH LLP

By:      /as955                            
         Andrew J. Soven
         PA I.D. No. 76766
         2500 One Liberty Place
         1650 Market Street
         Philadelphia, PA 19103
         (215) 851-8100

         Thad J. Bracegirdle
         1201 Market Street, Suite 1500
         Wilmington, DE 19801
         (302) 778-7500

         *Attorneys for Defendant*

Dated:  October 2, 2006

EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ELAN SUISSE LTD.,                        :

           Plaintiff,                :

    v.                                   :     Civil Action No. 06-3901

ROBERT D. CHRIST,                        :

           Defendant.               :

## AFFIDAVIT OF ROBERT D. CHRIST

STATE OF LOUISIANA       )
                         ) ss:
PARISH OF ST. TAMMANY   )

      Robert D. Christ, being duly sworn, hereby deposes and says:

      1.    I am the defendant in the above-captioned action and submit this affidavit in further support of my Motion to Dismiss or Transfer.

      2.    In opposition to my Motion to Dismiss or Transfer, plaintiff argues that I am subject to this Court's personal jurisdiction based on allegations that I posted information on the *www.elansuisse.co.za* website (the "Website") "from [my] home in Pennsylvania" and "was posting defamatory materials while [I] was staying in Pennsylvania." Plaintiff further argues that venue in this Court is proper because I allegedly "was communicating from [my] location in Pottstown, Pa." and "all, if not a substantial part, of [my] actions toward Plaintiff were conducted from [my] then residence in Pottstown, Pa."

      3.    Notably, plaintiff does not provide any factual support for these allegations because it cannot. In fact, the majority of my investigation of Mr. Cormick and the posting of the results of that investigation on the Website took place while I was outside of Pennsylvania

and traveling for my business. Since January 2006, I have spent nearly all my time in the Gulf of Mexico performing underwater exploration services in connection with the cleanup of damage caused by Hurricanes Katrina and Rita. It is this work which ultimately caused me to relocate my family and my business to Louisiana.

4.     From January 4, 2006 to February 20, 2006, I worked in the Gulf of Mexico on the "DBL 152" oil spill in which an oil barge struck and was punctured by the remnants of an oil platform overturned by Hurricane Rita. During that time, I stayed at a hotel in Port Arthur, Texas, where I updated the Website on my laptop computer over a broadband connection.

5.     From February 22, 2006 to March 1, 2006, I was operating in Eugene Island Block 314 in the Gulf of Mexico (about 120 miles south of Lafayette, Louisiana) aboard the Cal Dive International Diver Support Vessel "Cal Diver IV" under contract with ExxonMobil to inspect an underwater oil pipeline near an oil platform damaged by Hurricane Rita. While on board the Cal Diver IV, I updated the Website over a broadband connection through Petrocom.

6.     From March 1, 2006 to March 7, 2006, I was aboard the derrick barge "Southern Hercules" in East Cameron Block 195 in the Gulf of Mexico, under contract with Tetra Applied Technologies, assisting in the cleanup of debris from the area surrounding an underwater oil well. While on board the Southern Hercules, I updated the Website over a Petrocom broadband connection.

7.     From March 23, 2006 to March 27, 2006, I once again was in East Cameron Block 195 aboard the Southern Hercules where I updated the Website over a broadband connection through Petrocom.

- 2 -

8.    From April 1, 2006 to April 12, 2006, I was making arrangements in Hammond, Louisiana to relocate my business there. During that time, I made updates to the Website from Hammond, Louisiana.

9.    From April 13, 2006 to April 18, 2006, I was aboard the derrick barge "Anna IV" in Vermillion Block 226 in the Gulf of Mexico under contract with Tetra Applied Technologies. While on board the Anna IV, I updated the Website over a Petrocom broadband connection.

10.   From April 22, 2006 to May 3, 2006, I again was in the Eugene Island Block 314 in the Gulf of Mexico aboard the Cal Dive International Diver Support Vessel "Midnight Dancer," under contract with ExxonMobil to perform a platform grouting operation. While on board the Midnight Dancer, I updated the Website over a broadband connection through Petrocom.

11.   From May 1, 2006 to the present, my business has been permanently located in Hammond, Louisiana. During that time, I have made all updates to the Website from computers located at my business office in Hammond, Louisiana.

FURTHER AFFIANT SAYETH NOT.

Robert D. Christ

Subscribed and sworn to before me
this 27th day of September, 2006
My commission expires _Upon Death_

Notary Public

- 3 -

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ROBERT D. CHRIST,                        )
                                         )
            Plaintiff,                   )
                                         )
        v.                               )
                                         )
BRETT J. CORMICK, ELAN SUISSE            )        C.A. No. 06-275-GMS
INTERNATIONAL HOLDINGS (USA)             )
LLC, ELAN SUISSE (PTY) LTD.,             )
NICOGEL LTD., JOHN WALTERS,              )
DIANNE MARSHALL and MERCARI              )
FINANCIAL SERVICES (PTY) LTD.,           )
                                         )
            Defendants.                  )

## <u>AFFIDAVIT OF ROBERT D. CHRIST</u>

STATE OF LOUISIANA          )
                            ) ss:
PARISH OF TANGIPAHOA        )

Robert D. Christ, being duly sworn, hereby deposes and says:

1.      I am the plaintiff in the above-captioned action and submit this affidavit in

opposition to the defendants' Motions to Dismiss or Stay.

2.      I reviewed the allegations of my complaint prior to its filing and those allegations,

to the best of my knowledge and belief, are true.

3.      While my business obligations require me to travel extensively, until recently my

permanent residential and business address was in Pottstown, Pennsylvania.  Within the last

month, I have relocated my residence to Abita Springs, Louisiana and my business to Hammond,

Louisiana.

4.      This action represents simply the latest of my attempts to obtain relief from Brett

Cormick and the other defendants in a forum where a tribunal can properly exercise personal

jurisdiction over all the relevant parties.  Mr. Cormick, an Australian citizen, has intentionally structured his personal residences and business dealings across multiple countries and continents in order to maximize his ability to evade the jurisdiction of any one forum.  For example, he has represented to me as well as others that he either lives or has lived in the following locations: Harare, Zimbabwe; Hermanus, South Africa; Gauteng, South Africa; and London, England.

     5.    Mr. Cormick's various and constantly changing living and business arrangements allow him to pick and choose his place of residence in order to evade service of process and any judicial exercise of personal jurisdiction.  For example, in response to the complaint I filed against him in the High Court of South Africa located in Johannesburg, Mr. Cormick alleged that he permanently resided in Zimbabwe but "temporarily resides from time to time in Hermanus, in the Western Cape Province."  (This allegation is set forth at paragraph 1.3 of Exhibit A-2 to Mr. Cormick's declaration filed in this action.)  Mr. Cormick similarly stated under oath, at paragraph 7.3 of an affidavit submitted to the South African court (a true and correct copy of which is attached hereto as Exhibit A), that his "presence is often required in South Africa, Europe, and the United States" but that he "often, temporarily, reside[s] in Hermanus." However, in support of his motion to dismiss in this Court Mr. Cormick now contends that he is a resident of both Zimbabwe and the United Kingdom.

     6.    My complaint alleges that I wired $250,000 to Mr. Cormick in two separate payments in "March 2004" because, at Mr. Cormick's request, I provided him with the original confirmation of my wire transfer and, therefore, I cannot confirm with any specificity the day on which I first wired $125,000 to Mr. Cormick.  I did, however, retain the confirmation of my subsequent wire transfer of $125,000, a true and correct copy of which is attached as Exhibit B. As that document reflects, I wired $125,000 to Mr. Cormick on March 16, 2004, after Mr.

Cormick formed Elan Suisse International Holdings (USA) LLC ("Elan Suisse USA"). A true and correct copy of the Certificate of Formation for Elan Suisse USA as filed with the Delaware Secretary of State is attached as Exhibit C. Additionally, a true and correct copy of two e-mails which I received from Mr. Cormick on February 17 and 18, 2004, in which Mr. Cormick expresses his intent to form Elan Suisse USA as a Delaware limited liability company, is attached as Exhibit D.

7.     In any event, the date on which Elan Suisse USA was formed is irrelevant because, prior to the formation of that entity, Mr. Cormick and I agreed that, in exchange for my "investment," I would receive 50% equity shares in Elan Suisse (Pty) Ltd. ("Elan Suisse"), a South African corporation, and a Delaware-based entity (ultimately to be formed as Elan Suisse USA) which would hold certain intellectual property rights. In addition, Mr. Cormick's misrepresentations and fraudulent activities continued well into the Summer of 2004, after the formation of Elan Suisse USA, as I continued to perform marketing and business development activities for the purported business venture in reliance upon Mr. Cormick's representations that he and I would execute a formal agreement concerning my investment in Elan Suisse and his representations concerning the validity of the business.

8.     It was not until September 2004, when Mr. Cormick still had not produced a written agreement relating to my investment and could not adequately account for the status of the as-yet non-operational Elan Suisse business venture, that I began to question the truthfulness of Mr. Cormick's claims and the soundness of my "investment." At that time, I requested that Mr. Cormick cooperate with an audit of Elan Suisse and Elan Suisse USA so as to account for the whereabouts of the $250,000 I had wired to him. Rather than cooperate with that audit, Mr.

Cormick offered to repay $250,000 to me, an offer which I accepted but which Mr. Cormick has not honored to this date.

9.      Prior to September 2004, I did not suspect, nor did I have reason to suspect, that Mr. Cormick had made repeated and fraudulent misstatements to me. Until that time, I had trusted Mr. Cormick as a friend whom I had known since 1996 (a trust which, in hindsight, had been sorely misplaced).

10.     In support of their motion to dismiss, Mr. Cormick's co-defendants argue that there are no facts which could establish that John Walters, Dianne Marshall and Nicogel Ltd. ("Nicogel") conspired with Mr. Cormick to defraud me and use the funds I provided to Mr. Cormick to capitalize Acquacine Ltd. ("Acquacine"), a start-up company which subsequently changed its name to Nicogel. To the contrary, there are a number of facts which establish the conspiracy between these parties:

      a.      When Mr. Cormick was soliciting my investment in the Elan Suisse venture, and even after I wired $250,000 to Mr. Cormick, he stated repeatedly in e-mails to me that Elan Suisse was creating a biotechnology fund for potential South African investors. An example of these e-mails is attached as Exhibit E. In this e-mail, Mr. Cormick refers to the first "Private Equity" investment he intends to market to South African investors, a French company which purportedly had intellectual property rights to "the most important and revolutionary development in drug delivery systems in the last 20 years anywhere in the world."

      b.      The company which Mr. Cormick purported to describe in Exhibit E was Acquacine. Attached as Exhibit F is a true and correct copy of promotional materials for Acquacine developed by Mr. Cormick and provided to me by Mr. Cormick. According to these

- 4 -

materials, Acquacine's core business was the research and development of medicines delivered in a ready-to-drink beverage format.

      c.      According to information I have gathered, Mr. Walters and Ms. Marshall (who lives with Mr. Walters as well as the couple's daughter) are both officers of Acquacine (subsequently renamed Nicogel in December 2005) and Ms. Marshall is a shareholder of the company. In addition, the Internet web domain names www.acquacine.com, www.acquacine.co.uk, and www.nicotea.co.uk (referring to one of Acquacine's purported products) are all registered to Ms. Marshall.

      d.      In April 2005, Elan Suisse continued to promote investment in Acquacine through the print advertisement attached as Exhibit G. As this advertisement reflects, both Mr. Cormick and Mr. Walters are identified as managers of the "Elan Suisse Capital Biopharma" investment vehicle. The advertisement further promotes Elan Suisse's investment in Acquacine and invites potential investors to contact Mr. Cormick or Mr. Walters for more information.

      e.      In May 2005, Ms. Marshall authored a Power Point presentation aimed at potential investors and promoting the Elan Suisse "Biopharma Investment Portfolio." This presentation touts, among other things, the prospects for the Nicotea product allegedly produced by Acquacine.

      f.      A subsequent advertisement published in June 2005 (and attached as Exhibit H) further promotes the Elan Suisse "Biopharma Investment Portfolio." According to this advertisement, one of the key products in this "portfolio" is the "Nicotea" product allegedly produced by Acquacine. Like the April 2005 advertisement, this document also touts Mr. Cormick and Mr. Walters as key members of Elan Suisse who promote the Elan Suisse "investment" vehicle.

g.     A July 12, 2005 article written by South African financial journalist Julius

Cobbett (attached as Exhibit I) provides further details of the involvement of Mr. Walters and

Nicogel (f/k/a Acquacine) with Elan Suisse and Mr. Cormick and highlights just a few of the

dubious claims made by Mr. Cormick and Mr. Walters in Elan Suisse's promotional materials.

11.     Mr. Cormick's statement in his declaration that he is "currently waiting for Mr.

Christ to apply to the African court for a trial date" does not accurately describe the status of the

action I commenced in the High Court of South Africa in Johannesburg.  As indicated by the

plea Mr. Cormick filed in response to my complaint in that action (Exhibit A-2 to Mr. Cormick's

declaration) and the sworn statements in his affidavit attached hereto as Exhibit A, Mr. Cormick

has challenged the personal jurisdiction of the Johannesburg court over him and asserted that he

has no contacts with that forum.  I have not pursued my South African case against Mr. Cormick

further because of my likely inability to secure jurisdiction over Mr. Cormick in that court.  I

have not dismissed my South African case against Mr. Cormick voluntarily because, if I did so, I

would forfeit a bond of approximately $15,000 which I was required under South African law to

post with the court upon filing my complaint.

FURTHER AFFIANT SAYETH NOT.

Robert D. Christ

Subscribed and sworn to before me
this _33_ day of _June_____, 2006
My commission expires _____
_____Summer Owens
Commission# 62862
Expires in death

Notary Public

- 6 -

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBERT D. CHRIST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-275-GMS |
| | ) | |
| BRETT J. CORMICK, ELAN SUISSE | ) | |
| INTERNATIONAL HOLDINGS (USA) | ) | |
| LLC, ELAN SUISSE (PTY) LTD., | ) | |
| NICOGEL LTD., JOHN WALTERS, | ) | |
| DIANNE MARSHALL and MERCARI | ) | |
| FINANCIAL SERVICES (PTY) LTD., | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I, Thad J. Bracegirdle, hereby certify that on the 26th day of June, 2006, I caused a true and correct copy of *Affidavit of Robert D. Christ* to be served on the counsel for defendants as listed below, via electronic CM-ECF:

*Attorneys for Defendants:*

David L. Finger, Esquire
Finger & Slanina, P.A.
One Commerce Center, Suite 725
1201 North Orange Street
Wilmington, DE 19801-1155

Dated: June 26, 2006

/s/ Thad J. Bracegirdle
Thad J. Bracegirdle (DE ID 3691)

WILLIB-49001.1-TJBRACEG 6/26/06 2:04 PM

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of October, 2006, I caused a true and correct copy of the foregoing Reply Memorandum in Further Support of Defendant's Motion to Dismiss or Transfer, to be served via first class mail, postage prepaid, upon the following:

Nicholas Casamento, Esquire
Joseph A. Ratasiewicz, Esquire
Front Street Lawyers, P.C.
Flagship Corporate Center, Suite 320
2 West Baltimore Avenue
Media, PA 19063


_____/as955_____
Andrew J. Soven

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ELAN SUISSE LTD.,                          :
                                           :
                    Plaintiff,             :
                                           :
          v.                               :     Civil Action No. 06-3901
                                           :
ROBERT D. CHRIST,                          :
                                           :
                    Defendant.             :

## **ORDER**

     **AND NOW,** this _____ day of _____, 2006, upon consideration of the Motion

of Andrew J. Soven Esquire, for the Admission *pro hac vice* of Thad J. Bracegirdle, Esquire, to

appear on behalf of defendant Robert D. Christ in this action, it is hereby **ORDERED** that the

Motion is **GRANTED**.  Mr. Bracegirdle is admitted to practice before this Court *pro hac vice* as

counsel for Mr. Christ in this action only.


                     BY THE COURT:


                                            _____ J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ELAN SUISSE LTD.,           :
                        :

          Plaintiff,      :

                        :

      v.                  :     Civil Action No. 06-3901

                        :

ROBERT D. CHRIST,        :

                        :

          Defendant.    :

## MOTION FOR ADMISSION OF THAD J. BRACEGIRDLE *PRO HAC VICE*

On behalf of defendant Robert D. Christ ("Defendant"), Andrew J. Soven, Esquire

respectfully moves this honorable Court for the admission *pro hac vice* of Thad J. Bracegirdle,

Esquire, and in support hereof states as follows:

      1.     Thad J. Bracegirdle is Of Counsel at Reed Smith LLP, and regularly

practices from the firm's Delaware office, located at 1201 Market Street, Suite 1500,

Wilmington, Delaware 19801.

      2.     Mr. Bracegirdle was admitted to the bar of the State of Delaware in 1998

and the Bar of Pennsylvania in 1998, and is a member in good standing of both bars.  Mr.

Bracegirdle has also been admitted to practice before the United States District Court for the

District of Delaware and the United States Third Circuit Court of Appeals.

      3.     Mr. Bracegirdle has never been disciplined or censured by any court

before which he has appeared.

      4.     Good cause exists for Mr. Bracegirdle's admission because Mr. Christ has

requested that Mr. Bracegirdle represent him as counsel in the above-captioned matter.

5.      Andrew J. Soven is also counsel to Mr. Christ along with Mr. Bracegirdle, and is a member in good standing of the Bar of this Court.  Mr. Soven will continue to receive all pleadings, discovery and correspondence in this matter.

**WHEREFORE**, for all of the foregoing reasons, Andrew J. Soven, Esquire respectfully requests that this Court admit Thad J. Bracegirdle, Esquire to represent Mr. Christ *pro hac vice* for purposes of this action only.

Respectfully submitted,

Andrew J. Soven
P.A. I.D. No. 76766
**REED SMITH LLP**
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
(215) 851-8100

Counsel for Defendant

Dated:  October 3, 2006

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ELAN SUISSE LTD.,                    :
                                     :
                     Plaintiff,      :
                                     :
        v.                           :      Civil Action No. 06-3901
                                     :
ROBERT D. CHRIST,                    :
                                     :
                     Defendant.      :

## STATEMENT OF THAD J. BRACEGIRDLE

I, Thad J. Bracegirdle, being duly sworn according to law and in support of a

Motion for Admission *pro hac vice* submitted on my behalf, state as follows:

1.     I have been a member in good standing of the bars of the State of

Delaware and Commonwealth of Pennsylvania since 1998.  In addition, I have been admitted to

practice and a member in good standing of the bars of the United States Third Circuit Court of

Appeals since 2003 and the United States District Court for the District of Delaware since 1998.

2.     I am Of Counsel at the law firm of Reed Smith LLP, and practice in the

firm's Delaware office, 1201 Market Street, Suite 1500, Wilmington, Delaware 19801.  I have

been retained to represent defendant Robert D. Christ in the above-captioned case, which is

currently pending in the United States District Court for the Eastern District of Pennsylvania.

3.     I have never been suspended from the practice of law in any jurisdiction or

received any public reprimand by the highest disciplinary authority of any bar in which I have

been a member.

4.    I have in fact read the most recent edition of the Pennsylvania Rules of Professional Conduct and the Local Rules of this Court and agree to be bound by both sets of Rules for the duration of this case.

5.    If granted *pro hac vice* status, I will in good faith continue to advise counsel who has moved for my *pro hac vice* admission of the current status of this case and of all material developments therein.

6.    I respectfully request the Court grant my admission *pro hac vice* for the purpose of representing defendant in this action.

I affirm under the penalties for perjury that the foregoing representations are true and accurate to the best of my knowledge and belief.

Dated: Sept. 27, 2006

THAD J. BRACEGIRDLE

STATE OF DELAWARE              :
                              :    ss
COUNTY OF NEW CASTLE           :

Sworn to and subscribed before me this 27th day of September, 2006.

Notary Public

SUSAN J. MEIXELL
Notary Public
State of Delaware
My Commission Expires March 17, 2010

(SEAL)

-2-

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of October, 2006, I caused a true and correct copy of

the foregoing Motion for Admission *pro hac vice* of Thad J. Bracegirdle, Esquire to be served

via first class mail, postage prepaid, upon the following:

Nicholas Casamento, Esquire
Joseph A. Ratasiewicz, Esquire
Front Street Lawyers, P.C.
Flagship Corporate Center, Suite 320
2 West Baltimore Avenue
Media, PA 19063

Andrew J. Soven

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELAN SUISSE LTD., | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ROBERT D. CHRIST, | : | NO. 06-3901 |
| Defendant. | : | |

## ORDER

**AND NOW**, this 6th day of October, 2006, upon consideration of the Motion of Andrew J. Soven for Admission of Thad J. Bracegirdle *Pro Hac Vice*, as counsel *pro hac vice* (Docket No.7) for Defendant Robert D. Christ, it is hereby **ORDERED** that the Motion is **GRANTED** and Thad J. Bracegirdle, Esquire is **ADMITTED** in this case as counsel *pro hac vice* for Defendant Robert D. Christ provided (i) that he shall familiarize and comport himself in accordance with the Pennsylvania Rules of Professional Conduct and the rules of this Court, and (ii) that presenting counsel, to wit, Andrew J. Soven, Esquire, shall continue to have responsibility for this matter during its pendency before the Court.  Pursuant to this Order, Thad J. Bracegirdle shall be permitted to participate in all aspects of the instant litigation on behalf of Defendant Robert D. Christ.

BY THE COURT:


S/Gene E.K. Pratter
GENE E. K. PRATTER
UNITED STATES DISTRICT JUDGE

**NOTICE:**      **December 7, 2006**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| ELAN SUISSE LTD. | : | CIVIL ACTION |
| | : | |
| vs. | : | |
| | : | |
| ROBERT D. CHRIST | : | NO.  06-3901 |


### NOTICE OF ORAL ARGUMENT ON DEFENDANT'S MOTION
### TO DISMISS OR TRANSFER

Oral Argument on Defendant's Motion to Dismiss or Transfer has been

scheduled to be conducted on Thursday, December 21, 2006 at 2:00 p.m. before the Hon. Gene

E.K. Pratter in the United States Courthouse, 601 Market Street, Philadelphia, PA 19106 in a

courtroom to be assigned at a later time.

Please call Chambers before December 21 to ascertain which courtroom will be

used for the oral argument.


S/Rose A. Barber
Rose A. Barber
Civil Deputy to Hon. Gene E.K. Pratter
267-299-7350

Copies forwarded by ECF to:
Andrew J. Soven
Nicholas Casamento
Thad J. Bracegirdle

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ELAN SUISSE LTD.**, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| **ROBERT D. CHRIST**, | : | |
| Defendant. | : | NO. 06-3901 |
| | **:** | |

Gene E.K. Pratter, J.    **Memorandum and Order**    December 28, 2006

Defendant Robert D. Christ has filed a Motion to Dismiss plaintiff Elan Suisse Ltd.'s

Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) and (b)(3) for lack of personal

jurisdiction and improper venue, and in the alternative, a Motion to Transfer this action to the

U.S. District Court for the District of Delaware or the U.S. District Court for the Eastern District

of Louisiana.

**FACTS AND PROCEDURAL BACKGROUND**

On April 27, 2006, Robert D. Christ filed a complaint in the U.S. District Court for the

District of Delaware against Brett J. Cormick, Elan Suisse (Pty) Ltd., Elan Suisse International

Holdings (USA) LLC and other defendants (the "Delaware Action").[1]  In the Delaware Action,

Mr. Christ alleges that Mr. Cormick induced Mr. Christ to invest in a holding company that

would operate to promote and sell United States-based financial products and investment

vehicles to investors in South Africa.[2]  Mr. Christ alleges that, based on misrepresentations by

Mr. Cormick, Mr. Christ wired $250,000 to Mr. Cormick, purportedly as an initial capital

---

[1] Robert D. Christ v. Brett J. Cormick et al., Civil Action No. 06-275.

[2] The complaint in the Delaware Action consists of four counts, including claims of promissory estoppel, breach of contract, fraud and civil conspiracy. See Def. Mem. Supp. Ex. A.

infusion to help launch the venture.  In exchange for this investment, Mr. Christ was to receive

an equity interest in Elan Suisse (Pty) Ltd., a South African corporation, and Elan Suisse

International Holdings (USA) LLC, a Delaware limited liability company.  In short, Mr. Christ

alleges that despite assurances from Mr. Cormick as to the use of the purported "investment,"

Mr. Cormick never gave Mr. Christ any equity shares of the Elan Suisse entities, returned the

funds that Mr. Christ initially invested or provided any return on Mr. Christ's investment.

On May 22, 2006, the defendants in the Delaware Action, including Mr. Cormick and the

two Elan Suisse entities, moved to dismiss that proceeding based on, among other grounds, the

District Court for the District of Delaware's alleged lack of personal jurisdiction over the

defendants, some of whom are citizens of, or corporations formed in, foreign countries.[3]

A month after the Elan Suisse entities filed the Motion to Dismiss for lack of personal

jurisdiction in the District of Delaware, plaintiff "Elan Suisse Ltd." filed a complaint in the

present action against Mr. Christ in the Court of Common Pleas of Montgomery County,

Pennsylvania on June 23, 2006.  On September 1, 2006, Mr. Christ removed the case to this

Court based on federal question jurisdiction inasmuch as the Complaint alleges violations of the

Lanham Act, 15 U.S.C. §§1125, et seq.[4]  In the present action, Plaintiff Elan Suisse Ltd. alleges,

and Mr. Christ admits, that he maintained a website, www.elansuisse.co.za, based on an Internet

---

[3] Mr. Christ's complaint in the Delaware Action states that Brett J. Cormick is a citizen of Australia who resides in the United Kingdom and the Republic of Zimbabwe, Elan Suisse International Holdings (USA) LLC is a Delaware limited liability company, and Elan Suisse (Pty) Ltd. is a South African corporation.  Def. Mem. Supp. Ex. A ¶¶ 2-4.

[4] Plaintiff's Complaint here contains three counts, including allegations of commercial disparagement and violations of two sections of the Lanham Act, 15 U.S.C. §§ 1125(a)(1)(A) and (d)(1)(A).

server located in South Africa, in order to publish his "findings" as to Mr. Cormick's "misdeeds" and in order to prevent others from being misled by Mr. Cormick as Mr. Christ had been.  On his website, Mr. Christ describes in detail Mr. Cormick's alleged misrepresentations and fraudulent dealings that are the subject of the pending Delaware Action that Mr. Christ initiated.

In the Delaware Action, Mr. Christ's complaint stated that he was a citizen of Pennsylvania residing in Pottstown, Pennsylvania.  See Def. Mem. Supp. Ex. C ¶ 2.  Quite appropriately then, when Elan Suisse Ltd. filed its Montgomery County state court complaint less than two months later, Plaintiff identified Mr. Christ as a resident of Pottstown, Pennsylvania.

Following his removal of this action to this Court, Mr. Christ filed a Motion to Dismiss or Transfer (Docket No. 2), Plaintiff filed a Memorandum in Response (Docket No. 3), and Mr. Christ filed a Reply Memorandum in Support of his Motion to Dismiss or Transfer (Docket No. 6).  On December 21, 2006, the Court heard oral argument on these motions.

In his Motion to Dismiss or Transfer, Mr. Christ claims that on or about June 2, 2006, approximately 21 days before Elan Suisse Ltd. filed its complaint in this action, he moved from Pennsylvania to Abita Springs, Louisiana.  Def. Mem. Supp. 4.  Mr. Christ asserts that he sold his house and relocated his business to Louisiana so that, at the time Elan Suisse Ltd. filed this current action, he did not reside or operate a business in Pennsylvania.  Id. at 5.  Thus, Mr. Christ argues that this Court lacks personal jurisdiction over him.  Mr. Christ also moves to dismiss the Complaint for improper venue.  As an alternative to his Motion to Dismiss, Mr. Christ requests the Court to transfer this action to either the District of Delaware, to be consolidated with the Delaware Action that is currently pending, or to the Eastern District of Louisiana, where Mr. Christ currently resides.  Plaintiff opposes both dismissal and transfer of this action.  Elan Suisse

3

Ltd. argues that Mr. Christ was a resident of Pennsylvania through at least early June 2006 which allows an inference that Mr. Christ operated the website in question from his home in Pennsylvania from October 2005 through June 2006. Thus, Plaintiff argues that personal jurisdiction is appropriate and venue is proper in the Eastern District of Pennsylvania.

For the reasons stated below, the Court will grant Mr. Christ's Motion to Transfer and will transfer this action to the U.S. District Court for the District of Delaware to be consolidated with the related action pending in that court. Because such a transfer is appropriate, the Court will not address Mr. Christ's argument that this Court lacks personal jurisdiction over him and will deny Mr. Christ's Motion to Dismiss without prejudice.[5]

## DISCUSSION

Mr. Christ asserts that venue should be transferred pursuant to 28 U.S.C. § 1400,[6] §

---

[5] The Court of Appeals for the Third Circuit has held that a district court may transfer venue to another district court even if the transferor court lacks personal jurisdiction over the defendant. In United States v. Berkowitz, 328 F.2d 358, 361 (3d Cir. 1964), the Court of Appeals cited the Supreme Court's decision in Goldlawr, Inc. v. Heiman, 369 U.S. 463 (1962), which held that a court may transfer venue under § 1406(a) notwithstanding the court's lack of personal jurisdiction over the defendant. The Court of Appeals held that the Supreme Court's "rationale applies equally to § 1404(a), for these are companion sections, remedial in nature, enacted at the same time, and both dealing with the expeditious transfer of an action from one district or division to another." Berkowitz, 328 F.2d at 361.

[6] Mr. Christ asserts that venue is appropriate in Louisiana due to 28 U.S.C. § 1400, which defines the appropriate venue for copyright claims. This statute provides that "[c]ivil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). Courts have held that the tests for where a defendant "may be found" under this statute is the same as the test for whether personal jurisdiction exists. See Kogan v. Longstreet, 374 F. Supp. 47, 50 (N.D. Ill. 1974) ("As a practical matter, the test for determining whether a non-resident corporation or its agent is "found" within a district, pursuant to 28 U.S.C. § 1400(a), is the same as that for determining whether a corporation is amenable to suit in a jurisdiction other than that in which it is incorporated."); John Wiley & Sons, Inc. v. Fuchs, 1981 U.S. Dist. LEXIS 16043 at *8 (SD.N.Y.

4

1404(a) or § 1406(a).  Section 1406(a)[7] permits a district court to transfer venue when a case is

"filed . . . in the wrong division or district."  28 U.S.C. § 1406(a).  Mr. Christ argues that under

28 U.S.C. § 1391,[8] venue is "wrong" here in this district because Mr. Christ does not reside in

this district and a "substantial part of the events or omissions giving rise to the claim" did not

occur in this district.   However, § 1406(a), by its own terms, only applies to cases that were

"filed" in this Court, which is not the case here; rather, Mr. Christ properly removed this action

to this Court pursuant to 28 U.S.C. § 1441(a) after it had been "filed" elsewhere.  See Notice of

Removal ¶ 4 (Docket No. 1).  As the Supreme Court has clearly stated, once a case is properly

removed to district court, transfer of venue pursuant to 28 U.S.C. § 1406(a) is not available.  See

---

1981) ("The copyright statute does not require a stronger presence of the defendant in the district
to determine venue than to establish personal jurisdiction.").  Since the Court declines to address
Mr. Christ's personal jurisdiction claims and instead will transfer this action to the District of
Delaware, the Court need not address Mr. Christ's § 1400 argument with respect to Louisiana.
The Court notes that Mr. Christ "may be found" in the District of Delaware for purposes of §
1400 because Mr. Christ initiated the Delaware Action within that district and Mr. Christ, by
requesting such transfer, consents to venue lying in Delaware.

[7] 28 U.S.C. § 1406(a) states that "[t]he district court of a district in which is filed a case
laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice,
transfer such case to any district or division in which it could have been brought."  28 U.S.C. §
1406(a).

[8] 28 U.S.C. § 1391(b) states:

A civil action wherein jurisdiction is not founded solely on diversity of citizenship may,
except as otherwise provided by law, be brought only in (1) a judicial district where any
defendant resides, if all defendants reside in the same State, (2) a judicial district in which
a substantial part of the events or omissions giving rise to the claim occurred, or a
substantial part of property that is the subject of the action is situated, or (3) a judicial
district in which any defendant may be found, if there is no district in which the action
may otherwise be brought.

28 U.S.C. § 1391(b).

5

Polizzi v. Cowles Magazines, Inc., 345 U.S. 663, 665 (1953) (holding that 28 U.S.C. § 1406(a) and § 1391 had no application to an action that had been removed from state court pursuant to 28 U.S.C. § 1441(a)); see also Wallace v. Mercantile County Bank, 2006 U.S. Dist. LEXIS 82565 at *9 (E.D. Pa. 2006) ("If a case is properly removed pursuant to § 1441(a), venue is properly laid, and the removed action may not be challenged under § 1391.  Thus, § 1406(a), which governs improper venue, does not apply to a properly removed action." (citation omitted)).  Therefore, this Court may not transfer or dismiss this case pursuant to § 1406(a).[9]

In a case that has been removed from state court, a district court may, however, entertain a motion to transfer venue pursuant to § 1404(a).[10]  Wallace, 2006 U.S. Dist. LEXIS 82565 at *9. Requests for transfer under § 1404(a) may be granted when venue is proper in both the original and the requested venue.  Jumara v. State Farm Ins. Co., 55 F.3d 873, 878 (3d Cir. 1995); Schiller-Pfeiffer, Inc. v. Country Home Prods., 2004 U.S. Dist. LEXIS 24180 at *28 (E.D. Pa. 2004).  Under § 1404(a), district courts have broad discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)).  The Court of Appeals for the Third Circuit has outlined several factors

---

[9] In addition to transfer, Mr. Christ seeks dismissal of this action due to improper venue. Because § 1406(a) cannot be applied here, dismissal on the grounds of improper venue is off the table as well.  See Jumara, 55 F.3d at 878 (noting that while either § 1404 or § 1406 provide a basis for transfer, only § 1406 can support a dismissal).

[10] 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

for the district court to consider when adjudicating a motion to transfer.[11]  The Court

acknowledges the familiar maxim that in considering a transfer request, "a plaintiff's choice of

forum is entitled to great weight and is not to be disturbed unless the balance of convenience

strongly favors the defendants' forum."  Blanning v. Tisch, 378 F. Supp. 1058, 1060 (E.D. Pa.

1974) (citing Shutte v. Armco Steel Corp., 431 F.2d 22 (3d Cir. 1970), cert. denied, 401 U.S. 910

(1971).  However, the pendency of a related case in its early phases in the transferee forum is a

powerful reason to grant a change of venue.  Blanning, 378 F. Supp. at 1061.

Pursuant to § 1404(a) a court may transfer a case: (1) to a district where the case could

have been brought; and (2) where the convenience of parties and witnesses, and the interest of

justice weigh in favor of the transfer.  Wallace, 2006 U.S. Dist. LEXIS 82565 at *9 (citing 28

U.S.C. § 1404(a)).  With respect to the first requirement, this case clearly could have been

brought in the Eastern District of Louisiana, where Mr. Christ currently resides.  See 28 U.S.C. §

1391(a) (providing that an action may be brought in "a judicial district where any defendant

resides, if all defendants reside in the same State").  However, Mr. Christ argues that Plaintiff's

claims also could have been brought as counterclaims in the pending action in the District of

Delaware.  See Fed. R. Civ. P. 13.  Mr. Christ claims that the parties to this action are also parties

---

[11] In Jumara, the Court of Appeals noted that various considerations include "private interests," such as (a) the  plaintiff's forum preference as manifested in the original choice, (b) the defendant's preference, (c) whether the claim arose elsewhere, (d) the relative convenience of the parties as indicated by their relative physical and financial condition, (e) and the location of the witnesses, books and records (but only to the extent that the witnesses, books or records  may actually be unavailable for trial in one of the fora).  Jumara, 55 F.3d at 879-80 (citations omitted).  The considerations also include "public interests," such as (a) the enforceability of the judgment, (b) practical considerations that could make the trial easy, expeditious or inexpensive, (c) the relative administrative difficulty in the two fora resulting from court congestion, (d) and the local interest in deciding local controversies at home.  Id.  (citations omitted).

to the Delaware Action and that the claims pending in both actions revolve around the same nucleus of facts.

Notwithstanding the statement in Plaintiff's Memorandum of Law that "the parties in the State of Delaware District Court action, are not the same as the parties in [Plaintiff Elan Suisse Ltd.'s] current action," at oral argument on this motion, counsel for Elan Suisse Ltd. admitted that "Elan Suisse (Pty) Ltd.," one of the defendants in the Delaware Action, is in fact the same entity as "Elan Suisse Ltd.," the Plaintiff in this case. Pl.'s Mem. Response 5. At oral argument, counsel for Mr. Christ argued that although Plaintiff's claims in the current action pertain to Mr. Christ's alleged defamatory statements on his website, because Mr. Christ created the website as a result of Mr. Cormick's alleged fraudulent activity, which is the basis of Mr. Christ's Delaware Action, the facts and circumstances surrounding the two actions are the same. Counsel for Plaintiff Elan Suisse Ltd. agreed that Plaintiff's current claims could have been brought as counterclaims in the Delaware Action. Counsel for Elan Suisse Ltd. stated that one of the reasons Plaintiff elected not to bring counterclaims in the Delaware Action was because of concerns that the Delaware court lacked personal jurisdiction over the Elan Suisse defendants. With respect to Plaintiff's choice of forum in the current action, rather than submitting to the Delaware court's jurisdiction and bringing counterclaims against Mr. Christ, the Elan Suisse defendants filed a motion to dismiss the Delaware Action for lack of personal jurisdiction, and then one month later, one of the same Elan Suisse defendants filed suit in this Court against Mr. Christ, now, ironically, defending itself against a motion to dismiss for lack of personal jurisdiction.

Mr. Christ argues that because a similar case is currently pending in Delaware, in the

interest of conserving the courts' time and resources, this action should be transferred to the

District of Delaware for consolidation with the Delaware Action.  The Court agrees.  Rather than

having this Court and the District Court for the District of Delaware each address one of the

dueling motions to dismiss for lack of personal jurisdiction, the Court finds that the appropriate

course would be to transfer this action to the District Court for the District of Delaware to be

consolidated with the related action currently under way there.

As noted above, the presence of a related case in the transferee forum is a powerful

reason to grant a change of venue.  Blanning, 378 F. Supp. at 1061.  In addition, at oral argument,

counsel for the Plaintiff could not provide any reason why this action should not be transferred to

Delaware, aside from Plaintiff's argument that venue is proper here and because of the motion to

dismiss that is pending in the Delaware court.

It would be no less convenient or more burdensome for Elan Suisse Ltd. to assert its

claims as counterclaims in the Delaware Action than it would be to conduct a separate action

here.  If anything, it should be both more convenient and less burdensome for all parties to

litigate these issues on a consolidated basis.  Elan Suisse Ltd. is a South African corporation

whose principal, Mr. Cormick, is citizen of Australia.  The non-Elan Suisse parties in the

Delaware Action are all foreign nationals or foreign business entities.[12]  Mr. Christ is a resident

of Louisiana.  Thus, whether or not these cases continue separately or on a consolidated basis in

---

[12] To the extent such non-Elan Suisse parties remain as defendants in the Delaware
Action, the Court assumes that discovery related to such parties will commence.  To the extent
that any of these parties should succeed in their motion to dismiss in the Delaware Action, such
parties may still be required as witnesses.  In either event, Plaintiff has not proposed any reason
why Wilmington, Delaware is any less convenient than Philadelphia, Pennsylvania in this regard.

Delaware, extensive travel during discovery and trial will likely be required. Pursuing consolidated litigation will at least decrease the need for multiple depositions of the same parties involving the same factual issues. In addition, in response to Mr. Christ's motion, Plaintiff has not offered a single reason why venue is more convenient for the parties or witnesses in Pennsylvania than in Delaware (or for that matter, why venue would be less convenient in Delaware than in Pennsylvania). Plaintiff has not argued that Elan Suisse Ltd. has any ties to Pennsylvania that necessitate conducting litigation here. The Court surmises that Plaintiff chose Pennsylvania as a forum because Mr. Christ resided in Pennsylvania when he created and, at least to some extent, maintained the website in question.[13] Although the legal claims in the current action and the Delaware Action are different, upon consideration of a careful reading of the complaint in the Delaware Action, the Court agrees that the facts and circumstances surrounding both actions sufficiently align such that consolidation of these actions would be appropriate. See Schiller-Pfeiffer, 2004 U.S. Dist. LEXIS 24180 at *31 (transferring venue pursuant to § 1404(a), even though the claims of the two cases were not exactly the same, because the claims arose from the same set of facts and occurrences). Furthermore, at oral argument in this case counsel for both parties noted that discovery had not begun in either the current action or the Delaware Action. As such, by transferring this action to Delaware, the Delaware district court would be able to set a consolidated schedule for carrying out discovery and other matters and address discovery disputes. All things being equal, since Wilmington, Delaware and Philadelphia, Pennsylvania are approximately 30 miles apart, if Elan Suisse Ltd. (or Elan Suisse (Pty) Ltd.) is

---

[13] Because Mr. Christ has not raised any argument alleging bad faith on the part of Elan Suisse Ltd., the Court will resist concluding that Elan Suisse Ltd. chose to file suit in Pennsylvania solely to avoid submitting to the district court's jurisdiction in Delaware.

able to maintain a lawsuit in the Eastern District of Pennsylvania, then that entity should be able

to defend a lawsuit in the District of Delaware.  Conversely, if Mr. Christ is able to bring an

action in the District of Delaware, then he should be able to defend an action there as well.

CONCLUSION

For the reasons stated above, Mr. Christ's Motion to Dismiss will be denied and Mr.

Christ's Motion to Transfer this action to the U.S. District Court for the District of Delaware will

be granted.[14]  An appropriate Order follows.

S/Gene E.K. Pratter
Gene E.K. Pratter
United States District Judge

December 28, 2006

---

[14] The Court also notes that the "first-filed rule," although not addressed by either party, mitigates in favor of transfer to the District of Delaware.  Approximately 65 years ago, the Third Circuit Court of Appeals stated that "in all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." Crosley Corp. v. Hazeltine Corp., 122 F.2d 925, 929 (3d Cir. 1941) (quoting Smith v. M'Iver, 22 U.S. (9 Wheat.) 532, 6 L. Ed. 152 (1824)), cert. denied, 315 U.S. 813, 62 S. Ct. 798, 86 L. Ed. 1211 (1942); see also EEOC v. Univ. of Pennsylvania, 850 F.2d 969, 971 (3d Cir. 1988) (quoting same).  The first-filed rule "gives a court 'the power' to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court." EEOC, 850 F.2d at 971. Although this Court's injunctive powers are not implicated by the pending motions, the Court notes the "first-filed rule" in this case to note that transfer to the District Court for the District of Delaware is appropriate because the action first filed by Mr. Christ in Delaware is based on the same facts as the action filed two months later by Elan Suisse Ltd. in state court in Pennsylvania.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|                          |     |                |
|--------------------------|-----|----------------|
| ELAN SUISSE LTD.,        | :   |                |
|             Plaintiff,   | :   | CIVIL ACTION   |
|                          | :   |                |
|          v.              | :   |                |
|                          | :   |                |
| ROBERT D. CHRIST,        | :   | NO. 06-3901    |
|             Defendant.   | :   |                |

# O R D E R

**AND NOW** this 28th day of December, 2006, upon consideration of Defendant Robert

D. Christ's Motion to Dismiss or Transfer (Docket No. 2), Plaintiff Elan Suisse Ltd.'s Response

to Defendant's Motion to Dismiss or Transfer (Docket No. 3), and Defendant's Reply

Memorandum (Docket No. 6), for the reasons stated in the attached Memorandum, it is

**ORDERED** as follows:

1.     Defendant Robert D. Christ's Motion to Dismiss is **DENIED** without prejudice;

2.     Defendant Robert D. Christ's Motion to Transfer is **GRANTED** and this action is

transferred to the United States District Court for the District of Delaware, to be

docketed as related to *Robert D. Christ v. Brett J. Cormick et al.*, Civil Action No.

06-275.

BY THE COURT:

S/Gene E.K. Pratter
GENE E. K. PRATTER
UNITED STATES DISTRICT JUDGE

Dear Mr. Carnell:

I am writing to lodge a formal complaint against the above-referenced individual for fraud.

I have set up a web site detailing this issue located at:
http://www.elansuisse.co.za/

If Mr. Cormick is under the employ of your command, please forward to me a contact at the Australian embassy in Washington, DC so that I may file the proper documentation and formally submit the evidence.

Sincerely,
<<end inclusion<<
If the Australian Government claims him, then they will need to clean up his mess. If they do not claim him, then I believe that the end process of this will be the exposure of who is Brett Cormick.

**November 8, 2005 Update:**
Some more organizations are now coming to light now that this web page is propagating:
**Elan-Suisse Zimbabwe Management Services Company (aka "Trust Investment Services" in JV with Trust Holdings Ltd.)**
**Elan-Suisse International Equity Partners**
Both organizations are shown with Brett Cormick as Chairman & CEO and Patrice Dhliwayo as MD. **This should pretty much put to rest the disclaimer by Cormick on the Elan Suisse Zimbabwe link.**

Contact information on Elan Suisse in Zimbabwe is:
Trust Investment Services
4th Floor, Green Bridge (or Blue Bridge depending upon who you ask)
Eastgate, 2nd Street
Harare
Attention: Ms. Peta-Ann Goosen
Corporate Relations Executive
Telephone:  04 708353, 04 250610
Facsimile:   04 702066
Email: petag@trust.co.zw (I just tried the www.trust.co.zw domain – IP is 196.2.73.102 with last modification on 21 February 2005 but no web page)

**Utendwe Dabutha** BA Physics B Sc. Engineering - CalTech
**Derek Britten** B Compt Financial Accounting & Auditing - (UNISA)
**Peta-Ann Goosen** B Com Info Systems & Management -- Rhodes
*Plus*
**Elias Ngugama**: Chairman Astra Industries, Fleming, etc
**Rick Crook**:  Chairman Independent Schools of Zimbabwe National
Pension Fund
**John Lourenco**:  Partner Deloitte & Touche
**Peter Madara**: Financial Controller Industrial Development Corporation
**Collen Gura**: Financial Director Independence Gold Mining Zimbabwe
**Edwin Chidzonga**: Chief Executive Mining Industry Pension Fund
**Tapera W. Nyemba**: Group Chief Executive of Trust Holdings Ltd.

I do not know what function within this organization these people
perform, but this whole thing looks completely (down to the contract
clauses) like the scam pulled on me.  This, I believe, is part of the vehicle
used for the ENG scam.  I am continuing to research.

This appears to be how Cormick got Apostolos Zographos.  Contact was
just made with Maxiprest in RSA -- they are apparently trying to distance
themselves from this fiasco.

Other organizations mentioned are:
**National Investment Bank of Botswana through Delele (PTY) LTD**
(Ndaba Gaolathe is mentioned as the point of contact) in Gaborone
Botswana at (267) 314 068 or email delele@4site.bw (although this
seems to be the current coordinates for Delele).
**Fleurdeus Investments** -- No Information (they appear to be one of the
targets).
**Bancorp International Equity Partners** – Appears to be a conduit for
funds with the six players mentioned above as the managers.

More Elan Suisse organizations are now coming to light (with other
points of contact):
**ELAN-SUISSE Venture Management and Sarco Holdings**

Information is now flowing in more quickly than can be handled at the
moment.  I will begin to list out the organizations involved as well as
points of contact over the next few days.  Then we will start to pick
through each organization until we figure out the exact relationship with
each and where the money went.  Also, more information is flowing in on
the HIVEX Ltd. link.

Does anyone out there know anything about a company named Iris

Australia?  They seem to be a licensee for Iris recognition technology from Iridian Technologies (http://www.iridiantech.com/index.php), but their web site has gone cold.  Iridian Technologies is a Moorestown, NJ company – I will contact from here to determine the current status of their license with Iris Australia.  New information – Iris Australia turned into Argus Solutions in 2002.

The ultimate objective of this investigation is to find out the truth and to get a place where I can get this case into a court with proper jurisdiction so that I may have it heard on its merits.

**November 9, 2005 Update:**
**I received this series of e-mails from a very interesting source.**  It details the correspondence between Cormick and Apostolos Zographos from 2002 and 2003.  In reading through this, it **really turned my stomach** since it is the exact scam Cormick pulled on me.

I received a reply from the Australian Embassy today and filed a detailed criminal complaint with the following:
Mr. David McLean
Counsellor Police Liason
The Embassy of Australia in Washington D.C.
1601 Massachusetts Ave, NW
Washington DC, 20036-2273
Tel: (202) 797-3000
Fax: (202) 667-0275

I did this detailed analysis of my case for my attorney in April 2005 and loaded it here for analysis.  Some of the information on that page is dated – if there is conflict with this page, this page has the more accurate and up to date information.  I will edit it over the next few days for content.

**November 10, 2005 Update:**
I had this exchange today with the Inspector General of Intelligence and Security in Australia.

Cormick's divorce proceedings with Jennifer Ann Mortleman go to court today in Harare.

I faxed this letter today over to the IG of Intelligence and Security of Australia:
>> Dear Mr. Carnell:

Thank you for your reply via e-mail to my fax of November 4th.  In that

Dr. Brett Cormick and Elan Suisse Elan Capital Nicogel Elan-Suisse Nicotea Aquacine... Page 28 of 78

fax, you indicated that I should take the above referenced complaint to
the AFP.

In April 1996, while floating on a Russian ice base in the Arctic Ocean,
Brett Cormick indicated to me that he still worked for the intelligence
services of the Australian Government. Cormick subsequently defrauded
me and my family of a great deal of money.

It is important for me to know positively whether or not Cormick (if that
is his name or his alias) is still [or has ever been] in the employ of the
Australian Government's Intelligence Services.

The US and Australia are close allies. If Australian Government
resources were used to defraud a citizen of an allied country, this action
would directly affect the relations of the countries involved. I certainly
hope that Cormick does not work [nor has ever worked] for the
Australian Government's Intelligence Services and that his actions are
those of his own person. The purpose of this query is to further narrow
the area of responsibility for this matter within the Australian
Government.

I hope for a rapid and judicious resolution to this case with your agency.

Thank you for your attention to this matter.

Sincerely,<<

I received a report today on the amount of money Apostolos Zographos
"Invested" into Elan Suisse. The amount was US$70,000 of which most
(if not all) was spent by Cormick for personal use.

**November 11, 2005 Update:**
I received this response overnight from the IG in Australia:
>>Dear Mr Christ,

I refer to your fax of 10 November 2005 in which you requested details
as to whether Mr Brett John Cormick is, or ever has been, employed by
the Australia Government's Intelligence Services.

The Australian Security Intelligence Organisation Act 1979 and the
Intelligence Service Act 2001 prevent the names of employees of
Australia's Intelligence agencies from being divulged, so I cannot provide
you with information on this matter.

I might also comment that it is unlikely that a person who, as you suggest, has committed fraud is truthful about their background.

If however, he was or is from an intelligence agency, please be assured that the AFP can still investigate matters of alleged fraud.

I hope this information is helpful to you.

Yours Sincerely<<

I am persistently narrowing the focus of this investigation – which is the answer to the question 'who is this guy and who does he work for'. If he does not work for anyone, then he is a simple con artist and just needs to spend some time in jail thinking about his career choice. If he does work for someone or some organization, it begs the question 'what is the purpose of this operation?'

**November 14, 2005 Update:**
Nicogel appears to be distributed through a dodgy-looking Panama-based company named South Seas Pharmaceuticals S.A. with a web site at Health Effects plus a US "toll-free" phone number of (603)821-4481 (i.e. it is a toll number in Nashua, New Hampshire). I called the number which went straight into an answering machine without a greeting. The health-effects.net domain is registered to a George Adams with mailing address in Vanuatu (yeah, I had to pull a map out for that one as well – it is an island nation located in the South Pacific).

**November 15, 2005 Update:**
I just received what is the best definition of Cormick I have gotten to-date from a source in RSA. He referred to Cormick as "A "Walter Mitty" type: intelligent & convincing on the surface, but when you dug deeper: unreliable and certainly not someone in whose hands you would place the fate of your business or capital." He also used the term "unscrupulous con artist" in describing Cormick.

The pace of this investigation is quickening. I will do my best to post the information as it arrives.

From my source within HIVEX, Cormick was fired from that organization after attempting to open a First National Bank checking account without a corporate resolution requiring only a single signature (Cormick's, of course). According to my source, the bank picked up the attempt and contacted the board of directors. Here is the document that caused all of the commotion (I edited out Cormick's passport information

Dr. Brett Cormick and Elan Suisse Elan Capital Nicogel Elan-Suisse Nicotea Aquacine...    Page 30 of 78

on the file). If anyone wants to view the e-mail thread leading up to this confrontation, please contact me. I also have another 20 or so documents that came along with the transmittal which are available upon request. The documents detail a background investigation performed by this organization and tracks completely with the references on this web page.

### November 16, 2005 Update:

Yesterday was a busy day. I received permission to post a series of documents. These documents detail a background check performed on Cormick in 2000. These documents confirm all of the checks I performed above plus fill in a lot of the holes in the information. It may be an indictment upon our society that this information was available to assist me in avoiding being scammed, but the information was unavailable for general consumption simply because of its derogatory nature towards Cormick.

- On employment with ABN AMRO
- On Cormick's SAS involvement, London Business School and LSE qualifications
- On Cormick's Electra, HAMBRO and ABN AMRO involvement
- Correspondence from Electra
- The summary of the background check done by ISEC in London (page 1 2 3)
- From London Business School and Societe Generale

### November 17, 2005 Update:

I received more overnight from Cormick's time in England. European Venture Finance was apparently set up to run out of the offices of BMI. Technically, Cormick was an employee of BMI from some time in 1992/3 until July 1997 [a little over one month after the "Alan Dean Affair" arrest] so as to maintain his UK residency. Here is one of his pay slips. The way it was explained to me, the scheme was to have funds from clients run through Centre Trust in Jersey (with Michael Kearns as the trust officer – Michael's current phone number is +44 1534 962095) for tax [or whatever] purposes then Michael pays BMI for Brett's salary and operating expenses. There was a break in the BMI employment from June 1994 to mid-September 1994 where Brett worked for Mees Pierson where [I understand] it was Brett's job to introduce clients to the firm. At that time, I understand that Mees Pierson was owned by ABN AMRO (which would explain why no one at ABN AMRO had ever heard of Brett – he was a short time employee at a small purchased subsidiary of that huge corporation).

I am including the below from my RSA contact because Cormick gave me the same story:
>>HE CONSTANTLY MENTIONED THAT HE SERVED IN THE AUSTRALIAN SAS AND HE SHOWED US PICTURES OF HIM IN CAMO IN A JUNGLE WALKING AROUND WITH AN AUTOMATIC WEAPON [fyi – Cormick sent to me this photo in 1998 – look familiar? RDC]. I EVEN INTRODUCED HIM TO ONE OF OUR SPECIAL FORCES GUYS WHO TOOK HIM ON A TOUR OF THE LOCAL BASE. HE DEFINITELY SPOKE A GOOD GAME BUT I'VE NEVER MET A SPECIAL FORCES GUY IN MY LIFE WHOSE HANDS ARE SO SOFT, AND HAS FREQUENT MANICURES AND PEDICURES.<<

Here is a photo of Brett and I landing at the North Pole in 1996 under my tandem parachute system (taken by reporter Chrisopher Pala and BTW, Chris Pala was there at the North Pole during the '99 scuba diving expedition as was Michael Wolff [Brett's dive partner]). So this brings up another question – why was Cormick so stupid as to scam me (the one person who knows what happened on the ice cap)?

I speculated there was some reason he left England in 1999. The "Alan Dean Affair" is the most obvious reason. Now I am speculating there was some reason he left Australia in 1989/90. Can anyone out there help with this one? I am told that he is now pulling out of RSA to dodge my lawsuit for recovery of the money he stole from me and my family. His entire defense on that suit is lack of jurisdiction.

I just finished a lengthy conversation with Cameron Scott of HIVEX Ltd. The link here is Michael Kearns (Cameron was married to Michael's sister, but they have since divorced). Michael Kearns is a Jersey-based attorney [mentioned above] who formed HEX Technologies (a Jersey-based holding company for the HIV technology). The research facility for HEX was in Southampton in the UK. Boris Kokorin and Leonid Waisser were major shareholders in HEX. The HEX business manager was a man by the name of Richard Werdle who was based out of the Southampton center. Michael introduced Brett to Cameron as someone that could help with fund raising for an RSA-based company using similar technology to treat HIV. The original company formed in RSA was "Africa's Best I55 Ltd". The company was dissolved [to get rid of Cormick] and was re-formed (with Alex McAlery as the corporate attorney) as HIVEX Ltd. HIVEX Ltd. and Brett Cormick parted company on very bad terms.

Alex McAlery (attorney for HIVEX) told me an anecdote today about

how Brett was going to show him his best shoulder throw move that Brett had learned from his days in the SAS. Alex said he just picked up Brett and threw him in the pool. ***Splash***.

### November 18, 2005 Update:

I know a lot of military personnel from several nations. Practically all of them are honest and friendly and gregarious – it seems to be a requirement for advancement in the military. Braggarts and liars are quickly dealt with in the harshest of terms. In the US Government, there are entire agencies that produce new identities for people. Has the Australian Government given Cormick a new identity? Brett acts as if he has a "Get Out of Jail Free" card – like someone will save him if he is ever caught.

I received this overnight from an experienced [retired] high-level governmental official with the Australian Government:
>>There is no way the aust govt (any department) would employ Cormick. Regardless of his 'marketing/spin doctor' skills, he's too much of a self-centered wild card and unpredictable.

Also 'get out of jail free' remits, are a load of shit. & when 'briefs' of such a nature do exist they are not given to people who willingly talk about it!
<<

That makes the Inspector General and this knowledgeable individual that says Cormick is not a spook for the Australian Government. I think this eliminates that possibility. Which means that [if all of these factors above are correct] Brett John Cormick is the same person as above. Therefore, since we have eliminated all of the outside possibilities the only answer left is the most obvious – Brett Cormick is a simple Con Artist.

## **Summary of Inaccuracies in Cormick's CV**

Based upon the above [exhaustive] research, let us go through his CV to arrive at the most likely "Actual" CV – This is the information I used in my decision to entrust Cormick with US$250,000. I am including this here to make your job easier to come to the conclusion I should have made – which is that Dr. Brett Cormick is a fraud, charlatan and a Con Artist.

>> Dr. Brett Cormick is an international financial engineer, banker and academic, specialising in international corporate development, international investment finance, & international "best in asset class" financial product design, origination, distribution and management. During his business, finance & academic career, which spans eleven European geographies, the United States, Australasia and South Africa, over 20 years, he has served in the capacity as a Managing Director, Director & Consulting Director for several of the largest & most respected institutions in Europe and the United States.<<

*[no comment on this section other than what is referenced throughout this web page.]*

>> Professional history;
Captain Royal Australian Army  (Special Forces Commando) *[no info – see Feb. 7, 2006 update]*
Director Hambros Bank Group *[see above – Hambros has no record of him]*
Consulting Director of Corporate Finance Electra Group  *[see above – Electra has no record of him]*
Managing Director ABN AMRO Group - Mees Pierson *[see above – his job at MP was to make introductions]*
Managing Partner International Corporate Development SA  *[see above – this is a shell company]*
Chairman & CEO Trust Bank Corporation Investment Services *[see above – this is a shell company]*
CEO Elan Capital SA *[see above – this is a shell company]*<<

>> Qualifications include;
BSc. (Mil) Economics & Political Science *[according to ADFA records, the BS is military studies]*
B.Econ  Microeconomics & Macroeconomics *[questionable – see Feb. 7, 2006 update]*
MA Econ. Microeconomics *[very questionable due to legal status of CPU]*
PhD Macroeconomics *[very questionable due to legal status of CPU]*
Post Doctoral Research Studies in Macroeconomics & Political Economic Theory – Published as University Text (LSE Dept Accounting & Finance) *[see above]*<<

>> Dr. Cormick is an alumnus;
The Royal Military Academy of Australia, Duntroon *[the records indicate he attended to ADFA]*
The University of New South Wales *[see Feb. 7, 2006 update]*
The University of Queensland *[see Feb. 7, 2006 update]*
The Graduate School of the London School of Economics and Political Science *[records show he was a research student with no official qualifications gained at LSE]*<<

>> His Professional Graduate School Executive Education includes;
The Harvard Business School
The London Business School (CIMA Masters Program)
Oxford University
INSEAD The European Institute of Business Administration

FAME- ICMB The International Centre for Financial Asset Management
and Engineering
International Centre for Monetary and Banking Studies
The Wharton School of Business *[no information on any of these]*<<

>> Professional academic commitments;
Visiting Fellow The Graduate Management School of The Imperial
College of Science, Technology & Medicine, University of London *[see
above – Imperial has no record of this]*
Author of "Macroeconomics & the Development of Political Economic
Theory" London School of Economics & Political Science, Department
of Accounting & Finance University Text (Oxford / LSE) *[see above]*
Course Creator and Lecturer in Strategic International Corporate Finance
for the Honours Finance Degree at The University of Cape Town School
of Management Studies *[see above – relationship was terminated due to
questions of his qualifications and unauthorized usage of official
letterhead]*
Director The London School of Economics and Political Science -
International Economic Development Group *[this is not a LSE-
Chartered Organization]*
Academic Dean post graduate studies CIDA City Campus Johannesburg
*[this was never formalized]*
Director Oxford University Global Management Program – CIDA (In
Initial Development) *[this was never formalized – in short, this is
rubbish]*<<

>> He is a member of;
... *[Irrelevant]*<<

>> European, US & international career highlights;
Managing Director of one of the largest banking groups in the world at
33 *[this does not track with the above]*
Turning corporate client companies into the most highly traded stocks in
America *[unsubstantiated meaningless obfuscation]*
Establishing some of the most advanced trans-Atlantic financial
engineering funding and corporate structures *[unsubstantiated
meaningless obfuscation]*
Creating the world's most comprehensive European institutional private
equity investor base *[unsubstantiated meaningless obfuscation]*
The licensing, development and distribution of a portfolio of the most
advanced and best performing international financial products in the
world, designed to significantly enhance national capital market
investment returns, in both developed and developing economies
*[unsubstantiated meaningless obfuscation]*

>>It would seem that you still don't have closure on his claims to have worked for our government's security or intelligence services. I can tell you quite clearly and firmly that he has served in neither. That he only served 2 years in the Army post his university training of course fits the picture you have built up of him.<<

Well, that puts to rest Cormick's statement that he works for the Australian Intelligence and Security Services. And it also puts to rest the Australian SAS claim.

I asked the same source how he made the rank of captain in the Australian Army – here is his reply:

>>Promotion to captain, as in all allied forces is "on time". Promotion to Major and above is via a selection and interview process. So provided he was able to graduate as a Lt from the Academy, which is what he did, a deadhead can make it to Captain within a couple of years. Just by doing what he is told and ticking the boxes. However, if he was an infantry captain, rather than in a rear echelon job, the empty uniforms get sorted out pretty quickly - the troops will knock his block off in a heartbeat. Making it to Captain in a rear office is pretty easy. Jumping from there to the other government services mentioned earlier is impossible for someone of his calibre.<<

### November 19, 2005 Update:

Here is Cormick's most likely CV based upon the above and February 7, 2006 update:

To 1981      School in Australia

1981-1986  Australian Army

1986-1988  Worked as a salesman at a stock brokerage firm named BZW Meares in Melbourne

1990-1992  Salesman at Hambros Bank (unclear as to which division and termination)

1992-1999  European Venture Finance with short time at Mees Pierson (terminated after fraud arrest)

2000-2001  HIVEX Ltd. (in two corporate forms – terminated due to fraud complaint by board)

2002-2003  Elan Suisse Zimbabwe (terminated due to ENG Scandal)

2003-pres.  Elan Suisse Capital (at least one fraud complaint)

### November 21, 2005 Update:

Received this rather interesting detail on one of Cormick's attempted scams from a source in Australia:

>>His attempted scam with me was to secure a US$10 million grant for us (all real), via an African banking group which included South Africans

and Brits. The grant money was to be spent developing our technology
and related applications in Africa. OK by us as well. It unraveled when
the banking group handed over responsibility to Cormick to manage the
handling of the funds. On day 5 of a 5 day visit, and after making
numerous calls on potential clients (who all wanted to play), I asked him
to sit down and explain how the funds would be managed, where they
would sit, what accountability was involved, to whom and what was the
audit process associated with such a grant.

Alarm 1 went off when he could not produce a documented process or
plan. I had recently had intensive experience with European Banks in
this area of work and knew what documentation to expect (thankfully).

Alarm 2 went off when I asked him to describe the process. The
response was garbled.

Alarm 3 and major disconnect - I asked him to draw the process. In his
office there was no paper - he had to ask a young accountant from
Standard and Chartered to borrow some - and he then reluctantly drew
out a trust structure which had its banking facilities in [edited out] (where
he had admitted earlier over a beer that he kept his family money). The
trust structure was a valid one but clearly designed to do one thing - hide
the origins of any transactions from law enforcement. When I pressed
him about beneficiaries, bank accounts and fees it transpired all were
"Cormick" and offshore.

I told him there would be no deal under that sort of structure (apart from
anything else the bankers had made it clear that [edited out] would need
to be able to account for the funds to the [edited out] and we would want
to do that as a matter of course anyway) since any 6-month audit would
show holes I could not account for, but would know were the result of
being savaged as the money went via [edited out].

So the meeting closed with me being somewhat startled (I had gone to
Africa trusting him and being suspicious of the other bankers in the
group) and he agreeing to meet me at the hotel and to arrange to brief me
on an alternative structure. We would have dinner. An hour after the
allotted time I received a call from a pay phone - he claimed he had to go
back to the farm to see his sick wife and asking if he could he make it
later. He was a terrible liar (counts against his claim to have been in the
security services!) I agreed knowing that it was over but going through
the motions. He of course never showed and I cleared the hotel the next
morning at o'dark o'clock, departed Harare and have never seen or heard
from him since. You can imagine the fun I had trying to explain the

**November 28, 2005 Update:**
I received the following from the Australian Federal Police:
>> My name is Chris Sheehan, I am a member of the Australian Federal
Police (AFP) attached to the Embassy of Australia, Washington DC. I
was recently tasked to undertake a review of the material you have
provided to my colleague Federal Agent David McLean detailing
allegations of fraud by Mr Brett John Cormick. The purpose of this
review process was to determine if sufficient grounds exist for action to
be taken by the AFP against Mr Cormick for breaches of Australian law.
I am writing to advise you of the outcome of this review.

At the outset I would like to thank you for the meticulous research you
have undertaken and the quantity of information you have provided. In
assessing this case I have relied heavily on this material and the website
located at www.elan-suisse.com .

As you may be aware the AFP is Australia's primary Federal law
enforcement agency responsible for the enforcement and investigation of
offences against Australian Commonwealth (Federal) law. Generally, for
a matter to fall within the jurisdiction of the AFP it must involve a breach
of Commonwealth law which, excepting certain specific types of crime
such as terrorism or child sex tourism, in turn requires the victim to be
the Commonwealth (Federal) Government. Please note I am only able to
assess the material you have provided and make a determination
regarding AFP action according to this benchmark.

I note from your material the alleged victim in this matter is a private
United States (US) citizen (yourself) and the companies involved, namely
Elan Suisse (Pty) Ltd and Elan Suisse International Holdings are
respectively located in the Republic of South Africa and the US. Further,
I note your alleged transfer of USD$250,000.00 to Mr Cormick in 2004
involved the funds being deposited into bank accounts located in the
United Kingdom. While it appears likely that Mr Cormick is an
Australian citizen the matters you have detailed do not involve a breach
of Australian law and are therefore outside the jurisdiction of the AFP.
Given these facts the AFP is unable to take any further action regarding
this matter.

I also note your allegations regarding Mr Cormick's claimed involvement
with an Australian intelligence agency, in particular your correspondence
with Mr Ian Carnell, the Inspector General of Intelligence and Security
(IGIS) and his responses. Please note the AFP is bound by Australian
law and therefore cannot divulge the information you have requested to

either confirm or deny the allegation. I would echo Mr Carnell's comments that Mr Cormick's credibility may best be assessed in light of your knowledge and experience of his past behaviour.<<

I am continuing to chase jurisdictions.

### November 29, 2005 Update:
I notice that Elan Suisse Ltd. (UK corporation Registered No. 04998672) last week increased its total issued capital. Cormick seems to be setting up for another 'valuable equity placement'. Nicogel Ltd. is not currently in the companies registry in the UK nor is Nicotea Ltd. The domain registration address for nicogel.co.uk has recently been changed from the Elan Suisse Ltd. address (i.e. the Mayfair PO Box) to an unpublished listing. The nicogel.co.uk domain is registered to Nicotea Limited. Smoke. Mirrors.

### December 1, 2005 Update:
New information on Elan Suisse Ltd.:
Changes for ELAN SUISSE LTD (04998672)

25/11/2005 - Change in total issued capital
25/11/2005 - New annual return analysed

Click here to view changes:
http://www.ukdata.com/companies/04998672.258361

### December 14, 2005 Update:
I have not received an update as to how Cormick's equity sale of Elan Suisse Ltd. is proceeding.

I spoke last week with a collections attorney in Philadelphia about this case. His statement on this situation was poignant – "Bob, you would be surprised at how often this happens." According to this attorney, many successful people have deadbeats that "Hang On" to them in hopes of gaining through deceit what they could not obtain through their own merits.

Cormick has registered the following domains for purposes of slandering and defaming the named targets [Julius Cobbett and Barry Sergeant work for Moneyweb in South Africa – the news organization investigating Elan Suisse's business ethics]:
bobchrist.net (registered 17-Jun-2005)
bobchrist.org (registered 17-Jun-2005)
bobchristamericantraitor.com (registered 10-Oct-2005)

barrysergeant.com (registered 20-Jun-2005)
juliuscobbett.com (registered 17-Jun-2005)

According to sources in Zimbabwe who are familiar with the divorce
proceedings, Cormick is completely destitute (as filed in sworn court
documents) and will not be able to afford to pay child support for his
three children [in Zimbabwe] until he is "back on his feet again".
According to sources in Australia, Cormick has never paid child support
for his son [James in Australia] from his first marriage. [Note from
February 6, 2006 update: I have subsequent information that maintenance
is being paid on James, but it is reportedly being paid by Brett Cormick's
father, Neil Cormick].

### December 15, 2005 Update:
Further domains currently registered to Cormick are as follows:
elan-capital.com
elansuisse.com
aquacine.com (registered to Dianne Marshall)
aquacine.co.uk (registered to Dianne Marshall)
nicogel.co.uk (registered to Nicotea)
nicotea.co.uk (registered to Dianne Marshall)
elan-biocapital.com
lsesadc.org
trust.co.zw (there is no easy way to determine the .zw domain whois
lookup)

Cormick did cover his tracks after slandering Julius Cobbett and myself
by registering:
brettcormick.com (registered 17-Jun-2005)
brettcormick.org (registered 17-Jun-2005)
brettcormick.net (registered 17-Jun-2005)
brettcormick.info (registered 17-Jun-2005)

This does seem like a childish game. It would seem more businesslike to
just address the issues. But the worst enemy of the con artist is the truth.

The domains properly registered to Cormick are registered to the mailbox
in London at:
Dr Brett Cormick
Suite 334
2 Lansdowne Row
Mayfair, London W1J 6HL
UK
Phone: + 44 (0) 207 691 7890

Fax: 123 123 1234

Domains registered to Dianne Marshall are as follows:
For the aquacine.com domain:
Dianne Marshall
18 Gordon Richards Close
Newmarket, Suffolk CB8 0BH
United Kingdom
Phone: +448701998585
e-mail: dianne.marshall@btopenworld.com (I tried that e-mail address
and it bounced)

For the aquacine.co.uk and the nicotea.co.uk domains (no phone number
referenced):
11 Hamilton Road
Newmarket
Suffolk
CB8 0NQ

I am afraid I do not know how to do a reverse search on the registrar so
as to determine all of the domains registered to or by Cormick. I am sure
that this search will turn up a whole new series of questionable
businesses. As stated above, it has been my experience that people do
not turn dishonest overnight.

I received more information from Cormick's business setup at European
Venture Finance. It seems that clients would pay to EVF a monthly
retainer for supporting their contacts. Cormick would then disappear on
holiday for large blocks of time (Australia, Zimbabwe, South of France,
etc.) while representing that he was away on business. So, essentially, he
had a perpetual paid holiday on client expense. That is pretty slick
indeed!

Of all of the scams this guy has pulled, my favorite one was attempting to
lead Prince Albert of Monaco on a North Pole Expedition. Fortunately,
Inge Leutscher of EXCELLENCE International did some research and
decided to drop Cormick before the contact proceeded much past the
concept stage. The initial contact between Leutscher and Cormick was
arranged by Wendy Seinturier of "The Perfect Partner". It would seem
that Ms. Seinturier's business is to make introductions – however, it is
unclear as to if she was compensated to make this introduction.

**December 16, 2005 Update:**
Here are more client contacts from EVF:

Gabriel Charbonnier   ---- Crédit Suisse (Switzerland)   +41 22 391 2586
Ian Worden   ---- Guardian Royal Exchange   +44 207 283 7101
Rhoddy Swire   ---- Pantheon   +44 207 493 5685
Rene Muller   ---- Habour Capital Markets AG (Switzerland)   +41 12 81
3265 [it seems that Mr. Muller had a particularly bad experience with
Cormick – please call to obtain detail]

**New Information** – Aquacine Ltd. (UK Registration No. 05190095) last
week [December 9th] changed its name to Nicogel Ltd. Expect an equity
sale on that one soon. Cormick is predictable. It is also interesting to
note that John Walters is quoted in this October 20 report as the CEO of
Nicogel Ltd. when in fact Nicogel Ltd. did not come into existence until
December 9th. That statement was a misrepresentation – which puts
Walters in the same league as Cormick (i.e. a crook). This company is
just a point in the long continuum started with European Venture
Finance.

**December 17, 2005 Update:**
Contact information (it was hard to find – I had to do a reverse lookup on
Nicogel) for Nicogel [which is the only company in this myriad of shells
that appears to have any operations] is the Mayfair mailbox:
Nicogel
2 Lansdowne Row
London
W1J 6HL  UK
+44 870 383 1744      (Work Preferred Voice)
+44 870 199 8585      (Work Fax)
customercare@nicogel.co.uk
http://www.nicogel.co.uk

**December 21, 2005 Update:**
This case gets uglier with each passing day. I received this e-mail today
from a gentleman in France:
>>I have read through your story with Brett Mac Cormick and all the
recent developments you have indicated concerning John Walters and
Dianne Marshall.

You will find attached some information related to John Walters, which
conforts your opinion about him. **John Walters has been sentenced in
Sept '04 by the Ipswich court (England) to a 10 months period in
prison with a disqualification as a company director for 7 years. [my
emphasis – RDC]**

I have been in relation with him between January 2003 and September 2004 in order to set up a ready to drink medecines plant to be installed in France.
I was acting on behalf of the Total group and subsequently the city of Dieuze, in order to contribute to the economic development of the area, where an available water source is waiting to be exploited.
A video presentation is available at the following address:
http://www.login-art.com/dieuze/
http://www.login-art.com/dieuze/economi-aide.htm
or on our site www.businessstart.com (click on the bottle icon and follow the instructions)

Besides his qualifications (Oxford University, Nasa ...) which may have mislead us and need to be checked, he has also mislead all the parties around the project, announcing month after month that he had raised the necessary capital from venture funds (3-4 millions euros).

He has set up a company in France (SHANNON BIOTECHNOLOGY) presently inactive. The CEO of the company is Dianne MARSHALL.
http://www.societe.com/cgi-bin/recherche?rncs=451618946

I have invested 20.000 euros of personal money in the company and spent 18 months to help set up the project in France. My fees (around 30.000 euros) remain unpaid.

Since his release from custody, John Walters has been trying to raise money in Africa, claiming on advertising documents (see attached elansuissedownload [note: see these downloads here and here - RDC]) that he owned a factory in France, which is definitely not the case.

Would you need any further information, do not hesitate to contact me and I'll provide the necessary elements, if available.

Sincerely yours,<<

The two interesting documents showing the character of John Walters are the sentencing hearing transcript for Walter's trial on fraud charges (sentencing was pronounced in September 2004) and Walters' director disqualification for 7 years in the UK. Please note: I am not calling into question Walters' character – that has already been done in a court of law and, if transcript is genuine, he was found guilty of fraud. This makes him a convicted felon. I will verify this document with the Ipswich Court after the holidays.

If this disqualification order is currently in force, Walters may be in violation of that order through his participation with Nicogel, Aquacine, Elan Suisse Ltd. and Nicotea.  He certainly appears to be devoid of remorse.

Here is further information on Walters (per the court and companies documents):
JOHN ANTHONY BOTT-WALTERS
Date of Birth: 09/08/1967 (British Date format)
Nationality: BRITISH
Address:
69 BEAUFORT MANSIONS
BEAUFORT STREET
LONDON  SW3 5AF

So, if you are looking for Cormick or Walters, you will probably find both of them at that address.  Here is how to get there.  [Note to February 6, 2006 update, I now have information that the address referenced above (the Beaufort Street, London address) does not belong to Walters and that Walters does not live there.  Which means that Walters gave the wrong residence address to the Ipswich Crown Court!]

Further information on Walters' prison sentence from the same source in France follows:
>> I don't know in which prison he served his sentence; most probably around Newmarket, where Dianne Marshall and her daughter are leaving.

You may contact Ipswich Crown Court on 01473 228585 (fax: 01473 288560) for more information.

As indicated by the judge (cf. page 8 ligne 14 of the judgment), he initially had to serve 5 months in prison.  He was in fact enprisoned till mid november or early december 2004 and was then authorized to leave during the day (electronic bracelet) till early february 2005.<<

On the question of Dianne Marshall's role in this fiasco:
>>According to Jon Allen, who has supported the project and lost some substantial money in the SHANNON BIOTECHNOLOGY project in France, Dianne Marshall and John Walters have [I have deleted this section of the e-mail since it involves personal details between Marshall and Walters].

According to the same source, it seems that Dianne Marshall, who is apparently a sound person (various scientific publications and work

related to biotechnologies for major companies) has inherited some
money, her family being previously in the sausage business. John
Walters would be in debts towards her.<<

This information fills in a lot of the missing details of this scam's
structure. I believe that at this point we can definitely pronounce this
Elan Suisse [and related companies] structure as a criminal organization.

**December 22, 2005 Update:**
I received a report today that Cormick is in the UK. If you need an exact
location, please give me a call.

**December 26, 2005 Update:**
What I find most egregious about this John Walters' case is the timing.
In April 2005, Elan Suisse came out with a double page advertisement in
the South African publication FANews. In order to have this ad placed,
the ad files would have been required to be transmitted to FANews some
time in February 2005. It would have also taking a bit of timing to
prepare the ad.

If the sentencing transcript is correct, Walters would have [in all
probability] been in his jail cell plotting this next scam with Cormick.
Clearly, Walters saw this jail time as a hazard of the trade instead of a
time for reform.

**December 27, 2005 Update:**
I received the following e-mail overnight from Walters:
>>Dear Mr Christ,

I feel I ought to write to you about your dispute with Brett Cormick. I
haven't written to you so far because it did not seem to me appropriate to
comment on a matter that has clearly become too acrimonious to be
resolved by anyone but the courts. However, now that you've decided to
post on the web numerous thoughts about me of varying accuracy,
relevance and intent, I have no option but to write to you to set the record
straight.

To give you some background first, I am a research scientist by training
and I have spent the past few years of my life developing novel
technologies for the liquid delivery of pharmacological agents. Curiously,
drug delivery is an area that is largely neglected by the pharmaceutical
giants, despite the fact that patient non-compliance with medication is
extremely common, and much of it is due to idiosyncratic reasons that
have nothing to do with side effects, the classic one being "I don't like