# FINGER & SLANINA, LLC
### ATTORNEYS AT LAW

David L. Finger, Resident, Wilmington Office:
One Commerce Center, 1201 Orange St., Suite 725
Wilmington, Delaware 19801-1155
Ph: (302) 884-6766 | Fax: (302) 984-1294
E-mail: dfinger@delawgroup.com
www.delawgroup.com

July 3, 2007

**Via E-Filing**
The Honorable Gregory M. Sleet
U.S. District Court for the District of Delaware
844 King Street, Lock Box 19
Wilmington, DE 19801

Re:    **Christ v. Cormick**, **et al.**. C.A. No. 06-275-GMS[1]
        **Elan Suisse Ltd. v. Christ**, C.A. No. 07-60-GMS

Dear Judge Sleet:

In anticipation of the discovery teleconference scheduled for July 5, 2007 at 9:15 a.m. in the above-captioned matter, the parties jointly submit the following items to be presented to the Court. The issues all relate to the scope and terms of a confidentiality stipulation and order. Initially, the parties have agreed that (i) Mr. Christ will not post or discuss on his website any documents or other information disclosed in the course of discovery, and (ii) documents and other information disclosed in the course of discovery will not be used for any purpose other than the above-referenced litigation.

Beyond that, however, the parties have been unable to resolve the following issues regarding the scope of a confidentiality stipulation (the wording of these issues stated below has been approved by counsel for all the parties):

      1.     Whether the non-Christ parties are entitled to a provision in a confidentiality order prohibiting disclosure of discovery documents to third parties, to protect the privacy rights of parties and non-parties (subject to the provisions of issue number 3 below).

---

[1]    Decision on a motion to dismiss is pending in Civil Action No. 06-275-GMS. Although the Court indicated at the scheduling conference that this case will proceed in some fashion, the parties remain unsure as to which of the defendants will remain in the case and which (if any) will be dismissed. As such, the parties have agreed that (i) until the Court issues its ruling, Mr. Christ will limit his discovery requests to Mr. Cormick and the Elan Suisse entities, and (ii) the non-Christ parties' appearance before the Court on this (or any other) matter shall not constitute a waiver of their claims in the motion to dismiss, including the claim of lack of personal jurisdiction.

The Hon. Gregory M. Sleet
July 2, 2007
2

       2.     Whether there should be included in the confidentiality agreement a designation of "HIGHLY CONFIDENTIAL," which would restrict disclosure to attorneys' eyes only (subject to challenge by the non-disclosing parties).

       3.     Whether, if any party has a legitimate need to disclose discovery documents and information to third parties, such as experts, private investigators and/or third-party vendors, such third parties must first sign an undertaking to be bound by the confidentiality order and subject to the jurisdiction of this Court, with such undertaking to be delivered to the disclosing party before disclosure setting forth the name, address, telephone number and e-mail address of the proposed recipient, with the disclosing party to be allowed five (5) business days to object to any proposed disclosure before such disclosure occurs.

       The non-Christ parties submit the following exhibits in connection with this matter: Exhibit A, consisting of excerpts from Mr. Christ's website, and Exhibit B, consisting of recent e-mails from Mr. Christ to Dr. Cormick.

       Mr. Christ submits Exhibit C, constituting e-mails between Mr. Christ and Dr. Cormick.

                         Respectfully,

                         David L. Finger
                         (DE Bar ID #2556)

cc:    Clerk of the Court (via CM/ECF)
       Thad J. Bracegirdle, Esq. (via CM/ECF)

If anyone has a current picture of Cormick subsequent to his cosmetic surgery, please forward it to me so that I can post it here. We are mostly interested to know if this surgery was just a face-lift or if it was done to alter his appearance in support of a change in identity.

**May 17, 2007 Update:**
Still more from our researcher in the UK:
>>Here is some more background on your new spouting friend, the Blue Whale.
http://philadelphia.bizjournals.com/philadelphia/stories/2007/02/19/smallb1.html

Did you know there was a Nicogel USA LLC ??
http://www.manta.com/coms2/dnbcompany_6qf7l2 <<

We have a new player here! There is not much relevant information on the web about Denise Methlie of Avondale, Pennsylvania (just some confidential medical information from 2004 - I cannot understand why it was allowed on the web in the first place [Denise, you might want to have that removed]).

I have very little information about both Nicogel USA LLC and Cotrex LLC (you might remember them as the company to which Dianne Marshall assigned her ownership interest in Nicogel Ltd. some time back) since they are both based in the 'regulation-lite/non-transparent' venue of Nevada. We will research more.

**STATEMENT ON THE NICOGEL COMPANIES AND BILL WHALEN**
I have been getting a lot of [both direct and indirect] correspondence from Bill Whalen about this fight as not being his fight. His repeated requests [and demands] have been to leave him out of this battle over return of my stolen property.

Elan Suisse and minions ran an investment scam bilking me of over US$250,000. Those funds were diverted to fund [in part] the startup of Nicogel Ltd. Bill Whalen is obviously profiting from his relationship with a company started up and funded with money stolen from me. Bill Whalen knowingly and willingly entered a battle zone (he was warned by people other than me before he entered this business arrangement with Walters) and now wants to be kept out of this fight. In my opinion, that is the similar argument to buying a stolen stereo system at a substantially reduced price then righteously arguing a clear conscience such as "I didn't steal anything."

So, Bill Whalen and Blue Whale [in my opinion] are a party to this battle for the return of my stolen property. Here is an except of correspondence between myself and Bill Whalen from March when he demanded I remove him from this web site:

>>Gosh Bill, let's follow along - Cormick used Aquacine as an enticement in order to steal $250,000 from me and my family. The money was used to promote Aquacine that became Nicogel. Therefore, Nicogel was partially funded with stolen money (and the worst kind because that money was stolen from me). So, you got into business with Nicogel in the midst of a battle over my stolen money.

You remind me of someone that would buy a stolen stereo system for a substantially reduced price under the guise of "I didn't steal anything...".
- Russell warned you.
- I warned you.

- You ignored all of the warning signs, and
- Now this negative press is hurting your business and you are blaming me?
- I do not accept this blame.  As far as I can tell, you acted irresponsibly by ignoring all of the warning signs that were staring you in the face.
- You chose to do business with crooks.  It was your choice.
- I would like to add that I am also an honest businessman - and that counted for nothing as these crooks stole my life's savings (easily, quickly and efficiently since I'm just a dumb trusting Southern hick).  Don't whine to me about your loss, pal.  If I would have had any of the warning signs you had I would have dropped these jerks like a bad habit.  You obviously were not spending your own money or else you would have more carefully considered your investment decision.  I was spending mine.  And I fully intend on getting it back.  If that effort hurts you, I feel zero sympathy for you.

If you want to enjoin this legal battle then quit whining and get on with it.  You can also sit in on the trial in Wilmington if you are curious.<<

It might also be interesting to note:
1) Walters is a convicted criminal.  That might be at least a consideration while reviewing any information issued by him or his minions.
2) There is conflicting information provided by his company that is published in press releases. In other words, it can be proven that he has lied about how much product the company has sold.
3) Nicogel's ownership of the technology could still be in dispute since I have not found if the Patent Office suit was ever resolved.
4) There is a complaint pending against Nicogel that argues his product is a medicine and should therefore be regulated. This complaint is backed up with a compelling argument.

**May 18, 2007 Update**
I have several people doing QC on this web page.  One reviewer made some comments on notes 3) and 4) immediately above:
>>Re number 4 - I wasn't sure whether your comment referred to US or UK.  I can only read between the lines that Walters and UK MRHA are in a spat. Interestingly there is NO promotion of Nicogel here. Perhaps unlike The Blue Whale(n), Walters is broke???

It seems from the FOI information 17 May post that MRHA have yet to decide on legality of Nicogel

re 3 -  I think that the suit was about Ready-to-drink RTD medicines patents, not Nicotine gel.
There is a patent PENDING for nicotine gel, from Cotrex LLC (=Walters I bet) (See jan 24)<<
So, I stand corrected on 3) above.  I do not know if the Nicogel technology is in dispute.  As a matter of fact, I don't know much at all about the Nicogel technology.
It's probably so complicated that only Walters can understand it.  Investors, don't try to understand it – just pony up your money.

More from our researcher in the UK:
>>FDA and Nicogel:
http://www.fda.gov/ora/oasis/3/ora_oasis_c_gb.html

along with Bob Wass and Michael Wolff whom were all attempting to put together a North Pole scuba diving expedition of their own. I was there as an exhibitor for my (at the time) new company VideoRay. I obviously looked haggard after spending 2 months attempting to get 80 people from all over the world to Southern Chile then to the South Pole and back. Everyone on the trip had issues which took its toll and finally, at the end of the trip, I had felt as if I had been through a meat grinder. When summarizing the trip to Cormick at the show, he was solicitously complimentary of me – and he was about the only person to do so. I felt like I had a friend for life. He felt like he had an easy target. And that, folks, is where this all started.

It is said that pedophiles spend years cultivating their targets. Scam artist do the same. They are apparently the same personality. One of Cormick's family members had claimed Cormick as a pedophile, but I had discounted that since it occurred during a nasty divorce proceeding (claims of pedophilia are common during child custody battles). But from the information I have received recently, I am not so certain anymore.

Tomorrow we will take up the story of the man who ran Cormick out of England then we will re-run Cormick's history based upon the updated information obtained during this trip. This is good fun – the investigation is blossoming!

**June 26, 2007 Update**
Last Friday, I had a lovely afternoon with an English couple whom had a particularly bad two [plus] year experience with Cormick. The gentleman in question (whom prefers to remain anonymous for privacy reasons) is in the IT business as a programmer/businessman. This man has a deep technical background in both stock trading and in programming. He conceived and jointly financed the development of a technology for performing secure stock and foreign exchange trading over the internet during the early 1990s (during the net's early years) and sought to bring this product to market. This brought him into contact with one Brett John Cormick (the self-proclaimed 'financial engineering wizard').

For a small £10,000 per month retainer (the proceeds of which would be deductible from the proceeds from financing once they were obtained), Cormick committed to raise capital for this new venture. What struck me while I heard this story was the stark similarities between this man's experience and the scam pulled on me in 2004. Cormick (instead of producing marketing materials and business plan) had this man and his wife producing all manner of marketing materials for the proposed 'road show' to promote this technology. Cormick had these folks manufacture document after document upon which he would blithely order up wholesale reworks of the materials. It was obviously "Make Work" (but they did it anyway). It was difficult to secure time from Cormick and establish progress until the end of the month (whereby substantial progress was magically being made in the last two to three days of the month), but the funding was just about to pop – and the £10,000 "retainer" needed to be paid in order for any further work to be performed… Cormick would throw around big names. He used John Dupont's name for a 'definitely interested party – you are in the big league now' just as he did with Gordon Subloo. You might remember John Dupont as one of the heirs of Dupont Corporation – whom was eventually jailed for killing one of his protégé wrestlers while on a delusional fit (in other words, he was mentally deranged).

After four months of this game being pulled on this unsuspecting couple, no funding

entered a motion to dismiss for lack of personal jurisdiction [sound familiar?] with the Johannesburg court – a claim my attorney felt he would succeed in processing since we were never able to determine where Cormick lived.

- Elan Suisse lost its Financial Service Provider license with the FSB in South Africa in 2006.
- I entered suit against Cormick and company in April 2006 in Federal Court in Delaware. Cormick and company later sued me for defamation in Montgomery County court in Pennsylvania.
- In August 2006, Cormick was arrested in Zimbabwe on suspicion of fraud and externalization of foreign currency. He got out of prison then quickly fled the country thus escaping the charges.
- In December 2006 (after I had the defamation case transferred to Federal Court in Pennsylvania), Judge Pratter transferred the defamation case to be combined with the civil fraud case in Delaware.
- The remainder of this story and the current status will come out in court next May.

Needless to say, Cormick's CV used to run countless scams is a fabrication. His title of Doctor is highly questionable due to the status (or lack thereof) of the issuing institution (the shut-down diploma mill). His claimed title of "Managing Director, Director and Consulting Director for several of the largest and most respected financial institutions in Europe" has been confirmed as complete and utter rubbish. Since Cormick has already entered suit against me for defamation, I feel it only proper to complete the story here since we are going to talk about all of this in court anyway.

Discovery is due to my attorney from Cormick et al by next Monday. We will have plenty more to discuss next week. Until then, have a nice weekend and July 4th holiday (Independence Day here in the USA)!

**June 28, 2007 Update**
Well, in our last episode of "Scum City", we were revealing the "Evil Dr. Cormick" and his sordid past but the Walters story keeps rolling along requiring some attention there. This overnight from the UK Sleuth:
>>Some exciting developments in the UK! Remember Dietgel? http://www.cambridge-news.co.uk/business/news/2007/01/02/7ae566da-104a-41dd-957c-48f800520d75.lpf

*"Rubbing his hands all the way to the bank, the doctor is not unambitious when it comes to predicting the sales performance of Dietgel: "We will have to open a bank on the moon," he says, "change the tide when we cash the cheque."*

Well, it is with regret that we have to chalk up a SUCCESS for The Hon John Walters. He has dumped Dietgel http://www.dietgel.info/ (the green tea extract) and Recharge Gel http://www.recharge-gel.com/ (caffeine) on the poor unsuspecting Anthony Winterbourne. We guess they must have met in the car park at Saxon Business Park. We did try to warn Anthony Winterbourne off, but to no avail. Since then he has tried 8 times to sell a tube of Dietgel on eBay - without a single bid!

Winty1976 as he is known [note: do a Google search on "winty1976" to see Winterborne's surreptitious promotional postings - RDC] has been a little bit naughty in the way he promotes the caffeine gel to students e.g.

guys are good!

## June 30, 2007 Update

In our last episode of "Scum City", the evil Drs. Cormick and Walters had again done their dastardly deeds.  But our crack detective (the UK Sleuth) is hot on their trail again uncovering still more scumbag schemes:

>>www.nicogel.mobi ... New Swiss supplier of Nicogel.

Claims (translated)

**Dr.** John P. Walters is a *biochemist* and one of the directors in the ***American white house***

After many scientific tests Dr. Walters is absolutely inspired over Nicogel®. He says:

> *"Tests showed that from 200 persons, who smoke on the average 20 cigarettes per day three quarters can reduce your consumption fast to 7-11 cigarettes; Nicogel® even helped many to give a smoking up completely."*

Do you think John P Walters - US "Drugs Czar" and our own Botty are related?

This outfit is run by Patrick Holzer    info@patrick-holzer.com

---

What we are seeing is a rash of distributors http://www.nicogeluk.com/  is an eBay shop - who have no doubt "invested" in Walters only to find that they are competing with each other.<<

Chaaaaaaaaaaaaa-Ching!!!  So, Brettie and Botty strike again.  Stay tuned for our next episode where Brettie and Botty produce insufficient discovery documents (due on Monday to my attorney in Wilmington, Delaware) and I counter with an endless series of motions to compel production of these documents.  Have a nice weekend!

## David L. Finger

| | |
|---|---|
| **From:** | "Bob Christ" <bob.christ@seatrepid.com> |
| **To:** | "John Walters" <john.walters@nicogel-uk.com>; <dianne.marshall@nicogel-uk.com>; "Brett Cormick" <brettc@elan-capital.com> |
| **Cc:** | <acarter@econet.co.zw>; <zog@seychelles.net> |
| **Sent:** | Wednesday, May 30, 2007 10:05 AM |
| **Subject:** | The Rules |

I certainly hope that today finds you well.

I am also sure that your attorney has notified you of my document request directed at Elan Suisse (USA, RSA, Jersey and UK) and The Brilliant Dr. Cormick. The rest of you will be served by week's end. Brett, do you think I've found the Bahamas, Seychelles and Dubai organizations yet (perhaps this is what will finally get you back into jail)?

Here are the rules:
1) Any withholding of evidence will be treated with the harshest of penalties. I am sure you guys are going to withhold practically everything - and I have already made preparations for that.
2) Any evidence you would like for me to produce should be listed so that I can put it up on the web site and you can then see it along with the rest of the world. There are a whole bunch of people telling me that this thing is really entertaining. I think they should not be kept waiting.
3) Barring any copyright issues, I'll just post what you guys send to me up on the web site as well. I've got plenty of server space! I know that you guys don't care, so what's the harm?

And the truth shall set you free!!! Embrace it.

I have done a considerable amount of work on this case. I plan on spending the July 4th holiday doing a line-for-line analysis of what is sent to me to what I have in my files so that I can start issuing the contempt of court requests.

As soon as we work through all of that, we'll start with the interrogatories. By fall we'll get to the depositions.

I again restate my commitment to you all - you will not keep the money that you stole from me. And I believe that Brett and John need to go back to jail where they came from. But that's just one man's opinion.

See you guys in Delaware, and, have a nice day!

-----Original Message-----
From: Bob Christ [mailto:bob.christ@seatrepid.com]
Sent: 14 June 2007 15:39
To: Brett Cormick
Cc: zog@seychelles.net; acarter@econet.co.zw; John Walters;
dianne.marshall@nicogel-uk.com
Subject: Discovery

Dear Dr. "Walter Mitty" Cormick (a/k/a 'The Tar Paper Doctor'),

What?  You are afraid that I will use the discovery to again show the world
that you are an utter and complete fraud?  Why don't you sue me?  What?  You
already did?!?!?  Perhaps you just didn't spend enough money on the case.
You need for Anthony, Peter and Zog to pony up more money and perhaps then
you can succeed in the empty threats you have issued thus far.

Come on guys - isn't there anything that you can do to stop this?  That's
it!  Spend more money on legal expenses.  That way you can turn a completely
empty case where you are as guilty as sin into a huge settlement against
'Big Bad Bob' (whom is injuring your 'Excellent Worldwide Reputation').

All of this information is going to be open and transparent for the world to
see.  Are you afraid of the truth, Brett?  Because the truth is very-very
ugly.  Everyone is giving me statements.  You can read them in court.  Or,
alternatively, if you issue the document request I'll just post them on the
web site and you can read it when everyone else reads it.  Then we'll read
it in court.  I already have plenty enough to win this case.  Now I'm
working on cranking up the punitive damages.

Go whine to the judge.  I am sure he will be sympathetic to your woes.

Poor Brett...

Bob

6/27/2007

-----Original Message-----
From: Bob Christ [mailto:bob.christ@seatrepid.com]
Sent: 14 June 2007 18:44
To: bob.christ@seatrepid.com; 'Dr Brett Cormick'
Cc: zog@seychelles.net; acarter@econet.co.zw; John.Walters@nicogel-uk.com;
dianne.marshall@nicogel-uk.com
Subject: RE: Discovery

And you have been a very naughty boy, Brett.

When is this all going to end?  Everyone is hemorrhaging money (except for
me, of course, since I am now spending your money - and you, of course,
because you are spending everyone else's money - and John, of course,
because he doesn't have any money - it sort of compresses on to everyone
else who is left now doesn't it?!?!?).

I reject your demand to keep this investigation confidential.  I will not
agree to anything of the sort.  Any move in that direction will be read as
an attempt to stop an open and honest investigation into this case.

The worst enemy of the con artist is the truth.  We will all see the truth
before this is over and it will set us all free!

From: Dr Brett Cormick [mailto:brettc@elan-capital.com]
Sent: Thursday, June 14, 2007 1:10 PM
To: bob.christ@seatrepid.com
Subject: RE: Discovery

Capital One Bank

$265,500 purchase price

About $100,000 equity

Nice...........

-----Original Message-----
From: Bob Christ [mailto:bob.christ@seatrepid.com]
Sent: 14 June 2007 18:44
To: bob.christ@seatrepid.com; 'Dr Brett Cormick'
Cc: zog@seychelles.net; acarter@econet.co.zw; John.Walters@nicogel-uk.com;
dianne.marshall@nicogel-uk.com
Subject: RE: Discovery

And you have been a very naughty boy, Brett.

When is this all going to end?  Everyone is hemorrhaging money (except for me, of course, since I am
now spending your money - and you, of course, because you are spending everyone else's money - and
John, of course, because he doesn't have any money - it sort of compresses on to everyone else who is
left now doesn't it?!?!?).

I reject your demand to keep this investigation confidential.  I will not agree to anything of the sort.  Any
move in that direction will be read as an attempt to stop an open and honest investigation into this case.

The worst enemy of the con artist is the truth.  We will all see the truth before this is over and it will set us
all free!

-----Original Message-----
From: Bob Christ [mailto:bob.christ@seatrepid.com]
Sent: Thursday, June 14, 2007 12:30 PM
To: 'Dr Brett Cormick'
Cc: 'zog@seychelles.net'; 'acarter@econet.co.zw'; 'John.Walters@nicogel-uk.com';
'dianne.marshall@nicogel-uk.com'
Subject: RE: Discovery

Ah - so Brett, you do read my emails.  That's lovely.

Punitive damages happen when a bunch of foreigners come into this country and use a US company to
run an investment scam on a US Citizen then abuse the US court system by filing a defamation case to
stop that US Citizen from gaining recovery.  Punitive damages are punishment for being naughty.

-----Original Message-----
From: Dr Brett Cormick [mailto:brettc@elan-capital.com]
Sent: Thursday, June 14, 2007 12:25 PM
To: 'Bob Christ'
Subject: RE: Discovery

David

Forgot...what punitive damages is he gibbering about???

-----Original Message-----
From: Bob Christ [mailto:bob.christ@seatrepid.com]
Sent: 14 June 2007 15:39
To: Brett Cormick
Cc: zog@seychelles.net; acarter@econet.co.zw; John Walters; dianne.marshall@nicogel-uk.com
Subject: Discovery

Dear Dr. "Walter Mitty" Cormick (a/k/a 'The Tar Paper Doctor'),

What?  You are afraid that I will use the discovery to again show the world that you are an utter and complete fraud?  Why don't you sue me?  What?  You already did?!?!?  Perhaps you just didn't spend enough money on the case.
You need for Anthony, Peter and Zog to pony up more money and perhaps then you can succeed in the empty threats you have issued thus far.

Come on guys - isn't there anything that you can do to stop this?  That's it!  Spend more money on legal expenses.  That way you can turn a completely empty case where you are as guilty as sin into a huge settlement against 'Big Bad Bob' (whom is injuring your 'Excellent Worldwide Reputation').

All of this information is going to be open and transparent for the world to see.  Are you afraid of the truth, Brett?  Because the truth is very-very ugly.  Everyone is giving me statements.  You can read them in court.  Or, alternatively, if you issue the document request I'll just post them on the web site and you can read it when everyone else reads it.  Then we'll read it in court.  I already have plenty enough to win this case.  Now I'm working on cranking up the punitive damages.

Go whine to the judge.  I am sure he will be sympathetic to your woes.

Poor Brett...

Bob



```
St. Tammany Parish 127
Instrmnt #: 1563282
Registry #: 1626448 ICV
07/10/2006 8:30:00 AM
MB X CB   MI    UCC
```

———— State of Louisiana ————       Space Above This Line For Recording Data ————



*LS0000117700986312LA00MTGE*

## MULTIPLE INDEBTEDNESS MORTGAGE

1. **DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is 06/28/2006 _____ _____ and the parties, their permanent mailing addresses, their marital status, and tax identification numbers, if required, are as follows:

    MORTGAGOR: Robert Douglas Christ (XXX-XX-4945), spouse of/AND Karen Alexander Christ (XXX-XX-6843), residing in St Tammany Parish, Louisiana, whose permanent mailing address is 23141 Brookforest Drive, Abita Springs, La 70420;

    ☐ If checked, refer to the attached Addendum incorporated herein, for additional Mortgagors, their signatures and acknowledgments.

    LENDER: Capital One, National Association

        313 Carondelet
        New Orleans, LA 70130
        A National Banking Association

2. **MORTGAGE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Mortgagor's performance under this Security Instrument, Mortgagor mortgages to Lender the following described property:

    The property is located in _____ St Tammany ✓ _____ at 23141 BROOKFOREST DRIVE
    _____ (Parish)
    _____, _____ Abita Springs _____, Louisiana _____ 70420
    (Address)                              (City)                     (ZIP Code)

    Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $50,000,000. This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
   A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(When referencing the debts below it is suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.)*

      Note Dated 06/28/2006 In the Principal Amount of  $65,400.00, executed by ROBERT D CHRIST, KAREN R CHRIST

   B. All other existing or future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Mortgagor in favor of Lender after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Mortgagor agrees that this Security Instrument will secure all existing and future obligations that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others. All existing and future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.
   C. All obligations Mortgagor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.
   D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.
   E. For purpose of this SECURED DEBT AND FUTURE ADVANCES" section, the term "Mortgagor" shall mean and include not only the Mortgagor as defined in this Security Instrument, but also any borrower obligated to Lender under any debt described in Subsection A of this section.

   This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

5. **PAYMENTS.** Mortgagor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

6. **WARRANTY OF TITLE.** Mortgagor warrants that Mortgagor is or will be lawfully seized of the estate mortgaged or otherwise encumbered by this Security Instrument, and has the right to mortgage the Property. Mortgagor also warrants that the Property is unencumbered, except for any encumbrances created by this Security Instrument and any encumbrance which the Mortgagor has disclosed in writing to the Lender.

7. **PRIOR SECURITY INTERESTS.** With regard to any other security instrument or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:
   A. To make all payments when due and to perform or comply with all covenants.
   B. To promptly deliver to Lender any notices that Mortgagor receives from the holder.
   C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

8. **CLAIMS AGAINST TITLE.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

10. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor shall not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims, and actions against Mortgagor, and of any loss or damage to the Property.
   Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

11. **AUTHORITY TO PERFORM.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

*(page 2 of 6)*

Expere!   ©1994 Bankers Systems, Inc., St. Cloud, MN  Form RE-MTG-LA 9/23/2003
C166(LA) (9006)   CC0051 (0603)

12. **ASSIGNMENT OF LEASES AND RENTS.** Mortgagor irrevocably grants to Lender as additional security all the right, title and interest in and to any and all existing or future leases, subleases, and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as "Leases") and rents, issues and profits (all referred to as "Rents"). Mortgagor will promptly provide Lender with true and correct copies of all existing and future Leases. Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default under the terms of this Security Instrument. The maximum amount of the obligation secured by this assignment at any one time shall not exceed the amount specified in the section titled MAXIMUM OBLIGATION LIMIT.

   Mortgagor acknowledges that this assignment is immediately effective between the parties to this Security Instrument and effective as to third parties on the recording of this Security Instrument. Mortgagor agrees that Lender is entitled to notify Mortgagor's or Mortgagor's tenants to make payments of Rents due or to become due directly to Lender after such recording, however Lender agrees not to notify Mortgagor's tenants until Mortgagor defaults and Lender notifies Mortgagor of the default and demands that Mortgagor and Mortgagor's tenants pay all Rents due or to become due directly to Lender. Immediately after Lender gives notice of default, Mortgagor agrees that either Lender or Mortgagor may notify the tenants and demand that all future Rents be paid directly to Lender. On receiving notice of default, Mortgagor will endorse and deliver to Lender any payment of Rents in Mortgagor's possession and will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Any amounts collected will be applied as provided in this Security Instrument. Mortgagor warrants that no default exists under the Leases or any applicable landlord/tenant law. Mortgagor also agrees to maintain and require any tenant to comply with the terms of the Leases and applicable law.

13. **LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Mortgagor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

14. **DEFAULT.** Mortgagor will be in default if any party obligated on the Secured Debt fails to make payment when due. Mortgagor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

15. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. If the Secured Debt or any part of it is an open-end credit plan secured by the consumer's dwelling under Section 226.5b of Regulation Z of the Federal Reserve Board, then Lender's actions under this Security Instrument are limited by that section. Subject to these limitations, if any, if Mortgagor is in default, Lender may accelerate the Secured Debt and foreclose this Security Instrument and cause the Property to be immediately seized and sold under ordinary or executory process, with or without appraisal in a manner provided by law all without the necessity of demanding payment or notifying and placing Mortgagor in default. Mortgagor also agrees that, should it become necessary for Lender to foreclose this Security Instrument, Lender may appoint a Keeper of the Property as provided by law.

   At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents. All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

16. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Mortgagor agrees to pay all of Lender's expenses if Mortgagor breaches any covenant in this Security Instrument. Mortgagor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Mortgagor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses not to exceed 25% of any amount unpaid on the Secured Debt. This Security Instrument shall remain in effect until released. Mortgagor agrees to pay for any recordation costs of such release.

17. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

   Mortgagor represents, warrants and agrees that:

   A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

   B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

   C. Mortgagor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor shall take all necessary remedial action in accordance with any Environmental Law.

   D. Mortgagor shall immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

*(page 3 of 6)*

Experts   © 1994 Bankers Systems, Inc., St. Cloud, MN  Form RE-MTG-LA  8/23/2003

C156(LA) [0906]   CO0061 (0603)

18. **CONDEMNATION.** Mortgagor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior security instrument or other lien document.

19. **INSURANCE.** Mortgagor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Mortgagor. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

20. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

21. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and Lender's lien status on the Property.

22. **JOINT, SEVERAL, AND SOLIDARY LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint, several, and solidary. If Mortgagor signs this Security Instrument but does not sign an evidence of debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. Mortgagor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Mortgagor and Lender.

23. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

24. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

25. **WAIVERS.** Except to the extent prohibited by law, Mortgagor waives all homestead exemption rights relating to the Property. Mortgagor also waives the benefit of appraisement, the notice of seizure, and the advertisement or notice of sale.

26. **OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

   [X] **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

   [ ] **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.

   [X] **Fixture Filing.** Mortgagor grants to Lender a security interest in all goods that Mortgagor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

*(page 4 of 6)*

ExperTe®   © 1994 Bankers Systems, Inc., St. Cloud, MN  Form RE-MTG-LA 8/23/2003
C156(LA) (9908)  CC0061 (0603)

☐ **Riders.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]
   ☐ Condominium Rider   ☐ Planned Unit Development Rider   ☐ Other N/A . . . . .
☐ **Additional Terms.**
   N/A

**SIGNATURES:** By signing below, Mortgagor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Mortgagor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1. Mortgagor, each witness, and Notary, have signed this Security Instrument for the purposes stated after a complete reading.

_____ 06/28/2006    _____ 06/28/2006
(Signature)      (Date)        (Signature)      (Date)
ROBERT DOUGLAS CHRIST        KAREN ALEXANDER CHRIST

_____ _____    _____ _____
(Signature)      (Date)        (Signature)      (Date)

_____        _____
(Witness as to all signatures)        (Witness as to all signatures)

STATE OF LOUISIANA      )
                ) ss.
PARISH OF _____ )

BEFORE ME, _____, a Notary Public, duly commissioned and qualified in and for the Parish and State aforesaid, PERSONALLY CAME AND APPEARED: _____, who first being by me sworn, did depose and say that (s)he was one of the subscribing witnesses to the foregoing instrument; that the said instrument was signed by _____ his/her/their own free act and deed, for the uses and purposes therein set forth, in the presence of appearer and _____ , the other subscribing witness.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal this _____ day of _____ , _____ .

_____        _____
Notary Public        Notary's Parish

SEAL

My Commission Expires: _____

Identification number: _____

*(page 5 of 6)*

ExpressⓇ © 1994 Bankers Systems, Inc., St. Cloud, MN Form RE-MTG-LA 8/23/2003
C186(LA) (9008)   CO0061 (0903)

**EXHIBIT A**

Security Instrument Date: <u>06/28/2006</u>

Name of Grantor(s) or Mortgagor(s):
    ROBERT DOUGLAS CHRIST, KAREN ALEXANDER CHRIST

THAT CERTAIN PIECE OR PORTION OF GROUND, TOGETHER WITH ALL BUILDINGS AND
IMPROVEMENTS THEREON, AND ALL OF THE RIGHTS, WAYS, PRIVILEGES, SERVITUDES,
APPURTENANCES AND ADVANTAGES THEREUNTO BELONGING OR IN ANYWISE APPERTAINING,
SITUATED IN SECTION 38, TOWNSHIP 6 SOUTH, RANGE 12 EAST, IN THE TOWN OF ABITA
SPRINGS, ST. TAMMANY PARISH, LOUISIANA, MORE PARTICULARLY DESCRIBED AS
FOLLOWS, TO-WIT: FROM THE SECTION CORNER COMMON TO SECTIONS 29, 32 AND 38,
TOWNSHIP 6 SOUTH, RANGE 12 EAST, ST. TAMMANY PARISH, LOUISIANA, GO SOUTH 09
DEGREES 30 MINUTES WEST, 757.7 FEET TO AN IRON PIPE; THENCE GO SOUTH 32
DEGREES 42 MINUTES 40 SECONDS EAST, 310.8 FEET (TITLE-SOUTH 32 DEGREES 15
MINUTES EAST) TO THE POINT OF BEGINNING; THENCE SOUTH 32 DEGREES 42 MINUTES 40
SECONDS EAST, 478.9 FEET (TITLE-SOUTH 32 DEGREES 15 MINUTES EAST) TO AN IRON
PIPE; THENCE SOUTH 58 DEGREES 30 MINUTES WEST, 528.44 FEET TO AN IRON PIPE AND
THE EAST EDGE OF BROOK FOREST ROAD; THENCE NORTH 21 DEGREES 45 MINUTES WEST,
423.93 FEET TO AN IRON; THENCE NORTH 31 DEGREES 30 MINUTES WEST, 50 FEET TO AN
IRON PIPE ALL ALONG THE EDGE OF BROOK FOREST ROAD; THENCE LEAVING SAID ROAD GO
NORTH 57 DEGREES 05 MINUTES 16 SECONDS EAST, 446.67 FEET BACK TO THE POINT OF
BEGINNING. SAID PROPERTY CONTAINS 5.26 ACRES. SAID PROPERTY BEING DESIGNATED
AS PARCEL "B" ON A RESUBDIVISION MAP MADE BY JOHN E BONNEAU AND ASSOCIATES,
INC., AND APPROVED BY HE PROPERTY AUTHORITIES, DATED JANUARY 30, 1997 AND
FILED AS MAP FILE NO. 1514. SAID PROPERTY IS FURTHER DESCRIBED BY REFERENCE TO
THE SURVEY OF JOHN E BONNEAU, INC., DATED JUNE 4, 2002, WHICH IS ATTACHED TO
AND MADE A PART OF AN ACT AT CIN 1307270.

**CASH SALE**
**STATE OF LOUISIANA**

St. Tammany Parish 1913
Instrmnt #: 1552966
Registry #: 1607923 LCM
05/17/2006 10:22:00 AM
MB   CB X MI    UCC

On 15th day of May, 2006, before me, Notary Public for the above state and residing therein, and in the presence of the subscribing witnesses, personally appeared:

CHARLES R. PENOT, JR., a person of the full age of majority, resident of the Parish of Orleans, State of Louisiana, who declared, under oath, unto me, Notary, that he has been married but once and then to Gail Picnot Penot from whom he was divorced and has not since remarried;

Mailing Address: 920 POEYFARRE STREET, UNIT 171, NEW ORLEANS, LA 70130

herein called SELLER, who declared that for the price and sum of TWO HUNDRED SIXTY NINE THOUSAND FIVE HUNDRED AND 00/100 DOLLARS ($269,500.00) cash, receipt of which is acknowledged, SELLER hereby sells and delivers with full warranty of title and subrogation to all rights and actions of warranty SELLER may have, unto:

ROBERT DOUGLAS CHRIST and KAREN ALEXANDER CHRIST a/k/a KAREN ELISE ALEXANDER CHRIST, both persons of the full age of majority, residents of the Parish of St. Tammany, State of Louisiana. The said ROBERT DOUGLAS CHRIST and KAREN ALEXANDER CHRIST being represented by DANA KELM, duly authorized pursuant to a power of attorney which is attached hereto and made a part hereof and the principal is alive and the power of attorney has not been revoked. The said DANA KELM knows of her own knowledge that ROBERT DOUGLAS CHRIST he has been married but once and then to Karen Alexander Christ with whom he is presently living and residing and KAREN ALEXANDER CHRIST has been married twice, first to Christopher Dysart from whom she was divorced and second to Robert Douglas Christ with whom she is presently living and residing;

Mailing Address: 23141 BROOK FOREST ROAD, ABITA SPRINGS, LA 70420

herein called BUYER, resident(s) of and domiciled in State of Louisiana, here present and accepting, purchasing for themselves, their heirs and assigns, the following described property, the possession and delivery of which BUYER acknowledges:

THAT CERTAIN PIECE OR PORTION OF GROUND, together with all buildings and improvements thereon, and all of the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in Section 38, Township 6 South, Range 12 East, in the Town of Abita Springs, St. Tammany Parish, Louisiana, more particularly described as follows, to-wit:

From the Section corner common to Sections 29, 32 and 38, Township 6 South, Range 12 East, St. Tammany Parish, Louisiana, go South 09 degrees 30 minutes West, 757.7 feet to an iron pipe; thence go South 32 degrees 42 minutes 40 seconds East, 310.8 feet (Title - South 32 degrees 15 minutes East) to the Point of Beginning; thence South 32 degrees 42 minutes 40 seconds East, 478.9 feet (Title - South 32 degrees 15 minutes East) to an iron pipe; thence South 58 degrees 30 minutes West, 528.44 feet to an iron pipe and the East edge of Brook Forest Road; thence North 21 degrees 45 minutes West, 423.93 feet to an iron pipe; thence North 31 degrees 30 minutes West, 50 feet to an iron pipe all along the edge of Brook Forest Road; thence leaving said road go North 57 degrees 05 minutes 16 seconds East, 446.67 feet back to the Point of Beginning. Said property contains 5.26 acres.

Said property being designated as Parcel "B" on a resubdivision map made by John E. Bonneau & Associates, Inc., and approved by the property authorities, dated January 30, 1997 and filed as Map File No. 1514. Said property is further described by reference to the survey of John E. Bonneau, Inc., dated June 4, 2002 which is attached to and made a part of an act at CIN 1307270.

*FOR INFORMATIONAL PURPOSES ONLY:*

*Improvements thereon bear the municipal number: 23141 Brook Forest Road, Abita Springs, LA 70420.*

SPECIAL POWER OF ATTORNEY

BY:  Robert Douglas Christ and
     Karen Alexander Christ

TO:  Dana Kelm

DATE: May 8, 2006

UNITED STATES OF AMERICA

STATE OF LOUISIANA

PARISH OF St. Tammany

CITY OF Mandeville

BEFORE ME, a Notary Public, duly commissioned and qualified in and for the above indicated State and County/Parish, and in the presence of the undersigned witnesses, personally came and appeared the hereinafter named and undersigned PRINCIPAL, who declared under oath that they are of legal age and their marital status is as hereinafter set forth, and further that they does by these presents, make, name, ordain, constitute and appoint the hereinafter named AGENT AND ATTORNEY-IN-FACT (hereinafter referred to as AGENT), of the full age of majority, to be their true and lawful AGENT, hereby giving and granting unto said AGENT full special power and authority, for them, and in their names, place and stead, to do and perform all the things and acts specified herein.

PRINCIPAL further authorizes and empowers his said AGENT to do and perform any and every act, matter and thing whatsoever, as shall or may be requisite and necessary in order to effectuate the purposes for which this Power of Attorney is granted, as fully and with like effect as if PRINCIPAL had been personally present and had done any such thing, performed any such act, and/or had signed all and any such document, deed, note, contract, application or other agreement, PRINCIPAL hereby ratifying and confirming any and all things done by their said AGENT and adopting them as their own act and deed.

PRINCIPAL further expressly stipulates that any ambiguities which may arise in the interpretation hereof shall be liberally construed so as to effectuate the purposes hereby and to validate all things done by AGENT. Whenever used herein, the singular number shall include the plural, and the masculine gender shall include all genders.

The purpose for which this Power of Attorney is granted is:

☐ APPLICABLE

☒ NOT APPLICABLE

TO DIRECT, INSTRUCT, AUTHORIZE AND PERMIT AGENT to sell and deliver the hereinafter described real estate, and/or all of PRINCIPAL'S right, title and interest therein, with warranty of title and with subrogation of all actions of warranty, unto any person, firm or corporation or association, for such price and on such terms and conditions as AGENT may deem proper, to pay and discharge any and all charges, expenses and encumbrances in connection therewith, and to receive and receipt for the selling price.

☒ APPLICABLE

☐ NOT APPLICABLE

TO DIRECT, INSTRUCT, AUTHORIZE AND PERMIT AGENT to purchase the hereinafter described real estate for the price and sum of $269,500.00

☒ APPLICABLE

☐ NOT APPLICABLE

TO DIRECT, INSTRUCT, AUTHORIZE AND PERMIT AGENT to borrow from any person, firm or corporation, the total sum of $215,600.00, said loan to be evidenced by PRINCIPAL'S promissory note and secured by vendor's lien and/or mortgage on the hereinafter described real estate, or PRINCIPAL'S undivided interest therein.

PRINCIPAL does hereby expressly authorize AGENT:

(a)    To make, execute and deliver in PRINCIPAL'S name a promissory note in the amount of the credit portion of the purchase price or the amount of the loan, said note to be payable at such maturity and at such rate of interest and on such terms and conditions as AGENT shall deem proper. AGENT may increase or decrease the amount of the note, not to exceed ten (10%) percent.

(b)    To execute the necessary sale and resale or act of mortgage to create a vendor's lien in favor of any building and loan association and/or to execute any act of sale and/or mortgage, conventional mortgage, or any form of mortgage required to obtain mortgage loan insurance or loan guarantees from the Veterans Administration or Federal Housing Administration, on such form and on such terms and conditions as the lender shall require, the said instrument to contain all usual Louisiana security clauses, including by way of example, but not limited to, confession of judgment, waiver of appraisement, waiver of homestead exemption from seizure and pact de non alienando.

NAME, RESIDENCE AND MARITAL STATUS OF PRINCIPAL:

KAREN ALEXANDER CHRIST (SS#:***-**-*843) wife of/and ROBERT DOUGLAS CHRIST (SS#: ***-**-*945) both persons of the full age of majority and residents of the County of Montgomery, State of Pennsylvania who declared under oath unto me, Notary, that Karen has been married but twice, first to Christopher Dysart from whom she was divorced and secondly to Robert Douglas Christ with whom she currently lives and resides; Robert Douglas Christ has been married but once and then to Karen Alexander Christ. Mailing Address: 23141 Brook Forest Road, Abita Springs, LA 70420.

NAME AND RESIDENCE OF AGENT:

DANA KELM
2053 EAST GAUSE BLVD., STE 100
SLIDELL, LA 70461

DESCRIPTION OF REAL ESTATE FORMING THE SUBJECT OF THIS POWER OF ATTORNEY:

MUNICIPAL: 23141 BROOK FOREST ROAD, ABITA SPRINGS, LA 70420
LEGAL: Parcel "B", Section 38, T-6-S, R-12-E, St. Tammany Parish, LA

THUS DONE AND PASSED, at the City and State aforesaid on the date set forth, in the presence of the undersigned competent witnesses, who have hereunto signed their names with the said PRINCIPAL, and me, Notary, after due reading of the whole.

WITNESSES:

_Deborah Strain_                              _[signature]_
Deborah Strain                              PRINCIPAL: Robert Douglas Christ

_Katie Knight_                              _Karen Alexander Christ_
                                            PRINCIPAL: Karen Alexander Christ

_[signature]_
NOTARY PUBLIC
(Seal)

MY COMMISSION EXPIRES:_____    BLAKE E. HARVESTON, JR
                                 NOTARY PUBLIC
                                 ST. TAMMANY PARISH, LA.
CAUTION! NOTARY CANNOT SIGN AS A WITNESS.    MY COMMISSION IS FOR LIFE
THIS DOCUMENT MUST HAVE 2 WITNESS SIGNATURES.    BAR NO. 06664

*Being a portion of the same property or the same property acquired by vendor herein by act dated June 17, 2002 and registered at COB Instrument Number 1307270 of the official records of the Clerk of Court in the Parish of St Tammany, Louisiana.*

SEE ATTACHED "AS IS ADDENDUM"

**THIS SALE IS SUBJECT TO THE FOLLOWING:**

1.  Any encroachments, overlaps, easements, rights of way, servitudes and all matters which might appear on a current survey of property.

2.  Any restrictions, covenants, easements, rights of way, servitudes, setback lines recorded in the official records of the Parish of St Tammany and restrictions recorded on plan of subdivision and in CIN #1106448 and CIN #1119550, but omitting any covenants or restrictions, if any, based upon race, color, religion, sex, sexual orientation, familial status, marital status, disability, handicap, national origin, ancestry, or source of income, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law.

3.  Subdivision Map Number 1514.

Mortgage and Conveyance Certificates are waived by the parties hereto, who hereby exonerate me, Notary, from any and all liability on account of non-production of same.

The parties acknowledge that no survey has been done in connection with this sale and hereby release and relieve me, Notary, from any and all liability in connection with any.

All taxes assessed against the property herein conveyed have been paid as per the parish tax records. Taxes for the year 2006 are pro-rated and will paid by purchaser when due.

All agreements and stipulations herein, and all the obligations herein assumed shall inure to the benefit of and be binding upon the heirs, successors, and assigns of the respective parties, and the BUYER, his heirs and assigns shall have and hold the described property in full ownership forever.



## WAIVER of WARRANTY and REDHIBITION RIGHTS ADDENDUM

IN REFERENCE to the Agreement to Purchase and Sell the real property commonly

referred to as: *23141 Brook Forest Road, Abita Springs, La.*
*70420*

dated _____ between *Charles R. Penot, Jr.* (SELLER") and

*Robert & Karen Christ* ("PURCHASER"), the undersigned parties hereby

agree as follows:

Providing that Purchaser's inspections, as per the Property Condition/Inspection section on the agreement to purchase and sell referenced above, are satisfactory to Purchaser, Purchaser hereby agrees that THE FOLLOWING STATEMENT WILL BE MADE A PART OF THE ACT OF SALE AND SHALL NOT GO INTO EFFECT UNTIL THE ACT OF SALE.

It is expressly agreed that the immovable property herein conveyed and all improvements and component parts, plumbing, electrical systems, mechanical equipment, heating and air conditioning systems, built-in appliances, and all other items located hereon are conveyed by Seller and accepted by Purchaser "AS IS, WHERE IS," without any warranties of any kind whatsoever, even as to the metes and bounds, zoning, operation, or suitability of the property for the use intended by the Purchaser, without regard to the presence of apparent or hidden defects and with the Purchaser's full and complete waiver of any and all rights for the return of all or any part of the purchase price by reason of any such defects.

Purchaser acknowledges and declares that neither the Seller nor any party, whomsoever, acting or purporting to act in any capacity whatsoever on behalf of the Seller has made any direct, indirect, explicit or implicit statement, representation or declaration, whether by written or oral statement or otherwise, and upon which the Purchaser has relied, concerning the existence or non-existence of any quality, characteristic or condition of the property herein conveyed. Purchaser has had full, complete and unlimited access to the property herein conveyed for all tests and inspections which Purchaser, in Purchaser's sole discretion, deems sufficiently diligent for the protection of Purchaser's interests.

Purchaser expressly waives the warranty of fitness and the warranty against redhibitory vices and defects, whether apparent or latent, imposed by Louisiana Civil Code Articles 2520 through 2548, inclusive, and any other applicable state or federal law and the jurisprudence thereunder.

Purchaser also waives any rights Purchaser may have in redhibition to a return of the purchase price or to a reduction of the purchase price paid pursuant to Louisiana Civil Code Articles 2520 to 2548, inclusive, in connection with the property hereby conveyed to Purchaser by Seller. By Purchaser's signature, Purchaser expressly acknowledges all such waivers and Purchaser's exercise of Purchaser's right to waive warranty pursuant to Louisiana Civil Code Article 2520 and 2548, inclusive.

The herein agreement, upon its execution by both Purchaser and Seller, is herewith made an integral part of the aforementioned Agreement to Purchase and Sell.

*Robert Douglas Christ*                    *Charles Penot Jr*        *May 15, 2006*
PURCHASER          DATE/TIME          SELLER          DATE/TIME

*Karen Alexander Christ*                    _____
PURCHASER          DATE/TIME          SELLER          DATE/TIME
*by Dana Kelm Agent*
*and Attorney in Fact*

DONE AND PASSED by the parties at my office in *Mandeville*, Louisiana on the hereinabove stated date and in the presence of me, Notary, and the undersigned competent witnesses who have signed in the presence of the parties and me, Notary.

WITNESSES:

_____
Fred Lamarive

_____
Deborah Strain

_____
CHARLES R. PENOT, JR.

_____
ROBERT DOUGLAS CHRIST, BY DANA KELM,
AGENT AND ATTORNEY IN FACT
*Dana Kelm, Agent and Attorney in Fact*

_____
KAREN ALEXANDER CHRIST, BY DANA KELM,
AGENT AND ATTORNEY IN FACT
*Dana Kelm, Agent and Attorney in Fact*

_____
NOTARY PUBLIC

*Mahony Title Services LLC (Mandeville)*
*1123 N. Causeway Blvd.*
*Mandeville, LA 70471*
*985-727-9900*
*OUR FILE #069374MDS*

BLAKE E. HARVESTON, JR.
NOTARY PUBLIC
ST. TAMMANY PARISH, LA.
MY COMMISSION IS FOR LIFE
BAR NO. 06664