IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBERT D. CHRIST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-275-GMS |
| | ) | |
| BRETT J. CORMICK and ELAN SUISSE | ) | |
| INTERNATIONAL HOLDINGS (USA), | ) | |
| | ) | |
| Defendants. | ) | |
| ELAN SUISSE LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-60-GMS |
| | ) | |
| ROBERT D. CHRIST, | ) | |
| | ) | |
| Defendant. | ) | |

## ANSWERING MEMORANDUM OF LAW
## IN OPPOSITION TO MOTION IN LIMINE TO BIFURCATE THE TRIAL

Plaintiff Robert D. Christ hereby respectfully submits this memorandum of law in

opposition to the Motion *In Limine* to Bifurcate the Trial (D.I. 103) filed by Brett J. Cormick,

Elan Suisse International Holdings (USA) LLC and Elan Suisse Ltd. (collectively, "Movants"):

1.    In moving to separate the trial of Mr. Christ's claims from their own claims,

Movants rely upon their separate motion *in limine* to exclude Mr. Christ from offering as

evidence the deposition testimony of Alan Dean, Bruce Lyman, Carl Palmer and Gordon Subloo

(*see* D.I. 102).  Specifically, Movants argue that, if the Court admits this deposition testimony in

support of Mr. Christ's defenses to Movants' claims, then those claims should be tried separately

to avoid prejudicing Movants in defending against Mr. Christ's claims.

2.    While Rule 42(b) authorizes the Court to conduct a separate trial of any claim or

issue "in furtherance of convenience or to avoid prejudice," Fed. R. Civ. P. 42(b), "[t]he

piecemeal trial of separate issues in a single lawsuit … is not to be the usual course," 9A Wright & Miller, *Federal Practice & Procedure* § 2388, at 95-96 (3d ed. 2008). *See also* Fed. R. Civ. P. 42(b), comm. notes ("[S]eparation of issues for trial is not to be routinely issued …."); *Hatfield v. Herz*, 9 F. Supp.2d 368, 373 (S.D.N.Y. 1998) ("Severance is a 'procedural device to be employed only in exceptional circumstances.'"). Therefore, bifurcation should be resorted to "only as the result of the exercise of informed discretion when the district judge believes that separation will achieve the purposes of the separate trial rule." 9A Wright & Miller § 2388, at 96. *Accord Morse/Diesel, Inc. v. Fidelity & Dep. Co. of Maryland*, 763 F. Supp. 28, 35 (S.D.N.Y. 1991). The moving party bears the burden of proving that separate trials will advance the interests set forth in Rule 42(b). *Lennon v. Seaman*, 2002 WL 109525, at \*9 (S.D.N.Y. Jan. 28, 2002) (attached hereto as Ex. A).

      3.     As Mr. Christ explained in opposing Movants' motion *in limine* to exclude his proposed deposition testimony, that testimony relates not just to Movants' claims for defamation, but also to Mr. Christ's affirmative claims for fraud as well as Mr. Cormick's credibility as a witness – a factor that is relevant to *all* claims in these actions. Moreover, there is a great deal of factual and evidentiary overlap between the claims and counterclaims in these actions, given that they all arise from Mr. Christ's business dealings with Mr. Cormick. For example, the facts underlying Mr. Christ's claims against Mr. Cormick also are relevant to the defamation counterclaims, since those facts form the basis for many of Mr. Christ's statements on his website. Where, as here, the claims are factually intertwined and will be proven by the same witnesses and evidence, bifurcation does not further convenience or economy and should be denied. *See, e.g.*, *Synopsis, Inc. v. Magma Design Automation*, 2006 WL 1452803, at \*4 (D. Del. May 25, 2006) (attached hereto as Ex. B); *Lennon*, 2002 WL 109525, at \*10; *Bloxham v.*

*Mountain West Farm Bureau Mut. Ins. Co.*, 43 F. Supp.2d 1121, 1129-30 (D. Mont. 1999); *ABB Indus. Sys., Inc. v. Prime Tech., Inc.*, 32 F. Supp.2d at 43-44 (D. Conn. 1998); *Hatfield*, 9 F. Supp.2d at 373-74; *Morse/Diesel*, 763 F. Supp. at 35.

4.      Since the challenged deposition testimony is relevant to all claims as well as Mr. Cormick's credibility as a witness, Movants' claim of prejudice from the jury hearing the testimony has no merit. However, even if the challenged testimony was admissible only with respect to Mr. Christ's defense of Movants' claims, any possible prejudice to Movants easily could be limited by the use of proper instructions to the jury rather than the costly and inefficient remedy of bifurcation. On this point, this Court's observations in *Synopsis, Inc. v. Magma Design Automation*, made in the course of denying a motion to bifurcate claims, are particularly instructive:

> In this court's experience, jurors are quite adept at comprehending and adhering to the instructions they are given, even the most complex factual and legal scenarios. Therefore, the court will not pre-judge the yet-unnamed jurors by assuming they are unable to digest the facts and the law in this case. Moreover, the court is confident that the experience attorneys handling this case will craft cogent presentations to aid the jury in this process.

2006 WL 1452803, at *4.

5.      In contrast, for the reasons discussed above, separating Mr. Christ's and Movants' claims for trial would cause significant prejudice to Mr. Christ. First, bifurcation would require Mr. Christ to unnecessarily incur the considerable costs of two trials at which he would be presenting practically the same evidence and testimony. (As the Court is aware from previous submissions made by Mr. Cormick, Movants do not face any financial burden from holding a bifurcated trial.) Additionally, given the substantial overlap of facts between the claims, separating those claims for trial would threaten Mr. Christ with inconsistent factual findings by two different juries which might reach different conclusions concerning the witnesses'

credibility. This prejudice to Mr. Christ, as well as the significant inefficiencies that would result from separating the claims, weighs heavily against bifurcating those claims for trial.

WHEREFORE, Mr. Christ respectfully requests that the Motion *In Limine* to Bifurcate the Trial be denied.

REED SMITH LLP

*/s/ Thad J. Bracegirdle*
Thad J. Bracegirdle (No. 3691)
1201 Market Street, Suite 1500
Wilmington, Delaware 19801
(302) 778-7500

Attorneys for Robert D. Christ

Dated:  April 7, 2007

# EXHIBIT A

Westlaw.

Not Reported in F.Supp.2d                                                                 Page 1
Not Reported in F.Supp.2d, 2002 WL 109525 (S.D.N.Y.), 2002 Copr.L.Dec. P 28,375, 58 Fed. R. Evid. Serv. 536
(Cite as: Not Reported in F.Supp.2d)

**H**Lennon v. Seaman
S.D.N.Y.,2002.

United States District Court, S.D. New York.
Yoko Ono LENNON, Plaintiff,
v.
Frederic SEAMAN, Defendant.
**No. 99 CIV. 2664(LBS).**

Jan. 28, 2002.

MEMORANDUM & ORDER

SAND, District J.
*1 Plaintiff Yoko Ono Lennon ("plaintiff" or "Mrs. Lennon") seeks damages and injunctive relief from defendant Frederic Seaman ("defendant" or "Mr. Seaman") on a number of causes of action including copyright infringement, breach of contract, declaratory judgment, unjust enrichment, recovery of chattels, and conversion. Previous opinions by both this Court and Magistrate Judge Francis have fully set forth the factual and procedural background of plaintiff's case, *Lennon v. Seaman,* 63 F.Supp.2d 428 (S.D.N.Y.1999); *Lennon v. Seaman,* 84 F.Supp.2d 522 (S.D.N.Y.2000); *Lennon v. Seaman,* 2001 WL 262827 (S.D.N.Y. March 16, 2001), and we presume familiarity with these writings. Defendant's sixteen counterclaims [FN1] emanate from Mrs. Lennon's possession and use of the 374 photographs ("the Photographs") in controversy taken by defendant during his employ with the Lennons, including most notably one entitled by defendant, "John and Sean at Beach," as well as defendant's personal journals which plaintiff purchased from a third party in 1982. Defendant countersues on the basis of copyright infringement, violations of the Lanham Act and the New York General Business Law, unjust enrichment, conversion, recovery of chattels and equally asks for damages and injunctive relief.

FN1. Defendant set forth his counterclaims in his answer to plaintiff's third amended complaint of March 23, 2001. At the time of the filing of the counterclaims, defendant was represented by counsel. He is presently *pro se,* his prior counsel having withdrawn

and the *pro se* clerk's office's efforts to procure *pro bono* counsel having thus far been unsuccessful.

Presently before this Court are a number of motions *in limine* by both parties in respect to their jury trial scheduled to begin in February 2002. Specifically, plaintiff claims that defendant may not: (1) offer a defense of coercion in connection with his earlier felony conviction; (2) assert the psychotherapist-patient privilege in respect to his communications with Francis DeBilio; or (3) bring claims for the following causes of action-(a) copyright infringement related to either his journals (due to lack of subject matter jurisdiction) or to plaintiff's possession of the Photographs in controversy (due to defendant's failure to plead with adequate clarity); (b) recovery of chattels and conversion related to either his journals or plaintiff's possession of the Photographs; (c) unjust enrichment in regards to the photographs or (d) "Unfair Business Practices." Defendant, for his part, requests that the court: (1) bifurcate the trial so as to treat the copyright issues prior to addressing plaintiff's claims for "trespass and conversion;" [FN2] and (2) exclude evidence of defendant's 1983 felony conviction in connection with the Lennon diaries from the trial on the grounds that it is unduly prejudicial. In brief, as to plaintiff's first motion to preclude a collateral attack on defendant's prior conviction, we grant it in part and deny it in part. We grant plaintiff's second motion to deny defendant's use of the psychotherapist-patient privilege in full. Finally, we grant plaintiff's third motion to dismiss a number of defendant's counterclaims, except that rather than dismissing defendant's claim of copyright infringement related to the Photographs, we grant defendant leave to amend his complaint. We deny both of defendant's motions.[FN3]

FN2. In our prior opinion, *Lennon,* 63 F.Supp.2d at 440, this Court converted plaintiff's claim for trespass into one of recovery of chattels. We, likewise, construe defendant's use of "trespass" to refer to recovery of chattels.

FN3. For purposes of clarity, we treat the parties' various requests regarding

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

defendant's prior conviction together.

## DISCUSSION

*I. Evidentiary Exclusions*

a. The Felony Conviction

**\*2** Plaintiff's first *in limine* motion addresses the use of defendant's 1983 felony conviction at trial. In 1983, defendant pled guilty to one count of second-degree grand larceny in New York State court.[FN4] By the terms of defendant's plea agreement, defendant received a five-year term of probation. He further agreed that he would not publish, disseminate or reveal the contents of John Lennon's journals; promised to give "truthful and complete testimony" regarding the theft of John Lennon's journals and all other property; and avowed to return "any and all property in his possession."(Pl.Exh. C). Plaintiff now acts to bar defendant from presenting either testimony or evidence (in the form of supporting exhibits listed in the pretrial order or other) that his "confession and subsequent conviction were the product of purported coercion or physical abuse by the police officers who arrested him or some kind of 'entrap[ment]' by Mrs. Lennon."(Pl. Br. at 5.) (Plaintiff labels such evidence "the Coercion Defense." *Id.*) Defendant, for his part, asks that plaintiff be barred from introducing any evidence regarding his prior conviction. We address each motion in turn.

> FN4. Defendant entered his plea to Justice Jeffrey Atlas of the New York Supreme Court on May 27, 1983 and was sentenced on July 14, 1983. (Pl. Exh. C & F). Probation terminated on or about November 5, 1987. (PTO at 13).

The scope of plaintiff's request is somewhat ambiguous. It is unclear whether plaintiff seeks a narrow exclusion (*i.e.,* that on the basis of collateral estoppel the court prohibit defendant from refuting his culpability or undermining the validity of his plea) or if plaintiff requests a substantially broader disposition (*i.e.,* barring defendant from offering testimony, proffered exhibits, or the like associated with this defense in any capacity at trial on the basis of Fed.R.Evid. 403). For the reasons discussed below, we grant plaintiff's motion for collateral

estoppel on narrow grounds but deny the motion insofar as it requests a sweeping, categorical bar to this evidence. At this juncture, it is premature to assess the possible relevance of evidence associated with defendant's so-called "Coercion Defense" to other matters in controversy.

New York law governs our analysis of the preclusive effect of a prior felony conviction by plea in New York State court on the current proceedings.U.S.C. § 1738 requires federal courts to give the same preclusive effect to state court judgments as would be given by the courts of the judgment-rendering state. U.S.C. § 1738 provides in pertinent part:
The records and judicial proceedings of any court of any such State...shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

The Supreme Court, in interpreting the statute, has indicated on multiple occasions that its dictate is clear–"a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."*Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 81(1984) (citing *Allen v. McCurry,* 449 U.S. 90 (1980)); *see also Marrese v. Am. Acad. of Orthopaedic Surgeons,* 470 U.S. 373, 380-84 (1985) (remanding to the District Court for collateral estoppel analysis based on an inquiry into Illinois law). Thus, as plaintiff's motion for collateral estoppel derives from a New York State court judgment, New York's collateral estoppel rules apply.[FN5]

> FN5. In plaintiff's brief in support of her motion for collateral estoppel, plaintiff cites a number of this Circuit's cases which, while analogous, are ultimately inapposite. In the cases cited by plaintiff, the prior convictions occurred under federal law, *e.g., Gelb v. Royal Globe Insurance Co.,* 798 F.2d 38 (2d Cir.1986)(conviction on 18 U.S.C. § 844(h) and 18 U.S.C. § § 1341, 1342); *SEC v. Monarch Funding Corp.,* 1996 WL 348209 (S.D.N.Y.) (conviction on federal security laws); *SEC v. McMaskey,* 2001 WL 1029053 (S.D.N.Y.) (same); *Cindy Royce Creations, Ltd. v. Simmons & Simmons,*

Not Reported in F.Supp.2d                                                          Page 3
Not Reported in F.Supp.2d, 2002 WL 109525 (S.D.N.Y.), 2002 Copr.L.Dec. P 28,375, 58 Fed. R. Evid. Serv. 536
**(Cite as: Not Reported in F.Supp.2d)**

1993 WL 288291 (S.D.N.Y.) (federal collateral estoppel analysis); *City of New York v. Liberman,* 1988 WL 7788 (S.D.N.Y.) (RICO conviction), and the various courts conducted their analyses by applying federal principles of collateral estoppel without reference to New York State law. *Allen,* 449 U.S. at 96 (discussing differing analyses of collateral estoppel under federal and state law).

**\*3** The doctrine of collateral estoppel (or issue preclusion) precludes a party from relitigating an issue necessarily decided in a prior proceeding where the party had a fair opportunity to fully litigate the issue. *Ryan v. New York Tel. Co.,* 62 N.Y.2d 494, 500 (1984). Grounded in principles of due process and fairness, collateral estoppel "also acts to conserve the resources of courts and litigants, reduce inconsistent results, and promote the interest in finality of judgments."*Conte v. Justice,* 996 F.2d 1398, 1400 (2d Cir.1993) (construing New York law) (citing *Schwartz v. Public Adm'r of Bronx,* 24 N.Y.2d 65, 74 (1969); *Gilberg v. Barbieri,* 53 N.Y.2d 285, 291 (1981)).

New York law requires the court to engage in a two-pronged inquiry in assessing a motion for collateral estoppel. We must determine first if the issue sought to be litigated is identical to an issue necessarily decided in a prior action and decisive to the present action. *Kaufman v. Eli Lilly & Co.,* 65 N.Y.2d 449, 455 (1985). Second, if satisfied that the issues are identical, we must then decide whether the party to be bound had a full and fair opportunity to contest the prior determination. *Id.; see also Conte,* 996 F.2d at 1400. We find both prongs satisfied in the instant case.

To be deemed identical, "the issue must have been material to the first action or proceeding and essential to the decision rendered therein" and it "must be the point actually to be determined in the second action or proceeding such that 'a different judgment in the second would destroy or impair rights or interests established by the first.' " *Ryan,* 62 N.Y.2d at 500 (citations omitted). The party seeking to invoke collateral estoppel bears the burden of demonstrating the identity of the issues in the present litigation and the prior determination. *Kaufman,* 65 N.Y.2d at 456. To determine whether the party had a full and fair

opportunity to litigate the issue in the first proceeding, the court should consider " 'the 'realities of the [prior] litigation', including the context and other circumstances which...may have had the practical effect of discouraging or deterring a party from fully litigating the determination which is now asserted against him." ' *Ryan,* 62 N.Y.2d at 501 (citations omitted); *see also Gilberg,* 53 N.Y.2d at 292;*Schwartz,* 24 N.Y.2d at 72.[FN6]The party attempting to overcome a motion for collateral estoppel has the burden of establishing the absence of a full and fair opportunity to litigate the issue in the prior action. *Kaufman,* 65 N.Y.2d at 456. Under New York law, a guilty plea is equivalent to a conviction after trial for collateral estoppel purposes. *Merchants Mut. Ins. Co., v. Arzillo,* 98 A.D.2d 495, 504 (1984)("a guilty plea precludes relitigation in a subsequent civil action of all issues necessarily determined by the conviction.")

> FN6. In this inquiry, the court should look to a variety of factors such as "the nature of the forum and the importance of the claim in the prior litigation, the incentive and initiative to litigate and the actual extent of litigation, the competence and expertise of counsel, the availability of new evidence, the differences in the applicable law and the foreseeability of future litigation."*Ryan,* 62 N.Y.2d at 501 (citations omitted).

While plaintiff does not explain precisely how the issues are identical in her brief, we take her point to be that defendant's 1983 guilty plea to grand larceny is the mirror image of any defenses that he could have raised in an earlier proceeding, including the so-called "Coercion Defense." By pleading guilty, according to this view, defendant surrendered any right to present evidence related to his "Coercion Defense." We decline to read the identity of issues so capaciously. As indicated above, under New York law, to be identical the issue determined in the second proceeding must be such that " 'a different judgment in the second would destroy or impair rights or interests established by the first .' " *Ryan,* 62 N.Y.2d at 500 (citations omitted). The defendant's culpability for second-degree grand larceny is clear; but it does not *alone* establish either the irrelevance or falsity of defendant's claims regarding precipitating events to his arrest. In applying New York law, then, we find that the issues are identical

Not Reported in F.Supp.2d                                                                                                 Page 4
Not Reported in F.Supp.2d, 2002 WL 109525 (S.D.N.Y.), 2002 Copr.L.Dec. P 28,375, 58 Fed. R. Evid. Serv. 536
**(Cite as: Not Reported in F.Supp.2d)**

only insofar as defendant employs evidence of coercion as a means of denying or diminishing his guilt in regard to the prior felony conviction.

**\*4** That defendant received a full and fair opportunity to litigate the issue of his guilt in the prior criminal proceeding is evident. Although defendant does not contest the propriety of the earlier proceeding in any submission to this court, in an earlier (unsuccessful) appeal to Justice Atlas of the New York Supreme Court, defendant maintained that his plea was neither intelligent nor voluntary and, further, that he was compelled to plead guilty when his attorney instructed him of the onerous financial consequences he would face if he chose to proceed. In reviewing the plea allocution, we find that defendant knowingly and voluntarily pled guilty to the prior felony. We concur with Justice Atlas's analysis of the plea allocution and find that defendant was sufficiently apprised of his rights; understood the consequences of his actions and thoughtfully entered his plea. We also find defendant's ineffective assistance of counsel claim to be unavailing. (Pl. Exh. G; *New York v. Seaman,* Opinion of Justice Atlas (denying defendant's motion to vacate conviction by plea)).

Second, we read New York law to direct that if we find defendant's plea to be intelligent and voluntary, we should presume that the defendant received a full and fair opportunity to litigate the issue in the prior proceeding. Indeed, the New York Court of Appeals has indicated that this principle applies even where a defendant continues to protest his innocence throughout the plea allocution:

[T]hose who knowingly and voluntarily plead guilty to substantial criminal charges (the charge here is a felony) should not expect the courts to look behind convictions based on such pleas in order to relieve them from adverse civil consequences which may follow. As long as the guilty plea stands, the defendant is guilty and cannot be heard to say otherwise.

*Merchants,* 98 A.D.2d at 506. Hence, even if we would see-which we do not-the plausibility of defendant's "Coercion Defense," the Court of Appeals counsels us not to indulge it. Further, while we must consider the "realities of the [prior] litigation," *Kaufman,* 65 N.Y.2d at 456, we do not find that under New York law the financial burden of defending the charges encroached upon defendant's

ability to fully and fairly litigate his case. *Gerney v. Tishman Const. Corp. of New York,* 518 N.Y.S.2d 564, 568 (1987) (finding collateral estoppel applied; neither psychological nor financial pressures impaired defendant's ability to fully and fairly litigate criminal case). Hence, we find that defendant had a full and fair opportunity to litigate his prior criminal conviction and grant plaintiff's motion for collateral estoppel on the narrow issue identified above. Accordingly, defendant may not use a "Coercion Defense" to either refute his culpability for his 1983 felony or undermine the validity of his plea.

We decline to decide the relevance of all other potential references to the "Coercion Defense" at this time. At trial, it may be that plaintiff's intuition is correct and that all testimony or evidence associated with this Defense will be either irrelevant to matters in controversy or unduly prejudicial to the plaintiff pursuant to Fed.R.Evid. 403. Alternatively, it may be that such evidence bears on a number of issues, such as the nature of the parties relationship or the background of the controversy. In any event, it is premature to decide the issue; the parties are free to contest the admissibility of the evidence at trial. *United States v. Paredes,* 2001 WL 1518269 (S.D.N.Y. November 29, 2001) ("Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds."). Defendant should seek a ruling by the Court, outside the presence of the jury before seeking to present any testimony relating to any aspect of the "Coercion Defense."

**\*5** Our analysis of defendant's motion to bar all references to his prior felony conviction at trial is comparatively straightforward. Based upon Second Circuit precedent concerning Fed.R.Evid. 404(b), we deny defendant's motion. Fed.R.Evid. 404(b) provides in pertinent part:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...

The Second Circuit follows an "inclusionary approach" to evidence of "other crimes, wrongs, or acts,"-that is, such evidence is "admissible unless it is

Not Reported in F.Supp.2d                                                                                              Page 5
Not Reported in F.Supp.2d, 2002 WL 109525 (S.D.N.Y.), 2002 Copr.L.Dec. P 28,375, 58 Fed. R. Evid. Serv. 536
**(Cite as: Not Reported in F.Supp.2d)**

introduced for the sole purpose of showing the defendant's bad character, or unless it is overly prejudicial under Fed.R.Evid. 403 or not relevant under Fed.R.Evid. 402."*United States v. Pascarella,* 84 F.3d 61, 69 (2d Cir.1996) (citations omitted); *see also United States v. Pipola,* 83 F.3d 556, 565 (2d Cir.1996).

In the present case, the relevance of defendant's felony conviction to matters other than his character is clear. The conviction may provide critical background information for a number of plaintiff's claims. For example, plaintiff's claims for conversion and recovery of chattels are factually predicated on this conviction; indeed, they are only still time-viable due to defendant's violations of his plea bargain agreement. (In *Lennon,* 63 F.Supp.2d at 439-41, we applied the doctrine of equitable estoppel to extend the statute of limitations). Likewise, defendant's admissions in his statement to Assistant District Attorney Consuelo L. Fernandez and in his lengthy plea allocution to Justice Atlas are relevant to plaintiff's copyright and breach of contract claims. *Paredes,* 2001 WL 1519269 at *1 ("[i]t is beyond cavil that other crimes evidence may be used to complete the story" in a subsequent prosecution.)

We further find that admission of the felony conviction does not violate Fed.R.Evid. 403. We do not believe that the probative value of this evidence will be substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. If plaintiff seeks to introduce this conviction in a broad fashion, defendant may request a limiting instruction to confine its use. *Pipola,* 83 F.3d 566 (2d Cir.1996) (if a trial court rules that evidence of prior acts is admissible, it must provide a criminal defendant with a limiting instruction) (citing Fed.R.Evid. 105). Since the use of defendant's prior felony conviction conforms to the Second Circuit's three-part test set out in *Pascarella,* we deny defendant's motion to exclude such evidence from trial.

b. Psychotherapist-Patient Privilege

In her second motion, plaintiff asks that defendant be precluded from invoking the psychotherapist-patient privilege in respect to his communications with Francis DeBilio. In recognizing a psychotherapist-patient communications privilege, the Supreme

Court, while refraining to "delineate [the] full contours" of the privilege, has indicated that "confidential communications between a licensed psychotherapist and her patients" must occur "in the course of diagnosis or treatment."*Jaffee v. Redmond,* 518 U.S. 1, 15, 18 (1996). Here, the defendant has not provided the court with any substantiation either that Mr. DeBilio is a licensed psychotherapist or that their communications transpired during the course of treatment. Further, as plaintiff has pointed out, in regards to communications from 1982 onward, Seaman has testified to the contrary. In a prior deposition, Seaman explained that after 1982 his relationship with Mr. DeBilio evolved into "a business" or "friendship-type of relationship" where defendant participated in social activities with Mr. DeBilio and his daughter. (Pl. Exh. J at 97, Seaman Dep. Tr. from *Goldblatt v. Seaman* ). Based upon the present record, then, we grant plaintiff's motion to bar defendant from asserting the psychotherapist-patient privilege in respect to his communications with Francis DeBilio.

*II. Motions to Dismiss*

**\*6** Plaintiff styles her remaining motions as requests to preclude evidence on defendant's counterclaims. Because such motions are effectively motions to dismiss, we treat them accordingly.

a. Copyright Infringement Related to Defendant's Journals

Plaintiff maintains that this court lacks subject matter jurisdiction over defendant's ninth and tenth causes of action for copyright infringement of his journals.[FN7]We agree. As stated in our earlier Opinion, this court cannot assert jurisdiction over a claim for copyright infringement unless the claimant has satisfied one of two jurisdictional prerequisites. The claimant must have either registered the copyright or brought an application to do so.[FN8] We explained:

> FN7. Defendant's ninth and tenth causes of action ask for monetary and injunctive relief under the Copyright Act respectively.

> FN8. Indeed, another court in this District has found that the test set out in our earlier Opinion is not sufficiently stringent. *City*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 6
Not Reported in F.Supp.2d, 2002 WL 109525 (S.D.N.Y.), 2002 Copr.L.Dec. P 28,375, 58 Fed. R. Evid. Serv. 536
**(Cite as: Not Reported in F.Supp.2d)**

*Merch., Inc. v. Kings Overseas Corp.,* 2001 WL 286724 at *3 (S.D.N.Y. March 23, 2001) (rejecting federal jurisdiction for copyright infringement during the pendency of application; finding that "the statute and the Second Circuit explicitly require registration as a prerequisite to an infringement claim.") (Casey, D.J.).

Section 101 of the Copyright Act of 1976, Pub.L. No. 94-553, 90 Stat. 2583 (codified at 17 U.S.C. §§ 101-803 (1996)), requires that an action for infringement may not be brought "until registration of the copyright claim has been made...."17 U.S.C.A. § 411(a). In addition, if an application for copyright registration has been filed, jurisdiction exists while the application is pending. See *Lennon,* 63 F.Supp.2d at 432. That either a copyright must be registered or an application brought is a jurisdictional prerequisite to the filing of an infringement action.
*Lennon v. Seaman,* 84 F.Supp.2d at 523-24 (citations omitted).

As the present record indicates that defendant has failed to satisfy either of the jurisdictional prerequisites-that is, he has neither registered a copyright for his journals nor submitted an application to do so-we hereby dismiss defendant's ninth and tenth counterclaims without prejudice.

b.   Copyright   Infringement   Related   to   374 Photographs

In regards to defendant's fifth and eighth counterclaims for copyright infringement related to plaintiff's possession of the Photographs in controversy, plaintiff moves to dismiss on the grounds that defendant failed to plead with adequate clarity. Plaintiff notes that in failing to identify "by what acts" and "at what time plaintiff infringed his copyright,"*Plunket v. Doyle,* 2001 WL 175252 at *4 (S.D.N.Y. Feb. 22, 2001), that defendant did not meet the standards established by either the Federal Rules of Civil Procedure or this Circuit. Fed.R.Civ.P. 8(a)(2) (complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief"); *Marvullo v. Gruner & Jahr,* 105 F.Supp.2d 225, 230-31 (S.D.N.Y.2000). In the instant case, defendant used only generic and imprecise language in his pleading. He alleges that "by copying,   publishing,   distributing,   selling   and

transferring the Photographs" that plaintiff infringed his copyrights to the Photographs. (PTO at 8). As such, defendant does not enumerate particular instances of impermissible use and, therefore, does not satisfy the requisite pleading elements for a copyright infringement claim. *Reid v. Am. Soc. of Composers, Authors and Publishers,* 1994 WL 3409 (S.D.N.Y. Jan. 5, 1994).

*7 We find that plaintiff is entitled to a more definite statement of the claim but decline to dismiss the claim at this time. Rather, we grant defendant leave to amend his complaint pursuant to Fed.R.Civ.P. 12(e). Such amended complaint should be filed and served by February 11, 2002. Should defendant fail to remedy the deficiencies in his complaint in the time allotted, we will dismiss the complaint pursuant to Fed.R.Civ.P. 8(a)(2).*Id.*

c. Other Claims Related to Defendant's Journals

Plaintiff further seeks to dismiss defendant's eleventh and twelfth counterclaims for recovery of chattels and conversion in conjunction with plaintiff's possession of his personal journals as time-barred. Defendant's journals were stolen in August 1982. Some time later, Mrs. Lennon purchased defendant's journals from a third party-apparently on the erroneous belief that she was recouping her husband's missing writings. (Pl. Exh. K at 183.) Defendant maintains that plaintiff's possession is unlawful and that he should recover accordingly. His claims, however meritorious they may have once been, are considerably overdue and we grant plaintiff's motion to dismiss them as time-barred.

The statute of limitations for both conversion and recovery of chattels in New York is three years. N.Y.C.P.L.R. § 214(3); *Lennon,* 63 F.Supp.2d at 439-41. For conversion, the statute "begins to accrue at the moment of conversion regardless of when the conversion is discovered."*Lennon,* 63 F.Supp.2d at 440. In a recovery of chattels claim, in contrast, the date from which the statute runs depends on the nature of the taking. Here, the record indicates that plaintiff was a good-faith purchaser of defendant's journals.[FN9]Where a party brings an action for recovery of chattels against a good-faith purchaser of the goods, the statute does not accrue until "a demand for the property has been made and refused."*Lennon,* 63 F.Supp.2d at 440 (citing *Solomon R. Guggenheim*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                              Page 7
Not Reported in F.Supp.2d, 2002 WL 109525 (S.D.N.Y.), 2002 Copr.L.Dec. P 28,375, 58 Fed. R. Evid. Serv. 536
**(Cite as: Not Reported in F.Supp.2d)**

*Found., v. Lubell,* 77 N.Y.2d 311, 318-19 (1991)).[FN10]

> FN9. Because analyzing this issue from the date of the good-faith purchase rather than from the antecedent theft betters defendant's chances of surviving plaintiff's statute of limitation attack, we need not address defendant's (currently unsupported) allegations regarding other less scrupulous methods plaintiff may have employed to acquire the journals.*Ortiz v. Cornetta,* 867 F.2d 146, 148 (2d Cir.1989) ("a statute-of-limitations defense...should not be granted unless 'it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' ") (citations omitted).

> FN10. In contrast, if a party brings a claim against an "alleged 'thief' of the goods, the statute 'runs from the time of the theft ... even if the property owner was unaware of the theft at the time that it occurred.' ' *Lennon,* 63 F.Supp.2d at 439, n. 6 (quoting *Johnson v. Smithsonian Inst.,* 189 F.3d 180, 187 n. 5 (2d Cir.1999)).

In the instant case, following the publication of a lengthy article in *Playboy* magazine which explained how plaintiff acquired defendant's journals, defendant was on notice of plaintiff's possession and should have, at this time (1984), made demand on Mrs. Lennon to return his property. (In a deposition, defendant testified that he had read the article at the time of publication but, having identified inaccuracies within, did not believe that plaintiff actually owned the journals. Pl. Exh. D at 418-19.) [FN11]Consequently, defendant's claims for conversion and recovery of chattels should have expired in 1985 and 1987 respectively, over a decade prior to the inception of this suit. Therefore, his current claims are now time-barred unless defendant can identify a compelling reason that this court should toll the statute of limitations.

> FN11. As discussed *infra,* defendant's stated doubt as to veracity of the *Playboy* article is irrelevant; such subjective beliefs do not extinguish his objective duty for limitations purposes to investigate the truth of the

article and the whereabouts of his journals.

We find no such grounds. The doctrine of equitable estoppel only applies where one party's misconduct causes a claimant to delay bringing suit due. In New York, this doctrine is used where a party "induce[s]" the other party "by fraud, misrepresentations or deception to refrain from filing a timely action."*Lennon,* 63 F .Supp.2d at 440 (quoting *Simcuski v. Saeli,* 44 N.Y.2d 442, 448-49 (1978)). Here, defendant has not alleged any "fraud, misrepresentations or deception" by plaintiff that would merit use of this doctrine and our review of the record confirms the inapplicability of this doctrine. Further, willful ignorance by defendant is not grounds for relief. *See Cordone v. Wilens & Baker, P.C.,* 286 A.D.2d 597, 598 (2001) (statute of limitations accrues if a "reasonably prudent person" could discover existence of claim) (quoting *Cole v. CBS, Inc.,* 634 F.Supp. 1558, 1564 (S.D.N.Y.1986). Defendant should have been on notice in 1984 that plaintiff, at the very least, claimed to possess his journals and should have made diligent efforts to investigate the accuracy of such assertions. That defendant did not undertake such efforts does not absolve him of his responsibility. *Cf. Netzer v. Continuity Graphic Assocs., Inc.,* 963 F.Supp. 1308, 1316 (S.D.N.Y.1997). Consequently, both defendant's claims for recovery of chattels and conversion related to defendant's journal are time-barred and hereby dismissed.

d. Claims for Recovery of Chattel/ Conversion Related to 374 Photographs at Issue

**\*8** Plaintiff raises a similar challenge to defendant's thirteenth and fourteenth counterclaims for recovery of chattels and conversion related to plaintiff's possession of 374 photographs at issue in this action. (These State claims are distinct from defendant's federal copyright counterclaims; the former relate to possession of tangible objects (the photographs) whereas the latter refer to intangible ownership of the proofs.) Defendant has admitted that he voluntarily and knowingly provided plaintiff with copies of the Photographs during the period of his employ with the Lennons (*i.e.,* sometime prior to his termination in January 1982). Consequently, to the extent that defendant ever had meritorious counterclaims for recovery of chattels and conversion related to the Photographs, they expired in the mid-1980s. For the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 8
Not Reported in F.Supp.2d, 2002 WL 109525 (S.D.N.Y.), 2002 Copr.L.Dec. P 28,375, 58 Fed. R. Evid. Serv. 536
**(Cite as: Not Reported in F.Supp.2d)**

reasons elaborated upon *supra,* we dismiss defendant's thirteenth and fourteenth counterclaims as time-barred. Because we decide this issue on the basis of the statute of limitations, we need not address plaintiff's other arguments (*i.e.,* that she has the superior right to possession and is the authorized owner of these works).

e. Unjust Enrichment

Plaintiff maintains that defendant's fifteenth counterclaim for unjust enrichment based on plaintiff's alleged use of the photographs is preempted by the federal Copyright Act. As our earlier Opinion clearly states, we agree.*Lennon, 63 F.Supp.2d at 434-46.* Defendant's counterclaim, as plaintiff avers, is "essentially the mirror image of plaintiff's own previously-dismissed unjust enrichment claim: the legal issues presented are identical, as is the subject matter (*i.e.,* the Photographs at issue in this lawsuit)." (Pl. Br. at 22). Like plaintiff, defendant cannot couple a claim for unjust enrichment to claims for copyright infringement related to the same material; such a claim is preempted by the federal Copyright Act. Given the identity of defendant's current claim for unjust enrichment with plaintiff's previously-dismissed one, we need not review or reiterate our previous analysis. Instead, we direct defendant to our earlier decision, *Lennon, 63 F.Supp.2d at 434-46,* and dismiss defendant's fifteenth counterclaim.

f. "Unfair Business Practices"

Defendant brings two claims under New York's so-called "Unfair Business Practices Act." [FN12]Specifically, he alleges that plaintiff's use of his copyrighted work "John and Sean at Beach" as well as the other remaining Photographs in issue "is likely to dilute the distinctive quality of Frederic Seaman's name, mark and title and to injure Frederic Seaman's business reputation."(PTO at 8, 9). Plaintiff maintains that "defendant has no basis for going forward with the so-called 'unfair business practices' claims at trial."(Pl. Br. at 25). Plaintiff objects to both the form and substance of defendant's third and seventh counterclaims. Plaintiff notes that there is no legislation in New York called the "Unfair Business Act" and, further, that to the extent defendant proceeds under the New York General Business Law, he cannot do so pursuant to Section 368-d. (Plaintiff

rightly points out that the statute was repealed on January 1, 1997.) Substantively, plaintiff argues that even if this court conjectures as to defendant's meaning that Mr. Seaman does not allege a cognizable claim of dilution to his name or injury to his business reputation pursuant to New York General Business Law Section 360-1.[FN13] We agree.

> FN12. Defendant also refers to New York General Business Law Section 368 under this rubric. (PTO at 8, 9).

> FN13.New York General Business Law Section 360-1, formerly codified at Section 368-d, provides:

Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

N.Y. GEN. BUS. LAW § 360-1 (McKinney 1999). To establish a dilution claim under this Law, "a plaintiff must show (1) ownership of a distinctive mark, and (2) a likelihood of dilution."*Eastern America Trio Products, Inc. v. Tang Electronic Corp.,* 97 F.Supp.2d 395, 423 (S.D.N.Y.2000).

**\*9** Although we acknowledge that defendant has experienced assorted problems with counsel, or lack thereof, *supra* n. 1, we decline to engage in conjecture as to the nature of these claims. Defendant's third and seventh counterclaims rely on a defunct law and, further, do not allege any factual basis for relief (*i.e.,* defendant neither claims that his name has acquired a distinctive quality nor avers as to how his business reputation has been injured). Consequently, we hereby dismiss these counterclaims without prejudice to the filing of an amended complaint by February 11, 2002 fleshing out the nature of defendant's claims.

*III. Motion for Bifurcation*

In defendant's final motion, he seeks to bifurcate the trial. Specifically, defendant asks that the court separate the copyright claims from those for recovery of chattels [FN14] and conversion in order to avoid juror confusion. Mr. Seaman maintains that the latter

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

claims will "obscure and obfuscate the key copyright issue."(Def. Mot. at 1). In his motion, Mr. Seaman does not indicate on which side of the bifurcating line the breach of contract issue should be placed for purposes of this motion. *Id.* Given Mr. Seaman's *pro se* status at the time of bringing the *in limine* motions, we construe his motion liberally and evaluate the motion's merits with the breach of contract claim on either side of the bifurcating line. We find that irrespective of the position of the breach of contract claim that bifurcation is improper in the instant case.

> FN14. Once again, as stated *supra* n. 3, we construe defendant's use of "trespass" to refer to recovery of chattels. (Def. Mot. at 1).

Rule 42(b) provides that bifurcation is appropriate "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy."Fed.R.Civ.P. 42(b); *see also Vichare v. Ambac Inc.,* 106 F.3d 457, 466 (2d Cir.1996) ("[t]he interests served by bifurcated trials are convenience, negation of prejudice, and judicial efficiency."); *U .S. v. Alcan Aluminum Corp.,* 990 F.2d 711, 720 (2d Cir.1993). While it is well-settled that the trial court has the "sound discretion" to separate claims into multiple trials, courts are equally mindful that "bifurcation remains the exception rather than the rule."*Agron v. The Trustees of Columbia Univ. in the City of New York,* 1997 WL 399667 at *1 (S.D.N.Y. July 15, 1997) (citing *Katsaros v. Cody,* 744 F.2d 270, 278 (2d Cir.1984)); *Hal Leonard Pub. Corp. v. Future Generations, Inc,* 1994 WL 163987 at *2 (S.D.N.Y. April 22, 1994); *Monaghan v. SZS 33 Assocs., L.P.,* 827 F.Supp. 233, 245 (S.D.N.Y.1993); *Bowers v. Navistar Int'l Transp. Corp.,* 1993 WL 159965 at *1 (S.D.N.Y. May 10, 1993). The moving party bears the burden of establishing that separate trials will advance the interests elaborated in Fed.R.Civ.P. 42(b).*Bowers,* 1993 WL 159965 at 1;*Buscemi v. Pepsico, Inc.,* 736 F . Supp. 1267, 1271 (S.D.N.Y.1990).

Second Circuit courts employ a variety of tests to evaluate the propriety of granting separate trials and consistently take a number of considerations into account, such as the "nature and relation of the claims and the evidence necessary to establish each claim,"*Bowers,* 1993 WL 159965 at 1, the type of trial demanded (either jury or bench), and the

potential for prejudice to a non-moving party in the event bifurcation is granted. *Hal Leonard Pub. Corp,* 1994 WL 163987 at *2 (citing *Reading Indus. Inc. v. Kennecott Copper Corp.,* 61 F.R.D. 662, 664 (S.D.N.Y.1974)). As the factors suggest, in this analysis courts do not apply a bright line rule for bifurcation but rather engage in a balancing test.

*10 Consideration of these factors indicates that bifurcation is inappropriate in the instant case. First, the issues sought to be tried separately (and by extension, the attendant evidence) are intrinsically interrelated. All of Mrs. Lennon's assorted claims for copyright, breach of contract, recovery of chattels, conversion and unjust enrichment arise out of and concern the scope of defendant's employment with the Lennons. The factual integration of plaintiff's copyright infringement claims with her breach of contract claim is plain: a number of Photographs lie at the core of both disputes. The jury must determine the rightful owner of the Photographs in order to decide the copyright infringement claim; likewise, it must resolve the appropriate use of the Photographs by the possessor, here Mr. Seaman, to decide the breach of contract claim. The nexus between plaintiff's copyright claims and those claims related to theft, while not as immediately obvious, is equally compelling. Both claims require the jury to assess the appropriate scope of the parties' employment relationship and the duties, entitlements and privileges that flowed therefrom.

Second, as suggested above, these issues will involve identical testimonial and documentary evidence. In regard to the copyright infringement and the breach of contract claims, plaintiff has indicated that she will introduce publications authored by defendant containing the Photographs for both claims. (Pl. Opp. Br. at 9.) Likewise, plaintiff maintains that she will offer a number of documents (*e.g.,* the defendant's diary entries, the Plea Agreement, and the Confession) in support of both the copyright claims and theft claims. (*Id.* at 9-10.) Hence, separating the claims into multiple trials would result in substantial redundancy-counter to the goal of judicial economy and prejudicial to the plaintiff.

It is true that this trial poses a danger for juror confusion/prejudice-the claims are numerous and complex and defendant has a criminal history underlying these events. Further, defendant's lack of

Not Reported in F.Supp.2d                                                                                                                         Page 10
Not Reported in F.Supp.2d, 2002 WL 109525 (S.D.N.Y.), 2002 Copr.L.Dec. P 28,375, 58 Fed. R. Evid. Serv. 536
**(Cite as: Not Reported in F.Supp.2d)**

representation exacerbates this deficiency. We do not find, however, in weighing these factors, that such an eventuality constitutes a sufficient basis on which to separate the trials. We recognize the difficulties that Mr. Seaman, if still unrepresented by counsel, will face in the upcoming trial and we will endeavor to limit the fact-finding process so as to minimize undue prejudice to defendant associated with his prior criminal behavior. Given the substantial overlap in the issues, witnesses and documentary evidence, _Bowers,_ 1993 WL 159965 at 1, however, we decline to bifurcate the trial and, accordingly, deny defendant's motion.

_Conclusion_

In sum, we grant plaintiff's first motion to preclude a collateral attack on defendant's prior conviction on narrow grounds but deny it insofar as it requests a categorical bar to this evidence. We grant plaintiff's second motion to deny defendant's use of the psychotherapist-patient privilege in full. Finally, we grant plaintiff's third motion to dismiss counterclaims 3, 7, 9-15; in regards to counterclaims 5 and 8, we recognize that plaintiff is entitled to a more definite statement of the claim and grant defendant leave to amend his complaint by February 11, 2002. Consequently, defendant's only counterclaims that presently survive are counterclaims 1, 2, 4, 6 and 16. We deny both of defendant's motions; we decline either to bar admission of evidence related to his prior felony conviction or to bifurcate the trial.

**\*11** SO ORDERED.

S.D.N.Y.,2002.
Lennon v. Seaman
Not Reported in F.Supp.2d, 2002 WL 109525 (S.D.N.Y.), 2002 Copr.L.Dec. P 28,375, 58 Fed. R. Evid. Serv. 536

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

Westlaw.

Slip Copy                                                                                                      Page 1
Slip Copy, 2006 WL 1452803 (D.Del.), 2006-1 Trade Cases P 75,320, 64 Fed.R.Serv.3d 847
**(Cite as: Slip Copy)**

C Synopsys, Inc. v. Magma Design Automation
D.Del.,2006.

United States District Court,D. Delaware.
SYNOPSYS, INC., Plaintiff,
v.
MAGMA DESIGN AUTOMATION, Defendant.
MAGMA DESIGN AUTOMATION, Counter
Claimant,
v.
SYNOPSYS, INC., Counter Defendant.
**No. CIVA 05-701(GMS).**

May 25, 2006.

Karen Jacobs Louden, Leslie A. Polizoti, Morris,
Nichols, Arsht & Tunnell LLP, Wilmington, DE, for
Plaintiff.
William J. Marsden, Jr., Fish & Richardson, P.C.,
Wilmington, DE, for Defendant/Counter Claimant.
William J. Wade, Richards, Layton & Finger,
Wilmington, DE, for Counter Claimant.

*MEMORANDUM*

SLEET, J.

I. INTRODUCTION

*1 In the above-captioned action, Plaintiff and
Counter Defendant Synopsys, Inc. ("Synopsys")
alleges three counts of patent infringement in
violation of 35 U.S.C.A. § 271 (2001 & Supp.2005)
against Defendant and Counter Claimant Magma
Design Automation ("Magma"). In its first amended
answer, Magma alleges against Synopsys one count
of monopolization (Count I) and one count of
attempted monopolization (Count II), both in
violation of Section 2 of the Sherman Act, 15
U.S.C.A. § 2 (Supp.2005), one count of product
disparagement and trade libel (Count III) in violation
of Section 43(a) of the Lanham Act, 15 U.S.C.A. §
1125(a) (1998 & Supp.2005), one count of statutory
unfair competition (Count IV) in violation of the
Delaware Deceptive Trade Practices Act, Del.Code.
Ann. tit. 6, §§ 2531, et seq. (1999), one count of
unfair competition (Count V) and one count of

tortious interference with business relations (Count
VI), both in violation of Delaware common law, and
one count of patent infringement (Count VII).
Presently before the court are Synopsys' motion to
dismiss Counts I-VI of Magma's first amended
answer (D.I.9), Synopsys' motion to bifurcate and
stay (D.I.31), and Magma's motion for leave to file a
second amended answer to include four additional
patent infringement counterclaims (D.I.50).

II. JURISDICTION

The court has subject matter jurisdiction pursuant to
28 U.S.C.A. §§ 1331, 1367 (1993).

III. BACKGROUND

According to the first amended answer, the patents at
issue in this case relate to improvements in computer
software used to design extremely complex
integrated circuits. In general, such software
translates a user's high-level description of the circuit
he or she has designed and wishes to implement into
a low-level description of the necessary components.
This translation process is known as logic synthesis.
The software then engages in a process known as
physical design, in which the actual circuit layout and
interconnections are determined. Eventually (after
several steps irrelevant to this discussion) the newly-
designed circuit is manufactured and ready for
testing. The testing process typically requires the
insertion of "scan chains" into the low-level
description produced during logic synthesis. These
scan chains consist of interconnected storage
elements capable of being read from and written to
during testing.

Magma alleges that Synopsys has a 91% share in
both the logic-synthesis market and the scan-chain
insertion market, which are monopolies Synopsys
procured and maintains through anti-competitive
conduct. More specifically, Magma contends that two
of the patents asserted by Synopsys in this case were
obtained by fraudulent means, and that Synopsys has
attempted to create exclusive-dealing contracts with
Magma's customers. Magma further alleges that
Synopsys has engaged in a public campaign of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

disparagement by falsely claiming that Magma sells infringing products, and that Magma cannot afford to both defend itself in court and remain solvent.

IV. DISCUSSION

A. Motion to Dismiss

**\*2** "When considering a Rule 12(b)(6) motion, [the court is] required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."*Evancho v. Fisher,* 423 F.3d 347, 350 (3d Cir.2005).*"A Rule 12(b)(6) motion should be granted 'if it appears to a certainty that no relief could be granted under any set of facts which could be proven." ' *Id.* at 351 (quoting *D.P. Enter. Inc. v. Bucks County Cmty. Coll.,* 725 F.2d 943, 944 (3d Cir.1984)). "However, [the] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss." *Evancho,* 423 F.3d at 351.

1. Sherman Act (Counts I & II)

Synopsys argues that Magma's monopolization and attempted monopolization claims under Section 2 of the Sherman Act should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) because they are unsupported by adequate factual allegations. In particular, Synopsys contends that the first amended answer fails to allege "antitrust injury," which, according to Synopsys, requires "harm to competition in the marketplace," and a causal connection between that harm and the anti-competitive activities.

In *Hosp. Bldg. Co. v. Trs. of Rex Hosp.,* the Supreme Court explained:
"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."*Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted). And in antitrust cases, where "the proof is largely in the hands of the alleged conspirators,"*Poller v. Columbia Broadcasting,* 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962), dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly.

425 U.S. 738, 746, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976). In this case, the clear import of Magma's allegations is that Synopsys, with a 91% share in both relevant markets, is acting anti-competitively by using the patent system and exclusive-dealing contracts to run a competitor, *i.e.,* Magma, out of business. If Synopsys is successful, Magma contends that there will be a decrease in competition because significant barriers to entry prevent would-be competitors from replacing the void left by Magma. These allegations are sufficient to state a claim under Section 2 of the Sherman Act. *Gill v. Del. Park, L.L.C.,* 294 F.Supp.2d 638, 644 (D.Del. Dec.2, 2003) (explaining that "the anti-trust injury requirement is sufficiently pled where plaintiff alleges that he was excluded from participation in a particular market, and the result was a decrease in competition in that market").

2. Lanham Act (Count III)

Synopsys argues that Magma's Lanham Act claim is subject to the heightened pleading requirements of Rule 9(b), which provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."Fed.R.Civ.P. 9(b). However, the "state of the law [is unsettled] as to whether Rule 9(b) was intended to incorporate claims brought under the Lanham Act."*H.H. Fluorescent Parts, Inc. v. DM Tech. & Energy, Inc.,* No. 04-1997, 2005 U.S. Dist. LEXIS 26699, at \*13 (E.D.Pa. Nov. 3, 2005). If Count III is not subject to the heightened pleading requirements of Rule 9(b), then Magma's allegations need only satisfy the notice pleading requirements of Rule 8(a).

**\*3** The purpose of "Rule 9(b) [is] to give defendants 'notice of the claims against them, provide[ ] an increased measure of protection for their reputations, and reduce[ ] the number of frivolous suits brought solely to extract settlements." ' *In re Suprema Specialties, Inc. Sec. Litig.,* 438 F.3d 256, 270 (3d Cir.2006) (quoting *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1418 (3d Cir.1997)). Here, none of these purposes would be served by requiring Magma to satisfy the pleading requirements of Rule 9(b). The Lanham Act claim in this case is one of seven claims Magma brought in response to a suit originally filed by Synopsys. Thus, this is not a case

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                                                             Page 3
Slip Copy, 2006 WL 1452803 (D.Del.), 2006-1 Trade Cases P 75,320, 64 Fed.R.Serv.3d 847
**(Cite as: Slip Copy)**

in which the court must protect Synopsys against a "frivolous suit brought *solely* to extract a settlement." Moreover, the need to provide increased protection for Synopsys' reputation is not as crucial in this case because Count III was brought as a means of protecting Magma's reputation. Finally, even if Magma's pleadings do not specify the "who, when, and where" of Synopsys' allegedly damaging statements, that problem is easily cured in discovery. Therefore, the court holds that the heightened pleading requirements of Rule 9(b) are not applicable in this context.

"Under the Lanham Act a plaintiff must allege that: (1) defendant made false or misleading statements as to its product, or those of the plaintiff; (2) there was actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) the deception was material in that it is likely to influence purchasing decisions; (4) the advertised goods traveled in interstate commerce; and (5) there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc."Enzo Life Scis., Inc. v. Digene Corp., 295 F.Supp.2d 424, 427 (D.Del. Mar.31, 2003). However, the required level of specificity with which each element must be pleaded is not high because Rule 8 only requires "a short and plain statement of the claim showing that the pleader is entitled to relief."Fed.R.Civ.P. 8(a)(2). The first two elements are adequately pleaded by the allegation that Synopsys, knowing its patents were obtained by fraudulent means, engaged in a public campaign of disparagement by falsely claiming that Magma sells infringing products, and that Magma cannot afford to both defend itself in court and remaining solvent. The third element (materiality) and the fifth element (injury) are adequately pleaded by the allegation that Synopsys' campaign of disparagement has damaged Magma. And the fourth element (interstate commerce) is explicitly pleaded in paragraph 156 of the first amended answer. Thus, Magma has met the requirements of Rule 8 with regard to its Lanham Act claim.

3. State Law Claims (Counts IV, V & VI)

Synopsys argues that the court has no subject matter jurisdiction pursuant to 28 U.S.C.A. § 1367 over Magma's state law claims if Counts I-III are dismissed. However, because those counts will not be dismissed at this time, the court retains jurisdiction over Counts IV-VI.

B. Motion to Bifurcate and Stay

**\*4** "The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim...."Fed.R.Civ.P. 42(b)."[T]he decision to bifurcate *vel non* is a matter to be decided on a case-by-case basis and must be subject to an informed discretion by the trial judge in each instance."Lis v. Robert Packer Hosp., 579 F.2d 819, 824 (3d Cir.1978).

Synopsys argues that the court should bifurcate the antitrust claims from the infringement claims because other courts routinely do so. This argument runs contrary to the guiding principle enunciated in *Lis.*There, the district court had simply followed its customary practice of separating the liability and damages phases in negligence cases without considering the unique circumstances of the negligence case at bar. On appeal, the Third Circuit held that this methodology ran afoul of Rule 42(b): "A general policy of a district judge bifurcating all negligence cases offends the philosophy that the decision must be made by a trial judge only as a result of an informed exercise of discretion *on the merits of each case.*"Lis, 579 F.2d at 824 (emphasis added). Therefore, although the routine practice of other courts may indicate that "experience has demonstrated [the] worth" of bifurcation in these circumstances, Fed.R.Civ.P. 42 advisory committee's note, the court's decision in this case will be guided first and foremost by the merits of this case.

With that principle in mind, the court is not convinced that bifurcation of the antitrust claims from the infringement claims is necessary to prevent jury confusion. In this court's experience, jurors are quite adept at comprehending and adhering to the instructions they are given, even in the most complex factual and legal scenarios. Therefore, the court will not pre-judge the yet-unnamed jurors by assuming they are unable to digest the facts and law in this case. Moreover, the court is confident that the experienced attorneys handling this case will craft cogent presentations to aid the jury in this process. The court is further unpersuaded by Synopsys' contention that bifurcation would serve the interest

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

efficiency. Magma's antitrust claims are based in part on the allegation that Synopsys fraudulently-obtained two of its patents and asserted them against Magma in violation of Section 2 of the Sherman Act. Synopsys' alleged fraud is also a centerpiece of Magma's invalidity claims. Thus, were the court to bifurcate, the evidentiary presentation in one case would likely be substantially duplicative of the evidentiary presentation in the other. In addition, bifurcation would likely create further duplication of evidence because both juries would need to be educated in the same relevant technology. Accordingly, the court concludes that neither jury confusion nor efficiency weigh in favor of bifurcating the antitrust claims from the infringement claims.

**\*5** Synopsys also argues that the antitrust claims should be stayed until the infringement claims are resolved mainly because resolution of the infringement claims could streamline subsequent adjudication of the antitrust claims. Assuming *arguendo* that the litigation could be streamlined in this way, it is telling that Synopsys does not propose to shorten the number of days allocated for trial in the event that a stay is granted. Thus, even if the court stays the antitrust claims, the minimum amount of time allocated to try this case does not decrease. Consequently, it appears that a stay only has the potential to consume *more* of this court's valuable time. Therefore, the court will not stay the antitrust portion of this action.

For similar reasons, the court also declines to stay Synopsys' infringement claims pending re-examination by the PTO. The validity of the asserted patents will be litigated regardless of whether a stay is granted because that issue is relevant to Magma's Sherman Act claims. The most efficient course of action, then, is to also litigate infringement in order to capitalize on the jury's understanding of the relevant technology. Thus, the court will deny Synopsys' motion in its entirety.

C. Motion to Amend

Pursuant to the court's scheduling order of December 28, 2005, the deadline for amended pleadings is March 24, 2006. On that date-March 24-Magma timely filed a motion for leave to amend its first amended answer to include four additional counterclaims for patent infringement. "[A] party

may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."Fed.R.Civ.P. 15(a)."In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-the leave sought should, as the rules require, be 'freely given.' " *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

Synopsys' primary basis for opposing Magma's motion is that fact discovery is scheduled to close on September 26, 2006, thus giving the parties less than six months to both conclude discovery on the claims already in the case, and to conduct full discovery on the four additional patent infringement claims. However, trial in this case is not scheduled to begin until June 11, 2007, which should give the parties ample time to conduct additional discovery beyond September 26 without disturbing the trial date. Thus, the court will grant the motion and order the parties to meet and confer regarding an amendment to the court's scheduling order.[FN1]

> FN1. Synopsys claims that Magma's four additional patents are not sufficiently similar to the technology at issue in this case to justify their inclusion. However, Synopsys merely proposes that "a review of the patents quickly reveals that there is little similarity" among the patents. (D.I. 63 at 8.) In this lay court's opinion, a review of the patents quickly reveals enough similarity among the patents to justify including them in this lawsuit.

V. CONCLUSION

For the reasons stated, the court will deny the motion to dismiss, deny the motion to bifurcate and stay, and grant the motion to amend. The court will further order the parties to meet and confer to regarding an amendment to the court's scheduling order.

*ORDER*

**\*6** IT IS HEREBY ORDERED THAT:

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                          Page 5
Slip Copy, 2006 WL 1452803 (D.Del.), 2006-1 Trade Cases P 75,320, 64 Fed.R.Serv.3d 847
**(Cite as: Slip Copy)**


1. The motion to dismiss (D.I.9) be DENIED;

2. The motion to bifurcate and stay (D.I.31) be DENIED;

3. The motion to amend (D.I.50) be GRANTED; and

4. The parties MEET and CONFER regarding the scheduling order.

D.Del.,2006.
Synopsys, Inc. v. Magma Design Automation
Slip Copy, 2006 WL 1452803 (D.Del.), 2006-1 Trade Cases P 75,320, 64 Fed.R.Serv.3d 847

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBERT D. CHRIST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 06-275-GMS |
| BRETT J. CORMICK and ELAN SUISSE | ) | |
| INTERNATIONAL HOLDINGS (USA), | ) | |
| | ) | |
| Defendants. | ) | |
| ELAN SUISSE LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-60-GMS |
| | ) | |
| ROBERT D. CHRIST, | ) | |
| | ) | |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

I, Thad J. Bracegirdle, hereby certify that on April 7, 2008, I caused a true and correct

copy of the foregoing *Answering Memorandum of Law in Opposition to Motion in Limine to*

*Bifurcate the Trial* to be served on counsel for defendants as listed below, electronically via

CM/ECF.

*Attorneys for Defendants:*

David L. Finger, Esquire
Finger & Slanina, P.A.
One Commerce Center, Suite 725
1201 North Orange Street
Wilmington, DE 19801-1155

Dated: April 7, 2008

/c/ Thad J. Bracegirdle
Thad J. Bracegirdle (No. 3691)

WILLIB-58324.1