IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT D. CHRIST, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| BRETT J. CORMICK and ELAN SUISSE ) | C.A. No. 06-275-GMS |
| INTERNATIONAL HOLDINGS (USA) ) | |
| LLC, ) | |
| ) | |
| Defendants. ) | |
| _____) | |
| ELAN SUISSE, LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 07-60-GMS |
| ) | |
| ROBERT D. CHRIST, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**REPLY MEMORANDUM IN SUPPORT OF**
**MOTION IN LIMINE TO BIFURCATE THE TRIAL**

1.  In support of their Motion *in Limine* to Bifurcate the Trial, movants Brett J. Cormick, Elan Suisse International Holdings (USA) LLC and Elan Suisse Ltd. asked the Court to bifurcate the trial if it determined that Mr. Christ's proposed character evidence (depositions of third-party witnesses about unrelated transactions with Dr. Cormick) would not be admissible in his case-in-chief, but would be admissible in his defense to Dr. Cormick's claims. The reason for this request is that the unfairly prejudicial nature of the character evidence could unfairly taint the jury in deciding Mr. Christ's claims.

2. Mr. Christ claims that the facts of the two claims are relevant. However, that does not mean that evidence that is admissible for one purpose but not for another purpose automatically comes in, even with the benefit of a limiting instruction. The Court has a duty to protect the fair trial rights of all litigants. *See U.S. Almodovar*, Cr. A. No. 96-71 MMS, 1996 WL 700267, WL Op. at 10, Schwartz, J. (D. Del. Nov. 26, 1996) (determining that bifurcation to avoid prejudice of Rule 404(b) evidence balances prejudice and judicial economy). If the evidence is not admissible in Mr. Christ's case-in-chief, then it cannot be said that the claims are "factually intertwined."

3. Nor would bifurcation be costly and inefficient. The same jury would hear each party's claims, only sequentially rather than combined. The evidence would scarcely overlap, and duplication could be avoided by allowing a party in the second trial to rely on evidence presented in the first trial. The parties would still be allocated the same amount of time to present their cases, only now apportioned between two parts. Although the Court would be reading jury instructions twice, each set of instructions would be smaller due to the separated claims. Mr. Christ's statement that bifurcation would be costly and inefficient is rhetoric without substance.

WHEREFORE, for the foregoing reasons, movants respectfully request that the Court bifurcate the trial, first holding a trial on Mr. Christ's claims and, following a jury verdict on those claims, hold trial on the remaining claims.

Dated: April 14, 2008

Respectfully submitted,

 /s/ David L. Finger
David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 Orange Street, Suite 725
Wilmington, DE 19801-1155
(302) 884-6766
Attorney for movants



Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 700267 (D.Del.)
**(Cite as: Not Reported in F.Supp., 1996 WL 700267)**

Page 1

U.S. v. Almodovar
D.Del.,1996.
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
UNITED STATES of America, Plaintiff,
v.
Loris ALMODOVAR, a/k/a Jose Dolores Perales, a/k/a Victor Acevedo, a/k/a Domingo Martinez a/k/a Manuel Baez, a/k/a Lo-Lo, and Mario Lopez, Defendants.
**Crim. A. No. 96-71 MMS.**

Argued Nov. 7, 1996.
Decided Nov. 26, 1996.

Gregory M. Sleet, United States Attorney, and Thomas V. McDonough, Assistant United States Attorney, Department of Justice, Wilmington, Delaware, for plaintiff.
John S. Malik, Wilmington, Delaware, for defendant Almodovar.

*MEMORANDUM OPINION*

MURRAY M. SCHWARTZ, Senior District Judge.

INTRODUCTION

***1** Defendant Loris Almodovar was indicted on September 10, 1996, for possession of a firearm by a person prohibited and for possession of marijuana. Docket Item ("D.I.") 1. On October 8, 1996, he and co-defendant Mario Lopez [FN1] were charged under a seven-count Superseding Indictment. D.I. 14. Count one charges Almodovar and Lopez with conspiracy to distribute a mixture containing cocaine base, also known as "crack," and a mixture containing cocaine, in violation of 21 U.S.C. §§ 841 and 846. Count two charges Almodovar with distributing a mixture containing cocaine base, also known as "crack," on July 2, 1996, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(c). Count three charges Mario Lopez with distributing a mixture containing cocaine base, also known as "crack," on August 16, 1996, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(c). Count four charges Almodovar with possession with intent to distribute a mixture containing cocaine base, also known as "crack," on September 4, 1996, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(c). Count five charges Almodovar with possession of a firearm by a person prohibited, which is a violation of 18 U.S.C. § 922(g)(1). Count six charges Almodovar with knowingly possessing marijuana, in violation of 21 U.S.C. § 844 while Count seven charges him with criminal forfeiture under 21 U.S.C. § 853.

FN1. Mario Lopez is a fugitive.

Almodovar filed five pre-trial motions, seeking a bill of particulars, suppression of evidence, disclosure of confidential informants, severance of Count five, and notice of the Government's intention to use evidence. At oral argument, Almodovar withdrew his motion for suppression. Since that date, counsel for defendant informed the Court that Almodovar also withdraws his motion for notice of the Government's intention to use evidence. Accordingly, the Court ordered the motions withdrawn. *See* D.I. 32.

Defendant's remaining three motions will be discussed separately below. The motions implicate only two counts of the Superseding Indictment, counts one and five. These two counts are set forth in pertinent part:

*Count I*

From in or about December 1994 and continuing through on or about September 4, 1996, in the State and District of Delaware and elsewhere, Loris Almodovar, a/k/a/ Jose Dolores Perales, a/k/a/ Victor Acevedo, a/k/a/ Domingo Martinez, a/k/a Manuel Baez, a/k/a/ Lo-Lo, and Mario Lopez, defendants herein did knowingly conspire with each other and unindicted coconspirators known and unknown to the Grand Jury to distribute a mixture containing

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 2
Not Reported in F.Supp., 1996 WL 700267 (D.Del.)
**(Cite as: Not Reported in F.Supp., 1996 WL 700267)**

cocaine base, a/k/a/ "crack" cocaine and a mixture containing cocaine, Schedule II narcotic controlled substances, in violation of Title 21, United States Code, Sections 841 and 846.

*Count V*

On or about September 4, 1996, in the State and District of Delaware, Loris Almodovar [FN2]... did knowingly possess in and affecting commerce six firearms [FN3]..., after having been convicted on or about September 29, 1993 in Delaware Superior Court, Criminal Action No. 93-05-0297, for Possession with Intent to Deliver Cocaine, a crime punishable by imprisonment for a term exceeding one year, all in violation of Title 18, United States Code, Section 922(g)(1).

>    FN2. Aliases omitted.

>    FN3. Names and descriptions of firearms omitted.

FACTS

**\*2** On August 27, 1996, Delaware Superior Court Judge Graves signed a search warrant authorizing a search of Almodovar's trailer home, located in Felton, Delaware, and several automobiles parked there. D.I. 30, at 1. The warrant was executed on September 4, 1996, and crack cocaine, over $20,000 in cash and six firearms were recovered. *Id.* at 23. Almodovar subsequently was arrested and charged with state offenses. *Id.* at 1. On September 10, 1996, Almodovar was indicted by a federal grand jury. *Id.* The state offenses were dismissed that same day. *Id.* On October 8, 1996, a federal grand jury returned the Superseding Indictment. *Id.*

The following information was provided by the State as probable cause for its warrant. In November 1993, Delaware State Police Detective Leslie Grow was contacted by a past proven reliable cooperating individual, otherwise known as confidential informant ("CI-1"), and informed that two other individuals, James Nechay and Richard Humphrey, were selling cocaine and "crack" cocaine. D.I. 30 at 4.[FN4] In December 1994, CI-1 indicated a male named "Domingo," later identified as Almodovar, was supplying the drugs to Nechay and Humphrey.[FN5] *Id.* CI-1 observed Almodovar at Nechay's trailer home in possession of crack, cocaine, and two firearms. *Id.* In January 1995, CI-1 told Detective Grow that Almodovar was traveling out of state to obtain cocaine and using the garage at Nechay's trailer to cook cocaine into crack. *Id.* CI-1 also reported that Almodovar lived in a trailer located on County Road 370/Barney Jenkins Road, Felton, Delaware. *Id.* It was the trailer in Felton for which the August 27, 1996, search warrant was authorized. *Id.* at 5.

>    FN4. According to the search warrant application, which is attached to the Government's brief, CI-1 has assisted Detective Grow in over 10 cases and several search warrants dealing with illegal controlled substances. D.I. 30

>    FN5. Almodovar apparently uses a number of aliases. For purposes of this opinion he will be referred to as Almodovar, even though some of the witnesses may actually have identified him under a different name.

Detective Grow also learned from a concerned citizen ("CC-1") in January 1995 that Almodovar was supplying Nechay and Humphrey with crack and cocaine. *Id.* At this time Detective Grow obtained a search warrant for the Nechay trailer; execution of the warrant in February 1995 resulted in the recovery of 2 1/2 ounces of crack cocaine. *Id.*

In February 1995, Detective Grow learned through a records check that Almodovar had been convicted by a Delaware state court in September 1993 of possession with intent to deliver cocaine. *Id.* He obtained an arrest photo from that proceeding and obtained a positive identification of defendant Almodovar by CI-1. *Id.* Additional background checks indicated that Almodovar had prior arrests and convictions in Philadelphia, although later, such con-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1996 WL 700267 (D.Del.)  
**(Cite as: Not Reported in F.Supp., 1996 WL 700267)**

Page 3

victions were determined to relate to an individual other than Almodovar. *Id.* at 5-6.

A second cooperating individual ("CI-2") informed Detective Grow in January 1996 that Almodovar, Mario Lopez and a third person named Joel, were selling large amounts of cocaine. *Id.* at 6. CI-2 stated that Almodovar obtained 7 kilograms of cocaine in Florida, which he moved to Delaware. *Id.* CI-2 also stated that Almodovar and his associates carried firearms. *Id.* CI-2 further reported that Almodovar and his associates also operated out of a trailer located at Lot 16, Dover Air Park, Dover, Delaware. *Id.* at 7. A second concerned citizen ("CC-2") corroborated the fact that Almodovar moved 7 kilograms of cocaine from Florida to Delaware. *Id.* CI-2 reported that Almodovar operated a white Lincoln Town Car and a black GMC pick-up truck. *Id.* at 6. Detective Grow confirmed this last fact from surveillance of Almodovar's trailer, where he saw these two vehicles parked. *Id.*

**\*3** A third concerned citizen ("CC-3") reported that Almodovar lived at the trailer in Felton, and that he was selling large quantities of cocaine. *Id.* at 7. CC-3 corroborated prior statements that weapons were located at the trailer and that the two vehicles described above were being used. *Id.* A fourth concerned citizen ("CC-4") told Detective Grow in early June 1996 that Almodovar was selling cocaine from his trailer, confirming that it was purchased out-of-state and transported into Delaware using the vehicles described above. *Id.* at 8.

A fifth concerned citizen ("CC-5") in June 1996 advised Grow that drug sales were occurring out of the trailer on Lot 16 in Dover, Delaware. *Id.* During surveillance of the trailer, Detective Grow observed what appeared to be Almodovar driving away from the trailer at Lot 16 in a white Jeep Wrangler. *Id.* During June 1996, a third cooperating individual ("CI-3") reported that a male using the names Almodovar as well as Victor Acevedo, Domingo and Lo-Lo, lived at defendant's trailer and sold drugs with persons named Mario and Joel. *Id.* CI-3 also had seen defendant at the Lot 16 trailer with large amounts of cocaine. *Id.* at 9. CI-3 also knew that defendant imported drugs from out-of-state. *Id.* During July 1996, at the direction of Detective Grow, CI-3 purchased "crack" from Almodovar at Almodovar's trailer. *Id.* CI-3 also purchased drugs from defendant Mario Lopez. *Id.*

DEFENDANT'S PRE-TRIAL MOTIONS

1. Motion for a Bill of Particulars

a. Introduction

Almodovar's motion for a bill of particulars relates only to Count one of the Superseding Indictment, which charges Almodovar and Lopez with conspiracy to distribute crack and cocaine. D.I. 19. Specifically, Almodovar requests:

the exact dates and times or dates and periods of time when Almodovar allegedly conspired to distribute crack and cocaine.

a statement of each overt act on which the Government intends to offer evidence by date, time, place, persons present, and the specific events which transpired.

a statements of when each co-conspirator joined the conspiracy, and whether it is claimed that Almodovar conspired directly with each of the co-conspirators and whether it is claimed that all the co-conspirators met together to form the alleged conspiracy.

the names of the unindicted co-conspirators that the Government intends to use as witnesses at trial.

the names of any government informants claimed by the Government to have witnessed any of the acts alleged in the Indictment which the Government intends to offer into evidence at trial.

a statement as to whether any of the unindicted co-conspirators were acting on behalf of the Govern-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 700267 (D.Del.)
**(Cite as: Not Reported in F.Supp., 1996 WL 700267)**

Page 4

ment at the time of the alleged conspiracy.

a statement with specificity the exact amounts of each mixture containing cocaine base and/or mixture containing cocaine which Almodovar conspired to distribute and the exact dates each mixture was distributed or possessed with intent to distribute.

**\*4** the total amount of the mixtures containing cocaine base and mixtures containing cocaine allegedly possessed and/or distributed by Almodovar and co-conspirators during the conspiracy.

b. Discussion

Almodovar's motion for a bill of particulars is governed by Federal Rule of Criminal Procedure 7(f), which states in pertinent part: "The court may direct the filing of a bill of particulars." The rule does not provide any guidance to courts as to when such a request should be granted.

"The purpose of the bill of particulars is to inform the defendant of the nature of the charges brought against him to adequately prepare his defense, to avoid surprise during the trial and to protect him against a second prosecution for an inadequately described offense." *United States v. Addonizio,* 451 F.2d 49, 63-64 (3d Cir.), *cert. denied,* 405 U.S. 936 (1972). "A bill of particulars should fulfill this function 'when the indictment itself is too vague and indefinite for such purposes.' " *Id.* at 64 (*quoting United States v. Haskins,* 345 F.2d 111, 114 (6th Cir.1965)). On the other hand, courts are wary of forcing the Government to turn over information that will raise concerns as to "the personal security of witnesses [and] the unfairness that can result from forcing the government to commit itself to a specific version of the facts before it is in a position to do so." *United States v. Rosa,* 891 F.2d 1063, 1066 (3d Cir.1989); *United States v. Boffa,* 513 F.Supp. 444, 484-85 (3d Cir.1980).

These policy considerations have evolved into several more practical guidelines: First, a bill of particulars is not to be considered the equivalent of interrogatories in civil practice. *U.S. v. Manetti,* 323 F.Supp. 683, 695 (D.Del.1971). "[A] defendant is entitled neither to a wholesale discovery of the Government's evidence ... nor to a list of the Government's prospective witnesses." *Addonizio,* 451 F.2d at 64 (citations omitted). Moreover, "there is no requirement that the Government weave all the information at its command into a warp of fully integrated trial theory for the benefit of the defendants ... nor is it necessary for the Government to disclose in a bill of particulars the precise details that a defendant and his alleged co-conspirators played in forming and executing a conspiracy or all the overt acts the Government will prove in establishing a conspiracy." *Boffa,* 513 F.Supp. at 485 (citations omitted). "[A] defendant is ordinarily entitled to the name of the participants in a conversation or transaction central to the charge ... [and] to be told the time and place of transactions giving rise to the charge, but [the defendant] is not entitled to compel the government to describe in detail the manner in which the crime was committed, thereby forcing the prosecution to fix irrevocably the perimeters of its case in advance of trial." *Manetti,* 323 F.Supp. at 696. In summary, a defendant is entitled only to be informed of "those central facts which will enable him to conduct his own investigation of the transactions giving rise to the charge." *Id.*

**\*5** Mindful of these guidelines, the Court will consider each of Almodovar's requests separately:

1) Exact dates and times of conspiracy

This request will be denied because Count one of the Superseding Indictment specifies that the alleged conspiracy took place "[f]rom in or about December 1994 and continuing through on or about September 4, 1996...." D.I. 14. This is sufficient to enable Almodovar to conduct an investigation in preparation of his defense. *See United States v. Johnson,* 524 F.Supp. 199, 207 (D.Del.1981) (denying request for bill of particulars where conspiracy indictment informed defendant of dates of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1996 WL 700267 (D.Del.)  
**(Cite as: Not Reported in F.Supp., 1996 WL 700267)**

Page 5

alleged conspiracy), *rev'd on other grounds,*690 F.2d 60 (3d Cir.1982), and *cert. denied,*459 U.S. 1214 (1983).

### 2) Statement of each overt act on which the Government will offer evidence

The motion will be denied as to this request as well. Under the drug conspiracy statute 21 U.S.C. § 846, the Government is not required to prove any overt acts. *United States v. Dreyer,* 533 F.2d 112, 117 & n. 6 (3d Cir.1976). Therefore, "[i]t would be inappropriate ... to require the government to specify overt acts that it may elect to prove at trial," because disclosure of such acts is not necessary for the defendant to prepare his defense. *Johnson,* 524 F.Supp. at 207. *See also United States v. Armocida,* 515 F.2d 49, 54 (3d Cir.) (finding a criminal defendant's request "for the 'when, where and how' of any overt acts not alleged in the indictments was tantamount to a request for 'wholesale discovery of the Government's evidence,' which is not the purpose of a bill of particulars....") (citations omitted), *cert. denied sub nomGazal v. United States,* 423 U.S. 858 (1975).

### 3) Statement of when each co-conspirator joined the conspiracy, whether Almodovar conspired with each directly and whether all co-conspirators met together to form the alleged conspiracy

The motion will be denied as to this request because granting the request also would result in the type of freezing of the Government's case that is to be avoided. *See Boffa,* 513 F.Supp. at 485 (denying bill of particulars that requested the dates each person joined and left the conspiracy).

### 4) Names of unindicted co-conspirators who will testify at trial

This request will also be denied. Although Almodovar has an interest in preparing for trial, the Government has indicated that there are concerns for the personal safety of some of the confidential witnesses, and argues such concerns override defendant's interest. This issue will be discussed in more detail below, in conjunction with Almodovar's motion for disclosure of confidential informants.[FN6]

FN6. *See* p. 13-19 & n. 8, infra.

### 5) Names of informants who witnessed acts in the Indictment who will testify

The motion will be denied with respect to this request. This request will be more fully discussed below with respect to Almodovar's motion for disclosure of confidential informants. As discussed below, the Government has a limited privilege to withhold the names of confidential informants, which applies in this case.

### 6) Statement as to whether any unindicted co-conspirators were acting on behalf of the Government at the time of the conspiracy

**\*6** This request also will be denied. *Cf. Boffa,* 513 F.Supp. at 504 (denying request under Federal Rule of Criminal Procedure 16 for statement about whether any co-defendants and/or co-conspirators are informers for the Government).

### 7) Statement specifying exact amounts of each mixture containing cocaine base and each mixture containing cocaine allegedly distributed or possessed with intent to distribute by Almodovar and co-conspirators and exact dates or time period when each mixture was distributed or possessed with the intent to distribute

The motion will be denied with respect to this request, as it falls in the category of cases in which the answers will freeze the Government's case. *See Manetti,* 323 F.Supp. at 696.

### 8) Statement of the total amount of mixtures containing cocaine base and containing cocaine possessed and/or distributed during conspiracy

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                    Page 6
Not Reported in F.Supp., 1996 WL 700267 (D.Del.)
**(Cite as: Not Reported in F.Supp., 1996 WL 700267)**

As with the other requests, this one will be denied. The defendant is on notice, at least from the motion papers for this hearing, that the Government hopes to prove Almodovar imported at least 7 kilograms of cocaine from out of state into Delaware. *See* D.I. 30, at 6; *see also United States v. Parlavecchio,* 903 F.Supp. 788, 795 (D.N.J.1995) (defendant's motion for a bill of particulars to be evaluated in light of information already provided to the defendant). All requests comprising the motion for a bill of particulars having been denied, the motion for bill of particulars will be denied.

2. Motion for Disclosure of Confidential Witnesses

Relying on *Rovario v. United States,* 353 U.S. 53 (1957), Almodovar asserts the identities of the co-operating individuals and the concerned citizens must be disclosed.[FN7] He urges: "A review of the search warrant application and probable cause affidavit reveals that throughout the course of the alleged cocaine distribution conspiracy, the confidential informants and concerned citizens actually participated in various drug transactions or personally witnessed various acts which comprised part of the conspiracy alleged to have occurred between December of 1994 and September 4, 1996.... [T]he disclosure of their identity is not only relevant to the defense, but also is critical to a fair and just determination of the instant case." D.I. 24, at 12-14.

> FN7. For simplicity, the cooperating individuals and the concerned citizens will be referred to collectively as "confidential witnesses."

While *Rovario* held that the Government will be required to disclose the identity of a confidential informant when "disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause ..."353 U.S. at 60-61, its holding must be interpreted with reference to its facts. Defendant Rovario was charged with the sale of, and unlawfully possessing and transporting, heroin. The Government informant had met with defendant in the informant's car, and subsequently purchased heroin from the defendant. Police officers, who were participating in the scheme, could see and hear most of the transaction. The Court held the lower court's refusal to order the Government to reveal the informant's identity was reversible error. *Id.* at 65.[FN8]

> FN8. The Court stated in a footnote, given its holding, it was error for the lower court to deny a request to identify John Doe in the bill of particulars. 353 U.S. at 65 n. 15. Conversely, this Court in light of its holding that the identity of the informants need not be disclosed, will deny Almodovar's request for a bill of particulars with respect to this same information.

*7 The Court noted the statute governing the crime with which Rovario was charged provided him with a possible defense: "Whenever on trial for a violation of this [statute] the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury." 353 U.S. at 54 n. 1 (*quoting*21 U.S.C. § 174). The Court found "[t]he fact that [defendant] was faced with the burden of explaining or justifying his alleged possession of heroin emphasizes his vital need for access to any material witness." 353 U.S. at 63. Thus the informant's testimony was "highly relevant and might have been helpful to the defense." *Id.* at 63-64. The Court stated:

Doe [the informant] had helped to set up the criminal occurrence and had played a prominent part in it. His testimony might have disclosed entrapment. He might have thrown doubt upon petitioner's identity or on the identity of the package. He was the only witness who might have testified to petitioner's possible lack of knowledge of the contents of the package that he "transported" ... to John Doe's car.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1996 WL 700267 (D.Del.)  
**(Cite as: Not Reported in F.Supp., 1996 WL 700267)**

Page 7

*Id.* at 64. The Court concluded, "The informer was the only witness in a position to amplify or contradict the testimony of government witness." *Id.*

Almodovar's motion calls for a balancing of policy considerations including "the public interest in protecting the flow of information" and "the individual's right to prepare his defense." *Id.* at 62. The Third Circuit Court of Appeals has provided guidance that the decision whether to order disclosure may be made without engaging in the test in certain circumstances. A defendant's argument for disclosure is at its strongest where, as in *Rovario,* the informant was an "active and crucial" participant in an alleged criminal act. *United States v. Jiles,* 658 F.2d 194, 196-97 (3d Cir.1981), *cert. denied* 455 U.S. 923 (1982). Courts are likely to require disclosure in such a case. *Id.* at 197. On the other hand, courts rarely grant disclosure of the identity of an informant who is a "mere tipster," who did not witness or participate in any events giving rise to the warrant. *Id.*

When deciding whether to require disclosure of the identity of an informer who has witnessed events but did not participate in them, the Court must engage in a two-part test. *Id.* at 197. First, a court must evaluate the need asserted by defendant in support of his request for disclosure. "The burden is on the defendant to show the need for disclosure." *Id.* "The mere speculation that an eyewitness may have some evidence helpful to defendant's case is not sufficient to show the specific need required by *Rovario.*" *Id.* "The second part of the '*Rovario* test' requires a balancing of the appellee's interest in disclosure against the Government's interest in maintaining the confidentiality of its informant." *Id.* at 198. The Government's interest includes avoiding deterring future witnesses from coming forward. *Id.* However, the Government's interest may be for the safety of the informant. *Id.* The Government's assertion of danger to a witness will not be disregarded lightly. *Government of the Virgin Islands v. Martinez,* 847 F.2d 125, 128 (3d Cir.1988). In such cases, the court must scrutinize defendants' asserted reasons for disclosure very closely. *Jiles,* 658 F.2d at 198.

**\*8** Additionally, courts have found that the Government may be excused from revealing the identity of an informant when "subsequent events may well correct any possible prejudice." *United States v. Barnes,* 486 F.2d 776, 779 (8th Cir.1973). For example, the prejudice may be reduced if "the witness is not disclosed but is produced at trial and the defendant is given ample opportunity for cross-examination...." *Id.* Accordingly, the identity of an informant, who was a participant in the transaction, need not be released before trial if the Government indicates its intention to call the informant as a witness at trial and if the Government provides the defendant with the necessary impeachment information. *United States v. Beckett,* 889 F.Supp. 152, 155 (D.Del.1995).

As applied to the facts of this case, defendant's motion must be denied. First, out of the eight confidential witnesses, the Government has represented that two, CC-2 and CI-3, will testify and the Government will supply defendant with the relevant impeachment evidence prior to these witnesses' testimony. Out of the six remaining confidential witnesses, five-CI-2, CC-1, CC-3, CC-4, and CC-5-are mere tipsters. As such, the Court will not order the Government to reveal their identities.[FN9]

> FN9. In so characterizing the nature of these witnesses' involvement, the Court relies, as it must, on information provided by the Government. Even if any of these so-called tipsters did *personally witness* the events at issue, however, the result would be the same; as noted below, the defendant has not met his burden of persuading the Court that disclosure of the identity of any of the confidential witnesses is required under *Rovario.* On the other hand, the Court leaves for another day consideration of the situation where the tipsters turn out to have been "active and crucial" participants.

As to the remaining confidential witness, CI-1, who

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1996 WL 700267 (D.Del.)  
**(Cite as: Not Reported in F.Supp., 1996 WL 700267)**

Page 8

is neither a tipster nor a proposed trial witness, application of the *Rovario* test indicates CI-1's identity need not be disclosed. CI-1 witnessed Almodovar in possession of "crack" cocaine and two guns. D.I. 30, at 4. With respect to the first prong, defendant has not met its burden of persuading the Court that disclosure is necessary. Defendant stated in his motion papers: "the disclosure of [the identities of the confidential informants] is not only relevant to the defense, but also is critical to a fair and just determination of the instant case." D.I. 24, at 14. At oral argument, defense counsel asserted that since the Government has no physical evidence and must rely on testimony of these confidential informants to make its case, it would be extremely helpful to the defense to know their identities before trial. However, these statements do not suffice as "specifics as to the alleged materiality of the informants' statements or the exculpatory information held by these alleged witnesses." *Beckett,* 889 F.Supp. at 155; "Simply repeating the relevant test applicable to this case, without offering more, is insufficient to meet defendant's burden." *Id.*

Moreover, disclosure is not warranted under the second prong of the *Rovario* test. Defendant's need to know the identity of CI-1, who has not provided any information to the Government since January 1995, is outweighed by the Government's invocation of its concern for the personal safety of the confidential informants. As noted above, the Third Circuit Court of Appeals has indicated its reluctance to "dismiss cavalierly the government's assertion regarding the potential danger to the informant." *Government of the Virgin Islands,* 847 F.2d at 128. While that case indicates that no particular showing must be made by the Government with regard to the danger to the informant, the Court notes that six guns were discovered during the search of Almodovar's trailer. Such a discovery persuades the Court that the possibility of danger to the witnesses is a very real one. *See United States v. Taylor,* No. 92 CR 322, 1992 WL 249969, at *14 (S.D.N.Y. Sept. 22, 1992) (noting that recovery of a gun during search of a defendant's home indicated possible danger to confidential witnesses).

In sum, the Court finds that the Government need not disclose the identities of the CC-2 and CI-3 until the day they are to testify; at that time the Government also must provide defendant with impeachment information. Further, the Government is not required to disclose the identity of the tipsters, nor is it required to disclose the identity of CI-1.

3. Motion to Sever

Defendant moves to sever Count five from the rest of the indictment, and have it tried separately. Count five charges Almodovar with possession of a firearm by a person prohibited, in violation of 18 U.S.C. § 922(g)(1). Almodovar is prohibited from possessing a firearm because he was convicted in 1993 for possession with intent to deliver cocaine. Defendant urges that the necessary introduction of evidence before the jury as to his past conviction will be so prejudicial that the Court should sever the count.

**\*9** Severance of counts is governed by Federal Rule of Criminal Procedure 14: "If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever relief justice requires."

The Third Circuit appellate court instructs that decisions on motions to sever entail a balancing of "the potential for prejudice to the defendant from joinder against the conservation of judicial resources that joinder will occasion." *United States v. Joshua,* 976 F.2d 844, 847 (3d Cir.1992). The court has opined that a claim involving prior convictions should be severed unless evidence of the prior convictions would be independently admissible with regard to the other counts. *United States v. Busic,* 587 F.2d 577 (3d Cir.1978), *rev'd on other grounds,* 446 U.S. 398 (1980).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1996 WL 700267 (D.Del.)  
**(Cite as: Not Reported in F.Supp., 1996 WL 700267)**

Page 9

In *Busic,* the court considered whether it was error not to sever a count of possession of a firearm by a person prohibited where defendants had both been convicted previously of assaulting federal officers and theft of government property; both crimes involved the use of firearms. 587 F.2d at 584. The court noted the difficulty of applying the test regarding admissibility of evidence without the benefit of hindsight, but found in that case, the decision not to sever was harmless error because evidence of the prior convictions would be admitted under Federal Rule of Evidence 404(b) to rebut defendant's defense of entrapment. *Id.* at 585.[FN10] With respect to the pre-trial determination of the admissibility question, the court noted:

> FN10. Rule 404(b) states: "Evidence of other crimes ... is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, ..."

Of course, we do recognize the difficulties inherent in such pre-trial determinations. Nevertheless, if the government chooses to join such counts, it must be prepared to justify the joinder to the trial judge by some showing that the prior convictions would be admissible even absent joinder. By the same token, in moving for severance of these counts, a defendant may be required to reveal some of his trial strategy, as to an entrapment defense or the like, in the resolution of his motion for severance.  
*Id.* at 585 n. 9.

More recently the Third Circuit Court of Appeals considered a case which is directly on point. In *Joshua,* the court found it was not an abuse of discretion for a trial court to bifurcate a trial where the defendant was accused of drug charges, and possession of a firearm by a person prohibited, and where the prior felony conviction was a drug conviction. 976 F.2d at 848. Under the bifurcation proceeding, the jury first heard evidence and deliberated as to the drug counts. It then heard evidence as to the criminal conviction and deliberated on the weapons possession charge.

In finding this procedure within the court's discretion, the appellate court considered a contrary case, *United States v. Edwards,* 700 F.Supp. 837 (W.D.Pa.1988), in which the court ordered a count to be severed and declined to conduct a bifurcated trial. That court reasoned that the defendant was still prejudiced in a bifurcated trial because the jury, possibly having just convicted the defendant in the first phase of the bifurcated trial, thus faces the "severed" count with the knowledge that the defendant has, in their eyes, already violated the law once. *Id.* at 838. The appellate court discounted this, finding it no different than the prejudice to every defendant who faces multiple counts. On balance, then, the court approved the procedure:

**\*10** All of the charges contained in Joshua's indictment arose out of the same, uninterrupted series of transactions, making it highly efficient to try them together. This is the kind of situation in which all charges are normally joined for trial in the absence of a showing of substantial potential for prejudice.

*Joshua,* 976 F.2d at 848.

In the present case, defendant is not categorically opposed to bifurcation but would prefer complete severance. On the other hand, the Government maintains that bifurcation is time-consuming, unworkable and confusing to the jury. The Government argues that the jury will not pay close attention in the first phase of trial to the firearms evidence if it does not know that the evidence relates to a substantive crime, and then will have to hear such evidence a second time. Further, the Government argues that evidence of Almodovar's conviction is admissible under Federal Rule of Evidence 404(b).

The Government's arguments are not persuasive. The Court will conduct a bifurcated trial rather than order severance of Count five. Clearly, judicial economy considerations would indicate that, as all the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1996 WL 700267 (D.Del.)  
**(Cite as: Not Reported in F.Supp., 1996 WL 700267)**

counts relate to the same set of facts, all the counts should be tried together, or at the least, the gun count should be bifurcated. Balancing the potential for prejudice to the defendant against the conservation of judicial resources, the Court finds that conducting a bifurcated trial strikes the appropriate balance.[FN11]

> FN11. In so ruling, the Court expresses no opinion as to the admissibility during the first phase of trial of the firearms as evidence probative of a large scale drug operation. *See United States v. Pungitore,* 910 F.2d 1084, 1151-52 (3d Cir.1990), *cert. denied,* 500 U.S. 915 (1991).

Conclusion

The Court will deny defendant's motion for a bill of particulars and deny his motion for disclosure of the confidential witnesses. Defendant's motion to sever will be denied. However, the Court will conduct a bifurcated trial, where the gun charges will not be considered by the jury until after it deliberates on the drug charges.

An order will issue consistent with this opinion.

D.Del.,1996.  
U.S. v. Almodovar  
Not Reported in F.Supp., 1996 WL 700267 (D.Del.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.